IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT T. CARLISLE, | ) CIVIL DIVISION |
| | ) |
| Plaintiff | ) C.A. No. 04-25 Erie |
| | ) |
| v. | ) |
| | ) Judge Gary Lancaster |
| BARTONY, HARE & EDSON; SCOTT | ) |
| M. HARE, ESQUIRE; HENRY E. | ) |
| BARTONY, JR., ESQUIRE; and JOHN | ) |
| JOY EDSON, V., ESQUIRE, | ) |
| | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, by and through their attorneys, Weinheimer, Schadel & Haber, P.C., file the

following Brief in Support of Their Motion for Summary Judgment:

### NARRATIVE FACTUAL AND PROCEDURAL HISTORY

This is a state law claim legal malpractice action arising out of Scott Hare's

representation of plaintiff in federal court litigation over timbering rights. Carlisle asserts

diversity jurisdiction under 28 U.S.C. §1332. Carlisle is a resident of the state of Ohio and the

Defendants are all residents of the state of Pennsylvania.

Plaintiff filed the underlying federal court action on March 13, 1995 in the District Court

for the Western District of Pennsylvania against Matson Lumber Company and Matson

Hardwoods, Inc. (later, by merger, Matson Lumber Company). Carlisle v. Matson Lumber

Company and Matson Hardwoods Inc., No. 95-03676 (W.D.Pa.). The complaint there asserted

claims for breach of contract, trespass, and conversion, alleging that Matson Lumber had

breached the terms of an agreement between Carlisle and Matson Lumber's predecessor in

interest, Fisher & Young, when Matson improperly harvested trees (in a "no-cut zone") on the

plaintiff's property. In addition, the complaint requested an accounting, and certain declaratory and injunctive relief, to define the extent of Matson's rights. After commencement of the action, plaintiff voluntarily dismissed the tort claims for trespass and conversion. Mr. Hare allowed the dismissal of those claims as a strategic decision to streamline the trial and because he believed there was insufficient evidence to proceed on the claims. (Trial transcript, p. 21-24, and 76).

Therefore, the underlying action was presented to the jury on plaintiff's claims for breach of contract and declaratory relief. Prior to the trial, the court issued rulings based on Matson's objections that dismissed certain claims for damages in the in the Complaint. (Deposition of Hall, p. 83-84) On December 18, 1997, the jury returned a verdict in Carlisle's favor and awarded damages in the sum of $110,000. Plaintiff obtained new counsel for the appeal by Matson and Mr. Hare's representation terminated in 1998.

The federal court action arose out of plaintiff's ownership of approximately 1,239.6 acres previously known as the "Clough Farm." Carlisle acquired title from Fisher & Young, Inc. for $100,000, by deed dated January 9, 1970 and recorded in the Office of the Recorder of Deeds of Warren County, Pennsylvania in Deed Book 361, Page 13. That deed incorporated provisions of a May 28, 1969 written agreement of sale between Fisher & Young, Inc. and plaintiff by which plaintiff purchased only the real estate and not the timber rights on Clough Farm. The deed specifically excepted and reserved timber rights and plaintiff believed when he acquired the land that Fisher & Young had certain rights to the timber. (Deposition of plaintiff, p. 14). This transaction began the plaintiff's litigious journey, and spawned no less than eight lawsuits, including the underlying federal court action at issue in this claim. At no time, during any of the litigation prior to 2003, did plaintiff ever assert that Fisher & Young or Matson had no rights to any timber.

{00062584.DOC:1}

2

The first lawsuit took place in 1985, when plaintiff and Fisher & Young, Inc. were involved in a lawsuit with the McChesneys, neighbors to the Clough Farm.    This lawsuit determined rights regarding timber ownership as the McChesneys were claiming ownership of certain timber, and a different boundary line that extended into plaintiff's property,  and plaintiff with Fisher & Young sought relief for trees that were cut. (Deposition of plaintiff, p. 21-22). During the course of that litigation, plaintiff and Fisher & Young came to an agreement regarding who owned what trees, which was based on the diameter of the tree. (Deposition of plaintiff, p. 22-24). No title search was performed at this time and plaintiff did not, during the course of this litigation, dispute Fisher & Young's rights to certain timber on the Clough Farm property. (Deposition of plaintiff, p. 24).  In fact, for nearly 30 years, plaintiff and Fisher & Young, and subsequently Matson, operated under the understanding that Fisher & Young and Matson had some rights to timbering on the property.  However, they litigated profusely the extent of those rights, pursuant to the initial contract, and whether the actions of the parties were in line with the prior agreements as to those rights.  Plaintiff testified that although he didn't seek the advice of a lawyer regarding who owned the timber, the question lingered in his own mind, perhaps for 20 years, because Terry Warren, his attorney at the time he entered into the agreement with Fisher & Young, had some concern about who owned the timber. (Deposition of plaintiff, p. 97)

Subsequently, in 1995, Matson and plaintiff litigated the first federal court action, described above.  Plaintiff did not specifically discuss with Mr. Hare the lingering question in his mind about who owned the timber. (Deposition of plaintiff, p. 96-97)

Immediately following the verdict in federal court in his favor, the plaintiff was unhappy with the amount he received and the jury's determination of the timber rights.  (Deposition of

plaintiff, p. 47-50). He believed that the jury had determined an incorrect no-cut zone based on the agreements and that he had not received sufficient damages.

