IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT T. CARLISLE,                )
                                   )
        Plaintiff,                 )
                                   )          No. _____  95 0376
    v.                             )
                                   )
MATSON LUMBER CO. and              )
MATSON HARDWOODS, INC.,            )
                                   )
        Defendants.                )

## COMPLAINT AND JURY DEMAND

NOW COMES Albert T. Carlisle, Plaintiff in this action, by his undersigned counsel, and submits the following Complaint and Jury Demand against the Defendants herein and states as follows:

### *Parties*

1.    Plaintiff Albert T. Carlisle is an adult citizen and domiciliary of the State of Ohio residing at 1210 Oak Drive, Ashtabula, Ohio 44004. Carlisle's residence, driver's license, automobile registration, voter registration and church membership are all situated in Ohio.



2.    Defendant  Matson  Lumber  Company  ("Matson Lumber") is, upon information and belief, a corporation organized  and  existing  pursuant  to  the  laws  of  the Commonwealth of Pennsylvania with a business address of 132 Main Street, Brookville, Pennsylvania 15825.    Defendant Matson  Hardwoods,  Inc.  ("Matson  Hardwoods")  is,  upon information and belief, a corporation organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a business address of 132 Main Street, Brookville, Pennsylvania  15825.    (Hereinafter,  Defendants  may  be referred to collectively as "Matson").  As set forth below, Matson is the successor-in-interest to Fisher & Young, Inc. with respect to certain timber rights that are the subject of this action.

### *Jurisdiction and Venue*

3.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(1) because the parties reside in and are  citizens  of  different  states  and  the  amount  in controversy  exceeds  $50,000,  exclusive  of  costs  and interest.    Jurisdiction  is  further  proper  pursuant  to 28 U.S.C. § 2201 with respect to Plaintiff's requests for declaratory relief contained herein.

-2-

4.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) and (c) because the causes of action set forth herein arose in the Western District of Pennsylvania, the property that is the subject of this lawsuit is located in the Western District of Pennsylvania, and the Defendants maintain a place of business in and may be found in the Western District of Pennsylvania.

### General Allegations
### A.    Ownership History

5.    Carlisle owns a parcel of land, measuring approximately 1239.6 acres, situated in Spring Creek Township, Warren County, Pennsylvania, known as the "Clough Farm." Carlisle owns this property in fee simple, subject only to certain limited timber rights that are the subject of this action.

6.    The Clough Farm is conveniently and centrally located between Pittsburgh, Cleveland and Buffalo, and is within a few miles of 8200 acres of state game land. The landscape and natural resources of the Clough Farm are enhanced by the presence of two blue-ribbon trout streams, Spring Creek, home to wild trout, and Broken Straw River, which is stocked annually.

-3-

7.   Carlisle purchased the Clough Farm from Fisher & Young, Inc., a Pennsylvania corporation that has since dissolved, by a written Agreement of Sale signed under seal and dated May 28, 1969.  A copy of the Agreement of Sale is attached hereto as Exhibit A.  The sale was recorded by a General Warranty Deed dated January 9, 1970.  A copy of the Deed is attached hereto as Exhibit B.   The Deed and Agreement of Sale were filed on January 19, 1970 at Warren County Deed Book 361 Page 13, and January 20, 1970 at Warren County Deed Book 361 Page 32, respectively.

8.   The Agreement of Sale conveys to Carlisle all of the land and premises set forth therein, except that it reserves in Fisher & Young, Inc. "all of the timber and trees, standing and fallen, situate on the premises above described," subject to certain additional limiting provisions.  Exhibit A p.5.

9.   Upon information and belief, on or about May 4, 1973 American Hardwood Industries, Inc. purchased the assets of Fisher & Young, Inc., including its timber rights at the Clough Farm.   This transaction created an entity known as Fisher & Young Hardwoods, Inc., which thereafter owned the timber rights.

10. Upon information and belief, on or about December 18, 1986 Matson Hardwoods acquired Fisher & Young Hardwoods, Inc., and the timber rights, by merger. Thereafter Matson Hardwoods undertook timber harvesting operations on the Clough Farm pursuant to the Agreement of Sale.

