1

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA
      ---------------------
      ALBERT CARLISLE,
                   Plaintiff
                                              CA 95-376
      vs.

      MATSON LUMBER,
                   Defendant
      ---------------------

                          PROCEEDINGS
          Transcript of TRIAL commencing on December 17, 1997,
      United States District Court, Pittsburgh, Pennsylvania, before
      Honorable Gary Lancaster, District Judge.


      APPEARANCES:

      For the Plaintiff:      Scott Hare, Esq.
      For the Defendant:      Chester Fossee, Esq.




                              Reported by:
                              William E. Weber, RDR
                              Official Court Reporter
                              1027A, U.S. Courthouse
                              Pittsburgh, Pa. 15219
                              (412)261-2446



      Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
```

1    You get to it, that is a decision you will make.  I
2 have taken longer than I intended, but I'm a lawyer and
3 lawyers like to talk.  I will leave you with this:  We have
4 spent a lot of time over the past two and a half years of our
5 own and of yours because of this document.  Any lawyer who
6 drafts an agreement bears that in mind and like everybody else
7 who does anything whether an engineer trying to build a
8 building, you try to think of everything.
9    If you are a congressman trying to draft
10 legislation, you try to think of everything.  Unfortunately,
11 what happens, every once in a while you really haven't thought
12 of everything.  That is why we are here.  It would have been
13 so much easier had John Kookogey thought of everything when he
14 drafted this.  We wouldn't have gone through this and neither
15 would you.  But I thank you.  I think you have been a
16 marvelous jury, I appreciate your attention to details and
17 notes and everything else.  I'm sure you will come to the
18 correct decision.  Thank you.
19    MR. HARE:  Thank you, Your Honor.  May it please the
20 Court, Mr. Fossee.  I want to start by thanking you for your
21 patience over the last few days, in particular I appreciate
22 your patience as we sat through a long elaborate talk about
23 how badly the farm was damaged or not damaged, how badly the
24 trees were marked up or not, how many times the stream was
25 subjected to erosion or not.  Those are clearly important

1  issues, they are important issues for another case, another
2  day.
3       The issues for this jury in this Court are very
4  straightforward. We have four of them. First is the 120 day
5  notice. The second is the scope of the timber rights in
6  1969. The third is the existence of what we called a
7  convenient term, the no-cut zone. The fourth is whether
8  Mr. Carlisle suffered any damages.
9       Like Mr. Fossee, I will begin with the 120 day
10 notice. That really is the briefest issue. You will see that
11 is in paragraph seven of the agreement of sale you will have
12 with you. What does the language say? It says the seller is
13 further granted upon 120 days' notice in writing to buyer the
14 right to construct such roads as it deems reasonably necessary
15 for its operations. It doesn't say each time, it doesn't say
16 one time only. That is why we are asking you to decide the
17 issue.
18      When you do that, remember the instructions His
19 Honor has already given you, if you find language to be
20 ambiguous, your instruction is to construe it strongly against
21 the party that drafted it and in favor of the party who didn't
22 draft it. In this case, any ambiguous language you have to
23 construe against Matson and in favor of Mr. Carlisle as you
24 try to resolve that ambiguity.
25      As you go about construing this language you have

1  MR. HARE: No, that was our only comment.

2  THE COURT: Mr. Fossee?

3  MR. FOSSEE: Your Honor, you are supposed to make
4  some mistakes so we have something to object to. You didn't
5  do that.

6  THE COURT: I think I may have. In the damages, I
7  have these damages in here is straightforward contract claim.
8  I'm reading the act here.

9  MR. HARE: The conversion statute?

10 THE COURT: Yes.

11 MR. HARE: We are prepared to withdraw that. I
12 don't think there is credible evidence one way or the other as
13 to when this cutting took place. The conversion statute
14 provides two year statute of limitations. Frankly, it is too
15 difficult a question to ask anyone to resolve how much if any
16 of the cutting took place within the two year period.

17 THE COURT: Okay. All right.

18 MR. HARE: We are prepared to withdraw that and take
19 contract damages.

20 THE COURT: Okay. I'm looking at this, the statute
21 of limitations problem. All right.

22 MR. FOSSEE: There is a multitude of problems with
23 it, saves a lot of time and effort.

24 MR. HARE: We will take it out.

25 THE COURT: Okay. I think again what I'm going to

21

MR. HARE: Now, here is where the damage issues require separate treatment.

THE COURT: Hold on. Every time they want to build a road or just the first road; okay. Is that it?

MR. HARE: Yes.

THE COURT: Okay. That's declaratory judgment.

MR. HARE: Right.

THE COURT: Now, what is the other thing that I still have to decide?

MR. HARE: So, the three issues, declaratory judgment; otherwise, for verdict by the judgment by the jury would be the no-cut zone map; the issue of the one-hundred-twenty-day notice.

Now, with respect to damages arising from the issues that remain in the case. I understand the court will not permit the plaintiff to present his theory, that trees cut without notice and the option are not going to be the basis for damage.

However, within, in our expert report and in our pretrial, we identify the total value of all the trees that were removed and, therefore, would be damages under plaintiff's reading of that contract. I understand that that's out, as such.

22

Within that umbrella, which really covers every tree on the property that Matson has cut, Matson has cut a number of those trees that are literally along the stream banks. Now, that's, obviously, still an issue in the case, pursuant to our declaratory judgment request, also pursuant to our breach of contract count that asserts that harvesting within the no-cut zone was itself a breach of contract.

After the court's conference on Friday, when it became apparent that our broad damage claimed under 15 and 15 A and 15 B might be excluded, I asked Mr. Hall to break out what portion of that number represents trees within what we would characterize as the no-cut zone. So, we believe that that damage figure is still in the case, based on the claims that remain, notwithstanding the court's ruling on 15 A and 15 B.

I wanted to give the court advance, you know, notice that I would like to present that. I want -- this is not a new damage calculation. That's, that's a component that's within the total damages that we've already identified.

THE COURT: So, it's a damage as for the loss of the trees that were cut down in the no-cut zone, assuming they cut down trees in the no-cut zone?

MR. HARE: Exactly. It's, frankly, it's a

23

much smaller number than the number that reflects all of the timber, of course.

THE COURT: Okay. What's the other thing you had?

MR. HARE: And apart from that, with respect to other theories of damage for trespass, --

THE COURT: What's the trespass? What happened?

MR. HARE: Well, briefly, I don't want to waste any time. You will see why in a minute. There's been damage caused to the property, erosion, siltation into these Class A trout streams. I am prepared to offer a stipulation to dismiss Count 5 of the complaint and I have taken the liberty of drawing one up.

So, we're prepared to streamline this trial, focus, focus on the issues that still remain. We will dismiss our trespass claim all together.



24

MR. HARE: Right.

THE COURT: And, finally, damages for loss of trees cut down in the no-cut zone?

MR. HARE: That's right, sir.

THE COURT: All right. So, that's what we're going to go with before the jury.

MR. FOSSEE: If it please, Your Honor. I have no problems with the first three.

THE COURT: Okay.

MR. FOSSEE: Whether the jury makes that decision, after hearing evidence on the issues, or if the court makes that decision. Doesn't matter to me. I think it could have been, these declaratory issues could be handled by, by the court, just as well as taking the time of the jury to do it. But that's as far as I can see that we should go.

THE COURT: You don't think that these should be damages for the loss of the trees in the no-cut zone?

MR. FOSSEE: Absolutely.

THE COURT: No objection. It's on the record. Let's to go lunch.

MR. FOSSEE: Your Honor, please.

THE COURT: Please. I am going to let him put it before the jury.

3619

1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
ALBERT T. CARLISLE,           )
                              )
              PLAINTIFF       )
                              )    CIVIL ACTION
     vs.                      )    NO. 95-376
                              )
MATSON LUMBER, CO., ET AL.,   )
                              )
              DEFENDANTS      )
```

