JACK, KOOKOGEY & FORSSELL
ATTORNEYS AT LAW
TITUSVILLE, PA.

BOOK 331 PAGE 32

FILED AND ENTERED at 9:19 o'clock A.M.

JAN 20 1970

AGREEMENT OF SALE

FISHER & YOUNG, INC., a Pennsylvania corporation with principal place of business, R. D. 2, Titusville, Oil Creek Township, Crawford County, Pennsylvania, hereinafter called the Seller, and ALBERT T. CARLISLE, of 6229 Hiram Avenue, Ashtabula, Ohio, hereinafter called the Buyer.

WITNESSETH: that the said Seller, in consideration of the covenants and agreements hereinafter contained, on the part of the said Buyer to be kept and performed, has agreed and does hereby agree to sell and convey unto the said Buyer, his heirs or assigns, all the land and premises hereinafter mentioned and fully described, for the sum of ONE HUNDRED THOUSAND ($100,000.00) Dollars, to be paid as follows: the sum of $1,000.00 paid herewith to the Seller, receipt of which is hereby acknowledged, the balance of $99,000.00 to be paid upon execution of this agreement, and delivery to Buyer of a general warranty deed conveying a marketable title in and to the premises herein described, subject to the exceptions set forth and provided for in this agreement.

The said premises are described as follows:

1. All that certain tract of land situate in Spring Creek Township, Warren County and State of Pennsylvania, bounded and described as follows: BEGINNING at the northeast corner, a hemlock tree; thence south one hundred thirty-six (136) rods to a post; thence by land formerly owned by W. A. Irvine west to the corner of land formerly owned by Francis Bates; thence by land of said Bates one hundred thirty-six (136) rods to a post; thence by land of said W. A. Irvine east to the place of beginning, containing sixty-four (64) acres one hundred fifty-five (155) rods of land, more or less.

2. ALSO, ALL that certain other piece or parcel of land situate in the Township, County and State aforesaid, bounded and described as follows:

BEGINNING at a post and stones in the northwest corner of the lot hereby conveyed; thence east one hundred sixty-nine (169) rods to a post; thence south one hundred one (101) rods to a post; thence east forty-nine and one-tenth (49.1) rods to a post; thence south one hundred ten and seven tenths (110.7) rods to a post; thence west one hundred sixty-six (166) rods to a post; thence north sixty-two and seven-tenths (62.7) rods to a post; thence west fifty-three and seven-tenths (53.7) rods to a post; thence north one hundred forty-nine (149) rods to a post and stones, the place of beginning, containing two hundred thirty-seven (237) acres of land, more or less, and being part of Tract Number Three hundred sixty-three (363) as designated on the general map of Warren County.

3. ALSO, ALL that certain other piece or parcel of land situate in the Township, County and State aforesaid, bounded and described as follows: BEGINNING at the northwest corner of said piece of land at a post, thence in a southerly direction along the Morton Hill Road to the southwest corner of said piece of land; thence north eighty-eight and three-fourths (88 3/4) degrees east one hundred thirty-four and six-tenths (134.6) rods to a hemlock; thence north one and one-fourth (1 1/4) degrees east one hundred thirty one and four tenths (131.4) rods to a post; thence south eighty-nine and three-fourths (89-3/4) degrees west one hundred and thirty-four and six-tenths (134.6) rods to a post, the place of beginning: containing about one hundred and five (105) acres, be the same more or less.

4. ALSO, ALL that certain piece or parcel of land situate in the Township, County and State aforesaid, being the homestead farm formerly of C. W. Nichols, and described in the three following several deeds, to-wit: from Frank E. Bates and wife to C. W. Nichols, bearing date the twenty-first day of March, A.D. 1890, and recorded in said Recorder's Office in Deed Book 68, page 81, as commencing at a post in the south line of said property: thence by lands of Smith south eighty-eight and three-fourths (88-3/4) degrees west fifty-five and five-tenths (55.5) perches to a post; thence by the same north one and one-fourth (1-1/4) degrees west to the state road, supposed to be about one hundred and forty-five (145) rods, more or less; thence eastwardly along the center of said road to the northwest corner of land deeded by Francis Bates to L. L. Bates; and thence south one and one-fourth (1-1/4) degrees east along said L. L. Bates' land to a post, the place of beginning, supposed to contain about fifty-four or fifty-five acres of land out of Tract Number Three hundred and three (303).

