IN THE COURT OF COMMON PLEAS
OF THE 37TH JUDICIAL DISTRICT OF PENNSYLVANIA
WARREN COUNTY BRANCH
CIVIL

ALBERT T. CARLISLE,

    Plaintiff                                       No. 353 of 1998

    v.

MATSON LUMBER COMPANY and
MATSON HARDWOODS, INC.,

    Defendants

## MEMORANDUM OPINION

This case is presently before the Court for resolution on numerous cross motions for partial summary judgment. Each motion has been thoroughly argued and briefed.

Plaintiff Albert Carlisle, an Ohio resident, owns a tract of land in Spring Creek Township, Warren County, Pennsylvania, consisting of approximately 1200 acres, often referred to as the Clough Farm. Defendants Matson Hardwoods, Inc. and Matson Lumber are successors-in-interest to Fisher & Young Lumber Co., a lumber company that sold the property to Plaintiff. Both Matson defendants are hereinafter collectively referred to as Matson.

Plaintiff purchased this property in 1969 for $100,000 for the purpose of enabling the Boy Scouts of America to build an adventure camp, although that purpose was not realized. In the May 28, 1969 agreement of sale, the seller of the property, a lumber company named Fisher & Young, Inc., reserved timber rights to the property:

> EXCEPTING and RESERVING from and out of this conveyance, all of the timber and trees, standing and fallen, situate on the premises above described, with full right of ingress, egress and regress for purposes of cutting, skidding, piling and removing the same, constructing roadways and skidways, and piling yards for such purposes, being subject to other terms relative thereto herein set forth below. SUBJECT, however, to right of Buyer (Carlisle) to use for its own purposes all trees fallen for more than one year and all treetops remaining after logging operations.

1

This language was also included in the deed dated January 9, 1970, and ultimately filed in the Recorder's Office of Warren County. Despite the reservation of timber rights to the property, Matson's predecessor in interest, Fisher and Young, did not conduct logging operations on the Clough Farm. However, commencing on November 18, 1988 and continuing until March 21, 1998, Matson logged portions of Plaintiff's property.

Plaintiff brought suit against Defendants on March 13, 1995 in federal district court ✗ on the basis of diversity jurisdiction. *Albert T. Carlisle v. Matson Lumber Company and Matson Hardwoods Inc.*, No. 95-0376 (W.D. Pa. 1995). In that action, Plaintiff pleaded ten counts, sounding in breach of contract, trespass, and requesting a declaratory judgment on the scope of Matson's timber rights under the agreement of sale.[1]

Before submission to the jury, Plaintiff, by prior trial counsel, orally withdrew his conversion claim, Defendants' Exhibit 7, and by written stipulation dismissed his trespass claim. Defendants' Exhibit 6. The federal jury verdict consisted of six findings:

> The jury finds the parties intended to grant seller the right to harvest only the timber that then existed on the property in 1969.
> The jury finds that the parties intended to require the seller to give Mr. Carlisle 120 days notice each time they constructed a new road in perpetuity.
> The jury finds that the parties intended a no-cut zone along the banks of the waterways on the property including Spring Creek and Thom's Run.
> The jury finds that the width of the no-cut zone on either side of the creek is 100 feet.
> The jury finds that the Matson Lumber Company did harvest trees in the no-cut zone.

---

[1] The Complaint pleaded the following: Count I, Breach of Contract, averred that Defendants had failed to abide by a purchase option provision of the agreement of sale; Count II, Breach of Contract, demanded damages for the same; Count III, Breach of Contract, averred that Defendants had harvested timber from "no-cut" zones set aside by the agreement of sale; Count IV, Breach of Contract, averred that Defendants violated the agreement of sale by harvesting outside the November through March season set forth in the agreement and without providing notice required for building of access roads; Count V, Trespass, averred harvesting was done in a negligent fashion; Count VI, requested an accounting or constructive trust for harvesting done outside the scope of rights reserved in the agreement of sale; Count VII, Conversion, sought damages for harvesting outside the scope of rights reserved in the agreement of sale; Count VIII, requested a declaratory judgment regarding the scope of Defendants' timber rights under the agreement and the same, in Count IX, regarding the contents of the exclusionary map; and in Count X, sought preliminary and permanent injunctions

> With regard to the amount of damages, the jury awards Mr. Carlisle $110,000.

Plaintiff's Exhibit 5; *see also* Defendant's Exhibit 2 (containing the findings that the jury rejected, including a construction of the agreement that would have found an intention to grant seller a right to all timber that will ever grow on the property in perpetuity).

