IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT T. CARLISLE,                          ) CIVIL DIVISION
                                             )
            Plaintiff                        ) C.A. No. 04-25 Erie
                                             )
      v.                                     )
                                             ) Judge Lancaster
BARTONY, HARE & EDSON; SCOTT                 )
M. HARE, ESQUIRE; HENRY E.                   )
BARTONY, JR., ESQUIRE; and JOHN              )
JOY EDSON, V., ESQUIRE,                      )
                                             )
            Defendants.                      )

## ANSWERS TO INTERROGATORIES TO PLAINTIFFS

Defendants, by their Attorneys, WEINHEIMER, SCHADEL & HABER, P.C., demand that

Plaintiffs file full, complete and verified written answers to the following Interrogatories within

thirty (30) days after the date of service hereof. These Interrogatories are continuing and require

supplemental answers under oath if Plaintiffs, their attorneys or representatives obtain any additional

information requested in these Interrogatories prior to the time of Trial.

1.    List separately for each category indicated below the names and present addresses of
all persons that are known to the Plaintiff, Plaintiff's attorney, or any other person or persons
representing the Plaintiff or Plaintiff's attorney who have knowledge of:

> (a)    Facts, events and circumstances preceding the matters complained of
>        in Plaintiff's Complaint;

> (b)    The matters complained of and facts, events, and circumstances
>        contemporaneous with the matters complained of in Plaintiff's
>        Complaint; and

> (c)    Facts, events, and circumstances immediately subsequent to the
>        matters complained of in Plaintiff's Complaint.



ANSWER:

A.  John Arway, Pennsylvania Department of Environmental Resources;
    Lainard Bush, RD #1 Box 9, Spring Creek, PA 16436-9703;
    Albert T. Carlisle, 1210 Oak Drive, Ashtabula, OH 44004;
    Richard Conrad, 132 Main Street, Brookville, PA 15825;
    Richard G. Conti, 132 Main Street, Brookville, PA 15825;
    John C. Dennison II, Esq., Dennison Dennison & Harper, 293 Main Street,
    Brookville, PA 15825;
    Leonard Domenic, 132 Main Street, Brookville, PA 15825;
    David J. Eardley, Esq., Eardley & Wantz, 109 Main Street, Chardon, OH 44042;
    Todd S. Fankaskey, Warren County Conservation District, 609 Rouse Home
    Avenue, Suite 203, Youngsville, PA 16371;
    Chester S. Fossee, Esq. Reale & Fossee, P.C., 22nd Floor Lawyer's Building, 428
    Forbes Avenue, Pittsburgh, PA 15219;
    Joe Kelly, Warren County Conservation District, 609 Rouse Home Avenue, Suite
    203, Youngsville, PA 16371;
    John S. Kookogey, Esq., 401 North Washington Street, Titusville, PA 16354;
    Ronald Lee, Pennsylvania Fish and Boat Commission;
    Stephen W. Madewell, Environmental Enhancement, 303 East King Street,
    Chardon, OH 44024;
    Becky J. Matson, 132 Main Street, Brookville, PA 15825;
    Norman Sunderland, RD #1 Sigel, PA 15860;
    E.Terry Warren, Esq., Warren Young and McSwigan, Peoples Savings and Loan
    Building, Ashtabula, OH 44004;
    John Wood, RD #3 Box 83, Spartansburg, PA 16434.

B.  See answer to 1(a) above.  In addition, the following individuals:

    Scott M. Hare, Esq, Bartony & Hare, LLP, 429 Fourth Avenue, Suite 1801,
    Pittsburgh, PA 15219;
    Henry E. Bartony, Jr., Esq. Bartony & Hare, LLP, 429 Fourth Avenue, Suite 1801,
    Pittsburgh, PA 15219;
    John Joy Edson, V, Esq. 400 Broad Street, Suite 106, Swickley, PA 15143;
    Michael J. Bruzzese, 307 Forth Avenue #1008, Pittsburgh, PA 15222-2108;

C.  Albert T. Carlisle, 1210 Oak Drive, Ashtabula, OH 44004;
    Lainard Bush, RD #1 Box 9, Spring Creek, PA 16436-9703;
    John C. Dennison II, Esq. Dennison Dennison & Harper, 293 Main Street,
    Brookville, PA 15825;
    Richard G. Conti, 132 Main Street, Brookville, PA 15825;
    Becky J. Matson, 132 Main Street, Brookville, PA 15825;

Leonard Domenic, 132 Main Street, Brookville, PA 15825.

2.    As to each person named in answer to Interrogatory 1, please state whether you have a statement signed, adopted or approved by such person.

ANSWER:

**None.**

3.    As to each statement referred to in answer to Interrogatory 2, please state:

    (a)    Whether the statement is in question and answer form or in narrative form;

    (b)    Whether the person giving it received a copy of the statement;

    (c)    Whether the statement was signed;

    (d)    If the statement was not signed, the method by which it was adopted or approved;

    (e)    The name and present address of the person by whom the statement was taken;

    (f)    The date and time the statement was taken;

    (g)    Where the statement was taken; and

    (h)    Attach a copy of each statement.

ANSWER:

**Not applicable.**

4.      As to each person named in answer to Interrogatory 1, please state whether you have a stenographic, mechanical, electrical or other recording and/or transcript of an oral statement of such person.

ANSWER:

**Depositions of the following individuals exist:**

**Scott M. Hare, John S. Kookogey, Leonard Domenic, Albert T. Carlisle, Richard Conti, Richard Conrad, Norman Sunderland, Lainard Bush, Timothy Smith.**

5.      As to each statement referred to in answer to Interrogatory 4, please state:

(a)     Whether the statement is in question and answer form or in narrative form;

(b)     Whether the person giving it received a copy of the statement;

(c)     The method by which the statement was preserved;

(d)     The date, time, and place the statement was taken;

(e)     The name and address of the person by whom the statement was taken; and

(f)     Attach a copy of each such statement.

ANSWER:

**SCOTT HARE**

(a)     **Question and answer form;**
(b)     **Yes;**
(c)     **Deposition transcript;**
(d)     **September 1, 2005 at the offices of David J. Haber, Esq.;**
(e)     **Jessica L. Tapia, Morse Gantverg & Hodge, Inc., Suite 719, One Bigelow Square, Pittsburgh, PA 15219;**

JOHN S. KOOKOGEY

    (a) Question and answer form;
    (b) Unknown;
    (c) Deposition transcript;
    (d) August 16, 2005 at the offices of Culbertson Weiss Schtroma & Schug Titusville, PA;


LEONARD DOMENIC

    (a)    Question and answer form;
    (b)    Unknown;
    (c)    Deposition transcript;
    (d)    September 13, 2001 at the offices of Dennison Dennison & Harper, 293 Main Street, Brookville, PA;
    (e)    Jacqueline L. Hazlett, Sargents Court Reporting Service, Inc. 210 Main Street, Johnstown, PA 15901;

ALBERT T. CARLISLE

    (a)    Question and answer form;
    (b)    Yes;
    (c)    Deposition transcript;
    (d)    October 13, 1999 at the offices of Dennison & Dennison, 293 Main Street, Brookville, PA;
    (e)    Michelle Ann McGinnis, Sargents Court Reporting Service, 210 Main Street, Johnstown, PA;

RICHARD CONRAD

    (a)    Question and answer form;
    (b)    Unknown;
    (c)    Deposition transcript;
    (d)    November 9, 2004 at the offices of Dennison Dennison & Harper, 293 Main Street, Brookville, PA;
    (e)    Sandra A. Black, Ferguson & Holdnack Reporting, Inc. 357 West Tenth Street, Erie, PA.

