IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT T. CARLISLE, Plaintiff :
:
VS. : NO. 04-25 ERIE
:
BARTONY, HARE & EDSON, SCOTT M. : JUDGE GARY LANCASTER
HARE, ESQUIRE, HENRY E. BARTONY, :
JR., ESQUIRE, AND JOHN JOY V. :
EDSON, ESQUIRE :

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS MOTION FOR SUMMARY JUDGMENT

ANDREW J. CONNER, ESQUIRE
CONNER RILEY & FRYLING
17 WEST TENTH STREET
P.O. BOX 860
ERIE, PA 16512-0860
(814) 453-3343

ATTORNEY FOR PLAINTIFF

## TABLE OF CONTENTS

PAGE

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    THE STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            1.    THE STATUTE OF LIMITATIONS DOES NOT
                  START TO RUN UNTIL THERE HAS BEEN AN
                  ACCRUAL OF THE CAUSE OF ACTION . . . . . . . . . . . . . . . . . 11

            2.    DISCOVERY RULE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            3.    EQUITABLE TOLLING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            4.    DEFENDANTS' AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . 23

      C.    FACTUAL CAUSATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      D.    DUTY TO DETERMINE OWNER OF TIMBER . . . . . . . . . . . . . . . . . . 32

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

i

TABLE OF CITATIONS

FEDERAL CASES:                                                      PAGE

Allegheny International, Inc. v. Alllegheny Ludlum Steel Corp.,
920 F.2d 1127 (3rd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bailey v. Lewis, 763 F.Supp. 802 (E.D. Pa. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 24

Baram v. Farugia, 606 F.2d 42 (3rd Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Barnes v. American Tobacco Co., 161 F.3d 127 (3rd Cir. 1988) . . . . . . . . . . . . 12, 13

Boerger v. Levin, 812 F. Supp. 564 (E.D. Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 13

Bohus v. Beloff, 950 F.2d 919 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153 (3rd Cir. 1989) . . . . . . . . . 11

Brown v. Abramson, 545 F. Supp. 227 (E.D. Pa. 1982) . . . . . . . . . . . . . . . . . . . . . . 13

Bushman v. Halm, 798 F.2d 651 (3rd Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139 (3rd Cir. 1998) . . . . . . 9

Coregis Insurance Co. v. Baratta & Fenerty, Ltd., 264 F.3d 203 (3rd Cir. 2001) . . . . 17

Estate of Spry v. Beaty, 2004 WL396287 (Ind. App. 3/4/04) . . . . . . . . . . . . . . . . . . 24

Graham v. F.B. Leopold Co., Inc., 779 F.2d 170 (3rd Cir. 1985) . . . . . . . . . . . . . . 9, 10

Griggs v. BIC Corp., 981 F.2d 1429 (3rd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 34

Harsco Corporation v. Kerkam, 961 F. Supp. 104 (M.D. Pa. 1997) . . . . . . . . . . . . . 23

Honeywell, Inc. v. American Standards Testing Bureau, Inc.,
851 F.2d 652 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594 (3rd Cir. 1991) . . . . . . . 16, 27

Hyman Companies, Inc. v. Brozost, 119 F. Supp. 2d 499 (E.D. Pa. 2000) . . 17, 23, 27

Ideal Dairy Farms, Inc. v. John Labatt Ltd., 90 F.3d 737 (3rd Cir. 1996) . . . . . . . . . . 9

Igbonwa v. Cameron, 2004 WL 257358 (E.D. Pa. 2/04) . . . . . . . . . . . . . . . . . . . . . .  24

In Re: Johnston, 333 BR 724 (W.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Lubecki v. Omega Logging, Inc.,
    674 F. Supp. 501 (W.D. Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29, 31

Nanty Glo Borough v. American Surety Co., 309 Pa. 236, 163 A. 523 (1932) . . . . . .  10

Petit v. Smith, 241 BR 847 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.,
    1997 WL 102521 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Seibert v. Nusbaum Stein Goldstein Bronstein & Compeau, P.A.,
    167 F.3d 166 (3rd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Slenkemp v. Borough of Brentwood, 603 F. Supp. 1298,
    1985 U.S. Dist. LEXIS 21922 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . .  21

Spillman v. Wallen, 1996 WL 379558 (E.D. Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . .  24

Stevenson-Chislett, Inc. v. U.S., 98 F. Supp. 252 (W.D. Pa. 1951) . . . . . . . . . . . . .  35

Sweitlowich v. County of Berks, 610 F.2d 1157 (3rd Cir. 1979) . . . . . . . . . . . . .  21, 23

Universal Premium Acceptance Corp. v. York Bank & Trust Co.,
    69 F. 3d 695 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

Wetzel v. Tucker, 139 F.3d 380 (3rd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Williams v. Bashman, 457 F. Supp. 322 (E.D. Pa. 1978) . . . . . . . . . . . . . . . . . . . . .  29

## STATE CASES:

Acker v. Palena, 260 Pa. Super. 214, 393 A.2d 1230 (Pa. Super. 1978) . . . . . . .  23, 25

Althaus v. Cohen, 562 Pa. 547, 756 A.2d 1166 (2000) . . . . . . . . . . . . . . . . . . . . . .  34

Atkinson v. Haus, 424 Pa. Super. 406, 622 A.2d 983 (1993) . . . . . . . . . . . . . . . . . .  29

Bailey v. Tucker, 533 Pa. 237, 621 A.2d 108 (1993) . . . . . . . . . . . . . . . . . . .  12, 17, 23

Baker v. Lewis, 150 Pa. 251 (1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

iii

Bilt-Rite Contractor, Inc. v. The Architectural Studio,
    581 Pa. 454, 866 A.2d 270, 287 (2005) . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 34

Bradley v. Ragheb, 633 A.2d 192 (Pa. Super. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 23

Capital Care Corp. v. Hunt, 2004 Pa. Super. 64, 847 A.2d 75 (Pa. Super. 2004) . . . 17

Carnegie Natural Gas Co. v. Braddock,
    142 Pa. Cmwlth. 383, 597 A.2d 285 (1990) . . . . . . . . . . . . . . . . . . . . . . . . 10, 26

Centre County Concrete Co. v. AGI, 522 Pa. 27, 559 A.2d 516 (Pa. 1989) . . . . . . . . 12

Commonwealth Department of Public Welfare v. NEC, Inc.,
    483 Pa. 503 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cost v. Cost, 677 A.2d 1750 (Pa. Super. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Crawford v. Forest Oil Co., 208 Pa. 5, 57 A. 47 (1904) . . . . . . . . . . . . . . . . . . . . . . 31

Curran v. Philadelphia Newspapers, 497 Pa. 163, 439 A.2d 652 (1981) . . . . . . . . . . 10

Dalyrmple v. Brown, 701 A.2d 164 (Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

DeAngelis v. Newman, 250 Pa. Super. 536,
    504 A.2d 1279 (Pa. Super. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Drelles v. The Manufacturers Life Insurance Co., 2005 Pa. Super. 249,
    881 A.2d 822 (Pa. Super. 2005) . . . . . . . . . . . . . . . . . . . . 17, 18, 20, 21, 23, 25

Duke & Co. v. Anderson, 275 Pa. Super. 65, 418 A.2d 613 (Pa. Super. 1980) . . . . . 29

Eltman v. Harvey, 93 Misc. 2d 634, 403 N.Y. 2d 428 (N.Y. 1978) . . . . . . . . . . . . . . 25

Fine v. Checcio, 582 Pa. 253, 870 A.2d 850 (2005) . . . . . . . . . . . . . . . . 18, 19, 20, 25

Finley v. Glenn, 303 Pa. 131, 154 A. 299 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Fiorentino v. Rapoport, 1997 LEXIS 572, 693 A.2d 208 (1997) . . . . . . . . . . . . . . . . 12

Garcia v. Community Legal Services, 524 A.2d 980 (Pa. Super. 1987) . . . . . . . . . . . 23

Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882 (Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . 22

Glenbrook v. Beusang, 839 A.2d 437 (Pa. Super. 2003) . . . . . . . . . . . . . . . . . . . . . . 23

iv

Knapp v. Murphy, 30 PA D&C 4th 136 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Lesnick v. Chartiers Natural Gas Co., 2005 Pa. Super. 436, 889 A.2d 1282 (2005) . 27

Mancine v. Concord-Liberty Savings & Loan Assoc., 445 A.2d 744 (1982) . . . . . . . 24

McD v. Rosen, 621 A.2d 128 (Pa. Super. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Moore v. Juvenal, 92 Pa. 484 (Pa. 1880) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Moore v. McComsey, 459 A.2d 841 (Pa. Super. 1983) . . . . . . . . . . . . . . . . . . . . . . . 24

Nanty Glo Borough v. American Surety Co., 309 Pa. 236, 163 A. 523 (1932) . . . . . . 10

Pittsburgh Coal & Coke, Inc. v. Cuteri,
    404 Pa. Super. 298, 500 A.2d 790 (Pa. Super. 1991) . . . . . . . . . . . . . . . . . . 25

Reutzel v. Douglas, 528 Pa. 149, 870 A.2d 787 (2005) . . . . . . . . . . . . . . . . . . . . . . . 31

Rizzo v. Haines, 520 Pa. 484, 555 A.2d 58 (Pa. 1989) . . . . . . . . . . . . . . . . . . . . 31, 34

Robbins & Seventko Orthopedic Surgeons v. Geisenberger,
    449 Pa. Super. 367, 674 A.2d 244 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . 17, 23