Plaintiff then filed suit in the Court of Common Pleas of Warren County against Matson, at No. 98-353, for the trespass and conversion claims withdrawn in the federal court action and additional claims. Mr. Krembs, plaintiff's initial counsel in filing the Warren County action, testified that he had concerns about the dismissal of the conversion and trespass claims and whether the saving statute would have applied at the time or prior to the time he filed the Complaint in Warren County in 1998. (Deposition of Krembs, p. 12). He also testified that the Complaint he filed was related to the dispute between Matson and plaintiff over the extent of timbering rights and he did not do a title search regarding the action. He viewed this as a contract dispute following the declaratory judgment action. (Deposition of Krembs, p. 16).

While that case is still pending, the court has already granted partial summary judgment to Matson. The Warren County court entered an Order on January 30, 2002, granting in part the Defendants' Motion for Summary Judgment. It is alleged by Carlisle that the Court of Common Pleas of Warren County dismissed the trespass and negligence actions. (Attached to the Motion as Exhibit "B" is the Opinion of the court). However, the court's order and opinion clearly states that the court is only dismissing claims for damages arising prior to the verdict of December 17, 1997. The court goes on to state since the new lawsuit was filed less than two (2) years after the verdict in the federal court action, no claims are barred by the statute of limitations. Rather, the court held the jury verdict in the federal court action was a bar to seeking damages that were sought in the federal court action, essentially regardless of whether those damages were brought

in tort or based on the contract. The court also dismissed all claims relative to damages for the removal of trees that existed in 1969.[1]

In 2003, Matson apparently located a 1973 timber deed which on its face stated that the rights to timber reverted in 1978 to the grantor, Mrs. Kincaid. Mrs. Kincaid had previously died, leaving Dora M. Squatriti as her executrix.    When this deed was located, Matson determined that it contained a mutual mistake, based on the preparer's testimony that no one involved intended the timber rights to revert to grantor, but rather to Fisher & Young. (Testimony of Dennison, p. 67, 70). Matson's counsel testified that instead of another lawsuit, the easiest method to resolve the mistake in the 1973 was to have Mrs. Kincaid's executor sign a quit claim deed to convey any rights that may have reverted by mistake to Mrs. Kincaid. (Deposition of Dennison, p. 68, 70). Accordingly, after review by her counsel, Mrs. Kincaid signed the quit claim deed. (Deposition of Dennison, p. 69).

When plaintiff learned of the deed, plaintiff filed against Matson in federal court arguing that Matson had no rights to any timber based on the 1973 deed. Interestingly, this deed, to the extent that it did not contain a mistake, granted no rights to plaintiff. Regardless, this court dismissed the lawsuit as barred by the doctrine of res judicata and lack of jurisdiction and the appeal is pending in the Third Circuit. This court held that the plaintiff "who is apparently not satisfied with the result on the first Federal Court case, cannot completely reformulate his position in the hopes of a better result the second time around. Preventing the expense and vexation of multiple lawsuits over the same dispute is one of the reasons the doctrine of res judicata exists." (Opinion, p. 13.)

---

[1] One of the declaratory judgment actions was whether the Defendant Matson Lumber Company had retained in the original sale to the Plaintiff the right to timber in perpetuity. The jury determined that Matson only had a right to trees that were standing or fallen at the time of the sale. There was no right to harvest trees in perpetuity and therefore the court in its Order in the Warren County action following the jury verdict did not permit damages to be based on the harvesting of trees that the seller retained in the 1969 deed.
{00062584.DOC:1}

In 2005, Matson filed suit against plaintiff in Warren County at No. 05-579 alleging that plaintiff and others engaged in a course of action known as highgrading, and converted timber owned by Matson on the Clough farm. That case is still pending.

In 2005, Matson filed suit against plaintiff in Warren County at No. 05-604 seeking injunctive relief against plaintiff and his agents for actions by them attempting to disrupt the harvesting by Matson of Matson's timber. That case is still pending.

The within Complaint was filed on January 27, 2004, more than six (6) years after the jury verdict rendered in the federal court action (and more than six years after the alleged acts of negligence).

## ARGUMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are material when disputes over the facts might affect the outcome of a case. *Id*. Thus, a "mere scintilla" of evidence is not enough for the plaintiff to defeat a motion for summary judgment. *Id*. at 252. The court must decide "whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict." *Id*. In this case, it is clear that a plaintiff is not entitled to a verdict because his claims are time barred and he cannot prove causation.

### The plaintiff's claims are barred by the statute of limitations

In order to state a cause of action for legal malpractice, the plaintiff must prove:

a) the employment of the attorney or other basis for the duty;

b) the failure of the attorney to exercise ordinary skill or knowledge; and

c) that the negligence was the proximate cause of the damages to the plaintiff.

See Duke & Company v. Anderson, 418 A.2d 613 (Pa.Super. 1980); Schenkel v. Monheit, 405 A.2d 493 (Pa.Super. 1979); Trice v. Mozenter, 515 A.2d 10 (Pa.Super. 1986) aff'd 621 A.2d 108 (Pa. 1993).

Under Pennsylvania law, a tort claim must be brought within two years from the date the cause of action arose. Pennsylvania law in 42 Pa.C.S.A. § 5524 provides:

The following actions and proceedings must be commenced within two years:

(7) Any other action or proceeding to recover damages for injury to person or property which is founded **on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud**, except an action or proceeding subject to another limitation specified in this subchapter.