11. On December 30, 1994, effective January 1, 1995, Matson Hardwoods merged into Matson Lumber. Exhibit A attached to the Articles of Merger provides, in part, "all the assets of Matson Hardwoods, Inc. will become the assets of Matson Lumber Company."

12. By virtue of the transactions set forth in paragraphs 9, 10 and 11 above, Matson is the successor-in-interest to Fisher & Young, Inc. with respect to the May 28, 1969 Agreement of Sale and January 9, 1970 Deed, and is bound thereby in the same manner as was Fisher & Young, Inc.

## B. Provisions of the Agreement of Sale

13. As set forth in paragraph 8 above, the Agreement of Sale reserves in Matson certain timber rights that are limited by additional provisions in the agreement. For example, the agreement requires Matson to "confine the cutting of saw timber to those trees which measure 16

-5-

[inches] or more in diameter at 1 [foot] above the ground and [to] confine its logging operations to the season from November 1 to March 31 each year." Exhibit A ¶ 6.

14. Further, although Matson has certain rights to construct access roads on the Clough Farm, the Agreement of Sale requires Matson first to provide "120 days notice in writing to" Carlisle. Exhibit A ¶ 7.

15. Further still, Matson's timber rights are limited by "a map designating the forestry areas which shall be subject to cutting by [Matson] and also designating those areas belonging solely to [Carlisle], wherein [Matson] agrees that there will be no cutting." Exhibit A ¶ 16.

16. In addition to the foregoing limitations, the timber rights under the Agreement of Sale are subject to various options and rights of first refusal granted to Carlisle. In particular, Carlisle retained an option to purchase the timber rights "in the event [Matson] shall desire to sell, transfer or assign the timber." See Exhibit A ¶ 15.A. Similarly, Carlisle retained an option to purchase the timber "[s]hould the present management and/or ownership of [Matson] change." See Exhibit A ¶ 15.B.

-6-

Paragraph 15 requires that notice be given to Carlisle of the pendency of any transaction identified therein.

### C. *Course of Performance and Matson's Breaches*

17. After acquiring the timber rights from Fisher & Young Hardwoods, Inc. on or about December 18, 1986, Matson Hardwoods began logging operations on the Clough Farm. None of Matson Hardwoods' predecessors had conducted any logging operations on the farm.

18. Since December 18, 1986, Carlisle's options and rights of first refusal set forth in paragraph 15 of the Agreement of Sale have been implicated many times, but neither Matson Hardwoods nor Matson Lumber have complied with the notice requirements and option rights contained in the agreement. For example, Carlisle was advised of the December 18, 1986 acquisition of the timber rights by Matson Hardwoods only sometime in the Spring of 1987, after the transaction had been completed. Since then, Matson has undergone several changes in management by repeatedly changing its on-site harvest manager, who oversees timber operations on the Clough Farm. Most recently, ownership of Matson Hardwoods and/or the timber rights changed hands altogether when Matson Hardwoods merged into Matson Lumber. On each of these occasions, Matson failed to provide the

required notice, or any notice, to Carlisle and additionally failed to honor Carlisle's purchase options, as required by paragraph 15 of the Agreement of Sale. Each such failure constitutes a breach of the agreement. There may be other such breaches of which Carlisle is presently unaware.

19.    In addition to the contractual breaches set forth in the preceding paragraph, Matson has additionally breached the Agreement of Sale and committed other unlawful acts on numerous occasions. By way of illustration and not limitation, Matson has committed the following breaches:

a.    Matson has repeatedly harvested timber within the "no-cut" reserve in violation of paragraphs 10 and 16 of the agreement. To give one recent example, during the 1992-1993 harvest season, Matson specifically acknowledged a "no-cut" zone adjacent to the stream banks, and posted flags to mark the area as off-limits, only to cut and remove timber in precisely the same area during the subsequent harvest season;

b.    Matson commenced its 1992-1993 harvesting operations during October 1992, prior to the November 1 limitation contained in paragraph 6 of the agreement; and

c.    Matson has repeatedly constructed access roads without providing 120 days advance written notice as required by paragraph 7 of the agreement. Most recently, Matson has constructed at least two access roads during the current harvest season, one connecting to Patchen Road and another dissecting Carlisle's hay fields, without providing sufficient notice or any notice at all. With respect to the new access road connecting to Patchen Road, Carlisle's attorneys notified Matson by letter dated December 5, 1994, a

-8-

copy of which is attached hereto as Exhibit C, that any activity related to road construction prior to the completion of the notice period would constitute a breach. Matson ignored the letter and continued willfully to construct the access road thereafter.   Furthermore, Matson began constructing access roads across the hay fields thereafter without giving any notice whatsoever.