PROCEEDINGS

Transcript of trial testimony commencing on Tuesday, December 16, 1997, in the United States District Court, Ninth Floor, U. S. Courthouse, Pittsburgh, Pennsylvania, before Honorable GARY L. LANCASTER, U. S. District Judge and a Jury.

APPEARANCES:

FOR THE PLAINTIFFS: By: Scott M. Hare, Esquire
                        Bartony, Hare & Edson
                        Law & Finance Building,
                          Suite 1801
                        Pittsburgh, Pennsylvania 15219
                        (Plaintiff present with
                         counsel.)

FOR THE DEFENDANTS: By: Chester S. Fossee, Esquire
                        Reale & Fossee
                        Allegheny Building, Suite 800
                        Pittsburgh, Pennsylvania 15219
                        (Defendants present with
                         counsel.)

                        Reported by:
                        Sandra Wenger, Court Reporter
                        10th Floor, U.S. Courthouse
                        Pittsburgh, Pennsylvania  15219
                        (412) 281-6855

Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

1  MR. HARE: No, that was our only comment.

2  THE COURT: Mr. Fossee?

3  MR. FOSSEE: Your Honor, you are supposed to make
4  some mistakes so we have something to object to. You didn't
5  do that.

6  THE COURT: I think I may have. In the damages, I
7  have these damages in here is straightforward contract claim.
8  I'm reading the act here.

9  MR. HARE: The conversion statute?

10  THE COURT: Yes.

11  MR. HARE: We are prepared to withdraw that. I
12  don't think there is credible evidence one way or the other as
13  to when this cutting took place. The conversion statute
14  provides two year statute of limitations. Frankly, it is too
15  difficult a question to ask anyone to resolve how much if any
16  of the cutting took place within the two year period.

17  THE COURT: Okay. All right.

18  MR. HARE: We are prepared to withdraw that and take
19  contract damages.

20  THE COURT: Okay. I'm looking at this, the statute
21  of limitations problem. All right.

22  MR. FOSSEE: There is a multitude of problems with
23  it, saves a lot of time and effort.

24  MR. HARE: We will take it out.

25  THE COURT: Okay. I think again what I'm going to