5. ALSO, One other piece or parcel of land described as being the east half of sixty-three (63) acres of land deeded from George Yeager to Francis Bates on the Fifth day of July, 1850, and recorded in said Recorder's Office on the Third day of July, 1851, off of Tracts Numbers Three hundred and four (304) and Three hundred sixty-three (363).

6. ALSO, as described in the deed from L. L. Bates and wife to said C. W. Nichols, bearing date the Twenty-first day of February, 1886, as commencing in the center of the State Road and the center of the Morton Hill Road at the junction of those two roads; thence by land of Cordelia Leonard and W. A. Irvine south one and one-fourth (1-1/4) degrees east one hundred eighty-five and one-half (185-1/2) rods to a beech, the southeast corner of the Francis Bates home farm; thence south eighty-eight and three-fourths (88-3/4) degrees west along the south line of said home farm fifty-one (51) rods to a post; thence

BOOK 361 PAGE 33

north one and one-fourth (1-1/4) degrees west to the State Road; and thence eastwardly along the center of said road to the center of said Morton Hill Road, the place of beginning, supposed to contain about fifty-three (53) acres of land, be the same more or less.

BOOK 361 PAGE 34

7. ALSO, ALL that certain piece or parcel of land situate in the Township, County and State aforesaid, bounded and described as follows: On the north by land above described, on the east by land of F. E. Bates, on the south by land formerly of C. W. Nichols, and on the west by land of M. Smith, containing about thirty-one and one-half (31-1/2) acres of land, more or less; and also so much of the land described in the deed from S. D. I. Newbold to the said C. W. Nichols, bearing date the Twenty-second day of March, 1888, and recorded in said Recorder's Office in Deed Book 64, page 136, as lies west of the Morton Hill Road, and adjoining the lands herein above described.

8. ALSO, ALL that certain piece or parcel of land situate in the Township of Spring Creek, County of Warren and State of Pennsylvania, bounded and described as follows: On the south by lands owned by W. A. Irvine's heirs; on the west by the Morton Hill Road and land formerly owned by George Baton; on the north by land formerly owned by Mrs. Elias Wood; and on the east by the station road and land formerly owned by Lewis Stoddard, containing sixty-eight (68) acres and fifty-nine (59) rods of land, be the same more or less, out of Tract Number Three hundred four (304).

9. ALSO, ALL that certain piece or parcel of land situate in the Township of Spring Creek, County of Warren and State of Pennsylvania, bounded and described as follows: On the north by land of Whiteley; on the east by land formerly of Greeley; on the south by lands formerly owned by W. A. Irvine; and on the west by lands conveyed to C. W. Nichols by F. J. Jones and wife, and a public road leading to Spring Creek R. R. Station and lands of Stoddard, containing forty-four (44) acres of land, more or less.

10. ALSO, ALL that certain piece of land situate in the Township, County and State aforesaid, bounded and described as follows: On the north by land of Tom Forbes; on the east by land formerly of W. A. Irvine and L. S. Clough; on the south by land formerly of William Morton, now L. S. Clough, containing forty-five (45) acres, more or less.

11. ALSO, ALL that certain piece or parcel of land situate in the Township, County and State aforesaid, being part of Tract Three hundred ten (310) as described on the map of Warren County, Pennsylvania, as follows: BEGINNING in the center of the State Road at a point where the same crosses the Tract line between the land formerly of Sarah D. I. Newbold and that of L. Greeley; thence south one (1) degree forty-five (45) minutes east eighty-eight (88) rods to a post, the southwest corner of Tract Number Three hundred ten (310); thence north eighty-eight (88) degrees forty-five (45) minutes east along the southerly line of Tract Number Three hundred ten (310) eighty-one (81) rods to a post in said Tract line; thence north two (2) degrees west one hundred nine and one-half (109-1/2) rods to a post in the center of the State Road; thence along the center of said road westerly eighty-four and three-tenths (84.3) rods to the place of beginning, containing fifty (50) acres of land, more or less.