Matson appealed the judgment, and the Court of Appeals for the Third Circuit affirmed the District Court in an unpublished Memorandum Opinion addressing four allegations of error below. The appellate court concurred with the district court's determination that the agreement was ambiguous as to whether "the Seller's retained timber rights were in perpetuity, or were restricted to those trees existing on the property at the time the Agreement was executed." *Carlisle v. Matson Lumber Co.*, No. 98-3035, slip. op. at 3 (3d Cir. Mar. 16, 1999). The Court of Appeals affirmed the district court's decision to submit that question of fact to the jury.[2]

Plaintiff filed his complaint, with jury trial demand, on November 24, 1998, averring that on December 18, 1997, the jury in the federal district court action returned a verdict that the parties "intended to grant seller [Matson] the right to harvest only the timber that then existed on the property in 1969." ¶15. In his amended complaint, Plaintiff pleaded four counts: Count 1 sounding in trespass, for negligent, careless and reckless logging dating from December 18, 1986; Count 2, sounding in breach of contract, for harvesting trees outside the scope of the agreement of sale under the reservation clause as interpreted by the jury in the federal case combined with paragraph 6 of the Agreement; Count 3, indemnity, averring that under ¶11 of the Agreement, Defendants agreed to indemnify Plaintiff; Count 4, conversion.

Defendant preliminarily objected to the amended complaint. By Order dated March 23, 1999, this Court denied Defendants' preliminary objections. Pertinent to this discussion was this Court's rejection of Defendants' *lis pendens* argument finding that the

---

[2] The Court of Appeals also affirmed several other rulings of the district court: excluding the map delineating "no-cut" zones as it had not been produced in discovery; permitting Plaintiff to revise his damages claim downwards on the eve of trial after granting Defendant's motion for partial summary judgment; and finding Defendants waived their objection to the district court's decision not to voir dire the jurors concerning their possible bias against lumber companies.

3

pleadings in the two actions did not demonstrate that "the rights asserted and the relief sought" were identical.

> The federal complaint sought primarily equitable relief in the form of declaratory judgment . . . injunctive relief . . . , specific performance of a right of first refusal . . . , and accounting and constructive trust . . . . The Plaintiff voluntarily dismissed a trespass claim. . . . Monetary damages were sought based upon the specific performance claim and for a breach of contract and conversion claims based upon the harvesting of trees from an agreed "no-cut" zone. . . . The instant complaint seeks monetary damages for breach of contract and conversion based upon contract rights determined by the federal court in response to the Plaintiff's request for declaratory judgment. . . . reinstates the trepass claim which the Plaintiff earlier dismissed without prejudice, . . . , and seeks to enforce the indemnification clause of the contract. . . . . The Defendants' Second Preliminary Objection is without merit and is denied.

Memorandum Opinion at 3 (citations omitted).

In their answer and new matter, Defendants averred that the parties litigated or could have litigated all issues set forth in the Complaint in the federal court case, whose decision is now "final and binding" upon the parties. ¶40. Defendants pleaded, *inter alia*, that Plaintiff's case is barred by the doctrines of res judicata, collateral estoppel and/or bar, ¶41. Plaintiff responded that his "causes of action could not be asserted until such a time as the rights of the parties were determined by the Court and jury in the prior federal action." Plaintiff's Answer to New Matter at ¶46.

We take up Defendants' motions for partial summary judgment initially. Defendants have made three overlapping motions for partial summary judgment. First, they assert that *res judicata*, collateral estoppel, merger and bar preclude the relitigation of any claims arising after December 17, 1997, the date of the close of evidence in the federal case. Thus Defendants move for partial summary judgment on Counts 1 through 4 for all damages sustained prior to December 17, 1997. Second, Defendants move for summary judgment on Counts 2, 3 and 4 of the amended complaint, averring that the doctrines of *res judicata*, collateral estoppel, bar and/or merger preclude "any damages for trees which were smaller than 16 inches in diameter at one foot above the ground on May 28, 1969." Third, Defendants seek summary judgment on the aspects of Plaintiff's

4

trespass (Count 1) and conversion (Count 4) counts occurring more than two years prior to the filing of Plaintiff's complaint upon statute of limitations grounds.

Before delving further into the facts of this case, we turn to the standards by which we evaluate a motion for summary judgment under Pennsylvania Rule of Civil Procedure 1035.2. After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law.

> (1) Whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would provide the issues to be submitted to a jury.

Pa. R.C.P. 1035.2. Courts are further instructed that

> A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury.