NORM SUNDERLAND

   (a)    Question and Answer form;

   (b)    Unknown;

   (c)    Deposition transcript;

   (d)    November 10, 2004 at the offices of Dennison Dennison & Harper, 293 Main Street, Brookville, PA;

   (e)    Sandra A. Black, Ferguson & Holdnack Reporting, Inc. 357 West Tenth Street, Erie, PA.

RICHARD CONTI

   (a)    Question and answer form;

   (b)    Unknown;

   (c)    Deposition transcript;

   (d)    November 10, 2004 at the offices of Dennison Dennison & Harper, 293 Main Street, Brookville, PA.

   (e)    Sandra A. Black, Ferguson & Holdnack Reporting, Inc. 357 West Tenth Street, Erie, PA 16502.

LAINARD BUSH

   (a)    Question and answer form;

   (b)    Yes;

   (c)    Deposition transcript;

   (d)    September 9, 2004 at the offices of Swanson & Bevevino, 311 Market Street, Warren, PA ;

   (e)    Kristina Kircher, AKF Court Report and Video Tech Service, AKF Building 436 Boulevard of the Allies, Pittsburgh, PA 15219;

TIMOTHY SMITH

   (a)    Question and answer form;

   (b)    Unknown;

   (c)    Deposition transcript;

   (d)    September 9, 2004 at the offices of Swanson & Bevevino, 311 Market Street, Warren, PA;

   (e)    Kristina Kircher, AKF Court Report and Video Tech Service, AKF Building 436 Boulevard of the Allies, Pittsburgh, PA 15219;

(f)    Objection.  This request is beyond the scope of Rule 26 of the Federal Rules of Civil Procedure.

6. List all expenses, damages or other amounts which you claim were incurred as a result of the conduct of these defendants, for which claim is being made in this action, and specify:

    (a)    The conduct of these defendants you allege caused harm or damage and the harm or damage you allege as a result thereof;

    (b)    The name and present address of any person making a charge for which a claim is made in this matter;

    (c)    The amount of any such charges or damages; and

    (d)    The nature of or manner of calculation of all claimed charges, damages, compensation, or other claims being made by Plaintiffs in this case.

ANSWER:

(a) 1    Defendants were negligent in causing the negligence, trespass and conversion claims in counts V, VI and VII of the 1995 Declaratory Judgment Action to be dismissed.

(a) 2    Defendants were negligent in causing the negligence, trespass and conversion claims in counts V, VI and VII of the 1995 Declaratory Judgment Action to be dismissed without the plaintiff's consent.

(a) 3    Defendants were negligent in failing to properly and timely file the same negligence, trespass and conversion claims in a Pennsylvania court of common pleas on behalf of plaintiff Albert T. Carlisle to preserve those claims against dismissal arising out of their voluntary dismissal in the 1995 federal court action.

(a) 4    Defendants were negligent in failing to conduct a thorough and complete investigation and title search to determine the identity of the record owner of the timber on the Carlisle property for the relevant time period on and between 1986 and 1997.

(a) 5     Defendants were negligent in failing to present the underlying proof of damages in the Declaratory Judgment Action which would support a recovery under the negligence, trespass and conversion claims pled in counts V, VI and VII of the Declaratory Judgment Action in the Federal District Court action.

(a) 6     Defendants were negligent in failing to properly and carefully research the controlling law regarding the ownership of the timber and/or timber rights on the Carlisle property for the relevant time period on and between 1986 and 1997.

(a) 7     Defendants were negligent in failing to obtain copies of and properly interpret all of the deeds, timber deeds, correspondence and documents relevant to the conveyance of the subject property and the ownership of the timber from Matson and Matson's predecessor in ownership, Fisher & Young, Marion Kinkead and/or her estate.

(a) 8     Defendants were negligent in failing to and/or research the controlling law regarding the potential adverse consequences to Carlisle causing both Carlisle's negligence, trespass and conversion claims in counts V, VI and VII of the Declaratory Judgment Action to be voluntarily dismissed.

(a) 9     Defendants are negligent in failing to properly and timely warn Carlisle, on or prior to December 19, 1997 of the probable adverse consequences to Carlisle of any dismissal of either the negligence or conversion claims which were part of the federal district court action.

(a) 10     The defendants were negligent in failing to bring an action to quiet title to the ownership of the timber in the federal district court action.

(a) 11     Defendants were negligent in not obtaining the source documents separating the title to timber from the title to real property and/or recognizing that the timber interests of Fisher & Young, Inc., the predecessor to Matson expired on April 1, 1978.

(a) 12     Defendants were negligent in assuming that the 1969 Articles of Agreement between Albert T. Carlisle and Fisher & Young, Inc. was the document creating and setting forth the parties respective interests in the timber rights for the Carlisle farm.

(a) 13     Defendants were negligent in failing to know and/or realize that a Rule 41 dismissal does not toll the statute of limitations, therefore depriving the plaintiff Albert T. Carlisle of claims for negligence, trespass and conversion which could have been brought from March 1993 through the time of trial.

(a) 14    Defendants were negligent in failing to present evidence and/or testimony at trial to establish damages to the residual timber and trees on the Carlisle property as set forth in the expert report of James Hall.

(b)     Albert T. Carlisle, 1210 Oak Drive, Ashtabula, OH 44004;
(c)     $2,988,834.80;

(d)     Timber wrongfully harvested by Matson;
(1)     1993-1994 $312,456.74;
(2)     1994-1995 $125,997.26;
        TOTAL    $438,454.00.

Damages trelded pursuant to the Pennsylvania Timber Conversion Statute, 42 Pa.C.S.A. § 8311(a)(2);

$1,315,362
(3) Value of timber remaining to be harvested by Matson $947,204.88.
(4) Cost of repairs to real property for damages caused by Matson's timbering operations - $142,000.
(5) Damage to residual trees $584,268.

7.    Please state the name and present address of each person you expect to call as an expert witness at the Trial of this case.

ANSWER:

Will J. Schaaf, Esq., Marsh Spaeder Baur Spaeder & Schaaf, 300 State Street, Suite 300 Erie, PA 16507;

James Hall, 69 South Main Street, Russell, PA 16345;

Lori Sekerak, REM Abstract services, 311 Market Street, Warren, PA 16365.

Daniel P. Wallace, P.E., Wallace & Parcher, Inc. 1085 S. Hermatige Rd. Hermatige, PA 16148

8.    As to each person named in answer to Interrogatory 7, please state:

(a)     To substance of each fact to which he or she is expected to testify;

(b)     The substance of each opinion to which he or she is to testify;

(c)   The grounds for each opinion;

(d)   Their background, training, experience, and other qualifications;

(e)   A description of all writings, plans, photographs, component parts, or other tangible things examined or reviewed by this expert prior to the preparation of his opinion and report; and

(f)   Whether such writings, plans, photographs, component parts, or other tangible things are available, in their original condition, for inspection by these defendants.

ANSWER:

**(a) – (e) See attached reports of Will J. Schaaf, Esq., James Hall, (Lori Sekerak) and Wallace and Parcher, Inc.  Additional reports for Lori Sekerak will be provided upon receipt.**

**(f)    Yes.**

9.    Except for the persons identified in answer to Interrogatory 7, please state the name and present address of any other person who has been employed or consulted by you as an expert in connection with the claim in this case.

ANSWER:

**Objection. The information sought by Interrogatory No. 9 is objected to as being beyond the scope of discovery under Federal Rule of Civil Procedure 26.**

10.  Please identify with names and present addresses each person who you will call as a witness in the trial of this matter.

ANSWER:

At this time, plaintiff would anticipate calling the following witnesses at the trial of this matter.