Saltonstall v. Little, 90 Pa. 422 (1879) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30, 33

Schroeder v. Commonwealth, Department of Transportation,
    551 Pa. Super. 243, 710 A.2d 23 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Takach v. B.M. Root Co., 279 Pa. Super. 167, 420 A.2d 1084 (1980) . . . . . . . . . . . 29

Walsh v. East Pikeland Township,
    829 A.2d 1219, 2003 Pa. Commw 542 (Pa. Commw. 2003) . . . . . . . . . . 25, 26

Weik v. Estate of Brown, 794 A.2d 907 (Pa. Super. 2002) . . . . . . . . . . . . . . . . . . . . . 24

White v. Owens-Corning Fiberglas Corp., 447 Pa. Super. 5, 668 A.2d 136 (1995) . . 10

STATE STATUTES:

21 P.S. 351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26

21 P.S. 357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26, 27

21 P.S. 521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24, 25

21 P.S. 522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25, 26

42 Pa.C.S.A. 5535 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

42 Pa.C.S.A. 8322 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28, 31

42 Pa.C.S.A. 8831(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

## <u>FEDERAL RULES</u>:

FRCP 41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

I.   FACTS:

Plaintiff, Albert Carlisle, hereinafter referred to as "Carlisle", makes claim in this

action against Scott Hare, hereinafter referred to as "Hare", and his Law Firm, Bartony,

Hare & Edson, hereinafter referred to as "Law Firm".  The claim arises out of two

related underlying actions, both of which were initiated against Matson Hardwoods,

then Matson Lumber Company, hereinafter referred to as "Matson".  The first under-

lying action was filed by Carlisle against Matson on March 15, 1995 in the U.S. District

Court for the Western District of Pennsylvania at Civil Action No. 95-0376, hereinafter

referred to as the "federal action".  The second action was filed by Carlisle against

Matson on June 24, 1998 in the Court of Common Pleas of Warren County,

Pennsylvania at Civil Action No. 353 C.D. 1998, hereinafter referred to as the "Warren

action", initiated by the June 24, 1998 filing of a Praecipe for Writ of Summons

prepared by Hare on June 23, 1998.[1]

In a January 9, 1970 Deed from Fisher & Young, Carlisle purchased the 1,239

acre parcel of woodland property comprising the Clough Farm in Warren County for

$100,000.  His Deed reserved from that sale the timber on the property.  Neither that

Deed nor the preceding Articles of Agreement between these same parties identified

the owner of the Clough Farm timber.  Unknown to Carlisle, counsel for Fisher & Young

and Marion Kinkead, the previous Clough Farm owner (including all the timber), had an

---

[1] Hare's June 23, 1998 Letter stated, in part: " I have prepared the enclosed
Praecipe. . . filing with. . . Court of Common Pleas of Warren County.  The filling of this
Praecipe will initiate a new lawsuit on Bert's behalf against Matson, and toll the running
of any statute of limitations.  Please sign the Praecipe on Bert's behalf and take it to the
court house for filing. . ."

agreement to divide the ownership transfer of the timber and property into two separate deeds to avoid the transfer tax on the timber value.

By transferring the timber for a short or defined period of time (5 to 10 years) and not recording the timber deed, they avoided paying the transfer tax on the timber. "Trees, the cutting of trees. . . is like the cutting of corn. . ." and the "limit was about 10 years. . . you would be excused from paying any. . . tax (transfer)" (Kookogey, p. 65, lines 15-20). Pennsylvania Department of Revenue regulations provided transfer of timber could not be for more than 10 years to avoid payment of transfer tax (Kookogey, p. 67, line 18 through p. 68, line 2). At the end of the defined period of time and because the timber would have to be considered "personalty" and not "realty" to avoid the transfer tax, the timber became the property of the grantor, Kinkead, and thereafter Carlisle, as the landowner (see report and affidavit of Christine H. McClure, Esquire, hereinafter referred to as "McClure report").

Articles of Agreement from Kinkead to Fisher & Young were prepared April 1, 1968, but never signed or recorded (Sekerak, p. 27, lines 20-23). The real purpose of those Articles was ". . . to avoid the transfer tax, that's what it boils down to. . ." (Kookogey, p. 76, lines 15-24). Those Articles provided "All of the timber and trees standing and down. . . with the right to enter on said premises and to cut, skid, pile and remove the same,. . . until April 1, 1978, on and after which date all the rights hereunder shall revert to the owner of the land". Fisher & Young "wouldn't be able to cut the timber for more than 10 years after the entered this Agreement with Kinkead" (Kookogey, p. 43, lines 1-4).

When Carlisle's property deed was recorded, there was no timber deed out of Kinkead filed of record (Sekerak, p. 28, line 14 through p. 29, line 4). In 1973, Fisher & Young was selling its assets to American Hardwoods, which thereafter became Fisher & Young Hardwoods. Fisher & Young paid Kinkead the agreed upon consideration ($100,000) to obtain the timber rights until April 1, 1978, and obtained and recorded the April 20, 1973 timber Deed. It had the following language: "Together with right of entry on and over said premises for the purpose of cutting, skidding, piling and removing said timber until April 1, 1978, on and after which date all rights hereunder shall cease and determine. . ."

Fisher & Young never conveyed to Fisher & Young Hardwoods by deed the Clough Farm timber. Their timber rights, if any, on the Clough Farm expired, as a matter of law, on April 1, 1978, as their timber rights derived from Fisher & Young. From 1970 until 1988, the identity of the actual owner of the Clough Farm timber was a non-issue, as there was no active timbering on this property until 1988, after Matson claimed they purchased the Clough Farm timber rights from Fisher & Young Hardwoods. From 1998 through 1994, after Matson wrote Carlisle the June 30, 1998 letter, Matson cut and removed approximately 7 million board feet of timber, having a value greater than $3.6 million. (James Hall's May 2, 1997 report; Hare I, p. 117, lines 3-22).[2]

---

[2]On June 30, 1998, Robert Matson, President of Matson wrote Carlisle ". . . Matson Hardwoods, Inc. . . . the successor in interest to Fisher & Young Hardwoods, Inc. . . . the successor to Fisher & Young, Inc. . . ." (Hare Exhibit #6).

At Hare's recommendation in November, 1994, Carlisle retained Hare to file action against Matson on all available claims including trespass and conversion (Hare Exhibit #8). In exchange for Hare's legal services, Carlisle agreed to pay Hare's estimate of $45,000 to $72,000 (Hare Exhibit #9). Carlisle provided Hare with a copy of the Fisher & Young Articles of Agreement and his property Deed with the timber reservation. Carlisle had no knowledge of either the unrecorded 1968 Articles of Agreement or the 1973 timber Deed and was not aware that the Clough Farm timber rights of Fisher & Young and, thereafter, Matson, terminated April 1, 1978 (Carlisle, p. 76, line 9 through p. 77, line 3; p. 127, lines 8-14; Kookogey, p. 180, line 8 through p. 181, line 5).

Hare knew the following in 1994 through the December 19, 1997 verdict: (1) He (Carlisle) wanted "the timber company (Matson) to be off the property" (Hare I, p. 52, lines 9-22), (2) the goal was to "remove them from the property. . ." (Hare I, p. 88, lines 4-7, and (3) Carlisle wanted to "explore the assertion that all of the timber on the property (Clough Farm) should have been conveyed to (Carlisle). . . any timber harvested (by Matson) constituted money damages to (Carlisle)" (Hare I, p. 72, lines 17-23). Hare assumed the responsibility of determining what timber Carlisle owned and what timber Matson owned (Hare I, p. 91, lines 9-15). He assumed the responsibility of conducting the fact investigation to support the claims, including the trespass (Count V) and conversion (Count VII) claims, in the federal action (Hare I, p. 93, lines 12-17).

Hare never saw or read the document which conveyed the Clough Farm timber rights to Fisher & Young between 1994 and the December 19, 1997 verdict (Hare I, p. 134, lines 2-9). He knew that for Matson, to have any timber rights as Fisher & Young

-4-

Hardwoods' successor in interest, those rights would be conveyed in a deed recorded in the Warren County Court House (Hare I, p. 78, lines 11-18). He told Carlisle between 1994 and 1997 that he would be checking the Clough Farm property records in the Warren County Court House (Bush, p. 31, line 17 through p. 32, line 18; Carlisle, p. 34, lines 16-21, p. 83, lines 4-8). However, he was never in the Warren County Court House (Hare I, p. 61, line 7 through p. 61, line 23). He knew of Lauri Sekerak, a title searcher in Warren County, but he never called her to obtain the available Clough Farm timber ownership information from her (Hare I, p. 98, line 5 through p. 99, line 6; Sekerak, p. 6, lines 10-24, p. 14, lines 9-16). The standard of professional care requires a lawyer, similarly situated as Hare, in representing Carlisle for the "undertaking", described above, to have a title search performed to determine the identity of the timber owner (reports and affidavits of Will J. Schaaf, Esquire and Christine H. McClure, Esquire).