Further, in legal malpractice actions, whether in negligence or otherwise, it is clear that the statute of limitations begins to run at the **time of the alleged breach of duty**, which is known as the occurrence rule. Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, 674 A.2d 244 (Pa. Super. 1996), Glenbrook Leasing Company v. Beausang, 839 A.2d 437 (Pa. Super. 2003) aff'd 881 A.2d 1266 (Pa. 2005), and Bailey v. Tucker, 621 A.2d 108 (Pa. 1993). (Emphasis added) See also Harsco Corporation v. Kerkam, Stowell, Kondracki and Clarke, P.C., 961 F.Supp. 104 (M.D. Pa. 1997); Pettit v. Smith, 241 B.R. 847 (ED.Pa. 1999) and Garcia v. Community Legal Service Corp., 524 A.2d 980 (Pa. Super. 1987).      Lack of knowledge, mistake or misunderstanding will not toll the running of the statute of limitations on a legal malpractice claim. Robbins, 674 A.2d at 247.

In Robbins & Seventko, the plaintiff brought a legal malpractice action against a law firm alleging that the firm was negligent in preparing and filing the plaintiff's employee pension plan

with the Internal Revenue Service. The issue on appeal was when the statute of limitations began to accrue in a legal malpractice action. The alleged breach of duty occurred in 1976 and 1977 when the forms for the pension plan were filed with the Internal Revenue Service. The plaintiff argued that the claim did not begin to run until a new law firm hired by the plaintiff advised that a waiver form precluded any further action with the Internal Revenue Service. The plaintiff had brought suit within two years of that date. The court held that the statute of limitations was not tolled during an administrative appeal. Rather, the statute begin to run on the date the Internal Revenue Service notified the corporation that they were disallowing the deductions, with the court applying the discovery rule because the plaintiff could not have known of the injury during the prescribed statute of limitations period. That was the earliest date that the plaintiff could have learned of its injury. Id., 674 A.2d at 245.

In Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, (Pa.Super. 2003), the Superior Court reaffirmed that "[c]ontrary to Glenbrook's claims, both the Bailey and Robbins courts applied the occurrence and discovery rules in determining when the statute of limitations began to accrue. The Robbins court consciously reiterated that "[i]n Pennsylvania, the method used to determine when the statute begins to accrue is the occurrence rule or the discovery rule when appropriate." Glenbrook, 839 A.2d at 442. The Supreme Court affirmed the Superior Court's decision in this matter, reaffirming that Pennsylvania is an occurrence rule state. Glenbrook Leasing Company v. Beausang, 881 A.2d 1266 (Pa. 2005)

Essentially, the plaintiff makes the following allegations in this action:

1.    Defendants were negligent in dismissing or allowing to be dismissed the trespass and conversion claims. (Plaintiff's answers to interrogatories, No. 6 (a) 1, 2, 8, 9).

2.    Defendants were negligent in failing to establish additional damages in the federal court action. (Plaintiff's answers to interrogatories, No. 6 (a) 5, 14)

3.    Defendants were negligent in failing to timely file trespass and conversion claims in state court. (Plaintiff's answers to interrogatories, No. 6 (a) 3, 13)

4.    Defendants were negligent in failing to determine the record owner of the timber on the Carlisle property for the relevant time period and argue in the federal court action that Matson had no rights. (Plaintiff's answers to interrogatories, No. 6 (a) 4, 6, 7, 10, 11, 12)

These allegations fall into two categories: failing to locate the 1973 timber deed and failing to properly prosecute the trespass and conversion claims. The alleged breaches of duty occurred during the course of the representation in the federal court action and clearly before the verdict. All of plaintiff's allegations deal with conduct he asserts should have occurred at the time of trial in the 1995 federal court litigation to protect his rights. The harm, that plaintiff alleges occurred, happened at the time of the verdict when he was allegedly unable to recover for damages related to the conversion and trespass claims, or related to Matson having no rights to timber on the property. Plaintiff may not have subjectively realized at the time of the verdict that he would be unable to pursue these damages. But Pennsylvania law does not toll the statute of limitations for subjective discovery and the discovery rule does not apply in this case, because plaintiff objectively could have discovered his alleged injury earlier.

Plaintiff has testified that at the time of the verdict, he was dissatisfied with the amount of damages he received and the verdict, so he was clearly aware of harm and on accordingly, on notice to investigate the cause of his harm. He stated "[t]he jury verdict said that Matson had the right to cut trees that were existing in 1969. Those trees can grow a long time, so that was a disappointment, that they could come back and cut trees. The second thing is, the – I was led to

believe that there was going to be much more in damages for the trees that Matson did cut. So that was disappointment number two. And it created a cloud on my title, that's still there. Aggravation and the cloud on the title." (Deposition of plaintiff, p. 48). He knew prior to the termination of Mr. Hare's representation [in 1998] that he did not recover damages for the trespass claim or the conversion claim and those claims did not go to the jury. (Deposition of plaintiff, p. 43-44). He knew prior to the verdict that there were damages he believed that had occurred that were not presented to the jury. (Deposition of plaintiff, p. 107-108). And he knew at that time Mr. Hare had not presented damages relative to those items. (Deposition of plaintiff, p. 108).

Even assuming plaintiff did not realize until after the trial that he believed he had a potential claim, his issue with the verdict was that "nothing that I thought good had happened from that 1997 trial. Nothing." (Deposition of plaintiff, p. 71). He testified that after the verdict, Matson was still cutting and making claims to trees he believed they didn't have rights to. He testified that Matson had started cutting in 1998. (Deposition, p. 71). Therefore, he knew of the problem with the ongoing dispute when Matson began cutting in 1998.