20. Further, Matson has committed several trespasses to the Clough Farm by conducting its timber operations in a careless and reckless fashion, thereby causing extensive and unnecessary damage to Carlisle's property, and further by harvesting trees outside the scope of its rights under the Agreement of Sale.

21. By way of illustration, and not limitation, of its careless, reckless and unnecessary timber practices in violation of Carlisle's property rights, Matson has caused extensive topsoil to wash into Spring Creek, has placed skid trails in and through the Clough Farm streams, and has removed critical shade trees from stream banks (which are within a "no-cut" zone). These practices impair the recreational value of the Clough Farm, and consequently its potential for economic development, because they threaten to extinguish the fragile trout population residing in the streams and otherwise diminish the aesthetic value of the property.   As a result of its careless and reckless

-9-

forestry practices, including those identified herein, Matson has received citations and fines from the Pennsylvania Fish and Boat Commission.

## COUNT I - BREACH OF CONTRACT
### Purchase Option - Action For Specific Enforcement

22. Plaintiff incorporates paragraphs 1 through 21 above as if fully set forth herein.

23. Paragraph 15 of the Agreement of Sale requires Matson to provide notice to Carlisle upon a sale, transfer or assignment of the timber, or upon a change in management or ownership of the company, and to grant Carlisle an option to purchase the timber rights in such event.

24. On or about December 30, 1994, effective January 1, 1995, the Clough Farm timber rights were sold, transferred or assigned, and Matson Hardwoods underwent a change in management or ownership, when Matson Hardwoods merged into Matson Lumber.

25. Additionally, on several occasions since December 18, 1986, Matson underwent changes in management by changing its on-site harvest manager at the Clough Farm.

-10-

Further, there may have been other episodes implicating paragraph 15 of the Agreement of Sale of which Carlisle is presently unaware.

26. With respect to each of the foregoing events, Matson failed to provide the required notice to Carlisle and failed to grant Carlisle an option to purchase the timber, in breach of the Agreement of Sale.

27. By reason of Matson's several breaches set forth herein, Carlisle is entitled to specific enforcement of the purchase options contained in paragraph 15 of the Agreement of Sale, pursuant to which Matson must offer to sell the timber reserves to Carlisle according to the price terms set forth therein. Specific performance will provide the only adequate remedy for Matson's breaches, and there is no adequate remedy at law for such breaches.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to order specific performance of paragraph 15 of the Agreement of Sale by directing Matson to sell the Clough Farm timber rights to Carlisle according to the price terms specified in the agreement, discounted by all money damages to which Carlisle is entitled as set forth in the remaining

counts of this Complaint, and further to award costs and attorneys' fees.

### COUNT II - BREACH OF CONTRACT
### Purchase Option - Action for Damages

28. Plaintiff incorporates paragraphs 1 through 27 above as if fully set forth herein.

29. Matson repeatedly failed to honor Carlisle's purchase options, and each such failure constitutes a breach of the Agreement of Sale, as set forth in Count I above.

30. In addition to the foregoing breaches, Matson continued to cut and remove trees from the Clough Farm, without any right to do so, and continued to cause damage and destruction to the farm, after each transaction or event that implicated Carlisle's rights under paragraph 15 of the Agreement of Sale. Matson's continued harvesting after each such transaction or event constitutes an additional breach of the agreement.

31. Carlisle has suffered and continues to suffer monetary damages and other damages as a result of the breaches set forth herein, including but not limited to the

value of all timber cut and removed after each breach, and all corresponding damage done to the Clough Farm.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, together with costs and attorneys' fees.