12. ALSO, ALL that certain piece or parcel of land situate in said Township,

County and State, bounded and described as follows: BEGINNING at a point in the center of the State Road, at the northeast corner of land heretofore conveyed by S. S. Wead, and running thence south two (2) degrees east one hundred twelve and six-tenths (112.6) rods to a post at the southeast corner of the said Wead's land, and in the south line of Tract Number Three hundred ten (310); thence north eighty-eight and three-fourths (88-3/4) degrees east three hundred fifty (350) rods to the western bank of the Big Brokenstraw Creek at low water mark; thence northwesterly along the western bank of the Big Brokenstraw Creek at low water mark to the center of the State Road; thence southwesterly along the center of the said State Road to the place of beginning. The same containing two hundred fourteen (214) acres and one hundred four (104) perches of land, be the same more or less, and being a part of Tract Number Three hundred ten (310). The land herein conveyed to include all the land lying west of the Big Brokenstraw Creek belonging to Mrs. S. D. I. Newbold in Tract Number Three hundred ten (310). Also, all islands in that part of Brokenstraw Creek which lie east of the foregoing described land.

13. ALSO, ALL that certain land situate in the aforesaid Township, County and State, conveyed to L. S. Clough by Dan A. Geiger and Jessie L. Geiger, his wife, by deed bearing date the First day of October, 1906, and recorded in the Recorder's Office of Warren County in Deed Book 105, page 260, said land being bounded and described as follows: BEGINNING at the northwest corner of Tract Number Three hundred thirteen (313): thence extending along the north line of said tract due east ninety-one and nine-tenths (91.9) perches to the corner of land formerly of E. Jackson: thence along the same due south one hundred thirty-five (135) perches to the southwest corner of said Jackson's land; thence due west ninety-four (94) perches to the west line of said tract; thence along said line due north one hundred thirty-five (135) perches to the place of beginning, containing seventy-eight (78) acres and forty-one (41) perches, more or less, being the northwest corner of Tract Number Three hundred thirteen (313).

14. ALSO, ALL that certain piece or parcel of land situate in Spring Creek Township, Warren County, State of Pennsylvania, as conveyed to L. S. Clough by J. V. Kinyon by deed bearing date the Thirtieth day of March, 1911, and recorded in the Recorder's Office of Warren County in Deed Book 114, page 397, said land being bounded and described as follows: It being fifty-one (51) acres and eighteen (18) perches from the southeast side of Tract Number Three hundred four (304) bounded as follows: On the north by lands formerly of Miles and Watts; on the east by the eastern line of said tract; on the south by the southern line of said tract; on the west by lands formerly of Yager and Miles and Watts.

15. ALSO, ALL that certain piece or parcel of land situate in Spring Creek Township, Warren County, State of Pennsylvania, bounded and described as follows: BEGINNING at the northwest corner of the whole tract Number Three hundred fourteen (314); thence south by the west line of the tract one hundred fifty-nine (159) rods to a post; thence east fifty-three (53) rods and eight (8) links to a post; thence north by the residue of the tract one hundred fifty-nine (159) rods to a post in the north line of the tract; thence west along the north line of the tract fifty-three (53) rods and eight (8) links to the place of beginning. Containing fifty (50) acres of land and allowance.

16. ALSO, ALL that certain piece or parcel of land situate in Spring Creek

BOOK 361 PAGE 35

Township, Warren County, State of Pennsylvania, bounded and described as follows: BEGINNING at the northwest corner of the tract conveyed at a post; thence by land formerly of Sager east fifty and seven-tenths (50.7) perches to lands formerly of Jackson; thence by land formerly of Jackson south two hundred one (201) perches to land formerly of Irvine; thence by land formerly of Irvine west fifty and seven-tenths (50.7) perches to a post; thence by lands formerly of Irvine and lands formerly of Yager north two hundred one (201) perches to the place of beginning, containing sixty (60) acres of land, be the same more or less, being part of Warrant Number Three hundred sixty-three (363).