*McCarthy v. Dan Lepore & Sons, Co., Inc.*, 724 A.2d 938 (Pa. Super. 1998), (citing Pa. R.C.P. 1035.2 *Note*). The nonmoving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the nonmoving party. *Ertel v. Patriot-News Co.*, 674 A.2d 1038 (1996), *cert. denied*, -- U.S.--, 117 S. Ct. 512 (1996). If the nonmoving party fails to come forward with sufficient evidence to establish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law. *Id.* As with all summary judgment cases, the Court must examine the record in the light most favorable to the nonmoving party and resolve all doubts against the moving party as to the existence of a triable issue. *Id.*; *McCarthy v. Dan Lepore & Sons*, 724 A.2d at 940.

We turn first to Defendants' motions. Defendants' second motion for partial summary judgment seeks to preclude Plaintiff from litigating his claims in breach of contract, indemnity and conversion (Counts 2, 3 and 4) for trees that were present upon the property in 1969 but measured less than 16" in diameter at a height of one foot from the ground. Defendants ground this motion upon an interpretation of the verdict rendered by the jury in the federal district court case. That jury was called upon to determine the scope of the provision in the agreement between Plaintiff and Defendants' predecessor in interest that excepted and reserved timber rights to the seller. Defendants contend that the prior jury verdict established that Matson owns all of the trees that were in existence in 1969, regardless of their size at that time. Plaintiff interprets the verdict to have established that Matson owns only *timber* that existed in 1969 and defines timber as trees that are at least 16 inches in diameter at a height of one foot from the ground. In support of his position, Plaintiff refers to paragraph 6 of the agreement of sale that contains a limitation that "[s]eller shall confine the cutting of saw timber to those trees which measure 16" or more in diameter at 1 ft. above the ground. . ." Plaintiff suggests that the dictionary definitions of *tree* and *timber* differ and *saw timber* is an industry term used to denote trees of sufficient size from which to cut logs. The difficulty with Plaintiff's present position is that it contrasts markedly with the position Plaintiff advanced in the district court case and therefore could not have formed a basis for the jury's verdict in that case.

> The application of *res judicata* requires four elements:
> 1) identity of issues;
> 2) identity of causes of action;
> 3) identity of persons and parties to the action; and
> 4) identity of the quality or capacity of the parties being sued.

*Philadelphia Electric Co. v. Borough of Lansdale*, 424 A.2d 514, 519 (Pa. Super 1981). Further, the Supreme Court of Pennsylvania has explained:

> *Res judicata*, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). *Res judicata* applies not only to claims actually litigated, but also

to claims which could have been litigated during the first proceeding if they were part of the same cause of action. *Id.*

*Balent v. City of Wilkes-Barre,* 669 A.2d 309, 313 (Pa. 1995). "[T]he purpose of this doctrine is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudications. *Id.* at 315.

> Where the same cause of action is involved, a plaintiff's cause of action is merged in a final judgment if he wins, or barred by it if he loses. The scope of the merger or bar includes not only matters litigated but also matters that should have been litigated. *McCarthy v. Township of McCandless,* ... 300 A.2d 815, 819 (Pa. Commw. 1973). See also: *Restatement, Second, Judgments* §§18, 19. Thus, a judgment is final not only as to damages actually claimed but also as to damages that might have been claimed. *Daniels v. State Farm Mutual Automobile Insurance Co.,* ... 451 A.2d 684, 686 (Pa. Super. 1982); *Bardo v. Commonwealth, Dep't of Public Welfare,* ... 397 A.2d at 1307. The doctrine of res judicata serves to expedite the consideration of individual cases, to establish the certainty and finality of court judgments and to protect a party from vexatious litigation. *Exner v. Exner,* ... 407 A.2d 1342, 1344 (Pa. Super. 1979).

*Branoff v. Fitzpatrick,* 460 A.2d 330, 335 (Pa. Super. 1983) (parallel citations omitted).

A review of the pleadings, pretrial motions, and trial record in the federal district court case reveals that the Plaintiff did not distinguish between *trees* and *timber* for purposes of construing the reservation clause in the agreement of sale. Rather, Plaintiff differentiated between existing on the land in 1969 and sprouting of trees subsequent to 1969. *See, e.g.,* Plaintiff's Pretrial Narrative Statement, Joint Exhibit Tab No. 11 at 9 ("Carlisle has suffered the following damages: loss of the value of all trees wrongfully harvested and removed by Matson (whether in no-cut zones, *sprouted after May 28, 1969,* or in any other way outside Matson's harvest rights) . . .") (emphasis added); Plaintiff's Motion for Summary Judgment, Joint Exhibit Tab 13 at 2-3 ("The 1969 Agreement of Sale conveys to Carlisle all of the land . . . except that it reserves in the timber company . . . 'all of the timber and trees, standing and fallen, situate on the premises above described.' . . . The Agreement of Sale does not refer in any fashion *to future trees* or a perpetual harvest right.") (emphasis added); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at Joint Exhibit Tab 17 at 3 ("Matson contends that the contract phrase 'all of the timber and trees, standing and