1.     Henry E. Bartony, Jr., Esq. Bartony & Hare, LLP, 429 Fourth Avenue, Suite 1801, Pittsburgh, PA 15219;

2.     Michael J. Bruzzese, 307 Forth Avenue #1008, Pittsburgh, PA 15222-2108;

3.     Albert T. Carlisle, 1210 Oak Drive, Ashtabula, OH 44004;

4.     Lainard Bush, RD #1 Box 9, Spring Creek, PA 16436-9703;

5.     John C. Dennison II, Esq. Dennison Dennison & Harper, 293 Main Street, Brookville, PA 15825;

6.     John Joy Edson, V, Esq. 400 Broad Street, Suite 106, Swickley, PA 15143;

7.     Chester S. Fossee, Esq. Reale & Fossee, P.C., 22nd Floor Lawyer's Building, 428 Forbes Avenue, Pittsburgh, PA 15219;

8.     Scott M. Hare,Esq, Bartony & Hare, LLP, 429 Fourth Avenue, Suite 1801,     Pittsburgh, PA 15219;

9.     Will J. Schaaf, Esq., Marsh Spaeder Baur Spaeder & Schaaf, 300 State Street, Suite 300 Erie, PA 16507;

10.     James Hall, 69 South Main Street, Russell, PA 16345;

11.     Lori Sekerak, REM Abstract services, 311 Market Street, Warren, PA 16365.

12.     Daniel P. Wallace, P.E., Wallace & Parcher, Inc. 1085 S. Hermatige Rd. Hermatige,PA16148

11. As to each person named in answer to Interrogatory 10, please state:

    (a)     The substance of each fact to which he or she is expected to testify;

    (b)     The substance of each opinion to which he or she is to testify;

    (c)     The grounds for each opinion;

(d) Their background, training, experience, and other qualifications;

(e) A description of all writings, plans, photographs, component parts, or other tangible things examined or reviewed by this expert prior to the preparation of his opinion and report; and

(f) Whether such writings, plans, photographs, component parts, or other tangible things are available, in their original condition, for inspection by these defendants.

ANSWER:

See answer to Interrogatory No. 8 for witnesses Will J. Schaaf, Lori Sekerak, James Hall and Daniel Wallace, P.E.
For the remaining witnesses, plaintiff objects to Interrogatory No. 11 (a) – (f) which seeks information beyond the scope of Federal Rule of Civil Procedure 26.

12. Do you have any plans, drawings, graphs, charts, maps, photographs, or film relating to the claim in this case?

ANSWER:

Yes. All materials have been previously provided to counsel.

13. If you answer to the preceding Interrogatory is yes, as to each item please state:

(a) Whether it is a plan, drawing, graph, chart, map, photograph or film;

(b) When it was made;

(c) The name and address of the individual by whom it was made;

(d) What scene or object it shows or portrays; and

(e) The name and address of the individual who has possession of it.

ANSWER:

Not applicable.

14. Do you contend that Scott M. Hare, Esquire, Henry E. Bartony, Jr., Esquire; and/or John Joy Edson, Esquire were negligent in any respect in connection with the claims made by the Plaintiff in the Complaint in this matter?

ANSWER:

**Yes.**

15. If your answer to the foregoing Interrogatory is in the affirmative, for each individual who you contend was negligent, please state with particularity each act which you contend was negligent and, in addition, state the following:

    (a)    The standard of care required of that individual with respect to such acts;

    (b)    Precisely the manner and extent to which the individual deviated from such standard of care with respect to such acts;

    (c)    Whether you contend that such acts were a cause of harm and, if so, precisely the manner in which the acts caused the harm;

    (d)    The identity of every person you contend to have performed such negligent acts;

    (e)    Whether there were any contributing causes which occurred with such negligent acts and, if so, describe such contributing causes;

    (f)    All facts which you intend to offer at trial in this action to support the contentions set forth in your answer to this Interrogatory, including subparts (a) through (e) of this Interrogatory;

(g)    With respect to subparts (a) through (f) of this Interrogatory separately, identify each person who will testify at Trial regarding the facts set forth in your answers;

(h)    State the facts and the substances of any opinions to which each person identified in your answer to the preceding subpart of this Interrogatory is expected to testify;

(i)    Identify each source of information upon which any of the testimony described in your answer to the preceding subpart is based;

(j)    Identify each and every expert who may testify at Trial concerning your answer to subparts (a) through (f) of this Interrogatory;

(k)    State the facts on which each expert is expected to testify;

(l)    State the opinions to which each expert is expected to testify and provide a summary of grounds for each opinion;

(m)    State the source of all facts and opinions to which each such expert is expected to testify; and

(n)    Identify all documents which relate to your answer to this Interrogatory, including subparts (a) through (m).

ANSWER:

(a)    The individual defendants, Scott Michael Hare, Henry E. Bartony, Jr. and John Joy Edson V individually and as partners of the firm of Bartony Hare and Edson and Bartony & Hare were bound to act toward their client Albert T. Carlisle with the most scrupulous good faith and fidelity, and to exercise in the course of their employment that reasonable care and diligence which is rightfully exercised by attorneys. They must be familiar with the well settled principles of law and rules of practice which are of frequent application in the ordinary business of the profession. They must each give such attention to their duties and to the interest of their client as ordinary prudence demands. Defendants are individually and jointly

- 14 -

and severally liable for the losses sustained by Albert T. Carlisle resulting from their negligence, or from ignorance, carelessness or unskillfulness. Defendants each had a duty to Carlisle to investigate and evaluate all of the available evidence and on the basis of such evidence properly advise Mr. Carlisle as to what could or could not be legally proved in the civil action. Defendants had a duty to set forth the scope of representation and proceed in a manner reasonably calculated to advance plaintiff's goals and objectives. In pursuing the plaintiff's objectives the defendants were obligated t o b e c ompetent t o h andle t he m atter, h aving t he a ppropriate knowledge, skills, time and professional qualifications. The defendants had a duty to use those capacities diligently in proceeding to perform the services called for by the client's objective, including appropriate factual research, legal analysis and exercise of professional judgment. Defendants had a duty to keep the plaintiff reasonably informed about the matter and duty to consult with the plaintiff to a reasonable extent concerning decisions to be made by defendants.

(b)    Defendants were negligent in causing the negligence, trespass and conversion claims in counts V, VI and VII of the 1995 Declaratory Judgment Action to be dismissed or discontinued. Defendants breached the standard of care requiring that they be familiar with well settled principles o f l aw a nd r ules o f p ractice w hich a re a frequent application in the ordinary business of the profession. The defendant's were negligent in voluntarily withdrawing counts V, VI and VII of the federal court action when they failed to realize that an action dismissed without prejudice does not toll the statute of limitations. Defendants were negligent in failing to recognize that the Articles of Agreement from Fisher & Young to Carlisle did not reserve, transfer, create any right, title or interest in the timber and trees to the Carlisle property and the defendants were negligent in failing to perform a full and complete title search to determine the extent and nature of Fisher & Young's claim to title in the timber and trees.

(c)    Yes. Plaintiff Albert T. Carlisle was subsequently harmed when the refiled claims were dismissed on partial summary judgment by the Warren County Court of Common Pleas on January 30, 2002.

(d)    Scott M. Hare, Henry E. Bartony, Jr. and John Joy Edson V.

(e)    No.

(f)    See deposition of Scott M. Hare

(g)    Albert T. Carlisle, Lainard Bush, Scott M. Hare, Henry E. Bartony, Jr., John Joy Edson, Michael J. Bruzzese, James Hall, Will J. Schaaf.

(h)    Objection. Asked and answered, see answer to Interrogatory No. 11 above.

(i)    Objection. Asked and answered, see answer to Interrogatory No. 11 above.

(j)    Objection. Asked and answered, see answer to Interrogatory No. 8 above.

(k)    Objection. Asked and answered, see answer to Interrogatory No. 8 above.

(l)    Objection. Asked and answered, see answer to Interrogatory No. 8 above.

(m)    Objection. Asked and answered, see answer to Interrogatory No. 8 above.