Even though Hare knew, as of May, 1997, that 7 million board feet of timber, having a market value in excess of $3.6 million, had been taken off the Clough Farm by Matson between 1988 and 1995, he claims he would not have requested a title search whether Matson had taken "$3.00" or "$300 billion" of timber (Hare 119, lines 16-25). A title search performed between 1994 and 1997 would have disclosed the following: (1) the only timber deed recorded after January 9, 1970 was the April 1, 1973 Kinkead to Fisher & Young timber Deed which terminated all Fisher & Young timber rights on April 1, 1978 and reverted those timber rights back to Kinkead and, by law, thereafter to Carlisle; (2) Fisher & Young never conveyed to Fisher & Young Hardwoods by deed any Clough Farm timber rights, (3) as a consequence of #2, Matson had no successor

-5-

in interest rights. Matson's agreement was with Fisher & Young Hardwoods, Inc., not Fisher & Young.

Matson was a trespasser on the Clough Farm from 1988 and thereafter, and not a licensee, as Hare believed (Hare I, p. 86, lines 10-11). Matson's trespasser status would have allowed Carlisle to recover damages for both the property damage and the cutting of $437,960 of Clough Farm timber taken by Matson less than two years prior to the March 15, 1995 filing of the federal action. Hare, knowing of Matson's trespasser statute, would cause legal counsel, similarly situated as Hare practicing in accordance with the standard of care, to know that, prior to the December 19, 1997 verdict, Matson had no timber rights to any Clough Farm trees, including the "1969 trees". This knowledge would have prevented Matson taking $100,000 to $200,000, or more, of additional timber off the Clough Farm in 2005 and 2006 and have a future claim to the remaining "1969 trees" on the 779 acres of commercial timber property on the Clough Farm (see James Hall's May 26, 2006 supplemental report and report of Christine H. McClure, Esquire).[3]

In December, 1997, prior to trial and/or prior to the December 19, 1997 verdict and without knowing who owned the Clough Farm timber, Hare caused Counts V (trespass) and VII (conversion) of the federal action to be dismissed without prejudice. Believing both Counts could be refiled in a second lawsuit which Hare ". . . talked to Bert, and the idea of carving out a part of the case to pursue in a separation action"

---

[3]Hare admits that knowing Matson's status on the Clough Farm, i.e., "trespasser" versus "licensee", would "enhance" Carlisle's chances of achieving one of Carlisle's goals in removing Matson from his farm and enlarged Carlisle's damage claim against Matson (Hare I, p. 88, lines 1-10, p. 89, line 23 through p. 90, line 1).

(Hare I, p 150, lines 2-4).  "Not only did I represent that, I told him that is something we could do" (Hare I, p. 155, line 25 through p. 156, line 1).  Both before and after the December 19, 1997 verdict and June 23, 1998, Hare made a series of representations to Carlisle about what Carlisle could reasonably expect to accomplish by filing the second action in Warren County.

Hare told Carlisle ". . . if he wanted to proceed on some big dollar theory,. . . A way to do it would be to carve out a part of the (federal action) and allow him to file that in another proceeding" (Hare I, p. 151, line 2).  Every Count in the federal action could allow for recovery of a "big dollar claim" (Hare I, p. 152, lines 6-11).  Hare told Carlisle he would prepare the documents necessary to refile the second claim against Matson in Warren County (Hare I, p. 155, line 21 through p. 156, line 5).  On June 23, 1998, Hare prepared a Praecipe for Writ of Summons on June 23, 1998 against Matson to be filed in Warren County by Carlisle which he sent by overnight mail to Lainard Bush for filing (Hare I, p. 176, line 13 through p. 179, line 5).

The June 23, 1998 Hare Praecipe for Writ of Summons was broad enough to include the conversion claim in Count VII of the federal action as ". . . Carlisle could file this same complaint (federal action) word for word. . . he would have encountered. . . res judicata as to. . . issues. . . already decided" (Hare I, p. 187, lines 16-20).  Hare believed the merits of these withdrawn claims were preserved by Hare's FRCP 41 dismissal with the Praecipe for Writ of Summons being filed within 1 year of the FRCP 41 dismissal as a consequence of the Pennsylvania "saving statute" (42 Pa.C.S.A. 5535) (Hare I, p. 183, lines 15-23; p. 185, lines 10-23).

Hare sent Bush the June 23, 1998 letter regarding "Additional Lawsuit against Matson" enclosing the Praecipe for Writ of Summons Hare prepared to initiate the second action with instructions for Bush to sign Carlisle's name and file the Praecipe in the Warren Court for Carlisle. Carlisle drove from Ashtabula, Ohio to Warren, Pennsylvania on June 24, 1998, believing there was now a "deadline" for Carlisle to sign and file the Hare prepared Praecipe (Bush, p. 45, lines 4-19; Carlisle, p. 59, line 10 through p. 60, line 16; p. 63, lines 1-3). "Scott sent a letter to Lainard Bush because we were running out of time. . . and we took it over to the Warren Court House. Scott prepared it and told us we better do it that day" (Carlisle, p. 59, line 24 through p. 60, line 5). In November, 1998, Peter Krembs, Esquire of Ohio assumed responsibility of preparing and filing the Complaint and thereafter the Amended Complaint for the Warren action initiated June 24, 1998 with the Hare Praecipe for Writ of Summons.

The Amended Complaint filed by Krembs in the Warren action contained four Counts, two of which included the refiled trespass and conversion Counts from the federal action dismissed by Hare in December, 1997. Carlisle first became aware that the trespass and conversion claims were voluntarily dismissed from the federal action after completion of the trial in the federal action and after the jury verdict (Carlisle, p. 40, lines 11-20; p. 43, line 20 through p. 44, line 23; p. 113, lines 10-15). In October, 2001, Matson filed a Motion for Summary Judgment in the Warren action, claiming these two refiled Counts (1) were not "saved" by 42 Pa.C.S.A. 5535 from a statute of limitations defense for conduct occurring more than 2 years prior to June 24, 1998, and (2) were barred by the res judicata effect of the December 19, 1997 verdict. On January 30, 2002, the Warren Court granted Matson's Motion for Partial Summary Judgment on the

two refiled claims, holding that Carlisle's pre-December 19, 1997 trespass and

conversion damage claims against Matson were barred by res judicata.  The Order

granting Matson's Motion for Partial Summary Judgment on the refiled trespass and

conversion counts and Hare's conduct in dismissing the trespass (Count V) and

conversion (Count VII) claims in the federal action, when he did not know who owned

the Clough Farm timber, have resulted in significant permanent harm and economic

damages to Carlisle, discussed on page 5 of this Brief.

II.    LAW:

     A.    STANDARD OF REVIEW.

     A Motion for Summary Judgment can be granted only if the pleadings,

depositions, Answers to Interrogatories and admissions on file, together with Affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.  Allegheny International, Inc. v.

Alllegheny Ludlum Steel Corp., 920 F.2d 1127 (3rd Cir. 1990).  A genuine issue of

material fact defeats a Motion for Summary Judgment.  Ciarlante v. Brown &

Williamson Tobacco Corp., 143 F.3d 139, 145, 149 (3rd Cir. 1998); Ideal Dairy Farms,

Inc. v. John Labatt Ltd., 90 F.3d 737, 743 (3rd Cir. 1996) ("the moving party bears the

burden of proving that no genuine issue of material fact is in dispute").  The non-moving

party is given the inferences from proven facts.  Ciarlante, supra, 143 F.3d at 149, n.

#7.  The record should be reviewed in the light most favorable to the party opposing the

Motion.  Graham v. F.B. Leopold Co., Inc., 779 F.2d 170, 172-73 (3rd Cir. 1985);

Bushman v. Halm, 798 F.2d 651 (3rd Cir. 1986); Wetzel v. Tucker, 139 F.3d 380, 383,

n. 3 (3rd Cir. 1998) (the non-moving party is given the benefit "of all reasonable

inferences"). It is entered only where there is not the slightest doubt as to the absence of a triable issue of material fact. Graham, supra, 779 F.2d at 172-73. A party having the burden of proof on a particular issue cannot obtain Summary Judgment if any of its proof is based on oral testimony, even if the oral testimony is uncontradicted. Nanty Glo Borough v. American Surety Co., 309 Pa. 236, 163 A. 523 (1932). See Curran v. Philadelphia Newspapers, 497 Pa. 163, 177-78, 439 A.2d 652, 662 (1981).[4] This Court is obligated to apply the substantive law of the forum state. Schroeder v. Commonwealth, Department of Transportation, 551 Pa. Super. 243, 710 A.2d 23, 25, 28, n. 9 (1998) (". . . a court cannot rely upon the oral statement of a witness of moving party to grant summary judgment"). As an example, the "reasonable strategic decisions defense" advanced by Hare, discussed on page 20 of Hare's Brief, and the 1973 timber deed being created by "mutual mistake", discussed on page 5, are both based on oral testimony of Hare and/or John Dennison, one of Matson's counsel, are subject to the rule in Nanty Glo, supra. Lastly, to the extent that any constructive notice is imputed to Carlisle as a consequence of the recording on April 20, 1973of the Kinkead to Fisher & Young timber deed or whether that after recorded deed is in Carlisle's "chain of title", this is a contested issue of fact (Sekerak, p. 24, lines 4-6; Sekerak Exhibit #9; Affidavit and report of Schaaf and McClure; Carnegie Natural Gas Co. V. Braddock, 142 Pa. Cmwlth. 383, 597 A.2d 285, 2800 (1990).

---

[4]See White v. Owens-Corning Fiberglas Corp., 447 Pa. Super. 5, 668 A.2d 136, 142 (1995) ("A witness' credibility is a determination for the jury and necessarily creates a genuine issue of material fact").

B.     THE STATUTE OF LIMITATIONS.

   1.    THE STATUTE OF LIMITATIONS DOES NOT START TO RUN
         UNTIL THERE HAS BEEN AN ACCRUAL OF THE CAUSE OF
         ACTION.