The instant matter is identical to the Pennsylvania District Court case of Harsco Corp. v. Kerkam, Stowell, Kondracki & Clark et. al., 961 F.Supp. 104 (M.D.Pa. 1997). In Harsco, the court granted summary judgment to the defendant lawyers based on the plaintiff's failure to bring suit within two years of the accrual of the cause of action. This case arose out of a suit in which the lawyer defendants represented a division of Harsco which was sued for patent infringement. Harsco alleged that the lawyer defendants improperly preserved its rights during trial with respect to moving for judgment as a matter of law. The jury had subsequently returned a verdict against plaintiff on May 18, 1994. The underlying court then denied post trial motions on March 31,

1995, based on the defendant lawyers' failure to properly preserve the right to move for a judgment as a matter of law. The legal malpractice action was filed October 1, 1996. The plaintiff argued that the harm did not occur until post trial motions were denied because the underlying plaintiff did not argue waiver until then and there could be no injury until a *court accepted the waiver argument.* Alternatively, the plaintiff argued that the discovery rule applies because he reasonably relied on the arguments of its lawyers that no waiver had occurred. The district court rejected plaintiff's contentions and found that **the harm occurred at trial** when the moving defendants failed to comply with the rules which ultimately led to the entry of judgment. The court found that even under the discovery rule, Harsco should have known of its injury by the end of August 1994 when the underlying plaintiff first argued waiver in response to the post trial motions.

Likewise, the alleged harm to the plaintiff when the claims were dismissed at trial, the evidence wasn't admitted, or the arguments related to the alleged reversion of the timber rights were not made as no title search was done. The alleged harm from these asserted breaches of duty all occurred at the time of the verdict. Plaintiff did not file suit regarding this matter until more than 5 years after the verdict. Accordingly, all claims arising out conduct that was alleged to be negligent at the trial are barred by the applicable statute of limitations.

There are times when the nature of the professional's negligence is such that, objectively, its existence cannot be detected during the two-year period. In such a case the statute does not commence to run until the negligence either is detected or could have been detected. However, that is not the case here. Plaintiff here argues that it was not until much later that he discovered his damages. He argues that occurred when the Warren County Court ruled and/or in 2003 when the quit claim deed was filed. However, plaintiff has not pleaded or presented any evidence as to

why he could not have discovered his alleged cause of action earlier. The "discovery rule" is an exception to the requirement that a complaining party must file suit within the statutory period. The discovery rule tolls the statute **only until the plaintiff reasonably should have learned** of the alleged breach of duty. Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997) *(*Emphasis added.)

The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. Dalrymple, 701 A.2d at 167. Elsewhere, the Court stressed that the discovery exception to the occurrence rule "cannot be applied so loosely as to nullify the purpose for which a statute of limitations exists." Id, at 167. The exception is available, said the Court, only when "*no amount of vigilance* will enable the plaintiff to detect an injury." Id. at 170 (Emphasis added). A plaintiff is not granted a reprieve from the statute of limitations just because he may not have formulated the conclusion that a cause of action existed and he need not know and understand all of the facts material to the cause of action. Bradley v. Ragheb, 633 A.2d 192, 196 (Pa.Super. 1993).

With respect to the 1973 deed, plaintiff has not explained why he could not have discovered this during the 1985 litigation just as easily as during the 1995 litigation. Plaintiff does not assert that he ever indicated to Mr. Hare that his dispute with Matson was anything more than the interpretation of the rights he believed Matson had based on their agreements as to timber rights. Plaintiff testified that, although he never spoke specifically with Mr. Hare regarding a title problem with the timber, for possibly 20 years, he had a lingering doubt about the title to timber because his attorney at the time of the transfer had doubts. (Deposition of plaintiff, p.97). He just

assumed it would all come out in the federal litigation. (Deposition of plaintiff, p. 97). Pennsylvania law is clear that a subjective belief that a lawyer will perform services is insufficient to create an undertaking to do so. Cost v. Cost, 677 A.2d 1250 (Pa.Super. 1996).

In the 1985 litigation, plaintiff was litigating the issue of timber rights, just as in 1995. He always believed that Fisher & Young had certain rights in the timber. (Deposition of plaintiff, p. 13). Every lawyer who represented the plaintiff (and every lawyer representing Fisher & Young and Matson) believed that the disputes between the two were based on the agreement with respect to timber rights. Regardless, the deed was of record and plaintiff could have found it any time after 1973.

But more importantly, the plaintiff had constructive knowledge of the deed for the purposes of the Pennsylvania statute of limitations. Weik v. Estate of Margaret Brown, 794 A.2d 907 (Pa.Super. 2002). There, the court held that the discovery rule did not apply because a deed had been recorded which gave notice to the public of transfer of title and constructive knowledge is premised on the recording of the deed. Id., 794 A.2d at 910-11. The plaintiff there had an option to purchase property granted in an unrecorded contract. The day after the option was signed, the owner transferred the property to someone else. Six years later, plaintiff filed suit alleging a breach of the option agreement. Plaintiff argued that he did not know that the owner had transferred the property until some time later. The court held that the statute of limitations had expired because the plaintiff did not exercise due diligence sufficient to invoke the discovery as the deed was recorded and knowledge of the deed is imputed to him. Id., 794 A.2d at 910. The court found meritless plaintiff's argument that third parties to the transfer should not be imputed with knowledge of the recorded deed. Id. The court noted that the Pennsylvania Supreme Court has consistently found that the primary objective of recording deeds it to give

public notice. Id. See also, Mancine v. Concord-Liberty, 445 A.2d 744 (Pa.Super. 1982) and In re Ray A. Johnston, 333 B.R. 724 (W.D.Pa. Bankr. 2005) (constructive notice of deed exists if deed appears in the indexes of the Recorder of Deeds in the county where the property is located). Accordingly, plaintiff here has constructive knowledge of the 1973 deed under Pennsylvania law and the discovery rule does not apply to claims regarding the location of the deed as the deed was recorded.   Therefore, to the extent that plaintiff had claims regarding that deed in the 1995 litigation (that had not already expired), the statute of limitations for Mr. Hare's failure to bring those claims would have begun to run **at the latest** at the time of the verdict.