### COUNT III - BREACH OF CONTRACT
### Harvesting Timber Outside Scope of Rights

32.  Plaintiff incorporates paragraphs 1 though 31 above as if fully set forth herein.

33.  Matson has harvested and continues to harvest timber located within the "no-cut" zones set aside by the Agreement of Sale, in breach of that agreement.

34.  Carlisle has suffered and continues to suffer monetary damages and other damages as a result of the breaches complained of herein, including but not limited to the value of all timber cut and removed in violation of the Agreement of Sale and all damage done to property in the "no-cut" zones.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, together with costs and attorneys' fees.

## COUNT IV - BREACH OF CONTRACT
### Violations of Restrictions in Agreement of Sale

35. Plaintiff incorporates paragraphs 1 though 34 above as if fully set forth herein.

36. The Agreement of Sale limits harvesting to the period from November 1 to March 31 of each year, and additionally requires Matson to provide 120 days written notice to Carlisle before beginning construction of any access roads on Carlisle's property. Exhibit A ¶¶ 6, 7.

37. Matson began its 1992-1993 harvesting operations during October 1992, prior to the November 1 limitation contained in the Agreement of Sale, and thereby breached that agreement.

38. Further, during November 1994, and again during January/February 1995, and perhaps on other occasions

-14-

as well, Matson began construction of access roads on Carlisle's property without giving Carlisle 120 days notice as required by the Agreement of Sale, and thereby breached that agreement.

39. As a direct and proximate result of Matson's breach of contract set forth herein, Carlisle has suffered and continues to suffer monetary damages and other damages for which he is entitled to compensation herein.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, together with costs and attorneys' fees.

### COUNT V - TRESPASS

*Voluntarily dismissed prior to trial*

40. Plaintiff incorporates paragraphs 1 through 39 above as if fully set forth herein.

41. Matson has conducted its timber harvesting operations on the Clough Farm in a negligent, careless and reckless fashion that is inconsistent with prudent industry practice. As a result, it has caused extensive and unnecessary damage to Carlisle's property, including but not

limited to damage to the Clough Farm streams and adjoining land, for which Matson received citations and fines from the Pennsylvania Fish and Boat Commission. Such unnecessary damage constitutes a trespass to Carlisle's property.

42. As set forth above, Matson has removed trees outside the scope of the Agreement of Sale, including but not limited to all trees removed since each successive implication of Carlisle's purchase options and all trees located within the "no-cut" zones. Such conduct constitutes additional trespasses to Carlisle's property.

43. As set forth in Count IV above, Matson has begun harvesting operations prior to November 1 and has constructed access roads on the Clough Farm without giving required notice, all in breach of the Agreement of Sale. Such conduct constitutes still additional trespasses to Carlisle's property.

44. As a direct and proximate result of Matson's trespasses set forth herein, Carlisle has suffered and continues to suffer monetary damages and other damages for which he is entitled to compensation herein.

45. Matson's conduct complained of herein was intentional, willful, reckless, careless, grossly negligent and beyond the bounds of reasonable and acceptable conduct, and therefore entitles Carlisle to receive an award of punitive damages herein.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, and to award punitive damages in an amount to be determined at trial, together with costs and attorneys' fees.

## COUNT VI - ACCOUNTING/CONSTRUCTIVE TRUST
### Harvesting Timber Outside Scope of Rights

46. Plaintiff incorporates paragraphs 1 through 45 above as if fully set forth herein.

47. Matson has received substantial income and other revenue derived from the timber it has harvested and removed from the Clough Farm.

48. All income and other revenue relating to timber that Matson harvested and removed from the Clough

Farm in breach of the parties' Agreement of Sale or otherwise outside the scope of its rights under that agreement is the property of Carlisle.

49. Such income and other revenue has been wrongfully collected and withheld by Matson. Accordingly, Matson is a constructive trustee on Carlisle's behalf with respect to such income, and Carlisle is entitled to an accounting and tender of such income and other revenue from Matson.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to order an accounting of income and other revenue received by Matson relating to timber on Carlisle's property and to order that Matson, as constructive trustee on Carlisle's behalf, deliver to Carlisle all income and other revenue derived from timber harvested outside the scope of the Agreement of Sale or in breach thereof, together with interest thereon, and further to award costs and attorneys' fees.