BOOK 361 PAGE 36

There being erected upon said premises a large two-story frame dwelling house, two large barns and other buildings.

SUBJECT to the right of way for an electric line granted unto Pennsylvania Electric Company by instrument dated October 15, 1957 and entered in the Recorder's Office of Warren County in Deed Book 291, page 460, on January 11, 1958.

SUBJECT to the right of way for an electric line granted unto Pennsylvania Electric Company by instrument dated November 29, 1957 and entered in said Recorder's Office in Deed Book 292, page 140 on January 31, 1958.

EXCEPTING AND RESERVING that portion of the above described premises which was conveyed by Robert M. Kinkead and Marion C. Kinkead, his wife, to Charles A. Williams and Mary Helen Williams, husband and wife, by deed dated June 6, 1958 and entered in said Recorder's Office in Deed Book 294, page 475.

BEING the same parcels of land which Marion C. Kinkead, widow, by deed dated March 27, 1969, recorded in the Recorder's Office of Warren County in Deed Book 357, Page 349, conveyed to Fisher & Young, Inc., Seller herein.

This conveyance is made subject to a certain agreement of lease dated February 1, 1962 with the individual members of the Clough Farm Club as joint tenants, as amended, with reference to the stream bed of Spring Creek and 25 feet inland from the normal banks of said creek on each side thereof, with right of entry to and from the same, but all rights of the lessor in and to said agreement are hereby assigned and conveyed to the Buyer.

EXCEPTING and RESERVING from and out of this conveyance, all of the timber and trees, standing and fallen, situate on the premises above described, with full right of ingress, egress and regress for purposes of cutting, skidding, piling and removing the same, constructing roadways and skidways, and piling yards for such purposes, being subject to other terms relative thereto herein set forth below, SUBJECT, however, to right of Buyer to use for its own purposes all trees fallen for more than one year and all tree-tops remaining after logging operations.

The parties, in consideration of the mutual covenants herein contained, agree further as follows:

1. That the cost of Pennsylvania transfer stamps on the deed shall be allocated equally between the Buyer and Seller.

2. That the real estate taxes for 1969 and fire insurance premiums on the buildings for 1969, shall be paid by the Seller.

3. That possession shall be given to Buyer upon the date of closing.

4. That Seller shall reimburse to Buyer each year a prorata share of real estate taxes based on the value of the timber situated thereon and reserved by Seller; or in the alternative, the Buyer shall apply to the County Assessor for a separate assessment of timber and other real property.

5. That Seller shall assign to Buyer all of its right, title and interest in and to the Clough Farm Club fishing agreement and the existing Soil Bank Agreement with the United States Department of Agriculture.

6. That Seller shall confine the cutting of saw timber to those trees which measure 16" or more in diameter at 1 ft. above the ground and shall confine its logging operations to the season from November 1 to March 31 each year. However, smaller trees may be removed, as in thinning, or in pest or fire control, whenever or wherever good forestry practice so dictates.

7. That the Seller is hereby granted unobstructed access over all of the lands hereby conveyed for purposes of its operations, including but not limited to thinning, timber cruising, planting, growth studies, pest and fire control, cutting, skidding, piling and removing timber; and is further granted, upon 120 days notice in writing to Buyer, the right to construct such roads as it deems reasonably necessary for its operations, without compensation, or discount, or allowance to Buyer for any portion of said premises so taken or

withheld. However, the Seller, its successors or assigns, shall not construct a portable saw mill on premises during term of this agreement.

8. That the Buyer is hereby granted the right to select and use dam sites and to flood areas of the premises not to exceed the maximum of two 10-acre lakes in the forestry area and/or one 20-acre lake to service camp sites 1 and 2 as designated on the map attached hereto and marked Exhibit A and made a part hereof with normal program areas adjacent thereto. Provided, however, that Buyer shall, 120 days prior to the flooding of any such area, give written notice thereof to the Seller; and the Seller shall thereupon and within 120 days of receipt of such notice cut and remove from the site for said area to be flooded all timber (except tops and limbs) at no expense to Buyer. The Buyer is further granted the right to select and use a winter sports area consisting of approximately 200 feet in width and 1000 feet in length, to be located on the East side of Jackson Hill Road and more particularly on the West slope of Jackson Hill, subject to the same terms and conditions as set forth above.