7

fallen, situate on the premises above described,' unambiguously means that it has a perpetual right to harvest all trees that shall ever grow on Carlisle's property. In so doing, Matson struggles to overcome the plain language of the contract itself. Briefly put, trees are 'standing and fallen' *only if they are actually in existence.*") (emphasis added); Report and Recommendation of Magistrate Sensinich, Joint Exhibit Tab 19 at 24 ("Plaintiff alleges that the phrase *"standing and fallen"* in the timber rights reservation clause *means that the timber company was limited to harvesting those trees that were planted and already in existence in 1969* when the agreement of sale was signed") (emphasis added); Affidavit of Plaintiff, quoted in Report and Recommendation of Magistrate Sensinich, Joint Exhibit Tab 19 at 24 ("I would not have signed the Agreement of Sale if it had given Fisher & Young ownership of all trees that would ever grow on my property, as opposed to just those trees then in existence.") *See also* Plaintiff's document entitled "Contract Interpretation Questions for Jury", Joint Exhibit Tab 39; Testimony of Plaintiff, Joint Exhibit 44 at 80:22-23 ("They have the right to cut trees that were standing or fallen in 1969"). The distinction between trees greater than or less than 16 inches in diameter at one foot above the ground did not surface in the prior case, and in fact Plaintiff consistently maintained in the federal court action that the reservation of timber rights covered all trees in existence on May 28, 1969.

Plaintiff is barred now from litigating an issue that was not pressed in the prior trial in federal court. Plaintiff may litigate any claims he may have for damages arising from Defendants' logging of trees that have sprouted since May 28, 1969.

Defendants have also moved for partial summary judgment on all counts for any evidence accruing before the date of the close of evidence in the federal trial, December 17, 1997, citing comment e to section 27 of the Restatement (Second) of Judgments:

> A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a

competent court presenting the omitted theory or ground should be held not precluded.

Restatement (Second) of Judgments §27, comment e. *See McArdle v. Tronetti*, 627 A.2d 1219, 1223 (Pa. Super.), *alloc. den.* 641 A.2d 587 (Pa. 1993), (applying section 27 and determining that because a federal court declined to consider claims later raised in state court, the Court of Common Pleas could entertain those claims).

Plaintiff's present claims could all have been advanced in the federal district court case. His position that the declaratory judgment relief sought in that case was a prerequisite to this action contrasts markedly with the position advanced in that litigation. In point of fact, Plaintiff pleaded ten counts in that action, some identical to the counts pleaded herein. The record in the federal case does not suggest that Plaintiff sought only a declaratory judgment as prerequisite to a subsequent action for damages.

Defendants' remaining motion for summary judgment on statute of limitations grounds is mooted by the resolution of their other motions. Any remaining claims that Plaintiff has for logging operations since December 17, 1997 for the cutting of trees that have sprouted since May 28, 1969 are clearly not subject to a statute of limitations defense in this action, which was effectively filed in November 1998.

Plaintiff moved for partial summary judgment on Count 2, breach of contract, and Count 4, conversion of his Amended Complaint, presenting in support Defendants' harvest records and his expert's report. Plaintiff's motion is denied for two reasons. First, it rests upon an interpretation of the verdict in the federal district court case that this Court has squarely rejected, *supra*. Moreover, to the extent that his motion relies upon the testimony of his expert, the Plaintiff urges that this Court take judicial notice of facts concerning tree growth and the counting of tree rings. Tree maturation is not a subject upon which this Court could take judicial notice, and is one that is beyond the ken of the average lay person, requiring the testimony of an expert witness. For the foregoing reasons, the Court enters the following Order:

IN THE COURT OF COMMON PLEAS
OF THE 37TH JUDICIAL DISTRICT OF PENNSYLVANIA
WARREN COUNTY BRANCH
CIVIL

ALBERT T. CARLISLE,

    Plaintiff                                                               No. 353 of 1998

    v.

MATSON LUMBER COMPANY and
MATSON HARDWOODS, INC.,

    Defendants

**ORDER**

AND NOW, this 30th day of January, 2002, the Plaintiff's motion for partial summary judgment is denied and the Defendants' motions for partial summary judgment are granted as follows:

All claims for damages arising from the harvesting of any trees and timber standing situate on the Clough Farm on May 28, 1969, are dismissed with prejudice; and

All claims arising prior to December 17, 1997, are dismissed with prejudice.

BY THE COURT

_____
Paul H. Millin, P.J.

[RECEIVED JAN 31 2002 stamp]

10