(n)     Stipulation of dismissal and transcript of trial testimony.

16. If your answer to Interrogatory No. 14 is in the affirmative, and your answer is based on a failure to act, state the acts which should have been undertaken and which you contend were not undertaken by each individual and with respect to each such act, state the following:

    (a)     Whether such failure to act was a cause of harm and, if so, precisely the manner in which such failure to act caused the harm;

    (b)     The identity of every person whom you contend should have performed each such act;

    (c)     Whether there were contributing causes of the harm which concurred with such failure to act;

    (d)     All facts which you intend to offer at trial to support your contentions set forth in your answers to this Interrogatory including subparts (a) through (c);

    (e)     With respect to your answer to each subpart of this Interrogatory separately, identify each person who may testify at trial regarding the facts contained in your answers;

    (f)     State the facts and opinions if any, to which each person identified in your answer to the preceding subpart is expected to testify;

    (g)     Identify the source of all information upon which the testimony described in your answer to the preceding subpart is based;

    (h)     Identify each expert who may testify at trial concerning your answers to each subpart of this Interrogatory;

(i)     State the facts to which each such expert is expected to testify;

(j)     State the opinions to which each such expert is expected to testify and provide a summary of the grounds for each such opinion; and

(k)     Identify the source of all information which formed the basis for the testimony described in your answer to the preceding subparts of this Interrogatory.

ANSWER:

(a)    **Defendants' negligent failure to act as set forth in answer to Interrogatory 6(a) resulted in plaintiff subsequently being harmed when the re-filed claims were dismissed on partial summary judgment by the Warren County Court of Common Pleas on January 30, 2002. Plaintiff was harmed by defendants' negligent failure to pursue a quiet title claim and seeking relief to bar Matson Lumber Company from further timbering and having Matson declared a trespasser. Plaintiff was precluded from recovering damages for the value of timber wrongfully harvested by Matson in the amount of $438,454, subject to treble damages under the Pennsylvania Timber Conversion Statute in the amount of $1,315,362. Plaintiff was also prevented from recovering the value of the timber remaining on the property which Matson will timber in the future in the amount of $947,204.88. Plaintiff was harmed by defendant's failure to recover the costs of repairs to real property caused by Matson's timbering operations in the amount of $142,00; and plaintiff was harmed by defendant's failure to present evidence of damage to residual trees in the amount of $584,268.00.**

(b)    **Scott M. Hare, Michael E. Bartony, Jr. and John Joy Edson V;**

(c)    **No;**

(d)    **Defendants failed to perform a complete and proper investigation and title search to determine the rights of the parties to the timber on the Carlisle farm. The defendants failed to complete or acquire a title search including the source documents being the unrecorded Articles of Agreement between Marion C. Kinkead and Fisher & Young, Inc. and the 1973 Timber Deed from Marion C. Kinkead to Fisher & Young, Inc. Defendants were negligent in assuming that the Articles of Agreement between Albert T. Carlisle and Fisher & Young, Inc. set forth the parties respective rights to the timber on the Carlisle property. Defendants failed to research the controlling law which would have revealed that**

the 1973 Timber Deed and the 1969 Articles of Agreement between Marion C.
Kinkead and Fisher & Young, Inc. were void as to Carlisle who was a good faith

purchaser without notice. Defendants failed to research the controlling law to determine
that the subsequently recorded Timber Deed in 1973 was void as to plaintiff Albert T.
Carlisle. Defendants were negligent in failing to obtain these source documents, the 1973
Timber Deed and determining that any rights to timber on the property by Fisher &
Young, Inc. expired on April 1, 1978. The defendants failed to research the controlling law
and determine that Matson Lumber Company was a trespasser on the property of Albert
T. Carlisle during the relevant time period from 1987 through the present. Defendants
were negligent in failing to commence an action to quiet title in the federal court action.
The defendants were negligent in causing the dismissal of counts V, VI and VII of the
federal court action without the express informed consent of their client Albert T. Carlisle.
The defendants were negligent in failing to know and/or research the consequences of a
voluntary dismissal of counts V, VI and VII including that an action dismissed without
prejudice under Rule 41 does not toll the statute of limitations. The defendants were
negligent in failing to warn Mr. Carlisle of the adverse consequences of a voluntary
dismissal of counts V, VI and VII. The defendants were negligent in failing to pursue
claims for negligence, trespass and conversion against the defendant Matson as a
trespasser. The defendants were negligent in failing to submit evidence of p roof of
damages for negligence, trespass and conversion for timber wrongfully harvested by
Matson from 1993 –1997, for failing to resolve the title to the remaining timber in favor of
their client Albert T. Carlisle and in failing to present proof of damages for injuries to
Carlisle's real property caused by the negligent timbering operations of Matson Lumber
Company. The defendants were negligent in failing to present evidence and testimony at
trial through James Hall of the damages to residual trees.

(e)     Henry E. Bartony, Jr., Michael J. Bruzzese, Lainard Bush, Albert T. Carlisle, John
        C. Dennison II, John Joy Edson V, Chester S. Fossee, James Hall, Scott M. Hare,
        Will J. Schaaf, Esq. Lori Sekerak;

(f)     Objection. Asked and answered, see answer to Interrogatory No. 11 above.

(g)     Objection. Asked and answered, see answer to Interrogatory No. 11 above.

(h)     Objection. Asked and answered, see answer to Interrogatory No. 8 above.

(i)     Objection. Asked and answered, see answer to Interrogatory No. 8 above.

(j)     Objection. Asked and answered, see answer to Interrogatory No. 8 above.

(k)     Objection.  Asked  and  answered,  see  answer  to  Interrogatory  No. 8  above.

17. Do you contend that Defendants are responsible to or liable to the Plaintiffs in this matter on any basis which has not been set forth in the responses to the foregoing Interrogatories? If so, please identify the basis of the aforesaid liability, the facts on which the aforesaid liability is based, the identity of witnesses who will testify to those facts, the identity of experts who will be called at trial regarding that liability, the facts and opinions which such experts will give at the time of trial and identify any document relating to the aforesaid liability.

ANSWER:

**Yes. See Memorandum and Order of Judge Gary L. Lancaster dated May 9, 2005 in the matter of Albert T. Carlisle v. Matson Lumber Company, et al. in the United States District Court for the Western District of Pennsylvania No. 04-CV-00284-GLL, a copy of which has been provided to counsel for defendants.**

Respectfully submitted,

WEINHEIMER, SCHADEL & HABER, P.C.

By _____
    David L. Haber, Esquire
    Pa. I.D. #3
    602 Law and Finance Building
    429 Fourth Avenue
    Pittsburgh PA 15219-1503
    *Attorney for Defendant*

**ANSWERS SUBMITTED BY:**

_____
**James R. Fryling**
**Attorney for Plaintiff**

_____
**Andrew J. Conner**
**Attorney for Plaintiff**

- 19 -



MARSH
SPAEDER
BAUR
SPAEDER
& SCHAAF
A T T O R N E Y S   A T   L A W
LIMITED LIABILITY PARTNERSHIP

WILL J. SCHAAF
RITCHIE T. MARSH
WILLIAM J. SCHAAF
JAMES E. MARSH, JR.
JOHN P. EPPINGER
THOMAS E. KUHN
THOMAS M. LENT
JOHN B. FESSLER
JEFFREY D. SCIBETTA
EUGENE C. SUNDBERG, JR.