Defendants claim that the two year statute of limitations for Carlisle's claim against them commenced on December 19, 1997, or the date of the verdict in the declaratory judgment action when the jury returned a verdict (1) finding Matson had non-perpetual rights to the 1969 timber and (2) awarding$110,000 verdict for Matson's cutting of Carlisle's timber in the "no cut zone". Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1161 (3rd Cir. 1989) (statute of limitations is an affirmative defense and burden of establishing its applicability is on the defendant). From that verdict date continually through June 23, 1998, Hare represented to Carlisle that he could file and proceed in a second action against Matson, which Hare caused Carlisle to file in Warren County on June 23, 1998, which included the two refiled counts from the federal action, i.e., Counts V (trespass) and VII (conversion). Hare dismissed them prior to the December 19, 1997 verdict without the consent of Carlisle (Carlisle, p. 40, lines 11-20; p. 43, line 20 through p. 44, line 15; p. 113, lines 10-15). The Amended Complaint in the Warren County action following the Hare prepared Praecipe for Writ of Summons in June, 1998, contained a verbatim reproduction of Counts V and VII of the federal action. This action was filed within two years of the January 30, 2002 Warren County Order granting Matson Partial Summary Judgment on those two refiled Counts.

Until the Warren Court granted Matson Partial Summary Judgment on the two refiled counts in the Warren action Hare originally caused Carlisle to file on June 23,

-11-

1998, Carlisle had not incurred the harm to trigger the "accrual" of legal negligence claim. Centre County Concrete Co. v. AGI, 522 Pa. 27, 559 A.2d 516, 519 (Pa. 1989) (statute of limitations starts to run when claimant has right to apply to court for relief and not before). When the date of the negligent act is prior to the date when the resulting harm was first incurred, the statute of limitations starts on the latter of these two dates. See Bailey v. Tucker, 533 Pa. 237, 621 A.2d 108, 115 (1993) (". . . the rule in this Commonwealth is that the statutory period commences at the time the harm is suffered or, if appropriate, at the time the alleged malpractice is discovered"). See DeAngelis v. Newman, 250 Pa. Super. 536, 504 A.2d 1279, 1284 (Pa. Super. 1986) (". . .the statute of limitations does not begin to run until the cause of action accrues. . . an action accrues only when a party has the right to institute suit"). Barnes v. American Tobacco Co., 161 F.3d 127, 136 (3rd Cir. 1988) (a claim under Pennsylvania law accrues at "the occurrence of the final significant event to make the claim suable").

In legal malpractice cases, the "occurrence rule" is modified by the "discovery rule". Fiorentino v. Rapoport, 1997 LEXIS 572, 693 A.2d 208 (1997) (". . . the occurrence rule is used to determine when the statute of limitations begins to run. . . the statutory period starts to run when the harm is suffered or, if at the time,. . . alleged malpractice is discovered"). Before the January 30, 2002 grant of Partial Summary Judgment on Counts 1 and 4 of that action, Carlisle had not suffered the damages, nor discovered the "malpractice" required to trigger an accrual of the action against Hare. Bailey, supra; DeAngelis, supra; Fiorentino, supra.

Until there has been an adverse resolution of some or part of the underlying action caused to be filed at the recommendation of legal counsel accompanied by the

representations made here to Carlisle of what Carlisle could expect to recover in that second action, there has not been the accrual of the cause of action to commence the running of the statute of limitations.  See Barnes, supra;  Brown v. Abramson, 545 F. Supp. 227, 228 (E.D. Pa. 1982) ("until the underlying malpractice case is decided adversely to the plaintiff, the cause against the former attorney is speculative"); Boerger v. Levin, 812 F. Supp. 564, 565-66 (E.D. Pa. 1993) ("until the client's claim is adversely resolved by the court, the client has not incurred actual harm or loss").  For application of Brown, supra and Boerger, supra, the "underlying case" here is the Warren action Hare caused Carlisle to file on June 24, 1998.

### 2.   DISCOVERY RULE.

Prior to Scott Hare preparing and sending the Praecipe for Writ of Summons on June 23, 1998 and recommending that Carlisle file it in Warren County against Matson for the Counts and claims originally pled but not resolved in the December 19, 1997 verdict in the federal action, he represented:

> 1.   Carlisle had "won" the first action which allowed Carlisle to file a second action against Matson to recover damages not awarded in the December 19, 1997 verdict (Hall, p. 86, line 16 through p. 87, line 4); after the December 19, 1997 verdict in the federal declaratory judgment action, Hare advised Carlisle he had won, indicating ". . . I don't understand why you're so unhappy, we won. . . this is a first step and sets the stage for what is to come. . ." (Bush, p. 19, lines 19-24).  Hare represented that while the federal declaratory judgment action was limited in scope, the second

-13-

lawsuit against Matson would allow Carlisle the opportunity to obtain a satisfactory damage award from Matson's pre-December 19, 1997 conduct (Bush, p. 20, lines 2-9)

2.    Carlisle's second action against Matson had a "$5 million" settlement value (Hare Exhibit "23", p. 5-6; Hare I, p. 208, line 12 through p. 209, line 3); the second action filed in Warren County would provide the means to allow Carlisle to obtain a "home run damage award" against Matson (Hare I, p. 209, lines 16-25);

3.    Carlisle could file a second action against Matson in Warren County for any claim within the ten Counts of the federal declaratory judgment action which had not been resolved by the December 19, 1997 verdict, providing Carlisle filed a Praecipe for Writ of Summons within one year after the December 19, 1997 federal declaratory judgment action verdict (Hare I, p. 185, lines 10-23 and p. 187, lines 12-20; Hare II, p. 16, line 10 through p. 17, line 9; p. 20, line 13 through p. 22, line 6);

4.    Carlisle's second action filed on June 23, 1998 in Warren County was timely and not subject to any statute of limitations defense regarding Matson's conduct occurring between March 15, 1993 and the March 15, 1995 filing date of the federal action. nor subject to the bar of res judicata, if the refiled Counts or claims had not been actually resolved by the December 19, 1997 jury verdict (Hare I, p. 155, line 21 through p. 156, line 5; p. 185, lines 10-23; Hare II, p.

-14-

13, line 15 through p. 15, line 3); according to Hare, both the refiled trespass and conversion claims would allow Carlisle to claim damages for Matson's 1993 through 1995 conduct on the Clough Farm (Hare II, p. 16, line 10 through p. 17, line 9);

5.      Carlisle's Matson claims could be divided into two separate lawsuits (Bush Deposition, p. 41, line 3 through p. 44, line 19). The first lawsuit on the federal declaratory judgment action would relate to liability (Bush, p. 41, lines 23-25). The second lawsuit filed in Warren County would present Carlisle's damage claim against Matson (Bush, p. 42, lines 1-7); between December 19, 1997 and June 23, 1998, the value of the dismissed claims to be refiled in Warren were "about $5 million" (Carlisle, p. 153, line 21 through p. 154, line 3; p. 154, lines 12-25);

6.      In a January, 1998 meeting in Ashtabula, Ohio, Hare represented that Carlisle's damages in the second action included property damage and damages for Matson's tree cutting (Bush, p. 47, line 15 through p. 48, line 2), including a damage claim for ". . . cutting of trees and property damage" not pursued in the federal declaratory judgment action (Bush, p. 49, lines 10-22);

7.      Prior to the federal declaratory judgment action, Hare represented he would check the Warren property records (Bush, p. 31, line 17 through p. 32, line 18).  There were a lot of "questions surrounding. . . the history of ownership. . . one of the things he (Hare) would be

-15-

doing was going to the Warren County Court House and going

through all those records so all those questions could be answered.

Those involved titles. . ." (Bush, p. 32, lines 6-15).

The Warren Court granting Partial Summary Judgment to Matson on the "refiled

Counts" 1 and 4 of the second action is the first Court action in either the federal or

Warren actions which provided Carlisle notice that he could not make the recovery

against Matson which Hare represented to Carlisle he could make, discussed in

paragraphs 1-7 on pages 10-12 of this Brief. Carlisle relied on Hare's representations

and did not know that Hare's representations were not true (Carlisle, p. 61, lines 8-12;

p. 72, lines 8-9; p. 73, lines 14-18; Hall, p. 88, lines 2-7). Hare claims Carlisle knew, or

should have known, as of the December 19, 1997 verdict date that Hare's representa-

tions made before, at the verdict and through June 23, 1998, discussed on pages 10-12

of this Brief, were not true and knew, or should have known, as of December 19, 1997

that he could not proceed against Matson in the Warren action for Matson's pre-March

15, 1995 conduct. That he knew, or should have known, that Matson's timber rights

had expired on April 1, 1978, when Fisher & Young's timber rights expired, and knew,

or should have known, that Hare was negligent in not causing a title search to be done

to ascertain that fact, even though Hare had previously advised Carlisle that he had

personally checked the Warren property records to determine the identity of record

property owners of the Clough Farm timber prior to trial (Bush, p. 32, lines 6-15;

Carlisle, p. 34, lines 10-21; p. 35, lines 10-15).

Carlisle could rely on Hare's pre-June 24, 1998 representations. Hughes v.