Similarly, the limitations period is not extended until plaintiff finally realizes his rights have been lost. Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, 674 A.2d 244, 248 (Pa.Super. 1996) (that the statute of limitations was not tolled during administrative appeals of an IRS ruling that the pension plan the lawyer defendants had prepared was defective); Bailey v. Tucker, 621 A.2d 108 (Pa.1993) (rejected the plaintiff's argument that the statute was tolled until the final resolution of the appeals and collateral proceedings in the underlying the case); Moore v. McComsey, 459 A.2d 841, 844 (Pa.Super. 1983); (The fact that appellant filed a P.C.H.A. petition in the criminal action alleging ineffective assistance of counsel was entirely inadequate to toll the running of the statute on the civil action.); Moore v. Juvenal, 92 Pa. 484, 490 (Pa. 1880) (limitations period for cause of action for legal malpractice commenced upon expiration of the statute of limitations for underlying matter and was not tolled pending the disposition of the underlying action); Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., 1997 WL 102521 (E.D. Pa. 1997) (limitations period commenced as soon as the expiration of the expert witness deadline and was not tolled until the case was finally dismissed due to the absence of an expert witness).

Here, the plaintiff asserts that he did not consider a lawsuit against Mr. Hare until the decision of the judge in 2002 and therefore, that his discovery of his claim. However, he explained that he was dissatisfied after the 1997 verdict because things changed very little and Matson still had rights. He was dissatisfied with the 2002 litigation because damages that he believed he should have been compensated for in the 1997 litigation were "thrown out." (Deposition of plaintiff, p. 72-72). He was aware Matson still had rights (or at the very least was asserting them) when they began harvesting in 1998 and he was aware at the time of jury verdict that he did not receive damages for "what I thought was the basis for the 1997 lawsuit." (Deposition of plaintiff, p. 73-74, 105-107).

No Pennsylvania court decision supports the argument that the statute of limitations does not begin to run until a court determines that the advice of the attorney was improper. The Pennsylvania occurrence rule stands in contrast to this proposition.    See also Estate of Spry v. Beaty, 2004 WL 396287 (Ind. App. March 4, 2004). (The court held that the statute begins to run when plaintiff placed on notice that release drafted by defendant was overly broad and not when the court rules to that effect).

In Spillman v. Wallen, 1996 WL 379553, at *8 (E.D. Pa. June 28, 1996), aff'd, 111 F.3d 127 (3d Cir. 1997), the court correctly followed Pennsylvania's occurrence rule  and adopted the court's reasoning in Bailey v. Tucker, 621 A.2d 108, 115 n.13 (Pa. 1993), to explain why the mere fact that the attorney's conduct has not yet led to a final judgment against the plaintiff (and may never do so) does not stop the statute from running:

> In a case where a client believes his/her attorney has committed malpractice, but has not yet suffered any actual damages because, for example, no final judgment has been entered against him/her, it may seem inequitable to place the burden on the client to file suit at a point when she/he has suffered only "nominal" damages. As the Pennsylvania Supreme Court pointed out in Bailey, however, a client who

realizes that his/her attorney has committed malpractice but has not yet been "injured" can still file suit against his attorney. The case would simply be stayed pending the final outcome of the underlying litigation.

Id., 1996 WL 379553, at *8.

Further, in Knapp v. Murphy, 30 Pa. D. & C.4th 136 (Tioga C.P. 1996), plaintiffs sued their lawyer for negligently representing them in an underlying action involving the sale of their business. In an attempt to avoid the statute of limitations bar, plaintiffs argued that they could not discover their lawyer's negligence until their adversaries in the underlying action were awarded summary judgment. The Knapp court rejected plaintiffs' argument because "[i]n reality, the summary judgment in the prior action did not serve to inform plaintiffs of any new facts. It served only to inform plaintiffs that they were wrong in their legal analysis, to wit: that they had a valid claim ...." Id. at 147. Likewise, in the instant matter, the court's ruling on the damages prior to the 1997 verdict did not inform plaintiff of any new facts, he was aware that he had not recovered damages for those items prior to the jury verdict; but rather only served to inform plaintiff that he was wrong on his legal analysis.

.      With respect to knowledge of a claim, "plaintiffs need not know that they have a cause of action, or that the injury was caused by another party's wrongful conduct, for once a plaintiff possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim." McD. v. Rosen, 621 A.2d 128, 131 (Pa.Super. 1993) (quoting Bailey v. Lewis, 763 F. Supp. 802, 806-807 (E.D. Pa. 1991), aff'd, 950 F.2d 721 (3d Cir. 1991)). In the case of Igbonwa v. Cameron, 2004 WL 257358 (E.D.Pa. Feb. 2004), the plaintiff alleged legal malpractice for failing to make a statute of limitations argument which resulted in a judgment being entered against him. The plaintiff filed the claim nearly four (4) years after the judgment was entered. The court held the claim was time barred.

There, the plaintiff had been deported to Nigeria, but gave power of attorney to his cousin in the states to deal with the pending forfeiture lawsuit. The plaintiff asserted that the cousin attempted unsuccessfully for months to contact the defendant, and he didn't become aware of the judgment until October 2000 when he received a letter from the defendant advising of the judgment. The court dismissed this argument and found that the plaintiff had to produce facts to show that he **could not have discovered** the information necessary to proceed in a timely fashion. The court said that "[b]y contacting Defendant or the state court, Mr. Enigwe could have readily discovered Defendant's failure to assert a statute of limitations defense in the state forfeiture action when it occurred, and if not then, at least by the time the state court entered its forfeiture order." Igbonwa, 2004 WL257358 at 4. This matter is identical to the instant matter in all material respects. The plaintiff has the burden of showing why the information could not have been discovered earlier and he has not. The 1973 deed, to the extent it provides any support to plaintiff having additional rights, was in the chain of title. Plaintiff could have discovered this deed as easily prior to the litigation, as after.