## COUNT VII - CONVERSION
## <u>Harvesting Timber Outside Scope of Rights</u>

50. Plaintiff incorporates paragraphs 1 through 49 above as if fully set forth herein.

51. By harvesting and removing timber in breach of the parties' Agreement of Sale or otherwise outside the scope of its rights under that agreement, as set forth above, Matson wrongfully converted such timber to its own use and benefit in violation of Carlisle's ownership and property rights therein.

52. As a direct and proximate result of Matson's wrongful conversion, Carlisle has suffered monetary damages in an amount equal to the value of the timber wrongfully converted, for which he is entitled to receive compensation herein.

53. Matson's conduct complained of herein was intentional, willful, reckless, careless, grossly negligent and beyond the bounds of reasonable and acceptable conduct, and therefore entitles Carlisle to receive an award of punitive damages herein.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, and to award punitive damages in an amount to be determined at trial, together with costs and attorneys' fees.

## COUNT VIII – DECLARATORY JUDGMENT
### Regarding The Scope of Matson's Timber Rights

54. Plaintiff incorporates paragraphs 1 through 53 above as if fully set forth herein.

55. By its actions complained of herein, Matson has demonstrated a disregard for or misunderstanding of the limited scope of the timber rights granted to it in the parties' Agreement of Sale. Accordingly, there exists an actual and ongoing controversy between the parties as to the existence, nature and scope of such rights, and Carlisle's rights are at immediate risk of continuing violation by Matson.

56. To the extent Matson retains any timber rights after the conclusion of this lawsuit (that is, unless this issue is rendered moot), Carlisle is entitled to a

declaration setting forth the scope of Matson*s timber rights under the Agreement of Sale, thus clarifying the parties' legal relations and respective rights. Unless such declaratory relief is granted, Carlisle will be subjected to Matson's continuing violations of the Agreement of Sale and trespasses.

WHEREFORE, Carlisle respectfully requests this Honorable Court to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 setting forth the scope of Matson's timber rights, if any, under the parties' Agreement of Sale, attached hereto as Exhibit A, and further to award Carlisle costs and attorneys' fees.

### COUNT IX - DECLARATORY JUDGMENT
### Regarding The Contents of the Exclusionary Map

57. Plaintiff incorporates paragraphs 1 through 56 above as if fully set forth herein.

58. The parties' Agreement of Sale incorporates an "exclusionary map" representing areas on the Clough Farm wherein Matson is not entitled to harvest timber.

59. Although copies of the map actually existed at one time, upon information and belief neither of the parties presently possess a copy of the original exclusionary map nor are there any copies known to be in existence.

60. As set forth above, Matson has conducted timber harvesting within the "no-cut" zones in violation of the Agreement of Sale. Accordingly, there exists an actual and ongoing controversy between the parties as to the contents of the exclusionary map, and Carlisle's rights are at immediate risk of continuing violation by Matson.

61. To the extent Matson retains any timber rights after the conclusion of this lawsuit (that is, unless this issue is rendered moot), Carlisle is entitled to a declaration setting forth the contents of the exclusionary map, thus clarifying the parties' legal relations and respective rights. Unless such declaratory relief is granted, Carlisle will be subjected to Matson's ongoing harvesting and removal of trees located within the "no-cut" zones.

WHEREFORE, Carlisle respectfully requests this Honorable Court to issue a declaratory judgment pursuant to

28 U.S.C. § 2201 setting forth the contents of the exclusionary map, which comprises a part of the Agreement of Sale and limits the timber rights granted therein, and further to award Carlisle costs and attorneys' fees.