BOOK 361 PAGE 38

9. That the Buyer is hereby granted the right to construct such buildings and roads as it shall deem reasonably desirable and necessary for its use and development of said premises; provided, however, that it shall give 120 days written notice thereof to Seller and Seller shall within 120 days of receipt of said notice cut and remove from said area all timber (except tops and limbs) at no expense to Buyer.

10. That the Seller shall within one year after closing of this transaction conspicuously mark the outside boundary lines in the forested area.

11. That the Seller shall indemnify the Buyer and hold it harmless from any loss, claim or cause of action arising out of the Seller's logging operations and timber management, and/or from the acts of its agents, employees or contractors; and the Seller shall maintain $100,000-$300,000 liability insurance against personal injury and $50,000 property damage as

security for protection against claims of Buyer or third parties arising out of the said operations and management.

12. That, all reservations and exceptions above set forth, to the contrary notwithstanding, any and all trees planted by Buyer shall always remain the property of Buyer.

13. That, in the event of a taking of the premises or any portion thereof by governmental agency through its powers of condemnation, it is mutually agreed by the parties hereto that an equitable prorata division of the proceeds shall be made between them on the basis of the value of the timber and the value of other real estate so condemned.

14. That the cost of obtaining the title insurance above set forth shall be borne by the Buyer.

15. A. That in the event the Seller shall desire to sell, transfer or assign the timber reserved on the premises above described, Seller shall give Buyer written notice thereof and hereby grants to Buyer the option for thirty days following the posting of said notice by Seller to Buyer of purchasing said timber at the price offered therefor by a bona fide prospective third party purchaser, transferor or assignor.

B. Should the present management and/or ownership of Seller change, Buyer shall be so advised by Seller in writing and shall have an thirty day option to purchase the timber rights at a price to be mutually agreed upon, or in failure thereof, by arbitration (each side to choose one of the arbitrators and the two arbitrators to select a third). The arbitrators shall establish the price which shall be binding without appeal of the parties.

16. It is further agreed and stipulated by and between the parties

BOOK 361 PAGE 39

hereto that a map designating the forestry areas which shall be subject to cutting by the Seller and also designating those areas belonging solely to the Buyer, wherein the Seller agrees that there will be no cutting, shall be attached hereto and made a part hereof as though fully set forth herein and marked Exhibit A as previously mentioned. BOOK 361 PAGE 40

17. All covenants and agreements herein contained shall extend to and be obligatory upon the heirs, personal representative, successors and assigns of the respective parties.

IN WITNESS WHEREOF, the said parties to this agreement have hereunto set their hands and seals the 28th day of May, 1969.

FISHER & YOUNG, INC.

ATTEST:

Chas W. Rodgers
Asst. Secretary

Philip H Cochran
President

Albert T. Carlisle (SEAL)
Albert T. Carlisle

COMMONWEALTH OF PENNSYLVANIA :
: ss.
COUNTY OF CRAWFORD :

On this, the 30th day of September, 1969, before me, the undersigned officer, personally appeared Philip H. Cochran, who acknowledged himself to be the President of FISHER & YOUNG, INC., a corporation, and that he as such President, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as President.

In Witness Whereof, I hereunto set my hand and notarial seal.

Dorothy S. Cole
DOROTHY S. COLE, Notary Public
Titusville, Crawford Co., Penna.
My Comm. Expires April 14, 1973

STATE OF OHIO : ss.
COUNTY OF ASHTABULA :

On this, the 21 day of October 1969, before me, the undersigned officer, personally appeared Albert T. Carlisle, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purpose therein contained.

In Witness Whereof, I have hereunto set my hand and notarial seal.

Alma J. [illegible]
Notary Public
My Comm. expi[illegible]

BOOK 361 PAGE 41