SUITE 300, 300 STATE STREET
ERIE, PA 16507
(814) 456-5301
FAX: (814) 456-1112

www.marshspaeder.com

DONALD F. FESSLER, JR.
KURT L. SUNDBERG

ANTHONY R. HIMES
ANDREW M. SCHMIDT

RITCHIE T. MARSH (1870-1947)
JAMES E. MARSH (1908-1988)
ROBERT N. SPAEDER (1915-1993)
JOHN A. SPAEDER (1902-1994)
BYRON A. BAUR (1906-2002)

April 15, 2004

Andrew J. Conner, Esq.
James R. Fryling, Esq.
Conner Riley & Fryling
17 West Tenth Street
P.O. Box 860
Erie, PA 16512-0860

Dear Messrs. Conner and Fryling:

You have asked me for an opinion on the merits of the malpractice claims asserted against Bartony Hare & Edson, et al. at C.A. 04-25 Erie.

I have reviewed the deeds from Marion C. Kinkead (hereinafter "Kinkead") to Fisher & Young, Inc., the Fisher & Young, Inc. deed to Albert T. Carlisle (hereinafter "Carlisle"), the pleadings in the United States District Court for the Western District of Pennsylvania and in the Court of Common Pleas of Warren County.

I am convinced that, unhappily, there was conduct below the standard of care on the part of the attorneys representing Albert T. Carlisle consisting of the following:

1.    **Failure to Examine the Title of the Premises**.  This would have revealed that Matson Lumber Company and Matson Hardwoods, Inc. (hereinafter "Matson"), the successors in title to the rights of Fisher & Young, Inc., had after April 1, 1978 <u>absolutely no rights whatsoever</u> and were mere trespassers on the lands of Carlisle. An examination of title would have demonstrated that in Warren County Deed Book 352, Page 1135, dated April 1, 1968, there was recorded an Article of Agreement from Kinkead to Fisher & Young, Inc. "excepting and reserving from and out of this conveyance all of the timber and trees standing and down situate on the premises above-described with a full right of entry for the purpose of cutting, skidding, piling and removing the same and for constructing roadways and skidways, sawmills and piling yards for such purposes." Next, we see Articles of Agreement dated April 1, 1968 conveying all timber and trees standing and down measuring 12" or more in diameter one foot from the ground with right of entry, etc. However, that

MARSH SPAEDER BAUR SPAEDER & SCHAAF, LLP
April 15, 2004
Page 2

Agreement specifically provided that it terminated April 1, 1978 and the statement is that "all the rights hereunder shall revert to the owner of the land." It is my opinion to a reasonable degree of legal certainty that the failure to conduct a title exam of the premises to determine the relative rights of the parties involved in the litigation is conduct that fell below the appropriate standard of care.

    2.    **The Dropping of the Trespass Count.** In my opinion, it was also below the standard of care to have withdrawn the trespass count. Carlisle from April 1, 1978 had a trespasser on his land with no more rights to cut timber than the man on the street. In the course of cutting, the expert, James Hall, was prepared to testify that "damages from skidding and felling is severe on 34.4% of the remaining trees. Almost all remaining trees are degraded and have reduced commercial value or no commercial value at all." Excessive and unnecessary roads were built. Matson made poor use of the trees they felled and abandoned valuable cut material to decay. Thus, he then gives five examples of the reckless conduct of Matson which would be encompassed in the trespass claim: (1) trees removed up to the banks of spring creek (admittedly, that was covered in the federal case); (2) no respect for residual trees, felling damage, skidding damage, dozer damage and chainsaw damage is evidence everywhere; (3) wasteful logging practice; (4) no respect for trees and springs; (5) no evidence of any sound forest management plans. Although the trespass claim was withdrawn pursuant to Federal Rule of Civil Procedure 41(a) without prejudice, the effect of voluntarily withdrawing the claims after the running of the statute of limitations effectively barred Carlisle's ability to re-file the trespass claims.

    The voluntary withdrawal of the claims without having protected the statute of limitations to first preserve those claims was conduct that fell below the appropriate standard of care.

    If the relevant proof that Matson, on and after April 1, 1978, was on the property as a trespasser had been offered into evidence in the federal action and the withdrawn trespass claim had been pursued to verdict, there was a substantial probability that Carlisle would have made a recovery for damages in the federal action for injury to his property. In addition, his counsel's failure to protect the statute of limitations foreclosed Carlisle from making a recovery of the property damages caused by Matson as a trespasser on this property prior to the March, 1995 filing, and subjected Carlisle to new and additional defenses in any subsequently filed action that otherwise were unavailable to Matson in the federal litigation.

        Very truly yours,

        **MARSH SPAEDER BAUR SPAEDER & SCHAAF, LLP**

        By _____
            Will J. Schaaf

WJS/jc



MARSH
SPAEDER
BAUR
SPAEDER
& SCHAAF
ATTORNEYS AT LAW

LIMITED LIABILITY PARTNERSHIP

SUITE 300, 300 STATE STREET
ERIE, PA 16507
(814) 456-5301
FAX: (814) 456-1112

www.marshspaeder.com
August 24, 2004

WILL J. SCHAAF
RITCHIE T. MARSH
WILLIAM J. SCHAAF
JAMES E. MARSH, JR.
JOHN P. EPPINGER
THOMAS E. KUHN
THOMAS M. LENT
JOHN B. FESSLER
JEFFREY D. SCIBETTA
EUGENE C. SUNDBERG, JR.

DONALD F. FESSLER, JR.
KURT L. SUNDBERG

ANTHONY R. HIMES
ANDREW M. SCHMIDT

RITCHIE T. MARSH (1870-1947)
JAMES E. MARSH (1908-1988)
ROBERT N. SPAEDER (1915-1993)
JOHN A. SPAEDER (1902-1994)
BYRON A. BAUR (1906-2002)

Andrew J. Conner, Esq.
James R. Fryling, Esq.
Conner Riley & Fryling
17 West Tenth Street
P.O. Box 860
Erie, PA 16512-0860

Dear Messrs. Conner and Fryling:

You have asked for an opinion regarding whether Matson Lumber Company and Matson Hardwoods, Inc. (herein after "Matson") has any rights in the timber on the Clough Farm owned by Albert T. Carlisle.

I have reviewed the relevant deeds from Marion C. Kinkead (herein after "Kinkead") to Fisher & Young, Inc.; the Fisher & Young, Inc. deed to Albert T. Carlisle, the pleadings in the United States District Court for the Western District of Pennsylvania in the action of <u>Carlisle v. Matson</u>, No. 95-0376 E, and in the Court for Common Pleas of Warren County.

An examination of the title of the premises reveals that Matson Lumber Company and Matson Hardwoods, Inc., the successors in title to the rights of Fisher & Young, Inc. had after April 1, 1978 <u>absolutely no rights whatsoever</u> in any timber and trees and Matson was a trespasser on the lands of Carlisle.

The title examination reveals that in Warren County Deed Book 352, Page 1135, dated April 1, 1968, there is recorded an Article of Agreement from Kinkead to Fisher & Young, Inc. "excepting and reserving from and out of this conveyance all of the timber and trees standing and down situate on the premises above described with a full right of entry for the purpose of cutting, skidding, piling and removing the same and for constructing roadways and skidways, sawmills and piling yards for such purposes." Next, we see Articles of Agreement dated April 1, 1968 conveying all timber and trees standing and down measuring 12" or more in diameter one foot from the ground with right of entry, etc. However, that Agreement specifically provided that it terminated on April 1, 1978 with the statement "all the rights hereunder shall revert to the owner of the land." A confirmatory Timber Deed dated April 20, 1973 from Kinkead to Fisher & Young, Inc. again recited that all timber rights terminated on April 1, 1978.

I have also reviewed the Quit Claim Deed from Dora M. Squatriti, individually and as Executrix under the Last Will and Testament of Marion C. Kinkead to Matson dated May 6, 2003 and recorded in the Recorder of Deeds office of Warren County, Pennsylvania on June 9, 2004. Whatever rights Matson obtained from Dora M. Squatriti commenced on June 9, 2004. However, the residual timber rights; not being exercised between 1978 and 2004 expired; prior to the date of this quit claim deed because of the failure to exercise those rights in a reasonable time.