Consol-Pennsylvania Coal Co., 945 F.2d 594, 614 (3rd Cir. 1991) (representations of

-16-

fact or opinion made by legal counsel a person who is supposed to possess superior knowledge may be relied upon by a lay person); <u>Drelles v. The Manufacturers Life Insurance Co.</u>, 2005 Pa. Super. 249, 881 A.2d 822, 841 (Pa. Super. 2005) (". . . in view of that trust placed in insurance agents, it is not unreasonable for consumers to rely upon the representations of the expert rather than the contents of the insurance policy itself. . ."). Hare was acting as a "fiduciary" as to Carlisle to the same extent as the insurance agent in <u>Drelles</u>, <u>supra</u>; <u>Capital Care Corp. V. Hunt</u>, 2004 Pa. Super. 64, 847 A.2d 75, 84 (Pa. Super. 2004) (". . . attorney who undertakes representing client owes duty of competent representation and highest duty of honesty, fidelity. . ."); <u>Hyman Companies, Inc. V. Brozost</u>, 119 F. Supp. 2d 499, 505 (E.D. Pa. 2000) (counsel ". . . owed fiduciary duty to plaintiff. . . breach of fiduciary duty. . . actionable under Pennsylvania law").

The "discovery rule" applies to legal malpractice cases to establish the date when the statute of limitations starts to run after legal counsel has committed a negligent act when the harm or damages are not immediately known. <u>See</u> <u>Bailey v. Tucker</u>, <u>supra</u>, 612 A.2d at 115 (". . If appropriate at the time the alleged malpractice is discovered"); <u>Robbins & Seventko Orthopedic Surgeons v. Geisenberger</u>, 449 Pa. Super. 367, 674 A.2d 244, 248 (1996) (legal counsel's negligent act occurred in 1976 and 1977 but the two year statute of limitations did not start to run until 1983, 7 years later). When a party should be aware they have suffered an injury for these purposes is a fact issue to be resolved by a jury. <u>Coregis Insurance Co. v. Baratta & Fenerty, Ltd</u>, 264 F.3d 203, 207 (3rd Cir. 2001).

-17-

Pennsylvania has enlarged the discovery rule. See Fine v. Checcio, 582 Pa. 253, 870 A.2d 850, 2005 Pa. LEXIS 592 (2005); Drelles, supra, 881 A.2d at 837-39. Fine, supra and Drelles, supra are both relevant here because (1) the defendants in those actions were professionals, as is Hare; (2) those professionals made representations which prevented the claimants from timely knowing of their resulting harm because of the conduct of those professionals; (3) if anything, each authority expanded the application of the discovery rule; (4) both held that there were fact issues which preclude a trial court granting summary judgment; (5) both were decided on a date after all the authorities were relied upon by the Defendants; and (6) neither were mentioned in the Defendants' Brief.

Both Fine, supra, 870 A.2d at 861-62, and the companion case of Ward v. Rice, decided in conjunction with Fine, supra, involved dental injuries. The dentists made assurances to the plaintiffs that their resulting dental numbness was transitory and would disappear over time. Hare made similar type assurances to Carlisle. He told Carlisle, on and after the December 17, 1997 verdict, that what hadn't been recovered in the declaratory judgment action could be recovered in the second action. Hare represented ". . . Carlisle could have filed this same complaint, word for word, and every Count in there. . ." that hadn't been resolved by the December 19, 1997 verdict in the second action in Warren County (Hare, p. 187, lines 16-20).

The purpose of the discovery rule is ". . . to exclude from the running of the statute of limitations that period of time during which a party has not suffered an immediately ascertainable injury and is reasonable unaware he had been injured. . ." Fine, supra, 870 A.2d at 858 ("the discovery rule always applies to toll the statute of

limitations if, at the time the injury occurs, the injury or its cause is neither known nor reasonable knowable").  Both at and after the time of the December 19, 1997 verdict, Hare represented to Carlisle that he could make a "home run" damage recovery in the second action to be filed in Warren County in June, 1998 (Hare I, p. 209, lines 16-25 ). In March, 1998, three months after the December 19, 1997 verdict, the settlement value of the second action was "$5 million".[5]  Carlisle understood Hare believed the settlement value of the refiled claims in Warren County was $5 million (Carlisle, p. 153, line 21 through p. 154, line 3, lines 20-25).  Carlisle was ". . . optimistic that there were considerable damages to recover in the second action" against Matson (Bush, p. 53, lines 7-11).

"The statute of limitations does not begin to run until the injured party discovers or reasonably should discover that he has been injured and his injury has been caused by another party's conduct." Fine, supra, 870 A.2d at 859.  In Fine, supra, the Court reversed the trial Court's grant of Summary Judgment and the Superior Court's affirmance, holding these issues were all jury issues.  In Ward, supra, the trial Court granted Summary Judgment, but the Superior Court holding that there were fact issues

_____

[5]In the March 18, 1998 Third Circuit mediation memo, a copy of which was sent to Carlisle on March 23, 1998, Hare represented as part of the settlement demand ". . . Matson pay damages in the amount of $5,000,000. . . Carlisle would expect to be paid damages well in excess of the verdict ($110,000). . . Carlisle intends to file another lawsuit in state court. . . Carlisle would be willing to renew his prior settlement offer. . . $5,000,000. . ." Considering this demand made by Hare was 3 months after the December 19, 1997 verdict of $110,000, Carlisle could infer that the $5 million demand related to the Warren action Hare instructed Carlisle to file on June 23, 1998. "He (Hare) always held out a value of about $5 million" as to the residual value of the two dismissed claims during the first six months of 1998 (Carlisle, p. 153, line 21 through p. 154, line 3).

-19-

regarding application of the discovery rule and that holding was affirmed by the Court.
Prior to the Warren Court holding on January 30, 2002, in effect, that all of Hare's
representations to Carlisle, previously enumerated, were not true, Carlisle did not know
he could not make a damage recovery against Matson on the refiled trespass and
conversion claims in the Warren action (Carlisle, p. 65, lines 9-22; p. 67, lines 1-6).

Drelles, supra, 870 A.2d at 832-35, was decided after Fine, supra and held the
trial Court incorrectly granted Summary Judgment when there were fact issues
regarding affirmative representations by the Defendant and fact issues regarding the
reasonableness of the Plaintiff's reliance on those representations in delaying filing suit
against the Defendant "if the issue in a case involves a factual determination of what
constitutes a reasonable time for the Plaintiff to discover his or her injury or its cause,
this issue is usually for the jury". Drelles, supra, 870 A.2d at 834.

Hare sent Carlisle a bill ($260.00) on February 7, 1999 for preparing the June 23,
1998 Praecipe for Writ of Summons to initiate the Warren action (Hare Exhibit #54).
There was no event occurring after February, 1999, as a matter of law, which would
cause Carlisle not to continue to believe and rely on Hare's affirmative representations
regarding the Warren action as being the action in which Carlisle could make a
recovery of damages against Matson not recovered in the federal action. Whether
Carlisle knew, or should have known, that Hare's multiple representations were not true
and/or that he had no trespass, damage or conversion claim against Matson for it
timbering this property for two years prior to March 15, 1995 until the Warren Court, on
January 30, 2002, granted Matson's Motion for Summary Judgment are jury issues.
Drelles, supra and Fine, supra.

-20-

3.    EQUITABLE TOLLING.

Pennsylvania recognizes "equitable tolling" as a basis for extending the statute of limitations separate from the "discovery rule". This doctrine applies to professionals, such as insurance salesmen and lawyers. See Drelles, supra, 881 A.2d at 839-41; Sweitlowich v. County of Berks, 610 F.2d 1157, 1162 (3rd Cir. 1979) (". . . unintentional deception will suffice and its effect upon the plaintiff. . . which controls"); Bohus v. Beloff, 950 F.2d 919, 925-26 (3rd Cir. 1991) (unintentional concealment which causes a plaintiff to be mislead from discovery of his injury tolls the statute of limitations); Commonwealth Department of Public Welfare v. NEC, Inc., 483 Pa. 503, 513 (unintentional deception sufficient to create an estoppel against the running of the statute of limitations); and Slenkemp v. Borough of Brentwood, 603 F. Supp. 1298, 1303, 1985 U.S. Dist. LEXIS 21922 (E.D. Pa. 1985) ("equitable tolling" applicable to toll the running of the time period to file action because of assurance made by Borough's agents including the Borough solicitor).

Hare told Carlisle he could file a second action against Matson after the December 19, 1997 verdict, that he could make a "home run" recovery in that second action, that the second action had a $5 million settlement value, that a timely filed second action would preserve all federal action counts not resolved by the December 19, 1997 verdict. Hare told Carlisle, per Hare's June 23, 1998 letter, that he should file the Praecipe for Writ of Summons Hare enclosed with that letter on June 24, 1998, or as soon as possible, to make it timely filed. These were all affirmative representations which were relied upon by Carlisle to proceed, in June, 1998, to file the second claim against Matson. Drelles, supra, 870 A.2d at 839-41. Bilt-Rite Contractor, Inc. v. The

-21-

Architectural Studio, 581 Pa. 454, 866 A.2d 270, 287 (2005) ("we. . . adopt Section 552 as the law in Pennsylvania where information is negligently supplied by one in business of supplying information. . .").