Under Robbins and its progeny, plaintiff should have brought this claim within two (2) years from the alleged breach of duty. At the very least, plaintiff should have brought this action within two years from the date of the federal court verdict, when he was allegedly forever barred from recovering additional damages (and/or precluded from arguing that Matson had no rights to timbering based on the not yet found deed). As plaintiff did not bring this claim for nearly six (6) years after the verdict, the claim is time barred.

### Plaintiff Has Failed to Prove Causation Sufficient to Support A Legal Malpractice Claim

It is well settled that a "legal malpractice action is distinctly different from any other type of lawsuit brought in the Commonwealth." Kituskie v. Corbman, 714 A.2d 1027, 1030 (Pa.

1998).  Higher standards exist for the plaintiff to prove causation than those in a traditional negligence action. As the court has explained, Pennsylvania does not recognize an increased risk of harm standard for legal malpractice claims, rather the standard is "but for" causation. Myers v. Robert Lewis Seigle, P.C., 751 A.2d 1182 (Pa.Super. 2000). As the court explained, a plaintiff "must demonstrate that she would have prevailed in the underlying action in the absence of [the attorney's] alleged negligence." Myers, 751 A.2d at 1185. As the court in Gans v. Gray, 612 F.Supp. 608, 617 (E.D.Pa.1985) explained, "[a]lthough it may impose a particular hardship on a malpractice plaintiff to show that he would have prevailed in the underlying action in order to establish actual damages, the potential problems facing attorneys in the absence of such a rule would seem more monumental." *Cited with approval in* Myers v. Robert Lewis Seigle, P.C.,751 A.2d 1182 (Pa.Super. 2000).

The court in Kituskie, 714 A.2d at 1030, said, "[i]n essence, a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case')." In order to prove that the negligence was the proximate cause of the damage to plaintiff, the plaintiff must be able to establish by a preponderance of the evidence that the outcome would have been in his favor but for the attorney's actions. Duke & Co. v. Anderson, 418 A.2d 613 (Pa.Super. 1980); Schenkel v. Monheit, 405 A.2d 493 (Pa.Super. 1979) and Trice v. Mozenter, 515 A.2d 10 (Pa.Super. 1986) *aff'd* 621 A.2d 108 (Pa. 1993).

The Supreme Court has explained that "[i]t is only after the plaintiff proves he would have recovered a judgment in the underlying action that the plaintiff can then proceed with proof that the attorney he engaged to prosecute or defend the underlying action was negligent in the

handling of the underlying action and that negligence was the proximate cause of the plaintiff's

loss since it prevented the plaintiff from being properly compensated for his loss." Kituskie v.

Corbman, 714 A.2d at 1030.

The courts, therefore, do not apply a "substantial contributing factor" test because unlike

medical malpractice, legal proceedings are inherently unpredictable. Medical negligence can

likely be evaluated scientifically, but this is not so in legal representation. Therefore, the courts

look to this case-within-a-case analysis to evaluate causation. A plaintiff must prove the result

or outcome in the underlying matter would have been different but for the conduct of the

defendant's attorney.

As Judge Folino explained in Wilken v. Entenmann & Sansone, et.al, 152 PITT.L.J. 155,

160 (Alleg.Cty. 2004):

> The issue is not "could" the additional evidence have made a difference, or
> "might" it have, or did its absence increase the risk that Plaintiff would suffer
> summary judgment. We do not have an "increased risk of harm" standard of
> causation in legal malpractice claims. There are sound policy reasons for this.
> Assume, for example that a plaintiff's counsel agreed to represent a client in a
> difficult case (perhaps a case where plaintiff's counsel was sure to have a difficult
> time proving that the accident in question caused harm to the plaintiff).
> Nevertheless, plaintiff's counsel believed in his client, accepted the difficult case,
> tried it, and lost it--the jury returned a verdict for defendant. If we had an
> increased risk of harm standard for legal malpractice, the client could then hire an
> expert to opine that the lawyer should have called a different witness, or made a
> different point in his closing, and that he could have won if this had been done,
> and that by failing to do so the lawyer increased the risk that the plaintiff would
> lose the case. If that is all that a plaintiff was required to prove in order to
> establish causation in a legal malpractice case, then it would be an easier standard
> of causation for the plaintiff to win the malpractice action than the underlying
> case. Under such a standard, it would not be long before many worthy clients
> would find no lawyers to represent them. Of course, this principle applies
> similarly to defense counsel who agree to defend difficult cases. Perhaps this is
> one reason why our appellate courts have developed the standard that the
> malpractice plaintiff must prove he would have won but for his lawyer's conduct.

It is insufficient to plead and prove malpractice by asserting that the advice or a decision

to enter or withhold evidence was incorrect. See Composition Roofers Local 30/30B v. Katz, 581 A.2d 607, 610 (Pa.Super. 1990); Gans v. Mundy, 762 F.2d 338 (3d. Cir. (Pa.) 1985); Mazer v. Security Insurance Group, 368 F.Supp. 418, 422 (E.D.Pa.1973), *aff'd mem.* 507 F.2d 1338 (3d. Cir. (Pa.) 1975) (an informed judgment, even if subsequently proven to be erroneous, is not negligence). Therefore, reasonable strategic decisions, even those which turn out to be incorrect, are not malpractice. In L.I.C. Commercial Corp. v. Rosenthal, 609 N.Y.S.2d 301, 302 (N.Y.App. Div. 1994), the plaintiff in a legal malpractice action claimed that the attorney should have called a certain witness in the trial. However, the attorney opted not to do that because he felt the witness's deposition testimony had been confusing. The court held that a failure to call a witness in an underlying action when there was a reasonable basis not to do so does not constitute malpractice. Id.