## COUNT X - PRELIMINARY AND PERMANENT INJUNCTIONS

62. Plaintiff incorporates paragraphs 1 through 61 above as if fully set forth herein.

63. In addition to the foregoing causes of action and the relief requested therein, Carlisle is entitled to preliminary and permanent injunctive relief with respect to the following issues:

    a.    Preliminary injunction to restrain Matson from harvesting any timber while the applicability of Carlisle's purchase options and the scope of the timber rights are being resolved;

    b.    Preliminary and permanent injunctions to restrain Matson from harvesting any timber outside the scope of its rights, if any, under the Agreement of Sale; and

    c.    Preliminary and permanent injunctions to restrain Matson from constructing and using any access roads prior to the completion of the required 120-day notice period.

64. With respect to those matters as to which Carlisle requests injunctive relief, Carlisle has suffered and continues to suffer irreparable injury for which he

lacks an adequate remedy at law, and the public interest is served by the issuance of the requested injunctive relief.

65. With respect to those matters as to which Carlisle requests preliminary injunctive relief, there is a substantial likelihood that Carlisle will prevail on the merits in this action, and the harm to Carlisle if this Court denies injunctive relief will substantially outweigh the harm to Matson - if any - if this Court grants the requested injunctive relief.

WHEREFORE, Carlisle respectfully requests this Honorable Court to issue preliminary injunctions, upon Plaintiff's subsequent motion, and permanent injunctions, after a trial on the merits, as set forth herein.

Respectfully submitted,

Scott M. Hare, Esquire
Pa. I.D. No. 63818

John J. Edson, Esquire
Pa. I.D. No. 56696

Bartony Hare & Edson
The Bank Tower Suite 801
307 Fourth Avenue
Pittsburgh, PA 15222

Tel: 412-338-8632
Fax: 412-338-6611

Date: March 13, 1995          Counsel for Plaintiff

-24-

## JURY DEMAND

Plaintiff Albert T. Carlisle requests trial by jury in this matter with respect to all issues so triable.

Counsel for Plaintiff

-25-

# United States District Court

_____ WESTERN _____ DISTRICT OF _____ PENNSYLVANIA _____

Albert T. Carlisle

V.

Matson Lumber Company and
Matson Hardwoods Inc.

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:  **95  0376**

TO: (Name and Address of Defendant)

Matson Lumber Co. and Matson Hardwoods, Inc., Defendants

132 Main Street
Brookville, PA  15825

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Scott M. Hare, Esquire
Bartony Hare & Edson
The Bank Tower
Suite 801
307 Fourth Avenue
Pittsburgh, PA  15222

an answer to the complaint which is herewith served upon you, within _twenty (20)_ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

CLERK

DATE   MAR 1 3 1995

BY DEPUTY CLERK

lacks an adequate remedy at law, and the public interest is served by the issuance of the requested injunctive relief.

65. With respect to those matters as to which Carlisle requests preliminary injunctive relief, there is a substantial likelihood that Carlisle will prevail on the merits in this action, and the harm to Carlisle if this Court denies injunctive relief will substantially outweigh the harm to Matson - if any - if this Court grants the requested injunctive relief.

WHEREFORE, Carlisle respectfully requests this Honorable Court to issue preliminary injunctions, upon Plaintiff's subsequent motion, and permanent injunctions, after a trial on the merits, as set forth herein.

Respectfully submitted,

Scott M. Hare, Esquire
Pa. I.D. No. 63818

John J. Edson, Esquire
Pa. I.D. No. 56696

Bartony Hare & Edson
The Bank Tower Suite 801
307 Fourth Avenue
Pittsburgh, PA 15222

Tel: 412-338-8632
Fax: 412-338-6611

Date:  March 13, 1995          Counsel for Plaintiff

-24-

Farm in breach of the parties' Agreement of Sale or otherwise outside the scope of its rights under that agreement is the property of Carlisle.

49. Such income and other revenue has been wrongfully collected and withheld by Matson. Accordingly, Matson is a constructive trustee on Carlisle's behalf with respect to such income, and Carlisle is entitled to an accounting and tender of such income and other revenue from Matson.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to order an accounting of income and other revenue received by Matson relating to timber on Carlisle's property and to order that Matson, as constructive trustee on Carlisle's behalf, deliver to Carlisle all income and other revenue derived from timber harvested outside the scope of the Agreement of Sale or in breach thereof, together with interest thereon, and further to award costs and attorneys' fees.