It is my opinion to a reasonable degree of legal certainty that the examination of the title records at the Warren County Courthouse reveals that "Matson" has no rights and had no rights from 1978, in any timber or trees on the Clough Farm.

Very truly yours,

MARSH SPAEDER BAUR SPAEDER & SCHAAF

By_____

Will J. Schaaf

## AFFIDAVIT

Before me, the undersigned notary public, this day, personally, appeared Will J. Schaaf, known to me who being duly sworn according to law, deposes and says that he is a licensed practicing attorney in the Commonwealth of Pennsylvania and that based on his own personal knowledge and/or information made known to him by others, the following statements are true and correct to the best of his knowledge, information and belief:

1.      I am licensed and actively practicing law in the Commonwealth of Pennsylvania, having been admitted to the bar in 1949.

2.      A substantial percentage of my practice is in the area of real estate law to which I devote time on a daily basis.

3.      My practice concerns both residential and commercial real estate transactions and I am a solicitor for Marquette Savings Bank.

4.      I routinely review title searches and questions concerning title defects and the marketability of real estate titles.

5.      I routinely review title documents and issue certificates of title in my practice.

6.      I routinely represent clients in Pennsylvania in real estate transactions including civil actions and quiet title, ejectment and mortgage foreclosure.

7.      I have reviewed the relevant deeds from Marion C. Kinkead (hereinafter "Kinkead") to Fisher & Young, Inc.; the Fisher and Young, Inc. deed to Albert T. Carlisle, the pleadings in the United States District Court for the Western District of Pennsylvania in the action of Carlisle v. Matson No. 95-0376E and in the Court of Common Pleas of Warren County, Pennsylvania No. 353 C.D. 1998.

8.    An examination of the title of the premises owned by Albert T. Carlisle reveals that Matson Lumber Company and Matson Hardwoods, Inc., the successors in title to the rights of Fisher & Young, Inc., had after April 1, 1978 absolutely no rights whatsoever to any timber and trees and that Matson was a trespasser on the lands of Carlisle.

9.    The title examination reveals that in Warren County Deed Book 352, Page 1135, dated April 1, 1968, there is recorded an Article of Agreement from Kinkead to Fisher & Young, Inc. for the sale of real property:

> "excepting and reserving from and out of this conveyance all of the timber and trees standing and down situate on the premises above described with a full right of entry for the purpose of cutting, skidding, piling and removing the same, for constructing roadways, skidways, sawmills and piling for such purposes."

(Complaint Ex. C).

10.    The title examination next reveals an Article of Agreement dated April 1, 1968 from Kinkead to Fisher & Young, Inc. conveying all timber and trees standing and down measuring 12" or more in diameter one foot from the ground with right of entry, etc. However, that agreement specifically provided that it terminated on April 1, 1978. (Complaint, Ex. D). This Article of Agreement is unrecorded meaning that it does not appear in the chain of title for Albert T. Carlisle in the Recorder of Deeds Office, Warren County, Pennsylvania.

11.    A confirmatory Timber Deed dated April 20, 1973, Warren County Deed Book 376, Page 939 between Kinkead and Fisher & Young, Inc. again recites that all timber rights to the property terminated on April 1, 1978. (Complaint, Ex. F).

12.    At the time Albert T. Carlisle purchased the real property from Fisher & Young, Inc. on January 9, 1970, he would not be on notice of the limited timber rights granted to Fisher & Young, Inc. from Kinkead as the Article of Agreement was unrecorded and would not appear in the recorded chain of title.

13.    At the time Albert T. Carlisle purchased the real property from Fisher & Young, Inc. on January 9, 1970 the confirmatory Timber Deed had not been created or recorded and does not appear in the chain of title until 1973. (Complaint, Ex. F).

14.    If an article of agreement or deed is not recorded it shall be fraudulent and void as against any subsequent bonafide purchaser for value, duly entered in the prothonotary's office the county in which the lands are situate, without actual or constructive notice.  Thus, the timber deed is void as to Carlisle.

15.    The title examination next reveals that Marion C. Kinkead died testate on July 14, 1988.  Her last will and testament was probated in Register of Wills Office in Warren County, Pennsylvania, Will Book 73, Page 701. (Complaint, Ex. H).

16.    The Inventory and Valuation form dated March 10, 1989 filed by Dora M. Squatriti, Executrix of the Estate of Marion C. Kinkead, listing all real and personal property of the estate at Book 23, Page 316 in Recorder of Wills Warren County, Pennsylvania, does not list or make reference to any interest, real or personal, in the timber and trees of the Clough Farm. (Complaint, Ex. K).

17.    I have also reviewed the Quit Claim Deed from Dora M. Squatriti, Individually and Executrix under the Last Will and Testament of Marion C. Kinkead to Matson Lumber Company dated May 6, 2003 and recorded in the Recorder of Deeds office of Warren County, Pennsylvania on June 9, 2004 in Book 1379, Page 312. (Complaint, Ex. H).

18.    A quit claim deed is used for the transfer or release of an interest in real property which the grantor has or may think she has but it does not warrant any title. It merely transfers or releases whatever title or interest the grantor may have, whatever that may be, if any. A quit claim deed's distinguishing characteristic is that it transfers only the title or interest of the grantor rather than the property itself. A quit claim deed is not a deed of conveyance, it does not transfer the property itself.

19.    Whatever rights Matson Lumber Company obtained from Dora M. Squatriti, if any, commenced on June 9, 2004.

20.    However, the residual timber rights, not being exercised between 1978 and 2004 expired prior to the date of the Quit Claim Deed because of the failure to exercise those rights in a reasonable time. This is confirmed by the failure of the estate to include the reversionary interest in the timber and trees on the Inventory and Valuation form in 1989.

21.    It is my opinion to a reasonable degree of legal certainty that the examination of the title records at the Warren County Courthouse reveals that neither Matson Hardwoods, Inc. nor Matson Lumber Company have any rights, and had no rights since 1979, in any timber or trees on the Carlisle property.

22.    It is my opinion to a reasonable degree of legal certainty that the unrecorded Articles of Agreement between Marion C. Kinkead and Fisher & Young, Inc. dated April 1, 1968 and the subsequent Timber Deed dated April 20, 1973 are fraudulent and void as to Albert T. Carlisle.

23.    The Quit Claim Deed from Dora M. Squatriti, individually and as Executrix under the Last Will and Testament of Marion C. Kinkead dated May 6, 2003 creates a cloud on the title to the Carlisle farm as it is an outstanding claim or encumbrance, which, if valid, would affect or impair the title of the property owned by Carlisle. On its face, it has effect, but it can be shown by extrinsic proof as set forth above to be invalid or inapplicable to the estate in question.

24.    The remedy for removing a cloud on title in Pennsylvania is by means of a Quiet Title Action.

25.    I have reviewed the pleadings filed in the case of <u>Albert T. Carlisle v. Matson Lumber Company and Matson Hardwoods, Inc.</u> in the United States District Court for the Western District of Pennsylvania Docket No. 95-0376. The pleadings contain numerous counts for legal and equitable relief based on the Articles of Agreement between Albert T. Carlisle and Fisher & Young, Inc. dated May 28, 1969. The pleadings do not contain a claim for quiet title to the Carlisle farm.

26.    I have reviewed the pleadings in the case of <u>Albert T. Carlisle v. Matson Lumber Company and Matson Hardwoods, Inc.</u> in the Court of Common Pleas of Warren County, Pennsylvania at Docket No. 353 C.D. 1998. The pleadings contain numerous counts for damages based on the Articles of Agreement between Albert T. Carlisle and Fisher & Young, Inc. dated May 28, 1969. The pleadings do not contain a claim for quiet title.