Carlisle, believing he could recoup damages (not recovered in the federal action) in the Warren action placed reliance on Hare's representations in filing and maintaining the second action against Matson (Carlisle, p. 61, lines 8-12; 72, lines 8-9; p. 73, lines 15-16; Bush, p. 19, lines 19-24; p. 20, lines 2-9; Hall, p. 88, lines 2-7). The Hare representations set forth in paragraphs 1-7 on pages 12-15 of this Brief, are all actionable per §552, Restatement (Second) of Torts; Bilt-Rite, supra; Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889, 891 (Pa. 1994) (adoption agency's misrepresentations to adoptive parents as to health of child actionable under §552, Restatement (Second) of Torts).[6]

---

[6]See Paragraphs 13(b) and 15 of Carlisle's Amended Complaint, which set forth a prima facie negligent misrepresentation claim per §552, Restatement (Second) of Torts:

> "(b) Represented to the Plaintiff, Albert T. Carlisle, that any claim for damages recoverable for trespass and conversion under the dismissed counts, made reference to in (a), above, could be made by Carlisle against Matson in a subsequent action against Matson after the federal declaratory judgment action was resolved."

> "15). . . Plaintiff thereafter, in reliance upon the representations of the Defendant Law Firm that the trespass and conversion claims could be refiled in a subsequent action with other counsel, filed a four Count Complaint on November 11, 1998 against Matson in the Court of Common Pleas of Warren County, Pennsylvania. Two counts of that Complaint were, in substance, the dismissed trespass and conversion claims, and/or Counts V and VII, in the federal declaratory judgment action complaint."

Whether Carlisle acted reasonably in relying on Hare's representations as being true and not filing action against Hare until the Warren Court granted Matson's Motion for Partial Summary Judgment on January 30, 2002 are jury issues, the same as they were jury issues in Drelles, supra, 870 A.2d at 841 ("the right to rely upon a representation is generally held to be a question of fact. . . Furthermore, the issue of justifiable reliance cannot be resolved without considering the relationship of the parties involved and the nature of the transaction"). Hare's statements to Carlisle about the potential value of his Warren action against Matson were made during the time when Hare had a fiduciary relationship with Carlisle. Hyman Companies, Inc., supra, 119 F. Supp. 2d at 505. Assuming that Hare's representations to Carlisle about what Carlisle would likely realize from Matson in the Warren action, either by goals or by damages, i.e., a "home run award", $5 million", were "unintentional", they are sufficient to extend the time when the statute of limitations starts to run until Carlisle knew they were not true. Drelles, supra, 881 A.2d at 839-41; Sweitlowich, supra, 610 F.2d at 1303; Bohus, supra, 950 F.2d at 925-26; Acker v. Palena, 260 Pa. Super. 214, 393 A.2d 1230 (Pa. Super. 1978) ("unintentional deception" sufficient to toll running of statute of limitations).

### 4.    DEFENDANTS' AUTHORITIES:

Defendants' authorities on pages 7 through 16 of their Brief can be divided into two subject matters. One is statute of limitations.[7] The other is constructive notice[8]. Either

---

[7]Robbins & Seventko, supra, 674 A.2d 244; Glenbrook v. Beusang, 839 A.2d 437 (Pa. Super. 2003), affm'd., 881 A.2d 126 (Pa. 2005); Bailey v. Tucker, 621 A.2d 108 (Pa. 1993); Harsco Corporation v. Kerkam, 961 F. Supp. 104 (M.D. Pa. 1997); Petit v. Smith, 241 BR 847 (E.D. Pa.); Garcia v. Community Legal Services, 524 A.2d 980 (Pa. Super. 1987); Dalyrmple v. Brown, 701 A.2d 164, 167 (Pa. 1997); Bradley v. Ragheb, 633 A.2d 192 (Pa. Super. 1996); Cost v. Cost, 677 A.2d 1750 (Pa. Super.

by inadvertence or intention, Defendants failed to address their statute of limitations

defense in the context of the second underlying action, or the Warren action. Hare

persuaded Carlisle to file that action with the initiating suit papers prepared by Hare and

specific representations Hare made with respect to what Carlisle could achieve as it

related to Hare's voluntary dismissal without Carlisle's consent of the Count V

(trespass) and VII (conversion) claims.

The statute of limitations cases relied upon by Hare are all factually

distinguishable from that issue presented here because (1) this action includes two

underlying actions, not one, (2) Carlisle filed claim within two years of the first adverse

ruling in the second underlying action; (3) none of those cases involve the specific type

of oral representations and assurances made by Hare to Carlisle after he acted

negligently with regard to the first underlying action, which assurance caused Carlisle to

file the second underlying action at Hare's recommendation (see the specific

---

1996); Moore v. McComsey, 459 A.2d 841 (Pa. Super. 1983); Moore v. Juvenal, 92 Pa.
484, 490 (Pa. 1880); Saferstein v. Paul, Mardinly, Durham, James, Flandreau &
Rodger, P.C., 1997 WL 102521 (E.D. Pa. 1997) Spillman v. Wallen, 1996 WL 379558
(E.D. Pa. 1996), affm'd., 111 F.3d 127 (3rd Cir. 1997); Estate of Spry v. Beaty, 2004
WL396287 (Ind. App., 3/4/04); Knapp v. Murphy, 30 PA D&C 4th 136 (1996); McD v.
Rosen, 621 A.2d 128, 131 (Pa. Super. 1993); Bailey v. Lewis, 763 F.Supp. 802, 806-07
(E.D. Pa. 1991), affm'd., 950 F.2d 721 (3rd Cir. 1991); and Igbonwa v. Cameron, 2004
WL 257358 (E.D. Pa. 2/04).

[8]Weik v. Estate of Brown, 794 A.2d 907 (Pa. Super. 2002); Mancine v. Concord-
Liberty Savings & Loan Assoc., 445 A.2d 744 (Pa. Super. 192); In Re: Johnston, 333
BR 724 (W.D. Pa. 2005). In Johnston, supra, 333 BR 734, if anything is supportive of
Carlisle's position ("as we understand the law in Pennsylvania, a purchaser seeking to
avoid a mortgage against property he or she has purchased does not qualify as a bona
fide purchaser if the targeted mortgage was duly recorded"). As to Carlisle, the 1973
Kinkead to Fisher & Young timber deed was not duly recorded, as it was recorded in
non-compliance with 21 P.S. 521, 522, 351 and 357.

assurances made by Carlisle enumerated in Paragraph 1-7 on pages 9-11of this Brief); (4) because of #1 and #2, none of these authorities address the discovery or equitable tolling issues specifically discussed in Fine, supra, Drelles, supra and Acker, supra, 260 Pa. Super. at 222 ("unintentional deception" based upon assurances to plaintiff after actionable conduct sufficient to toll statute of limitations).

The constructive notice cases are distinguishable: (1) none involve imputation of constructive knowledge to a property owner in possession of knowledge of a deed recorded on a date after the property owner's deed was recorded; (2) none involve the application of 21 P.S. 521 (sale of timber or bark by deed), 21 P.S. 522 (Deeds to be recorded; effect; evidence) (". . . deed (timber). . . when so recorded shall be notice to subsequent purchasers. . . and removal of said timber. . . may be limited by the terms of said deeds. . ."); (3) none involve the application of the Pennsylvania statutes, 21 P.S. 351 and 357; and (4) non hold that a property owner by deed is held to have constructive notice of "after recorded" deeds and/or that such after recorded deeds are not considered void as to party having a pre-recorded deed of real property. See Walsh v. East Pikeland Township, 829 A.2d 1219, 1222-23, 2003 Pa. Commw 542 (Pa. Commw. 2003).

A property owner's chain of title ends with his deed. See Pittsburgh Coal & Coke, Inc. V. Cuteri, 404 Pa. Super. 298, 500 A.2d 790, 795 (Pa. Super. 1991) (". . . tracing one's title ownership to property back to its date of origination of land grant up to the time of closing - euphemistically referred to as a 'chain of title', Black's Law Dictionary 290 (Revised 4th Ed. 1986)"). See, also, Eltman v. Harvey, 93 Misc. 2d 634, 403 N.Y. 2d 428 (N.Y. 1978) ("the chain of title to real property is the succession of

-25-

deed or other instruments to which titled is traced back to. . ."). Carlisle's chain of title

ends on January 9, 1970. By definition, it does not include the April 20, 1973 Kinkead

to Fisher & Young timber deed. Lauri Sekerak agrees this 1973 timber deed was not in

Carlisle's chain of title "Q. . . and the chain of title for the surface, would that include

timber deeds for the timber? A. No." (Sekerak, p. 24, lines 4-6).

By statute, Carlisle is not held to have constructive notice of a deed recorded

after his chain of title ended on January 9, 1970. See 21 P.S. 522 (Deeds to be

recorded; effect; evidence) (". . . deeds (timber). . . recorded. . . in the county where

such land is located. . . and when so recorded are notice to subsequent purchasers. .

."); 21 P.S. 357 (constructive notice as a result of recordation) ("the legal effect of

recording such agreements shall be to give constructive notice to subsequent

purchasers. . ."). Carlisle is not held to have constructive notice of the 1973 timber

deed which terminated Fisher & Young's timber rights on April 1, 1978 during the time

Carlisle was represented by Hare between 1994 and 1998 as a consequence of the

statutory language in 21 P.S. 522, 357, set forth above,

The burden of proving actual or constructive notice of the after recorded 1973

timber deed is on Hare in these proceedings. He is asserting a Matson defense to the

federal action and as if Carlisle had made claim against Matson in that action, based

on the after recorded 1973 Kinkead to Fisher & Young timber deed. See Carnegie,

supra, 597 A.2d at 288 ("the burden of proving notice (actual or constructive) is upon

the party asserting unrecorded rights in the property").