Here, the plaintiff has claimed essentially that claims of trespass and conversion were dismissed without his knowledge, although he became aware of their dismissal by the time Mr. Hare's representation terminated. Mr. Hare represented to the court at the time of the dismissal that he did not believe there was sufficient credible evidence to support these claims and that he wanted to streamline the issues and focus the trial after the court had dismissed certain elements of damages. (Trial transcript, p. 21-23, and 76). This is clearly a judgment call on the part of the attorney and reasonable strategic decisions, even those that are incorrect, are not malpractice. Likewise, an attorney is not a guarantor of the quality or credibility of a witness. In addition, an attorney is not the guarantor of the most favorable outcome possible. Simko v. Blake, 532 N.W. 2d 842 (Mich. 1995).

Regardless, plaintiff has not presented any evidence of how he would have prevailed in the trespass or conversion claim or why the jury would have been compelled to find in his favor

on those claims. Without such evidence, plaintiff cannot prevail in a legal malpractice claim. That the claims might have caused a jury to award him additional damages or could have caused the jury to award him additional damages is insufficient. Rather, plaintiff must prove that the jury would have awarded him the additional damages.

Likewise, with respect to locating the 1973 deed, plaintiff cannot prove causation. Initially, the deed on its face does not grant plaintiff rights in the timber. Plaintiff has not presented any evidence that the deed would have required that he recover additional damages. The deed reverted timber rights to the grantor, not to plaintiff. Therefore, locating the deed during the federal court litigation, at best, would have simply moved up the time frame for another dispute regarding whether the quit claim deed is valid and/or filing a quiet title action or action to reform the deed. Plaintiff has no evidence that a jury would have believed that the 1973 deed divested Matson of any rights to timber. Matson and the grantor's estate representative assert the 1973 deed contained a mistake, based on the testimony of the deed's preparer and their understanding of the intent of the deed. Plaintiff has no evidence that the 1973 deed did not contain a mutual mistake. In fact, plaintiff, Matson, Fisher & Young and all other interested parties have operated for more than 30 years in a manner that indicates the deed did in fact contain a mistake.

Further, there was simply no reason for any attorney to believe that Matson did not have timber rights. Plaintiff believed they did. Matson believed they did. Plaintiff never advised Mr. Hare that he believed there was any basis to assert that the dispute was more than a disagreement regarding the extent of the rights that Matson had, and not that Matson had no rights. Even so, plaintiff has simply no evidence that a jury would have returned a verdict in his favor based on

the 1973 deed and accordingly, cannot prove that he **would have** won additional damages in the federal court action.

Accordingly, plaintiff cannot prove causation and his claims against Mr. Hare should be dismissed.

### Plaintiff Has Not Shown Actual Loss Sufficient to Prove Causation

The plaintiff must, as part of causation, prove actual loss in order to recover in a legal malpractice claim, see Schenkel v. Monheit, 405 A.2d 493 (Pa.Super.Ct.1979); Pashak v. Barish, 450 A.2d 67, 69 (Pa.Super.Ct.1982):

> The mere breach of a professional duty, causing only nominal
> damages, speculative harm or the threat of future harm -- not yet
> realized -- does not suffice to create a cause of action.

Schenkel, 405 A.2d at 494; Budd v. Nixen, 491 P.2d 433, 436 (Cal. 1971); Mariscotti v.Tinari, P.C., 485 A.2d 56, 57 (Pa.Super.Ct.1984).

In Mariscotti v.Tinari, P.C., supra., the plaintiff retained an attorney to represent her with respect to divorce proceedings. In those proceedings, the attorney gave an incorrect valuation of stock owned by her husband. The plaintiff alleged that this error caused her to receive a less favorable divorce settlement. The court stated that the plaintiff in the legal malpractice action failed to state a cause of action because she could not establish actual loss. Id. at 57. The court stated "[w]hether she could have obtained a better settlement is anyone's guess. How much better, of course, is even more speculative. These issues cannot properly be left to the surmise of a jury. Because these issues are entirely speculative, they defeat any cause of action for malpractice of the attorney negotiating the settlement." Id. at 58.

With respect to the damages for trespass and conversion, plaintiff is engaging in mere speculation that had those counts gone to the jury, he would have recovered additional damages.

The damages were included in the valuation done by Mr. Hall for the breach of contract count.
There is simply no way to suggest that had those claims been submitted to the jury, the jury
would have awarded the damages.

Further, Mr. Hall testified that there no damages in his report that Mr. Hare precluded
him from testifying to and submitting to the jury. The only damages excluded were excluded by
the Court's ruling prior to trial.

> Q. Were there any damages that you were prepared to testify to at trial that Mr.
> Hare indicated to you that he didn't want you to testify to?
> A. Nothing that I was involved with at all....Well, meaning that anything I was
> part of or became part of he never asked me not to testify about anything.
> Q. Your testimony was changed by, your understanding, a court ruling.
> A. Correct.