27.    I have reviewed the Complaint filed in the case of <u>Albert T. Carlisle v. Bartony, Hare and Etson, et al.</u> in the United States District Court for the Western District of Pennsylvania at Docket No. C.A. 04-25E. Nowhere in the Complaint does plaintiff set forth a cause of action or claim for quiet title to the Carlisle farm.

28.     A quiet title action to remove the cloud on title created by the Quit Claim Deed between Dora M. Squatriti and Matson Lumber Company could not have been commenced until June 9, 2003, the date the Quit Claim Instrument was created.


_____
Will J. Schaaf, Esq.


Subscribed and sworn to before me
this _14th_ day of _January_
2005.

_____
Notary Public


COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JAMES RYAN FRYLING, NOTARY PUBLIC
ERIE, ERIE COUNTY, PENNA.
MY COMMISSION EXPIRES ON NOV. 18, 2007

**James Hall, Consulting Forester**
69 S. Main St.
Russell, PA 16345
Home Phone 814-757-4488

October 7, 2005

Andrew J. Conner, Esq.
James R. Fryling, Esq.
Conner Riley & Fryling
17 West Tenth Street
P.O. Box 860
Erie, PA 16512-0860

      Re:    Albert T. Carlisle v. Bartony Hare & Edson, et al.
              U.S. District Court for the Western District of Pennsylvania
              No. 04-025 Erie

Dear Mr. Conner and Mr. Fryling:

You have requested the following opinions regarding the quantity and value of timber removed by Matson Lumber Company and/or Matson Hardwoods, Inc. from the 1993 time period as well as the value of pre-1969 timber remaining on the Carlisle property.

As you know, I was engaged by Albert T. Carlisle to assess the condition and history of the timber stands and associated land on the Carlisle farm, to determine the value of the standing timber at various times in its history, to assess the forestry practices employed by Matson Lumber Company and Matson Hardwoods on the farm and to determine and to find damages to Mr. Carlisle caused by Matson.

I was also requested by Attorney Scott Hare of Bartony Hare & Edson to provide an expert report and testimony relating to damages for Mr. Carlisle in the case of Albert T. Carlisle v. Matson Lumber Company and Matson Hardwoods in the United States District Court for the Western District of Pennsylvania at No. 95-0376. I determined that between November 1988 and April 1995, based on log receipts supplied by Matson, that Matson and/or its agents removed 4,203,678 board feet Doyle rule from the Carlisle farm. Converted to the international 1/4 inch rule, this figure converts to 7,125,234 board feet. This figure did not include the logs left in the woods due to the wasteful utilization practices of Matson.

The value of this timber, accounting for volume and species reported by Matson, based on the average value of stumpage in Northwestern Pennsylvania published in the Penn State University <u>Timber Market Report</u> for the fourth quarter of 1996 was $1,891,265. However, the timber removed by Matson were not average trees (the basis of the Penn State Report) but were of very high quality. The value of timber removed from the Carlisle farm by Matson, using timber prices from the <u>Timber Market Report</u> for high quality timber and the actual timber sold in the area was $3,655,060.40.

The timber removed by Matson during the 1993-1994 and 1994-1995 timber harvests, accounting for volume and species as recorded by Matson was a volume of 539,746 Doyle rule having a value of $312,456.74 for 1993-1994 and a volume of 271,762 Doyle rule having a value of $125,997.26 for the 1994-1995 year. The total value of the harvest for these two years is $438,454.

The pre-1969 timber remaining on the property, excluding timber in the "no cut zones" has a value of $947,204.88 consisting of cutover stands having 6,004 board feet per acre and a value of $1,641.07 per acre, and uncut stands on 67 acres having 6,818 board feet per acre and $3,017.30 per acre.

I also calculated and was prepared to testify at trial that Mr. Carlisle suffered damage to his residual trees still standing of 34.4% resulting in a loss of $584,268.

At the time of trial, I was asked to calculate and value the timber wrongfully harvested from the "no cut zones" and these were the only damage calculations I was questioned about at trial. I offer all of the opinions expressed here all within a reasonable degree of scientific certainty.

Respectfully,

James Hall



1085 South Hermitage Rd.
Hermitage, PA 16148
Phone:  (724) 981-0155
Fax:      (724) 981-0156

*natural resource professionals / design and construction*

August 3, 2005

Mr. Bert Carslile
1210 Oak Drive
Ashtabula, OH 44004

Subject:    Spring Creek Land Restoration
            Preliminary Cost Estimate

Dear Mr. Carslile:

Wallace and Pancher, Inc. (WPI) would like to provide you with the requested cost
estimate based on the field-view with Lainard Bush on April 26, 2005. A preliminary
cost estimate was prepared for three (3) separate areas that were viewed during the field
meeting. The three (3) locations are described below. At this time the cost estimates are
considered preliminary, as no engineering design has been prepared. The cost estimates
include surveying, engineering design, permitting, and construction.

We look forward to working with you on this project. If you have any questions
concerning this report, please do not hesitate to call me at (724) 981-0155.

Sincerely,
Wallace and Pancher, Inc.

Daniel P. Wallace, P.E.
Vice President

cc:     Mr. Jim Fryling

## PART 1    SCOPE OF WORK

### Project Understanding

This project consists of the restoration of three (3) locations along and adjacent to Spring Creek in Warren County, Pennsylvania. This work would be performed on lands owned by Mr. Bert Carlisle. Degradation and/or disturbance of the three (3) areas is a result of past foresting/logging operations and is now subject of a lawsuit to have restoration actions implemented to begin the process of bringing these areas to a more natural condition.

The three (3) areas are described as follows:

1.  Spring Creek Streambank
    Three (3) separate locations along the banks of Spring Creek were identified as being severely eroded due to runoff water collecting on a logging road and flowing over the hill (refer to the enclosed photos). The runoff water flowing over the hill has undercut the sod mat and tree roots that held the banks in place. The streambanks range in height from 20' to 40' above Spring Creek on the right side (looking downstream).

    Restoration would include the removal of fallen trees, excavation of the streambanks to improve the slopes, where needed, and streambank revegetation. Revegetation of the streambanks would likely include a hydromulch application, live plant cuttings, and tree/shrub plantings.

2.  Restore logging roads
    The logging road contributing to the collection of storm runoff above Spring Creek will be restored to a more natural condition. The logging road currently collects and concentrates storm runoff, which discharges over the hill to Spring Creek, causing the severe erosion. Our visual observations show that the logging road was originally constructed by clearing vegetation (e.g. trees, shrubs, ground cover) and either excavating the road by digging or by placing material to create a road surface.

    Restoration would include placing topsoil in excavated areas or removing fill material and planting vegetation native to that area.

3.  Restore pasture
    A logging road was constructed through a pasture off of the main access road through the property. The logging road appears to be abandoned, but collects storm runoff, which concentrates and flows down the road, causing erosion near the main access road. This area is approximately 500' long by 20' wide.

    Restoration would include re-grading existing mounds of dirt, placing additional topsoil and revegetating the area with a warm season grass seed mixture.

## Task 1.0    Site Assessment and Data Collection

Wallace & Pancher, Inc. (WPI) will collect the necessary data on the stream and surrounding area to determine the appropriate geomorphic variables for restoration. A topographic survey will be completed at each of the three (3) locations described above to be used in developing the design plans and permit application packages. The survey would also include an assessment of the surrounding vegetative composition, identification of any jurisdictional wetlands within each project area, and any additional information necessary to develop a restoration strategy. Construction limitations and constraints will be noted.

### *Project Assumption*

Aquatic macroinvertebrate sampling and riparian habitat assessments will likely not be required by the Pennsylvania Department of Environmental Protection (PaDEP) for this project. While this information is typically required to develop a restoration approach and for obtaining project permits, the primary objective of this project is streambank stabilization and restoration of logging road areas.

Should the PaDEP require biological sampling of Spring Creek, this task would require a modification to the Scope Of Work.