Per 23 P.S. 351, the 1973 timber deed is an "unrecorded" right in the property of

Carlisle. Neither Fisher & Young nor Matson, even if they were, in fact, the successor

-26-

to Matson, could make a claim against Carlisle based on a void deed.  Lesnick v.

Chartiers Natural Gas Co., 2005 Pa. Super. 436, 889 A.2d 1282, 1285 ("the Lesnicks

had notice of claim of the 1924 lease but no notice of claim under the purported 1948

lease").  A property owner is not charged with actual or constructive notice of "after

recorded deeds.  Finley v. Glenn, 303 Pa. 131, 136, 154 A. 299 (1931) ("if a deed. . . of

land. . . is duly recorded, the record is constructive notice to a subsequent purchaser of

the latter parcel"); Walsh, supra, 829 A.2d at 1222-23 (declarations of restrictions filed

of record after property owners considered void and property owner not charged with

constructive notice of a void deed as defined by 23 P.S. 351).

Carlisle's first actual knowledge of the 1973 timber deed was after January 30,

2002, when the Warren Court granted Matson Partial Summary Judgment (Carlisle, p.

75, line 17 through p. 77, line 3).  If constructive notice of the after recorded 1973

timber deed is imputed to Carlisle, it does not preclude Carlisle from relying on Hare's

representation thereafter as a fiduciary as to the validity, type and dollar amount of

claim Carlisle could file and recover against Matson in the Warren action and/or his

representation that he was going to check the available Clough Farm records in the

Warren County Recorder of Deeds office for Carlisle.  Hughes, supra, 945 F.2d at 614;

Hyman Companies, Inc., supra, 119 F. Supp. 2d at 505 (legal counsel's misstatements

to client are a breach of counsel's fiduciary duty and actionable under Pennsylvania

law).

If Carlisle is held to have constructive knowledge of the 1973 Kinkead to Fisher &

Young timber deed, it establishes that Carlisle knew Fisher & Young's rights under the

deed ended April 1, 1978.  However, without Hare, his legal counsel, conducting a title

-27-

search in the 1994 through 1997 time period and confirming that neither Fisher &

Young nor Matson received any other deed from Kinkead after April 1, 1978 and

thereafter, prior to Matson's first timber cutting in 1988, and also being aware of the

relevance and importance of the <u>Saltonstall v. Little</u>, 90 Pa. 422 (1879) holdings,

Carlisle would not have knowledge he owned all the Clough Farm timber during the

pendency of the federal action between 1995 and the December 19, 1997 verdict.

      C.    FACTUAL CAUSATION:

      Hare claims his conduct, or lack thereof, described in the reports and affidavits of

Will J. Schaaf, Esquire and Christine H. McClure, Esquire could not be found to have

caused Carlisle harm and damages recoverable under the controlling law.  Regardless

of whether the Court applies the "but for" standard or whether it applies the "substantial

factor" standard, a jury could find that the failure of the Defendants to conduct the

required investigation required by the standard of care, i.e., a title search of the Clough

Farm or its equivalent, combined with the dismissal thereafter, without Plaintiff's

consent, of Counts V (trespass) and VII (conversion) from the federal action precluded

Plaintiff from (a) recovery of $437,960 timber removed by Matson between 1993 and

1995 which belonged to Carlisle as of that time period; (b) physical damages to

Carlisle's land between 1993 and 1995; (c) recovery for the $100,000 to $200,000, or

more, of timber removed by Matson in the 2005-2006 timber cutting; (d) recovery for the

value of the "1969 trees" remaining on the Clough Farm after the 2005-2006 timbering

ended, described in (c); (e) preclusion of Plaintiff from securing judicial relief to preclude

Matson's re-entry as a trespasser, not a licensee, onto the property after December 19,

1997; and (f) statutory damages available per 42 Pa.C.S.A. 8322 for the timber cutting,

described in (a) and (c), above); and (g) a cloud on Carlisle's title to the property. See Lubecki v. Omega Logging, Inc., 674 F. Supp. 501 (W.D. Pa. 1987) (landowner dispossessed of timber wrongfully cut has conversion claim against timber company for conduct of its subcontractors). Baram v. Farugia, 606 F.2d 42, 44 (3rd Cir., 1979) (". . . conversion. . . premised on the theory that the defendant had appropriated the plaintiff's chattel, for which he must pay").

Attorney malpractice claims "involve traditional" negligence issues, i.e., duty, breach, causation. Atkinson v. Haus, 424 Pa. Super. 406, 622 A.2d 983, 986 (1993). Proof that a defendant lawyer's conduct was below the standard of care was a substantial factor in causing the claimed harm and damages establishes factual causation. See Sections 10.14 and 3.15 of Pennsylvania (Civil) Jury Instructions; Duke & Co. V. Anderson, 275 Pa. Super. 65, 71, 418 A.2d 613, 616 (Pa. Super. 1980) ("the orthodox view. . .must establish by the preponderance of the evidence. . . that he would have recovered a judgment in the underlying action. . ."); Williams v. Bashman, 457 F. Supp. 322, 325 (E.D. Pa. 1978) (if "preponderance of evidence" establishes client would have prevailed in the underlying action, this is sufficient). The "but for" standard is a lesser standard than the substantial factor standard but "the two standards are not significantly different". See Takach v. B.M. Root Co., 279 Pa. Super. 167, 171, 420 A.2d 1084 (1980). If a "but for" standard controls, evidence which meets the substantial factor standard suffices. Takach, supra. "Factual causation" is a jury issue. See Seibert v. Nusbaum Stein Goldstein Bronstein & Compeau, P.A., 167 F.3d 166, 171 (3rd Cir. 1999) (fact issues on causation issue preclude summary judgment).

-29-

After April 1, 1978, Matson had "no rights whatsoever and were trespassers on the lands of Carlisle" (Will J. Schaaf, Esquire's April 15, 2004 report). "If. . . proof that Matson, on and after April 1, 1978, was on the property as a trespasser had been offered into the evidence in the federal action and the withdrawn trespass claim had been pursued to verdict, there was a substantial probability that Carlisle would have made a recovery for trespass damages in the federal action. . ." (Will J. Schaaf, Esquire's April 15, 2004 report). Proving that the lawyer's conduct was below the standard of care in the previous action and was the cause of resulting harm and damages by expert testimony is the approved method of proving factual causation. See Honeywell, Inc. V. American Standards Testing Bureau, Inc., 851 F.2d 652, 655 (3rd Cir. 1988).

As a result of Hare dismissing both Counts V (trespass) and VII (conversion) and in not knowing that Matson was a "trespasser" on the Clough Farm, Hare precluded Carlisle from recovering, either in the federal action and the Warren action, the "home run" damage recovery for Matson's cutting and conversion of the Clough Farm timber between 1993 and 1995, which then belonged to Carlisle as a matter of law.[9] Matson, during the 1993-1995 time period, less than two years prior to the filing of the federal

---

[9]See the report of Christine H. McClure, Esquire. On and prior to 1993, the timber rights which reverted to Kinkead on April 1, 1978 became Carlisle's timber because it was "personalty" and had become part of the land. See Saltonstall v. Little, 90 Pa. 422, 1879 LEXIS 271 (1879) ("It was a reservation of the timber for 12 years and no longer. After that time, the trees remaining passed with the grant of the soil to which it (the timber) was attached." When the timber passed to Fisher & Young in 1973, it was considered "personalty" to avoid the transfer tax for the value of the timber and Fisher & Young had not more than 10 years to recover this timber (Kookogey, p. 76, lines 15-24; p. 84, lines 9-25; p. 94, lines 9-24).

action, alone, cut and converted $437,960 of Clough Farm timber (James Hall's

October, 2005  report and affidavit).  See Rizzo v. Haines, 520 Pa. 484, 555 A.2d 58,

66 (Pa. 1989) (lawyer violates standard of care in resolving client's claims without

client's consent); Reutzel v. Douglas, 582 Pa. 149, 870 A.2d 787, 790 (Pa. 2005) (". . .

parties settling legal disputes forfeit substantial rights and such rights shall only be

forfeited knowingly"); see comment (e), §22, Restatement (Third) of the Law which

provides, in part, ". . . lawyers cannot settle a claim without client authority, they cannot

enter a stipulation of consent judgment that will similarly foreclose client rights".  A

prima facie claim for violation of 42 Pa.C.S.A. 8322 against Matson were satisfied by

the proof that (1) Matson, between 1993 and 1995, was on the Carlisle property as a

trespasser, (2) the timber cut from the property during that two year time period

belonged to Carlisle, and (3) the dollar value of the timber taken.  See 42 Pa.C.S.A.

8311(a) (". . . a person who cuts and removes timber of another shall be liable to that

person in civil action for an amount of damages equal to. . ."); Universal Premium

Acceptance Corp. V. York Bank & Trust Co., 69 F. 3d 695 (3rd Cir. 1995) ((". . .

conversion is deprivation of another's right of property. . without the owner's consent

and without legitimate justification"); Crawford v. Forest Oil Co., 208 Pa. 5, 57 A. 47

(1904) (one who wrongfully converts property which has been wrongfully severed from

the real estate of another has committed a trespass against both realty and personal

property); Baker v. Lewis, 150 Pa. 251, 254 (1892) ("defendants taking plaintiff's grain

"did so without legal justification and became trespasser and jury should have been

directed to find for the plaintiff).  This Court has followed Crawford, supra and Baker,

supra in Lubecki, supra.