(Deposition of Hall p. 84) Plaintiff is now claiming these same damages based on the 1973 deed
(Deposition of Hall, p. 76-81). Because he has not shown that the 1973 created any rights in
him, but rather simply created another lawsuit regarding whether the 1973 was a mutual mistake,
plaintiff has not shown actual loss and these damages are mere speculation. Plaintiff can say
nothing more than the deed "could have" resulted in a higher verdict. Pennsylvania legal
malpractice law requires a higher standard for actual loss and requires plaintiff to show that the
deed **would have** resulted in the higher verdict. Plaintiff cannot establish this and accordingly
his claims related to the 1973 deed should be dismissed.

Even assuming, however, the plaintiff's damages model in this action makes clear that
plaintiff was aware, or could have been aware of his ability to file this lawsuit at the time of the
1997 verdict. Plaintiff was aware of the amount of the damages that he did not recover
immediately following the 1997 verdict. The damages were excluded by court order and he has
testified that he was dissatisfied with the verdict from the beginning, that the amount was
insufficient. This action in malpractice arises out of the plaintiff's dissatisfaction with the

amount he recovered in 1997. Even if the cause of that alleged harm was negligence, plaintiff was aware of his harm at that time and on notice to investigate the cause of that harm. The alleged cause of that harm was discoverable within 2 years of the verdict and accordingly the plaintiff should have brought the lawsuit by no later than 1999. He waited until 2004. And accordingly, his claims are barred by the statute of limitations.

### Mr. Hare Made  No Undertaking To Perform a Title Search

In order to sufficiently state a cause of action for legal malpractice, a plaintiff must allege an attorney client relationship or a specific undertaking on behalf of the plaintiff. Duke & Co. v. Anderson, 275 Pa.Super. 65, 418 A.2d 613 (1980) ; Schenkel v. Monheit, 266 Pa.Super. 396, 405 A.2d 493  (1979) and Trice v. Mozenter, 356 Pa.Super. 510, 515 A.2d 10  (1986) *aff'd* 621 A.2d. 108 (1987). The duty owed by an attorney is based on the scope of his representation. An attorney is not liable for the failure to perform acts for which he was not retained. Pittsburgh Coal and Coke, Inc. v. Cuteri, 404 Pa.Super. 298, 590 A.2d 790 (1991)*rev'd* on other grounds 622 A.2d 284 (1993). Plaintiff's testimony was clear that he never indicated any concern to Mr. Hare that there was any concern that Matson had no rights to timber. He's testimony was further clear that he believed and expressed to Mr. Hare that this was a dispute as to the extent of the rights under the Articles of Agreement and whether they had breached the agreement. Therefore, an undertaking to perform a title search would have to be an implied representation. Absent an express contract to perform services, an implied attorney-client relationship will be formed where 1) the purported client sought advice or assistance from the attorney, (2) the advice sought was within the attorney's professional competence, (3) the attorney expressly or impliedly agreed to render such assistance, and (4) it is reasonable for the client to believe the attorney was representing him. Atkinson v. Haug, 424 Pa.Super. 406, 622 A.2d 983 (1993) . A subjective

belief that an attorney-client relationship exists or the attorney has made a specific undertaking is insufficient to state a claim. Cost v. Cost, 450 Pa.Super. 685, 677 A.2d 1250 (1996).

Further, the case law does not support the proposition that a lawyer must perform a title search in all cases regarding real property and in fact stands in contrast to that proposition. In Pittsburgh Coal & Coke, the plaintiff retained a law firm to perform a lien check on certain property which was to be placed in an escrow account as collateral. The firm performed a lien check and found no liens on the property. The plaintiff subsequently learned that the property was transferred and that the alleged owner did not have title to the property. This deficiency in title could have been discovered through a title search. The court dismissed the claim since the law firm was not retained to perform a title search, but rather a lien search. The court stated:

> Therefore, we find that the [defendant] law firm did exactly what it appears it was required to do in notifying the plaintiff of having performed a lien check of the property. In doing so, the [defendants] engaged in a specific undertaking...[to] furnish professional services to the plaintiff...however, the duty attendant to the search by the [defendant] in no sense can be broadened to incorporate a legal obligation to advise the plaintiff of a defective title to property used a collateral as for the escrow agreement. This information would have manifest itself only if the [defendant] was engaged to perform a title search by the plaintiff.

Id., 590 A.2d at 795. This case is identical in all material respects. Mr. Hare was retained to provided representation in litigation regarding a contract with respect to timbering rights. He did exactly what he was required to do in filing the lawsuit (and prevailing in recovering damages) for Matson's breach of their agreement.

Similarly, in Cost, the plaintiff never requested that the defendant provide legal assistance but believed that because of family ties, the attorney's conduct and the attorney's representation of a family business in which she had an interest, that Attorney Cost was protecting her interests in all matters. The court held that this belief, as she never sought legal assistance, was insufficient. Cost, 677 A.2d at 1255.

As there was no undertaking to perform a title search, plaintiff's claim with respect to performing a title search should be dismissed.

### CONCLUSION

Plaintiff's claims make abundantly clear that he was dissatisfied with the amount he received from the jury in 1997 and he wishes to relitigate those issues. As such, it is evident that those claims should have been brought within two years from the date of the verdict and as they were not made until more than six years later, his claims are barred by the statute of limitations. Even if they were not, plaintiff has failed to prove causation for the claims and failed to prove an undertaking to perform a title search. Therefore, plaintiff's claims are properly dismissed and summary judgment is appropriately granted to the defendants.

Respectfully submitted,

Weinheimer, Schadel & Haber, P.C.

BY_____
      David L. Haber, Esquire
      Pa. I.D. No. 39574

      602 Law & Finance Building
      429 Fourth Avenue
      Pittsburgh, PA 15219
      (412) 765-3399