## Task 2.0    Conceptual and Final Design Plans

WPI will prepare the Conceptual Restoration Plan and a short narrative that defines the restoration approach. WPI will meet with the property owner and/or the environmental agency representatives, as needed, to develop and review the elements of the plan. This plan will also become the basis for the permitting efforts and review by the PaDEP and Warren County Conservation District.

The Conceptual Restoration Plan will be developed to a level of detail sufficient for the PaDEP to review and approve. This plan will include the following drawing sheets:

- Title Sheet;
- Plan View Sheet showing proposed grading and streambank modifications;
- Representative existing and proposed cross sections through the restoration area;
- Planting Plan; and
- Sheet with design details pertinent to understanding the stream/habitat design approach.

In addition to the conceptual design plans, a short narrative will be prepared that presents the rationale and approach for the design, survey data, and any necessary calculations. WPI will complete a hydrologic analysis to support the design approach, if required by the PaDEP. The hydrologic information will be included as part of the design submission.

Following approval of the conceptual restoration plan by the property owner and the PaDEP, WPI will complete final design and prepare the Final Design Plans, Specifications, and Construction Cost Estimate (PS&E).

The final PS&E package for each project section will include:

- Title Sheet
- Quantity Tabulation Sheet
- Construction Detail Sheet(s)
- Plan Sheets
- Cross Sections
- Planting Plan Sheet
- Erosion & Sediment Control Plan Sheets
- Construction specifications.

**Task 3.0        Permit Preparation**

### 3.1    Joint Permit Application

Because this project includes work on the streambanks of Spring Creek, a High Quality stream designated by the PaDEP, a Chapter 105/Section 404 Joint Permit will likely be required for the restoration of Location #1, as described above.

WPI will coordinate and prepare the Joint Permit Application package for the project. The Joint Permit Application includes the simultaneous submittal of the Chapter 105 Permit and Section 401 Water Quality Certification (PaDEP) and the U.S. Army Corp of Engineers (ACOE) Section 404 Permit Applications. The PaDEP and ACOE require essentially the same project information and will review and coordinate with each other during their technical review period.

The Chapter 105 Permit Application requires the following:

1. Completed General Information Form;
2. Completed and signed Chapter 105 Application Forms;
3. Cultural Resource Notice;
4. Pennsylvania Natural Diversity Index (PNDI) search results;
5. Completed Environmental Assessment Form and backup information;
6. Complete and concise Project Alternatives Analysis;
7. Stormwater Management Analysis and consistency letter;
8. Floodplain Management Analysis and consistency letter;
9. Act 14 Notification Letters with return receipts;
10. Cross sections of the site showing the filling of streams and wetlands;
11. Erosion and Sediment Control Plan approval letter; and a
12. Mitigation Plan

WPI will compile the information necessary to prepare the Joint Permit Application package. All of the elements listed above, in addition to any additional supportive materials, will comprise the Joint Permit Application package.

The Environmental Assessment Form (EAF) will be prepared in a report format with the PaDEP forms at the front of the report. The data gathered during the field investigations will be provided in a narrative format in the appropriate Enclosures, as specified in the EAF.

3

Item #12 Mitigation Plan is needed for projects that propose to impact Waters of the Commonwealth, including wetlands. Because this project is a stream restoration, a Mitigation Plan would not be required. The Restoration Plan Conceptual Design would, however, be required for the PaDEP review.

### Project Assumption

The PaDEP and ACOE require a 5 year long term monitoring plan for stream restoration projects as part of their standard permit conditions. This activity is not included in this proposal because the details of the restoration design are not known. The monitoring plan approach will be tailored for this project. Coordination with the PaDEP and ACOE will be required to develop the monitoring plan approach, which is included in this Scope Of Work.

If the PaDEP does not require a Chapter 105/Section 404 Joint Permit for the restoration activities on the streambanks of Spring Creek, they would require a General Permit to cover the work activities. The PaDEP's General Permit #3 is authorized for streambank stabilization actions, but Spring Creek's High Quality designation may require the Joint Permit.

## 3.2    NPDES Permit

A National Pollution Discharge Elimination System (NPDES) Permit will be prepared for the project. An NPDES Permit includes an Erosion and Sediment (E&S) Pollution Control Plan that will collect and treat dirty runoff water during construction activities.

The type of NPDES Permit required for projects is dependent on the total disturbed area proposed for construction activities. WPI will work with the Warren County Conservation District (WCCD) to determine the appropriate NPDES Permit and construction sequencing to implement the project.

WPI will coordinate with the WCCD to obtain the approval for the E&S plan. The technical review fee for the E&S plan, required by the WCCD, will be the responsibility of the property owner.

## Task 4.0    Agency Coordination

WPI will schedule a pre-application meeting with the PaDEP and ACOE to review the proposed restoration plan prior to submission of the Joint Permit or General Permit #3 Application. It is our goal to obtain their consensus on the purpose and need for the project and their verbal approval on the restoration approach.

Prior to this site visit WPI will develop a concept or approach to stream restoration that will be discussed at the site visit. The concept or approach will include discussion points on the surrounding environment, existing stream degradation, potential biological enhancements, and design approach. This concept or approach will become the basis for preparing the Conceptual Design Plan that will be required for the Joint Permit Application package.

4

WPI will maintain open communications with the PaDEP, ACOE and WCCD to facilitate the development of the restoration plan and ultimately expedite the permitting process and review.

WPI will coordinate with the U.S. Fish and Wildlife Service (USFWS) and Pennsylvania Department of Conservation and Natural Resources (DCNR) to determine the presence or absence of Federal or state listed Threatened and/or Endangered Species (flora and fauna). Letters will be submitted to each agency asking for their determination. This task would include the submission of the Pennsylvania Natural Diversity Index (PNDI) Form. This proposal does not include any work effort to complete additional threatened and endangered species investigations at the site, if they should arise during the agency coordination process. We will however, assess the potential habitat for threatened and endangered species as part of the field data collection process.

WPI will coordinate with the Pennsylvania Historic and Museum Commission (PHMC) to make a determination of the presence or absence of cultural resources (historic and archaeological) for the site. This proposal does not include any work effort to perform archaeological investigations at the site. Due to the nature of the project site and the proposed stream restoration, it is not likely the PHMC would require any further investigations. This task is required for the Joint Permit Application process.

## Task 5.0    Project Construction

WPI will provide construction services for the referenced project. WPI will provide the materials and labor and ensure the restoration project is constructed according to the plans and intent of the design.

During the construction phase, WPI will use survey-grade equipment to ensure compliance with the contract documents, site plans, and permit requirements.

WPI will furnish and install all of the equipment, operators, materials, supplies, and labor for the restoration project.

## Project Budget

The following costs include each of the tasks described above. The costs are estimates only and would need to be reevaluated as the design plans are prepared.

| | | |
|---|---|---|
| Area 1. | Spring Creek Streambank | $75,000.00 |
| Area 2. | Restore Logging Road (assume 1,000 feet at $25.00/ft) | $25,000.00 |
| Area 3. | Restore Pasture Area | $42,000.00 |
| | Project Total Cost | $142,000.00 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT T. CARLISLE | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff | ) | C.A. NO. 04-25 ERIE |
| v. | ) | |
| | ) | |
| BARTONY, HARE & EDSON; SCOTT | ) | JUDGE LANCASTER |
| M. HARE, ESQUIRE; HENRY E. | ) | |
| BARTONY, JR., ESQUIRE, and JOHN | ) | |
| JOY EDSON, V., ESQUIRE | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the __14th__ day of October 2005, a copy of the within document was duly served on all counsel of record and/or unrepresented parties by mailing the same to them at their designated offices by first class United States mail, postage prepaid, or by personal service/courthouse box.

Andrew J. Conner