-31-

In addition, Carlisle has also been deprived of making a recovery for the pre-December 19, 1997 property damage caused by Matson as a trespasser, deprived of precluding Matson from reentry onto the property after December 19, 1997 and deprived of having the right to have precluded Matson from taking the timber recently cut in the November, 2005 through March, 2006 timbering, which is estimated to have caused an additional $100,00 to $200,000, or more, loss, and deprived of making a recovery for the cloud on his title to the approximate 779, or more, acres of commercial timber property where Matson has an indeterminate right to timber the "1969 trees" it never owned prior to the December 19, 1997 verdict (James Hall's May 26, 2006 supplemental report and affidavit; report and affidavit of Christine H. McClure, Esquire).

D.   DUTY TO DETERMINE OWNER OF TIMBER.

Hare claims neither his undertaking to Carlisle nor the standard of care owed to Carlisle in filing the claims set forth in the ten Counts of the federal action, described in Hare's November, 1994 memorandum to Carlisle, required Hare to know the identity of the owner of the Clough Farm timber between 1988 and 1995, when Matson timbered the property. The customary engagement letter establishing the scope fo Hare's undertaking to Carlisle cannot be located (Hare I, p. 38, lines 12-17; p. 69, line 3 through p. 70, line 21). Hare's "undertaking" to Carlisle was defined by his November, 1994 memo to Carlisle describing the claims Carlisle had against Matson (Hare Exhibit #8) including the right to recover damages for Matson cutting Carlisle's timber and his billing estimate of $45,600 to $72,600 for Hare's services (Hare Exhibit #9; Hare, p. 92, lines 8-21). Carlisle paid Hare in excess of $46,000 for those services rendered from 1994 through June 23, 1998, including payment ($260.00) to Hare for preparing the

-32-

June 23, 1998 Praecipe for Writ of Summons to initiate the second underlying action (Hare Exhibit #54, Exhibit #6).

Hare told Carlisle that this second action would allow Carlisle to recover substantial dollar damages from Matson not recovered in the first action (Bush, p. 20, lines 2-9, p. 42, lines 1-7, p. 47, line 3 through p. 48, line 2, p. 49, lines 10-22). Hare's undertaking was also defined by the objectives which Carlisle wanted to achieve when making timber rights claims against Matson. Hare knew Carlisle wanted (1) "his property to be free of timbering operations", (2) to keep the timber company (Matson) off the Clough Farm (Hare I, p. 64, line 24 through p. 65, line 5), and (3) to "explore assertions that all the timber on the. . . (Clough Farm) should have been conveyed to him. . . any timber harvested (by Matson) constituted money damages to Bert" (Hare I, p. 72, lines 17-23), and that Matson only had "a reasonable time to take the timber" (Hare I, p. 75, lines 9-11). Without checking the Warren County timber title records by way of a formal or informal title search, Hare lacked the basic information needed to adequately represent Carlisle in attempting to reach these goals because he never knew the identity of the owner of the Clough Farm timber, which was Carlisle, as a matter of fact and law. Saltonstall, supra.

Hare's responsibility included the fact investigation (Hare I, p. 93, line 12 through p. 94, line 16). This required him to determine what "timber Carlisle owned and what timber Matson owned" (Hare I, p. 91, lines 9-15). Hare knew that if Fisher & Young had timber rights, they would be in a "timber deed" recorded in the Warren County Court House (Hare, p. 73, lines 21-24; p. 78, lines 11-18). According to Hare, he was "never aware of" any timber deed to Matson and/or Fisher & Young which gave them Clough

Farm timber rights (Hare I, p. 134, lines 6-9). Hare never saw the document which defined whether Fisher & Young or Matson had any Clough Farm timber rights (Hare II, p. 52, line 6 through p. 54, line 13). The applicable standard of care required Hare to perform a title search of the Clough Farm to determine the identity of the owner of the Clough Farm timber. See reports and affidavits of Will J. Schaaf, Esquire and Christine H. McClure, Esquire.

It was foreseeable to a lawyer, similarly situated as Hare, when considering the scope of his undertaking for Carlisle in making a timber rights claim against Matson, that if he did not conduct a title search or otherwise identify the title owner of the Clough Farm timber, Carlisle was at significant risk of being prevented from reaching his intended goals. Bilt-Rite, supra, 866 A.2d at 281. Foreseeability in determining the scope of a professional's duty is fact dependent. See Althaus v. Cohen, 562 Pa. 547, 756 A.2d 1166, 1168 (2000) (". . . the hospital was aware of the purpose of the year-end screening. . . the hospital. . . should have realized that any negligence with respect to the handling of the specimen could harm Sharp's employment"). Unless a lawyer, similarly situated as Hare in representing Carlisle in the claims outlined in Hare's November, 1994 memo to Carlisle (Hare Exhibit #8) and in the 10 Count Complaint against Matson in the federal action, first determined the identity of the timber owner, Carlisle was placed at an unreasonable risk of the 1997 litigation causing permanent harm to Carlisle. See Rizzo, supra, 555 A.2d at 66 (failure to properly investigate client's potential claim grounds for malpractice); Griggs v. BIC Corp., 981 F.2d 1429, 1435 (3rd Cir. 1992) (duty of care established by evidence of foreseeable unreasonable risk from act or conduct or lack thereof).

The risk of making the claims against Matson which Hare recommended Carlisle make in the federal action without knowing the identity of the record owner of the Clough Farm timber could have been avoided by a $75 to $100 title search and a phone call to Lauri Sekerak in Warren (Sekerak, p. 28, line 4 through p. 29, line 4). Whether it be by title search or otherwise, there is more than sufficient evidence that he had the responsibility to conduct the investigation necessary to identify the owner of the Clough Farm timber.  See Stevenson-Chislett, Inc. v. U.S., 98 F. Supp. 252 (W.D. Pa. 1951), affm'd, 344 U.S. 167, 97 L.Ed. 186 (duty of attorney to "evaluate available" evidence and properly advise client what can or cannot be done in a civil action). Readily available evidence identifying the owner of the Clough Farm timber between 1994 and 1997 was in the Warren County property records and records of Fisher & Young's counsel, Jack Kookogey, which indicated Fisher & Young's rights expired April 1, 1978, Fisher & Young Hardwoods had no timber rights, and Matson had no rights to be on Carlisle's property between 1988 and the December 19, 1997 verdict, or at any time thereafter (Sekerak, p. 28, line 14 through p. 29, line 5).

Matson's status was a trespasser, not a licensee, was relevant to Carlisle's federal action against Matson.  It would enhance his chances of obtaining injunctive relief against Matson (Hare I, p. 87, line 17 through p. 88, line 3).  According to Hare, it would "likely" enlarge Carlisle's claim for damages (Hare I, p. 89, line 23 through p. 90, line 1).  It increased Carlisle's chances of removing Matson from the Clough Farm (Hare I, p. 88, lines 1-10).  If a title search had been performed prior to the December 19, 1997 verdict, Hare would have known (1) Fisher & Young's timber rights expired April 1, 1978 by virtue of the April 1, 1978 timber deed language; (2) there was no

-35-

recorded timber deed by Fisher & Young to Fisher & Young Hardwoods (Sekerak, p. 28, line 14 through p. 29, line 4) and, therefore, Matson was never the successor in interest to Fisher & Young's timber rights, as they claimed and, as a consequence of #1 and #2; and (3) Matson, at least between 1993 and 1995 and thereafter, was a trespasser on the Clough Farm and not a licensee, as Hare believed (Hare I, p. 86, lines 10-11).

By not performing a title search and then withdrawing Counts V (trespass) and VII (conversion) in the federal action, Hare's conduct (1) precluded Carlisle from making any recovery for the $437,960 worth of timber cut by Matson between 1993 and 1995; (2) precluded Carlisle from making any claim for property damage caused by Matson between 1993 and 1995 because of that timbering operation; and (3) gave Matson permission to remove $100,000 to $200,000, or more, of timber in 2005-2006. Because the 1997 verdict has been given res judicata effect as to Matson's ownership of the "1969 trees", Hare not performing a title search prior to the December 19, 1997 verdict in the federal action has effectively precluded Carlisle from taking legal action, after the 1997 verdict date through the present date, to have a Court declare, now or in the future, that Carlisle is the owner of all of the Clough Farm timber, including the "1969 trees" that remain on the 779 acres of commercial timber acreage which were not taken in Matson's 2005-2006 timberings (see report and affidavit of James Hall). Matson's ownership rights, now and in the future, have permanently reduced the value of the underlying 779 acres of commercial timber property on the Clough Farm because Matson's indeterminate right to the remaining 1969 trees have precluded any alternative use of the 779 acres now occupied by the remaining "1969 trees".  But for

-36-

the December 19, 1997 verdict, Matson had no ownership rights to the 1969 timber. Matson had no timber deed to that timber and, as a matter fo law, their alleged predecessor rights expired, as a matter of law, on April 1, 1978.

III.    <u>CONCLUSION</u>:

It is respectfully submitted that construing the record facts, made reference to in this Brief, Plaintiffs' Response to Defendants' Request for Undisputed Facts and Plaintiff's Answer to Defendants' Motion for Summary Judgment, as required by the controlling law, there are genuine issues of material fact which preclude the grant of Summary Judgment.

Respectfully submitted,

CONNER RILEY & FRYLING

BY _____

ANDREW J. CONNER, ESQUIRE
ATTORNEY FOR PLAINTIFF
17 West Tenth Street
P.O. Box 860
Erie, PA 16512-0860
(814) 453-3343

DATED: June 15, 2006.