Warren - 1/26/71

55. Letter from E. Terry Warren to John Kookogey - 2/11/71

56. Letter from John Kookogey to E. Terry Warren - 2/23/71

57. Letter from John Kookogey to E. Terry Warren - 3/26/71

58. Letter from Philip H. Cochran, Fisher & Young, to Albert T. Carlisle - 3/15/73

59. Letter from Harry D. Martin to Terry Warren - 3/27/73

60. Letter from Harry D. Martin to Terry Warren - 4/5/73

61. First Amendment and Supplement to Agreement of Sale between Fisher & Young, Inc. and Albert T. Carlisle - 1973

62. Draft of 1973 First Amendment and Supplement to Agreement of Sale

63. Letter from Harry D. Martin to Terry Warren - 9/4/73

64. Letter from E. Terry Warren to James S. Stolley - 7/26/76

65. Letter from E. Terry Warren to Harry D. Martin - 7/26/76

66. Letter from Harry D. Martin to E. Terry Warren - 8/5/76

67. Letter from John Kookogey to John C. Dennison with Certificate of Tile - 12/16/86

68. Letter from John Kookogey to Albert T. Carlisle - 12/9/87

69. Letter from Matson Hardwoods, Inc. to Albert T. Carlisle - 6/30/88

70. Letter from Norman Sunderland to Bert Carlisle - 1/18/89

71. Agreement (Addendum to the original agreement between Fisher & Young, Inc. and Albert T. Carlisle dated 5/28/69) - not signed

-13-

72. Clough Farm Logging Management - Fall and Winter, 1992 - 10/30/92

73. Letter from Richard Conti to Bert Carlisle - 11/19/90

74. Letter from Bob Matson to Albert T. Carlisle with Addendum to Agreement (not signed) - 12/11/91

75. Letter from Len Domenick to Albert T. Carlisle - 12/11/91

76. Property Record Card for Albert T. Carlisle

77. Map

78. Clough Farm - Timber Types and maps

79. Letter from Bob Matson to Albert T. Carlisle - 8/4/92

80. Letter from John B. Enders to John Kookogey - 11/2/92

81. Letter from John Kookogey to John B. Enders - 11/24/92

82. Commonwealth of Pennsylvania, Department of Environmental Resources, Topographic and Geologic Survey - Spring Creek Quadrangle (3)

83. Letter from Rick Conrad to John Wood - 5/4/94

84. Earth Distrubance Inspection - Clough Farm Timber Harvest - 5/26/94

85. Letter from Rick Conrad to Steve Modewell with maps - 11/2/94

86. Letter from Rick Conrad to PA Fish and Boat Commission - 11/2/94

87. Letter from J. L. Donaldson, Warren County Commissioners, to Richard A. Conrad with map - 11/14/94

88. Commonwealth of Pennsylvania, Department of Environmental Resources Acknowledgment - 11/29/94

89. Letter from Todd S. Fantaskey to Matson Lumber Company - 12/5/94

Plaintiff's Appendix
000501

90. Site Specific Erosion Control Plan for Matson
    Hardwoods, Inc. - 11/1/88

91. Site Specific Erosion Control Plan for Matson
    Hardwoods, Inc. - 11/1/89 (original and copy)

92. Map - Clough Farm (original and copy)

93. Timber Harvest Erosion and Sediment Control
    Plan with maps - 11/1/91

94. Soil Erosion and Sedimentation Pollution
    Control Plan for a Timber Harvesting
    Operation including maps, drawing and
    exhibit - 10/26/94

95. Soil Survey

96. Maps of Clough Farm

97. Photographs produced to plaintiff showing the
    farm in general, damage to the haul roads and
    landings, trees with nails and trees cut for
    firewood.

-15-

Plaintiff's Appendix
000502

# DENNISON, DENNISON & HARPER
### Attorneys at Law

Donald J. Dennison
John C. Dennison, II
Troy J. Harper

293 Main Street
Brookville, PA 15825-1291
Telephone (814) 849-8316
Fax (814) 849-4656
E-Mail ddhjohn@usachoice.net

May 8, 2003

Mark A. Turbessi, Esq.
309 PNC Bank Building
Warren, PA 16365

RE: Dora M. Squatriti

Dear Mr. Turbessi:

I represent Matson Lumber Company which is owned by Robert D. Matson and his daughters, Becky J. Matson and Barbara A. Conti. Earlier this week, I introduced myself to your client. It has recently come to our attention that a title defect exists in my client's title to the timber on the Clough Farm which is situated in Spring Creek Township in Warren County. I explained the situation to Mrs. Squatriti, and she advised me to send the information to you.

By way of background, the Clough Farm was owned by Marion C. Kinkead, who is Dora's mother. By Article of Agreement dated April 1, 1968, Mrs. Kinkead conveyed the land and improvements on the Clough Farm to Fisher & Young, Inc. for the sum of $25,000.00. Mrs. Kinkead was represented by R. Pierson Eaton of Warren. Fisher & Young was represented by John S. Kookogey of Titusville. This Agreement was recorded at 352, Page 1135, and I enclose a copy of it for your review. The Deed for the land and improvements was then recorded on April 22, 1969, and I enclose a copy of that Deed for your review.

In order to avoid paying the transfer taxes, the timber was sold to Fisher and Young, Inc. by an unrecorded Article of Agreement for $100,000.00. I have a couple of drafts of the first page of this Agreement, copies of which I enclose. The Timber Deed was then recorded on April 23, 1973, at Deed Book 376, Page 939, and I enclose a copy of it for your review. I also enclose a copy of a letter dated April 19, 1968, from Mr. Eaton to Mr. Kookogey.

Unfortunately, the recorded documents create two problems. As you know, in order to avoid payment of the realty transfer taxes, an instrument conveying the timber must provide for removal of the timber within an immediate ascertainable date. Upon the expiration of the time period, the instrument should then, in some fashion, vest the timber in the purchaser of the trees, i.e. Fisher & Young, Inc. However the Timber Deed at Page 941 vests the timber in Mrs. Kinkead after April 1, 1978, and not in Fisher & Young, Inc.

EXHIBIT

15

Secondly, the Timber Deed dealt with only timber which was 12 inches in diameter one foot from the ground which would have been the merchantable timber. The timber under 12 inches in diameter should therefore have been conveyed with land and buildings. Unfortunately, instead of including the timber less than 12 inches in diameter, the Deed for the land and improvements excepts and reserves "all of the timber and trees."

Mr. Eaton is now deceased. However, I did meet with Mr. Kookogey earlier this week. He is now 84 years old and is retired. He acknowledged that a mistake had been made and that all timber clearly should have vested in Fisher & Young, Inc.

Since 1968, Fisher & Young Inc. sold the timber to Fisher & Young Hardwoods, Inc. Fisher & Young Hardwoods, Inc then merged into Matson Hardwoods, Inc. which was then subsequently merged into Matson Lumber Company. During this 35 year time period, these companies have maintained ownership of the timber and trees on the Clough Farm.

In addition, during this time period, title to the timber has been involved in three different lawsuits, one by the McChesneys and two by Albert Carlisle, the owner of the land and buildings. In a lawsuit filed in federal district court and which was appealed to the Third Circuit of Appeals, Mr. Carlisle was awarded ownership of the trees which have sprouted since 1969, which is the year that the land and buildings were sold to him. In other words, the exception and reservation of the timber only applied to timber which was in existence when the property was sold to Mr. Carlisle.

Interestingly, this title problem has never been raised as an issue. In any event, the easiest way to resolve this problem is for your client to sign a Quit Claim Deed for the timber and trees.

Please call me to discuss this matter after you have reviewed the enclosed items. Dora advised me that she is leaving for Italy toward the end of the month. My client and Mr. Kookogey would obviously like to get this matter resolved be for she leaves. If you would like to discuss this matter with Mr. Kookogey, his telephone number is (814) 827-2373.

Dora said that I could send a copy of this letter to her, and I am also sending her a copy of all the enclosures to make it easy for you to discuss this matter with her.

Very truly yours,


John C. Dennison, II

pc: ✓Mr. Robert D. Matson
    John S. Kookogey, Esq.
    Mrs. Dora M. Squatriti

## LIST OF EXHIBITS

1. Lease between Robert M. Kinkead and Clough Farm Club - 2/1/62

2. Deed between Marion C. Kinkead and Fisher & Young, Inc. - 3/27/69

3. Article of Agreement between Marion C. Kinkead and Fisher & Young, Inc. - 4/1/68

4. Letter from John Kookogey to E. Terry Warren - 1/16/69

5. Minutes of the Meeting of Directors of Fisher & Young, Inc. - 4/2/69

6. Notes - 3/7/69

7. Letter from John Kookogey to David Eardley - 3/19/69

8. Letter from John Kookogey to David Eardley - 3/31/69

9. Letter from David Eardley to John Kookogey - 4/15/69

10. Letter from John Kookogey to The Pennsylvania Bank & Trust Company, copy of deposit slip and note - 4/18/69

11. Letter from John Kookogey to David Eardley - 4/29/69

12. Letter from John Kookogey to David Eardley - 5/28/69

13. Letter from John Kookogey to David Eardley - 7/25/69

14. Letter from David Eardley to John Kookogey - 7/25/69

15. Bill for Services Rendered from Jack, Kookogey & Forsell to Fisher & Young, Inc. - 8/25/69

16. Letter from E. Terry Warren to John Kookogey - 9/18/69

17. Draft Agreement of Sale between Fisher & Young, Inc. and Albert T. Carlisle - 5/28/69 (1/20/70)

*Bound Separately*

-10-



DEPOSITION EXHIBIT
# 3
Fossen

18. Letter from John Kookogey to E. Terry Warren - 9/30/69

19. Letter from E. Terry Warren to John Kookogey - 10/28/69

20. Minutes of the Meeting of Directors of Fisher & Young, Inc. - 11/3/69

21. Resolution and Certificate re: sale of various parcels of land to Albert T. Carlisle - 1969

22. Letter from E. Terry Warren to John Kookogey - 1/5/70

23. Receipt of 1/5/70 correspondence acknolwdged and returned by Kookogey - 1/9/70

24. Letter from John Kookogey to William H. Kemmler, Union Title Guaranty Company - 1/12/70

25. Letter from John Kookogey to E. Terry Warren - 1/12/70

26. Letter from E. Terry Warren to John Kookogey - 1/17/70

27. Letter from John Kookogey to William H. Kemmler, Union Title Guaranty Company - 1/19/70

28. Letter and Bring-Down Certificate from John Kookogey dated 1/19/70

29. Letter from Dorothy S. Cole, Secretary to William E. Rice, Recorder - 1/19/70

30. Agreement of Sale between Fisher & Young, Inc. and Albert T. Carlisle - 5/28/69, filed 1/20/70

31. Deed between Fisher & Young, Inc. and Albert T. Carlisle - 1/9/70, filed 1/19/70

32. Letter from John Kookogey to E. Terry Warren - 1/30/70

33. Invoice for title from Union Title Guaranty Company to Albert T. Carlisle - 1/27/70

34. Attorney's Preliminary Certificate of Title - 1969

35. Letter from E. Terry Warren to John Kookogey - 2/2/70

36. Letter from John Kookogey to William H. Kemmler, Union Title Guaranty Company - 2/5/70

-11-

37. Letter from E. Terry Warren to Jack
    Kookogey - 2/6/70

38. Letter from E. Terry Warren to Union Title
    Guaranty Company - 2/6/70

39. Letter from William Kemmler to John
    Kookogey - 2/9/70

40. Letter from John Kookogey to E. Terry Warren,
    with handwritten notes, and Statement of
    Value - 2/11/70

41. Letter from John Kookogey to William Kemmler,
    Union Title Guaranty Company - 2/12/70

42. Letter from E. Terry Warren to John
    Kookogey - 2/13/70                    712/23/70
42a.

43. Letter from John Kookogey to E. Terry
    Warren - 4/17/70

44. Letter from John Kookogey to E. Terry
    Warren - 4/28/70

45. Letter from John Kookogey to Mrs. Keith
    Horne, Kocjancic & Horne - 5/28/70

46. Letter from Keith Horn to John Kookogey
    with report on estimated volume and value
    of timber on the Clough Farm - 6/10/70

47. Letter from E. Terry Warren to John
    Kookogey - 12/10/70

48. Letter from John Kookogey to E. Terry
    Warren - 1/4/71

49. Notes re: tax computations

50. Letter from E. Terry Warren to John
    Kookogey - 1/19/71

51. Notice of Change in Assessment to Albert
    Carlisle - 12/31/70

52. Notice of Change in Assessment to Albert
    Carlisle - 12/31/70

53. Notice of Change in Assessment to Albert
    Carlisle - 12/31/70

54. Letter from John Kookogey to E. Terry

-12-

Warren - 1/26/71

55. Letter from E. Terry Warren to John
Kookogey - 2/11/71

56. Letter from John Kookogey to E. Terry
Warren - 2/23/71

57. Letter from John Kookogey to E. Terry
Warren - 3/26/71

58. Letter from Philip H. Cochran, Fisher &
Young, to Albert T. Carlisle - 3/15/73

59. Letter from Harry D. Martin to Terry
Warren - 3/27/73

60. Letter from Harry D. Martin to Terry
Warren - 4/5/73

61. First Amendment and Supplement to Agreement
of Sale between Fisher & Young, Inc. and
Albert T. Carlisle - 1973

62. Draft of 1973 First Amendment and Supplement
to Agreement of Sale

63. Letter from Harry D. Martin to Terry
Warren - 9/4/73

64. Letter from E. Terry Warren to James S.
Stolley - 7/26/76

65. Letter from E. Terry Warren to Harry D.
Martin - 7/26/76

66. Letter from Harry D. Martin to E. Terry
Warren - 8/5/76

67. Letter from John Kookogey to John C. Dennison
with Certificate of Tile - 12/16/86

68. Letter from John Kookogey to  Albert T.
Carlisle - 12/9/87

69. Letter from Matson Hardwoods, Inc. to Albert
T. Carlisle - 6/30/88

70. Letter from Norman Sunderland to Bert
Carlisle - 1/18/89

71. Agreement (Addendum to the original agreement
between Fisher & Young, Inc. and Albert T.
Carlisle dated 5/28/69) - not signed

-13-

Plaintiff's Appendix
000508

72. Clough Farm Logging Management - Fall and Winter, 1992 - 10/30/92

73. Letter from Richard Conti to Bert Carlisle - 11/19/90

74. Letter from Bob Matson to Albert T. Carlisle with Addendum to Agreement (not signed) - 12/11/91

75. Letter from Len Domenick to Albert T. Carlisle - 12/11/91

76. Property Record Card for Albert T. Carlisle

77. Map

78. Clough Farm - Timber Types and maps

79. Letter from Bob Matson to Albert T. Carlisle - 8/4/92

80. Letter from John B. Enders to John Kookogey - 11/2/92

81. Letter from John Kookogey to John B. Enders - 11/24/92

82. Commonwealth of Pennsylvania, Department of Environmental Resources, Topographic and Geologic Survey - Spring Creek Quadrangle (3)

83. Letter from Rick Conrad to John Wood - 5/4/94

84. Earth Distrubance Inspection - Clough Farm Timber Harvest - 5/26/94

85. Letter from Rick Conrad to Steve Modewell with maps - 11/2/94

86. Letter from Rick Conrad to PA Fish and Boat Commission - 11/2/94

87. Letter from J. L. Donaldson, Warren County Commissioners, to Richard A. Conrad with map - 11/14/94

88. Commonwealth of Pennsylvania, Department of Environmental Resources Acknowledgment - 11/29/94

89. Letter from Todd S. Fantaskey to Matson Lumber Company - 12/5/94

-14-

90. Site Specific Erosion Control Plan for Matson Hardwoods, Inc. - 11/1/88

91. Site Specific Erosion Control Plan for Matson Hardwoods, Inc. - 11/1/89 (original and copy)

92. Map - Clough Farm (original and copy)

93. Timber Harvest Erosion and Sediment Control Plan with maps - 11/1/91

94. Soil Erosion and Sedimentation Pollution Control Plan for a Timber Harvesting Operation including maps, drawing and exhibit - 10/26/94

95. Soil Survey

96. Maps of Clough Farm

97. Photographs produced to plaintiff showing the farm in general, damage to the haul roads and landings, trees with nails and trees cut for firewood.

-15-

WARRANTY DEED—INDIVIDUAL
For Sale by P____ing & Wehen, Warren, Pennsylvania.

FILED AND ENTERED at
_11:31_ o'clock _A_ M. on
APR 22 1969

# This Deed,

Made the     twenty seventh     day of     March     in the year

Nineteen hundred and     sixty nine.

Between     MARION C. KINKEAD, Widow, of the Boro of Warren, County of

Warren, and State of Pennsylvania,

grantor,

and     FISHER & YOUNG, INC., a Pennsylvania Corporation with principal

office in Oil Creek Township, Crawford County, Pennsylvania,

grantee.

Witnesseth, That in consideration of

Twenty five thousand     ($25 000.00)     Dollars

in hand paid, the receipt whereof is hereby acknowledged, the said grantor     do es hereby grant and

convey to the said grantee ,

ALL THAT CERTAIN parcel of land situate in Spring Creek Township,
Warren County, Pennsylvania, now or lately known as the Clough Farm, and being
all of the premises of the Grantor situate in said Township, whether herein
specifically described or not; subject, however to the reservation of the timber
and tree reservation as set forth in the Agreement of Sale hereinafter recited.

Said premises may further be described as follows:

1.     BEGINNING at the northeast corner, a hemlock tree; thence south
136 rods to a post; thence by land formerly owned by W. A. Irvine west to the
corner of land formerly owned by Francis Bates; thence by land of said Bates 136
rods to a post; thence by land of said W. A. Irvine east to the place of beginning,
containing 64 acres 155 rods, more or less.

2.     BEGINNING at a post and stones in the northwest corner of the lot
hereby conveyed; thence east 169 rods to a post; thence south 101 rods to a post;
thence east 49.1 rods to a post; thence south 110.7 rods to apost; thence west
166 rods to a post; thence north 62.7 rods to a post; thence west 53.7 rods to a
post; thence north 149 rods to a post and stones, the place of beginning, con-
taining 237 acres of land, more or less, and being part of Tract No. 363.

3.     BEGINNING at the northwest corner of said piece of land at a
post; thence in a southerly direction along the Morton Hill Road to the southwest
corner of said piece of land; thence N 88 3/4° E 134.6 rods to a hemlock; thence
N 1 1/4° E 131.4 rods to a post; thence S 89 3/4° W 134.6 rods to a post, the
place of beginning, containing about 105 acres, more or less.

4.     Being the homestead farm formerly of G. W. Nichols, and described
in the three following several deeds: from Frank E. Bates and wife to C. W. Nichols
dated March 21, 1890 and recorded in Deed Book 68, page 81, as commencing at a
post in the south line of said property; thence by lands of Smith S 88 3/4° W 55.5
perches to a post; thence by the same  N 1 1/4° W to the state road, supposed to
be about 145 rods; thence eastwardly along the center of said road to the north-
west corner of land deeded by Francis Bates to L. L. Bates; thence S 1 1/4° E
along said L. L. Bates' land to a post, the place of beginning, supposed to con-
tain about 55 or 54 acres of land out of Tract No. 303.

BOOK 357 PAGE 349

Plaintiff's Appendix
000511

5.          The east half of 63 acres of land deeded from George Yeager to Francis Bates on July  , 1850 and recorded on July 3,   '31, off of Tracts No. 304 and 363.

BOOK 357 PAGE 350

6.          As described in deed from L. L. Bates and wife to C. W. Nichols dated February 21, 1806, commencing in the center of the State Road and the center of the Morton Hill Road at the junction of those two roads; thence by land of Cordelia Leonard and W. A. Irvine S 1 1/4° E 185.5 rods to a beech, the southeast corner of the Francis Bates home farm; thence S 88 3/4° W along the south line of said farm 51 rods to a post; thence N 1 1/4° W to the State Road; and thence eastwardly along the center of said road to the center of said Morton Hill Road, the place of beginning, supposed to contain about 53 acres of land.

7.          On the north by land above described; on the east by land of F. E. Bates; on the south by land formerly of C. W. Nichols; and on the west by land of M. Smith, containing about 31 1/2 acres of land; and also so much of the land described in deed from S. D. I. Newbold to the said C. W. Nichols dated March 22, 1888 and recorded in Deed Book 64, page 136, as lies west of the Morton Hill Road, and adjoining the lands hereinabove described.

8.          On the south by lands owned by W. A. Irvine's heirs; on the west by the Morton Hill Road and land formerly owned by George Bates; on the north by land formerly owned by Mrs. Elias Wood; and on the east by the station road and lands formerly owned by Lewis Stoddard, containing 68 acres 59 rods of land, more or less, out of Tract No. 304.

9.          On the north by land of Whiteley; on the east by land formerly of Greeley; on the south by lands formerly owned by W. A. Irvine; and on the west by lands conveyed to C. W. Nichols by F. J. Jones and wife, and a public road leading to Spring Creek R.R. Station and lands of Stoddard, containing 44 acres, more or less.

10.          On the north by land of Tom Forbes; on the east by land formerly of W. A. Irvine and L. S. Clough; on the south by land formerly of William Morton now L. S. Clough, containing 45 acres, more or less.

11.          Part of Tract No. 310, described as follows:  BEGINNING in the center of the State Road at a point where the same crosses the Tract line between land formerly of Sarah D. I. Newbold and that of L. Greeley; thence S 1° 45' E 88 rods to a post, the southwest corner of Tract No. 310; thence N 88° 45' E along the southerly line of Tract No. 310, 81 rods to a post in said Tract line; thence N 2° W 109 1/2 rods to a point in the center of the State Road; thence along the center of said road westerly 84.3 rods to the place of beginning, containing 50 acres of land, more or less.

12.          BEGINNING at a point in the center of the State Road, at the northeast corner of land heretofore conveyed by S. S. Wead, and running thence S 2° E 112.6 rods to a post at the southeast corner of said Wead's land, and in the south line of Tract No. 310; thence N 88-3/4° E 350 rods to the western bank of the Big Brokenstraw Creek at low water mark; thence northwesterly along the western bank of the Big Brokenstraw Creek at low water mark to the center of the State Road; thence southwesterly along the center of the State Road to the place of beginning, containing 214 acres 104 perches of land, more or less, and being apart of Tract No. 310. The land herein conveyed to include all the land lying west of the Big Brokenstraw Creek belonging to Mrs. S. D. I. Newbold in said Tract. Also, all the islands in that part of Brokenstraw Creek which lie east of the foregoing described land.

13.          BEGINNING at the northwest corner of Tract No. 313; thence extending along the north line of said Tract due east 91.9 perches to the corner of land formerly of E. Jackson; thence along the same due south 135 perches to the southwest corner of said Jackson's land; thence due west 94 perches to the west line of said tract; thence along said line due north 135 perches to the place of beginning, containing 78 acres 41 perches, more or less, being the northwest corner of Tract No. 313. Being land conveyed to L. S. Clough by Dan A. Geiger and wife by deed dated October 1, 1906 and recorded in Deed Book 105, page 260.

14.          On the north by lands formerly of Miles and Watts; on the east by the eastern line of the tract; on the south by the southern line of the tract; on the west by lands formerly of Yeager and Miles and Watts. Being 51 acres 18 perches from the southeast side of Tract No. 304, as conveyed to L. S. Clough by deed of J. V. Kinyon dated March 30, 1911 and recorded in Deed Book 114, page 397.

15.          BEGINNING at the northwest corner of the whole Tract No. 314; thence south by the west line of the tract 159 rods to a post; thence east 53 rods 8 links to a post; thence north by the residue of the tract 159 rods to a post in the north line of the tract; thence west along the north line of the tract 53 rods 8 links to the place of beginning, containing 50 acres and allowance.

Plaintiff's Appendix
000512

16.      BEGINNING at the northeast corner of Jacob Wright's land at a post; thence by the same south 142.5 perches to an ash, the southwest corner of Wright's land; thence by land of H. B. Dexter east 53 perches to a post; thence by the same south 81 perches to a post in the south line of the tract; thence east 76 perches to a hemlock, the southeast corner of the tract; thence north 223.5 perches to a maple, the northeast corner of the tract; thence by Tract No. 318 west 129 perches to the place of beginning, containing 153 acres, more or less, in Tract No. 317.

17.      BEGINNING at the northwest corner of the tract conveyed at a post; thence by land formerly of Sager east 50.7 perches to lands formerly of Jackson; thence by land formerly of Jackson south 201 perches to land formerly of Irvine; thence by land formerly of Irvine west 50.7 perches to a post; thence by lands formerly of Irvine and lands formerly of Yager north 201 perches to the place of beginning, containing 60 acres, more or less, being part of Tract No. 363.

     Subject to rights of way for electric lines granted to Pennsylvania Electric Company by instruments dated October 15, 1957 and November 29, 1957, and recorded respectively in Deed Book 291, page 460 and Deed Book 292, page 140.

     EXCEPTING AND RESERVING that portion of said premises which was conveyed by Robert M. Kinkead and wife to Charles A. Williams and wife by deed dated June 6, 1958 and recorded in Deed Book 294, page 475.

     Being premises which were conveyed to Robert M. Kinkead and Marion C. Kinkead, his wife, by deed of Robert M. Kinkead and wife dated November 30, 1962 and recorded in Deed Book 325, page 85, including premises noted in said deed as being excepted to Kenneth E. Pitt and wife, the same thereafter having been reacquired by Robert M. Kinkead and wife. The said Robert M. Kinkead thereafter died on June 26, 1967, whereby title to said premises vested in the Grantor as surviving tenant by the entirety.

     This conveyance is made subject to a certain agreement of lease dated February 1, 1962 with the individual members of the Clough Farm Club as joint tenants, as amended, with reference to the stream bed of Spring Creek, and 25 feet inland from the normal banks of said Creek on each side thereof, with right of entry to and from the same, but all rights of the Lessor in and to said agreement are hereby assigned and conveyed to the within Grantee.

     EXCEPTING AND RESERVING from and out of this conveyance all of the timber and trees, standing and down, situate on the premises above described, with appurtenant rights, as set forth in agreement for the sale of said premises made between the parties hereto on April 1, 1968 and recorded in Deed Book 352, page 1135, in fulfillment of which agreement this conveyance is made.

BOOK 357 PAGE 351

Plaintiff's Appendix
000513

This conveyance is made subject to the payment by the Grantee of taxes assessed and levied for the year 1968 and thereafter.

And the said grantor    does hereby warrant    Specially    the property hereby conveyed.

BOOK 357 PAGE 352

In Witness Whereof, the said grantor    has    hereunto set    her    hand and seal    the day and year first above written.

*Marion C. Kinkead*    Seal.

Signed, Sealed and Delivered
in Presence of

Commonwealth of Pennsylvania }
                                ss:
County of WARREN

On this, the    27th    day of    March    , 1969 , before me, a Notary Public    , the undersigned officer, personally appeared    MARION C. KINKEAD, Widow,

known to me (or satisfactorily proven) to be the person    whose name    is    subscribed to the within Instrument, and acknowledged that    she    executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

*Sandra S. Eberhardt*
Notary Public

My Commission expires *January 8, 1972*

I hereby certify that the precise residence of the within named Grantee is    R D 2
Titusville,  Pennsylvania

*John S. Montgomery*
*Atty for Grantee*

Plaintiff's Appendix
000514

200HT—Agreement for Sale of Land, Juds    Eject. Clause.
Henry Hall, Inc., Indiana, Pa.

*Rec.* ~52 - 1135~

# Article of Agreement

*MADE THE*    1st        *day of*    April,       *in the year*
*of our Lord one thousand nine hundred* and sixty-eight (1968),

*BETWEEN*     MARION C. KINKEAD, widow, of the Borough of Warren, County
of Warren and State of Pennsylvania, party of the first part,

AND

FISHER & YOUNG, INC., a Pennsylvania Corporation with
principal office in Oil Creek Township, Crawford County, Pennsylvania,
party

*of the second part,*

*WITNESSETH, that the said part*y     *of the first part, in consideration of the covenants and
agreements hereinafter contained, on the part of the said part*y    *of the second part to be kept
and performed,*     has      *agreed and doth* or *hereby agrees to sell and convey unto the said
part*y    *of the second part,* its     *heirs or assigns, all the land and premises herein-
after mentioned and fully described, for the sum of*   Twenty-five thousand ($25,000.00)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - *Dollars, to be paid as follows:*

     Five thousand ($5,000.00) Dollars upon the execution and delivery hereof,
the receipt of which is hereby acknowledged, and the balance of Twenty thousand
($20,000.00) Dollars in annual payments of Two thousand ($2,000.00) Dollars each,
commencing April 1, 1969, until the whole of said principal sum is fully paid; with
the privilege on the part of the Second Party of making additional payments on
principal at any time,

*and the said part*y     *of the second part also agree* s    *to pay all taxes that may be levied upon
said land from and after the date of these presents, and to keep the buildings thereon insured in
the sum of*   Twenty-five thousand ($25,000.00) - - - - - - - - - - - - - - - - - - - - - -
- - - - - *Dollars, payable to the said part*y *e of the first part, as interest may appear.
     And upon the payment of the said sum, the said part*y    *of the first part, will, at*   her
*own proper cost, subject to split Pennsylvania realty transfer tax,*
*make, execute and deliver to the said part*y    *of the second part, a good and sufficient Deed for
the proper conveying and assuring of the said premises in fee simple, free from all incumbrance
and dower, or right of dower, such conveyance to contain the usual covenants of* Special
- - - - - - - - - - - - - - - - - - - *Warranty.
     And the said part*y    *of the second part, agree* s    *with the said part*y    *of the first part, to
purchase the said premises and pay therefore the sum of*   Twenty-five thousand ($25,000.00)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - *Dollars,
in the manner and at the times hereinbefore provided.*

     *AND IT IS FURTHER AGREED, by and between the said parties, that possession* of said
*premises shall be delivered to the part*y    *of the second part,* its successors and
    First      *day of*    April      A. D. 1968    *until which time the
part*y    *of the first part shall be entitled to have and receive the rents, issues and profits thereof.*

     *The said premises are described as follows:*
     All of the real estate of the First Party in the Spring Creek Township,
Warren County, Pennsylvania, whether herein specifically described or not,
description being attached hereto. The Second Party shall keep the buildings
on said premises insured in a good and reliable insurance company in an amount
not less than full insurable value, and take out no insurance not negotiated for the
benefit of the Parties.

     The Second Party shall pay all taxes assessed and levied against said
premises for the year 1968 and hereafter.

(OVER)

The second party shall forthwith comply with the requirements of the Sol Bank Conservation Reserve Contract of the First Party which is in force for the year 1968, and according to the terms thereof becomes a party to said Contract and assumes all obligations thereunder; and first party hereby agrees to assign all the proceeds payable under said contract in 1968 to second party.

Plaintiff's Appendix
000516

3

100BT—Agreement for Sale of Land, Judg.    Eject. Clause.
Henry Hall, Inc., Indiana, Pa.

# Article of Agreement

**MADE THE** *1.27* **day of** April, **in the year**
*of our Lord one thousand nine hundred* sixty-eight (1968),

**BETWEEN**          MARION C. KINKEAD, widow, of the Borough of Warren,
County of Warren and State of Pennsylvania, party of the first part,

and

          FISHER & YOUNG, INC. a Pennsylvania Corporation,
with principal office in the City of Titusville, County and State aforesaid, party

                                                  *of the second part,*
*WITNESSETH, that the said party        of the first part, in consideration of the covenants and*
*agreements hereinafter contained, on the part of the said party        of the second part to be kept*
*and performed,*        **has**        *agreed and does        hereby agree to sell and convey unto the said*
*part* y        *of the second part,        its*   successors or assigns,   *all the land and premises herein-*
*after mentioned and fully described, for the sum of*   One hundred thousand ($100,000.00)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - *Dollars, to be paid as follows:*
T w e n t y thousand ($20,000.00) Dollars upon the execution and delivery hereof,
the receipt of which is hereby acknowledged, and the balance of Eighty thousand
($80,000.00) Dollars in annual payments of Eight thousand ($8,000.00) Dollars
each, commencing April 1, 1969, until the whole of said principal sum is fully paid;
with the privilege on the part of the second party of making additional payments
on principal at any time.
          The Second Party shall upon any cutting of timber make payment upon this
contract of the gross value of all t imber and trees removed from the premises.


*and the said part* Y        *of the second part also agrees   to pay all taxes that may be levied upon*
*said land* from and after the delivery hereof, *and to keep the buildings thereon insured in*
*the sum of*
          *Dollars, payable to the said part   of the first part, as interest may appear.*
          *And upon the payment of the said sum, the said party        of the first part, will, at* her own proper
cost,
*make, execute and deliver to the said part* y        *of the second part, a good and sufficient Deed for*
*the proper conveying and assuring of the said premises in fee simple, free from all incumbrance*
*and dower, or right of dower, such conveyance to contain the usual covenants of*
          Special        Warranty.
          *And the said party        of the second part, agrees   with the said part* y        *of the first part, to*
*purchase the said premises and pay therefore the sum of*   One hundred thousand ($100,000.00)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - *Dollars,*
*in the manner and at the times hereinbefore provided.*

          **AND IT IS FURTHER AGREED,** *by and between the said parties, that possession of said*
*premises shall be delivered to the party        of the second part, its*   successors   *and assigns, on the*
          first        *day of* April,        *A. D.* 1968,   *until which time the*
*party   of the first part shall be entitled to have and receive the rents, issues and profits thereof.*

          *The said premises are described as follows:*

          All of the timber and trees standing and down measuring twelve (12) inches
or more in diameter, one (1) foot from the ground, on the premises here and after
described; with the right to enter on said premises and to cut, skid, pile and remove
the same, subject to the terms of this agreement, until April 1, 1978, on and after
which date all the rights hereunder shall revert to the owner of the land.

Plaintiff's Appendix
000517

**And it is Further Understood and Agreed,** that in case of default of payment of any sum of principal or interest herein agreed to be paid, for the space of thirty (30) days after the same shall become due and payable by the terms hereof, that then and in such case the whole of the said principal sum shall, at the option of the said part y of the first part, forthwith become due and payable, anything hereinbefore contained to the contrary thereof notwithstanding. And in such case of default, the said part y of the second part hereby authorize s and empower s any attorney of any Court of Record in the State of Pennsylvania, or elsewhere, to appear for it and confess a judgment for the whole principal sum and interest remaining unpaid hereon, with five per cent. attorney's commissions or fees; hereby waiving the right of exemption and inquisition so far as the land herein described, and any property or building thereon may be concerned. Or the said part y of the first part may, at her option, proceed by action of ejectment on this agreement, for the balance of such purchase money, after default made as aforesaid; and in such case, the said part y of the second part hereby authorize s and empower s any attorney of any Court of Record to appear for it in an amicable action of ejectment for the premises above described, to be entered by the Prothonotary, in which said party of the first part shall be plaintiff and said part y of the second part defendant , and confess judgment therein in favor of the plaintiff and against the defendant , for said premises, and authorize s the immediate issuing of a writ of Habere Facias Possessionem, with clause of Fi. Fa. for the cost, (without asking leave of Court); with costs of suit and per cent. attorney's commission or fees.

**In Witness Whereof,** the said parties to this agreement have hereunto set their hands and seals the day and year first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF

Marion C. Kinkead (Seal)
(Seal)

ATTEST:

FISHER AND YOUNG, INC.

By Philip H. Cochran (Seal)
President (Seal)

Secretary

COMMONWEALTH OF PENNSYLVANIA    :
                                : ss.
COUNTY OF CRAWFORD              :

On this, the 8th day of May, 1965, before me the undersigned officer, personally appeared Philip H. Cochran, who acknowledged himself to be the President of Fisher and Young, Inc., a corporation, and that he as such President, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as President.

Witness whereof, I hereunto set my hand and notarial seal.

Dorothy S. [illegible]

State PENNSYLVANIA    }
County WARREN         } ss.

On this the 1 Day of April 1968, before me the undersigned officer, personally appeared MARION C. KINKEAD, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

(Seal)
Notary Public

Sandra E. Eschrade, Notary Public
Warren Township, Warren County, Pennsylvania
My Commission [illegible]

4

January 16, 1969

E. Terry Warren, Esquire
Warren and Young
Attorneys at Law
Peoples Savings & Loan Building
Ashtabula, Ohio 44004

Re:    Fisher & Young, Inc.  sale to<br>Albert T. Carlisle

Dear Mr. Warren:

We have completed the examination of the title, have given our Certificate to the Union Title Guaranty Company of Pittsburgh, who has issued its Preliminary Report. I plan on recording the deed on Monday, January 19.

The Title Company will send us a statement together with a policy as soon as we notify them of the Deed Book and Page numbers, where the deed is recorded. In the meantime, because of the large amount of the consideration, we will have to put on stamps in the amount of $1,000.00, one-half of which will be payable by Mr. Carlisle. Since this is a sizable sum, I would appreciate your having him send me his check to cover said amount immediately, plus the anticipated recording fee which will be $13.75 and the cost of recording the Agreement, which contains so many of the vital terms and conditions of the sale, which would be approximately the same. Thus we would appreciate receiving $527.50 to cover the costs which we must advance on the 19th.

On receiving further word from the Title Company, we will forward their statement to you or Mr. Carlisle.

With respect to the Clough Farm Club Fishing Agreement, I learned from Mr. Cochran that there is a subsequent agreement to the copy I sent to you last week. The termination date on the new agreement is December 31, 1972. Mr. Cochran says that he sent his only copy of the same to the Boy Scouts, presumable in Ohio, but the name of the individual to whom he sent it escapes him. If you

E. Terry Warren, Esquire
-2-
January 16, 1970

cannot locate such a copy, I think that I can get an extra one from the Warren
Office of The Pennsylvania Bank and Trust Company where a duplicate original
is reported to be held by a Mr. Jewell, Trust Officer.

       Very truly yours,

       JACK, KOOKOGEY & FORSSELL

dc           John S. Kookogey

40.

Keith Horn

(Ed) Kocjancic
~~Keenard~~ & Horn . Foresters

Kane . Pa

133 Biddle St.

814 - 837 - 8488

Earl Sallack
563-4406
Youngsville

February 11, 1970

E. Terry Warren, Esquire
Warren and Young
Peoples Savings & Loan Building
Ashtabula, Ohio 44004

Dear Mr. Warren:

Thank you for calling to our attention the omission from the description attached to the title insurance policy of the reservation of timber. The Title Company, as it turned out, had xeroxed the description we sent to them, but someone in their office used a scissors to cut off all reference to easements and exceptions and reservations with the apparent intention of including same under Schedule B.

You will note now that the timber reservation is now included at the end of the description, as originally given to the Insurance Company.

As for the Kinkead timber agreement, I honestly assumed that everyone, including the Buyer, was aware of its existence. As you will remember, I was not present when the first meeting was held to negotiate the sale here in the offices of the corporation. I was really dumb-founded when you raised the question last week by telephone.

Now that I have had time to regain my balance I realize that a default by Fisher & Young under the Kinkead agreement could adversely affect your client. Although such a default is highly remote, I can fully appreciate your concern and I apologize for not having discussed the matter much earlier. Please be assured that there was no intention to omit any fact from our negotiations. Since the timber was being reserved, and since I assumed, justifiably or not, that knowledge of the Kinkead agreement existed, the matter of timber was completely excluded from my further thought.

We enclose herewith a copy of said agreement, except for the description which is the same as in the deed from Fisher & Young to Carlisle. The payment of $20,000.00 was made April 1, 1968, and an additional payment of $8,000.00 was made April 1, 1969, and the further sum of $8,000.00 being due in about six weeks will mean that over 1/3 of the purchase price will have been paid by April 1, 1970.

The timber agreement was made separate from the other real estate

E. Terry Warren, Esquire
-2-
February 11, 1970

and in agreement form for two reasons, viz, to provide for an installment sale for the Seller, and to avoid payment of the 1% transfer stamps on the portion of the whole consideration allocated to timber.

Rather than upset the present installment basis which is beneficial to both Kinkead and Fisher & Young, we would hope that your client would accept for his protection an assignment of the Kinkead agreement in escrow, providing that should Fisher & Young be in default thirty days (as provided in said agreement) that Carlisle would have the option of paying the balance due under the Kinkead agreement and thus acquire Fisher & Young's rights to the timber. I have spoken to Mr. Cochran about his willingness to make such an assignment and received his verbal approval. He is presently in Florida and thus I have not shown him the details of any such escrow arrangement, but do not anticipate any problems whatsoever. It would seem that such an arrangement would more than adequately protect Mr. Carlisle.

If such is agreeable, we will prepare the assignment and escrow agreement.

Very truly yours,

JACK, KOOKOGEY & FORSSELL

John S. Kookogey

dc

P.S.    We also enclose the deed and agreement from Fisher & Young to Albert T. Carlisle.

Total Value 737 Timberland Acres

MEF–TOTAL TRACT
737 Acres

| SPECIES | 12 14" | 16 18" | 20" * | TOTAL |
|---|---|---|---|---|
| HARD MAPLE | 279 | 152 | 29 | 460 |
| BEECH | 125 | 124 | 24 | 273 |
| CHERRY | 136 | 86 | 13 | 14 Ven 221 SL |
| SOFT MAPLE | 120 | 82 | 16 | 218 |
| RED OAK | 69 | 102 | 41 | 212 |
| POP–CUC–BASS | 105 | 93 | 5 | 203 |
| ASH | 133 | 44 | 4 | 181 |
| HEMLOCK | 60 | 60 | 15 | 135 |
| ASPEN | 43 | 10 | –– | 53 |
| BIRCH | 20 | 13 | –– | 33 |
| PINE | 2 | 18 | 6 | 26 |
| OTHERS | 25 | 9 | 4 | 38 |
| TOTALS | 1,117 | 793 | 157 | 2,067 |

Plaintiff's Appendix
000525

Foy . Carlisle

Letter of Credit
Irrev.
64.000
Reassign Kirkwd agt.
Judgt . note —
pledged for 64.000.
(Five)
Timber Cuts - apply on
Kirkwd agt
½ % fee . unpaid bal.
pd in advance

*59*

January 26, 1971

E. Terry Warren, Esquire
Warren and Young
Attorneys at Law
Peoples Savings & Loan Building
Ashtabula, Ohio 44004

                Re:    Carlisle-Fisher & Young, Inc.

Dear Mr. Warren:

        I have made a trip to Warren, Pennsylvania, and discussed the matter
of the Carlisle-Fisher & Young assessments.    The confusion arose because of
the increased valuation in the woodlands.    After Mr. Carlisle received his
first notice of change of assessment, the assessor's office immediately sent a
corrected notice.

        I am returning the corrected notices with the penciled notation showing
the portion which is open fields and buildings, being in the amount of $17,175.00,
and the portion which has now been evaluated as timberland $9,070.00.

        All of the assessments have been placed under one map number.    The
portion Mr. Carlisle pays taxes on is identified as No. Cy-6-853, and the portion
assessable to Fisher & Young is Cy-6-853-1.

        It would appear from the assessments that in the opinion of the County
Assessor the value of the timberland is about 1/3 of the total value of the whole
property, which I believe confirms to the original thought of Fisher & Young.
We should also be mindful, assuming that such arrangement is agreeable with
your client, that Fisher & Young would be paying taxes on land on which timber
is located, which is owned by Mr. Carlisle.

                                        Very truly yours,

                                        JACK, KOOKOGEY & FORSSELL


                                        John S. Kookogey

dc
Enc.

5 5

LAW OFFICES

WARREN AND YOUNG

PEOPLES SAVINGS & LOAN BUILDING

ASHTABULA, OHIO 44004

AREA CODE 216
997-6175

THEODORE E. WARREN 1897-1969
M. H. YOUNG
E. TERRY WARREN
JAMES A. McSWIGAN

WILLIAM E. RIEDEL

February 11, 1971

Mr. John S. Kookogey
Jack, Kookogey & Forssell
144 West Spring Street
Titusville, Pennsylvania 16354

RE: <u>Carlisle - Fisher & Young, Inc.</u>

Dear Mr. Kookogey:

I have yours of January 26th, explaining the split-
out of the timber lands and the real estate on the Carlisle
property. Fisher and Young did request the appraiser to assess
one-third of the total valuation to Fisher and Young for their
timber lands and the balance to us. This does not seem fair to me.
Under the terms of the agreement, he is prevented using same be-
cause of the existing timber rights of your client. I frankly
think the split should be fifty-fifty on the assessments as you
and I agreed. Mr. Carlisle has some acquaintances there with
the taxing department, and he is going to look into the matter
himself when next in Pennsylvania. You have agreed with me that
the value of the timber rights is approximately $100,000.00 and
certainly the value of the land is an equivalent amount which is
indicated by the purchase price paid by Mr. Carlisle. On the basis
of this, I feel that the taxes should be split on a fifty-fifty
basis.

To expedite the settlement of the 1970 taxes, however,
we will settle this amount on the basis of one-third two-thirds
split as proposed by the comptroller of your client. Earlier, he
had forwarded a check to Mr. Carlisle representing this one-third
interest, but same has not been cashed by Mr. Carlisle. I, there-
fore, ask that the comptroller issue a stop-payment order on this
check and that a new check be issued with a current date representing
this one-third tax payment. This will at least clarify the matter
for the tax year 1970, leaving open the remaining years. After
Mr. Carlisle has conferred with the appropriate officials concerning
appraisal figures on the respective interests, we will be in further
communication with you in this regard.

Relating to the Kinkead Agreement, I am at a loss to
understand the position of your client. They are admittedly in
breach of the purchase agreement, and yet wish to do nothing concerning
same. I had proposed to you that we work out some plan concerning

Mr. John S. Kookogey
Jack, Kookogey & Forssell

February 11, 1971

Page 2

a terminable interest of the timber rights. You have responded to
me that this is unacceptable. You have suggested that we undertake
some sort of a guarantee basis, and I find this unacceptable. It
seems rather strange to me that Fisher and Young could purchase
property including timber rights from a party for the sum of $100,000.00,
and in turn, sell the underlying land for $100,000.00 which they re-
ceived in cash. In the Kinkead arrangement, it appears that very
little, if any, cash was paid, and to date the sum of $30,000.00 or
less has been delivered by Fisher and Young to Mrs. Kinkead. This
means your client has been significantly astute in being able to
finance the acquisition of timber rights without the payment of cash.
Unfortunately, however, there was this oversight in the purchase agree-
ment and we are not willing to ignore it.

I obviously prefer not to retain other counsel in your
community or Meadville in order to institute action to enforce our
rights. However, if this must be done, then obviously the task will
be undertaken. I, frankly, would appreciate any suggestions that
you might have concerning the solution to this problem, realizing
the matter with which we are basically concerned is a terminable
interest in the timber rights or a significant portion thereof.

May I hear from you?

Yours truly,

*E. Terry Warren*

E. Terry Warren (an)

ETW:an

cc: Mr. A. T. Carlisle

*They will cut timber — & pay M Mrs. K.
Oral agt. and K cut 10-20 yrs.*

# This Deed,

FILED AND ENTERED
9:33 ___ A.M.
JAN 19 1970

Made the __ Ninth __ day of __ January,
in the year nineteen hundred and seventy (1970),

Between __ FISHER & YOUNG, INC., a Pennsylvania Corporation with principal place of business R. D. 2, Titusville, Oil Creek Township, Crawford County, Pennsylvania, Grantor,

AND

ALBERT T. CARLISLE, of Ashtabula, Ohio, Grantee,

Witnesseth, That in consideration of ONE HUNDRED THOUSAND ($100,000.00) - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Dollars,
in hand paid, the receipt whereof is hereby acknowledged, the said grantor __ does __ hereby grant and convey, sell and confirm unto the said grantee, its __ successors __ xxxx and assigns,

All those certain pieces or parcels of land situate in Spring Creek Township, Warren County and State of Pennsylvania, bounded and described as follows:

1. BEGINNING at the northeast corner, a hemlock tree; thence south one hundred thirty-six (136) rods to a post; thence by land formerly owned by W. A. Irvine west to the corner of land formerly owned by Francis Bates; thence by land of said Bates one hundred thirty-six (136) rods to a post; thence by land of said W. A. Irvine east to the place of beginning, containing sixty-four (64) Acres one hundred fifty-five (155) rods of land, more or less.

2. BEGINNING at a post and stones in the northwest corner of the lot hereby conveyed; thence east one hundred sixty-nine (169) rods to a post; thence south one hundred one (101) rods to a post; thence east forty-nine and one-tenth (49.1) rods to a post; thence south one hundred ten and seven-tenths (110.7) rods to a post; thence west one hundred sixty-six (166) rods to a post; thence north sixty-two and seven-tenths (62.7) rods to a post; thence west fifty-three and seven-tenths (53.7) rods to a post; thence north one hundred forty-nine (149) rods to a post and stones, the place of beginning, containing two hundred thirty-seven (237) acres of land, more or less, and being part of Tract Number Three hundred sixty-three (363) as designated on the general map of Warren County.

3. BEGINNING at the northwest corner of said piece of land at a post, thence in a southerly direction along the Morton Hill Road to the southwest corner of said piece of land; thence north eighty-eight and three-fourths (88-3/4) degrees east one hundred thirty-four and six-tenths (134.6) rods to a hemlock; thence north one and one-fourth (1-1/4) degrees east one hundred thirty-one and four-tenths (131.4) rods to a post; thence south eighty-nine and three-fourths (89-3/4) degrees west one hundred and thirty-four and six-tenths (134.6) rods to a post, the place of beginning; containing about one hundred and five (105) acres, be the same more or less.

4. ALSO, ALL that certain piece or parcel of land situate in the Township, County and State aforesaid, being the homestead farm formerly of G. W. Nichols, and described in the three following several deeds, to-wit; from Frank E. Bates

BOOK 361 PAGE 13

DEPOSITION
EXHIBIT
# 4    06
Fossee    2006

EXHIBIT
47    06
8-16-06

311

BOOK 361 PAGE 14

and wife to C. W. Nichols, bearing date the twenty-first day of March, A.D. 1890, and recorded in said Recorder's Office in Deed Book 68, page 81, as commencing at a post in the south line of said property; thence by lands of Smith south eighty-eight and three-fourths (88-3/4) degrees west fifty-five and five-tenths (55.5) perches to a post; thence by the same north one and one-fourth (1-1/4) degrees west to the state road, supposed to be about one hundred and forty-five (145) rods, more or less; thence eastwardly along the center of said road to the northwest corner of land deeded by Francis Bates to L. L. Bates; and thence south one and one-fourth (1-1/4) degrees east along said L. L. Bates' land to a post, the place of beginning, be the same more or less, supposed to contain about fifty-four or fifty-five acres of land out of Tract Number Three hundred and three (303).

5. ALSO, One other piece or parcel of land described as being the east half of sixty-three (63) acres of land deeded from George Yeager to Francis Bates on the Fifth day of July, 1850, and recorded in said Recorder's Office on the Third day of July, 1851, off of Tracts Numbers Three hundred and four (304) and Three hundred sixty-three (363).

6. ALSO, as described in the deed from L. L. Bates and wife to said C. W. Nichols, bearing date the Twenty-first day of February, 1886, as commencing in the center of the State Road and the center of the Morton Hill Road at the junction of those two roads; thence by land of Cordelia Leonard and W. A. Irvine south one and one-fourth (1-1/4) degrees east one hundred eighty-five and one-half (185-1/2) rods to a beech, the southeast corner of the Francis Bates home farm; thence south eighty-eight and three-fourths (88-3/4) degrees west along the south line of said home farm fifty-one (51) rods to a post; thence north one and one-fourth (1-1/4) degrees west to the State Road; and thence eastwardly along the center of said road to the center of said Morton Hill Road, the place of beginning, supposed to contain about fifty-three (53) acres of land, be the same more or less.

7. On the north by land above described, on the east by land of F. E. Bates, on the south by land formerly of C. W. Nichols, and on the west by land of M. Smith, containing about thirty-one and one-half (31-1/2) acres of land, more or less; and also so much of the land described in the deed from S. D. I. Newbold to the said C. W. Nichols, bearing date the Twenty-second day of March, 1888, and recorded in said Recorder's Office in Deed Book 64, page 136, as lies west of the Morton Hill Road, and adjoining the lands herein above described.

8. On the south by lands owned by W. A. Irvine's heirs; on the west by the Morton Hill Road and land formerly owned by George Bates; on the north by land formerly owned by Mrs. Elias Wood; and on the east by the station road and land formerly owned by Lewis Stoddard, containing sixty-eight (68) acres and fifty-nine (59) rods of land, be the same more or less, out of Tract Number Three hundred four (304).

9. On the north by land of Whiteley; on the east by land formerly of Greeley; on the south by lands formerly owned by W. A. Irvine; and on the west by lands conveyed to C. W. Nichols by F. J. Jones and wife, and a public road leading to Spring Creek R. R. Station and lands of Stoddard, containing forty-four (44) acres of land, more or less.

10. On the north by land of Tom Forbes; on the east by land formerly of W. A. Irvine and L. S. Clough; on the south by land formerly of William Morton, now L. S. Clough, containing forty-five (45) acres, more or less.

11. Part of Tract Three hundred ten (310) as described on the map of Warren County, Pennsylvania, as follows: BEGINNING in the center of the State Road at a point where the same crosses the Tract line between the land formerly of Sarah D. I. Newbold and that of L. Greeley; thence south one (1)

degree forty-five (45) minutes east eighty-eight (88) rods to a post, the southwest corner of Tract Number Three hundred ten (310); thence north eighty-eight (88) degrees forty-five (45) minutes east along the southerly line of Tract Number Three hundred ten (310), eighty-one (81) rods to a post in said Tract line; thence north two (2) degrees west one hundred nine and one-half (109-1/2) rods to a post in the center of the State Road; thence along the center of said road westerly eighty-four and three-tenths (84.3) rods to the place of beginning, containing fifty (50) acres of land, more or less.

12.    BEGINNING at a point in the center of the State Road, at the northeast corner of land heretofore conveyed by S. S. Wead, and running thence south two (2) degrees east one hundred twelve and six-tenths (112.6) rods to a post at the southeast corner of the said Wead's land, and in the south line of Tract Number Three hundred ten (310); thence north eighty-eight and three-fourths (88-3/4) degrees east three hundred fifty (350) rods to the western bank of the Big Brokenstraw Creek at low water mark; thence northwesterly along the western bank of the Big Brokenstraw Creek at low water mark to the center of the State Road; thence southwesterly along the center of the said State Road to the place of beginning. The same containing two hundred fourteen (214) acres and one hundred four (104) perches of land, be the same more or less, and being a part of Tract Number Three hundred ten (310). The land herein conveyed to include all the land lying west of the Big Brokenstraw Creek belonging to Mrs. S. D. L. Newbold in Tract Number Three hundred ten (310). Also, all islands in that part of Brokenstraw Creek which lie east of the foregoing described land.

13.    BEGINNING at the northwest corner of Tract Number Three hundred thirteen (313); thence extending along the north line of said tract due east ninety-one and nine-tenths (91.9) perches to the corner of land formerly of E. Jackson; thence along the same due south one hundred thirty-five (135) perches to the southwest corner of said Jackson's land; thence due west ninety-four (94) perches to the west line of said tract; thence along said line due north one hundred thirty-five (135) perches to the place of beginning, containing seventy-eight (78) acres and forty-one (41) perches, more or less, being the northwest corner of Tract Number Three hundred thirteen (313). Being land conveyed to S. Clough by Dan A. Geiger and wife by deed dated October 1, 1906 and recorded in Deed Book 105, page 260.

14.    On the north by lands formerly of Miles and Watts; on the east by the eastern line of the tract; on the south by the southern line of said tract; on the west by lands formerly of Yeager and Miles and Watts. Being 51 acres 18 perches from the south-east side of Tract Number Three hundred Four (304), and conveyed to L. S. Clough by deed of J. V. Kinyon dated March 30, 1911 and recorded in Deed Book 114, page 397.

15.    BEGINNING at the northwest corner of the whole tract Number Three hundred fourteen (314); thence south by the west line of the tract one hundred fifty-nine (159) rods to a post; thence east fifty-three (53) rods and eight (8) links to a post; thence north by the residue of the tract one hundred fifty-nine (159) rods to a post in the north line of the tract; thence west along the north line of the tract fifty-three (53) rods and eight (8) links to the place of beginning. Containing fifty (50) acres of land and allowance.

16.    BEGINNING at the northwest corner of the tract conveyed at a post; thence by land formerly of Sager east fifty and seven-tenths (50.7) perches to lands formerly of Jackson; thence by land formerly of Jackson south two hundred one (201) perches to land formerly of Irvine; thence by land formerly of Irvine west fifty and seven-tenths (50.7) perches to a post; thence by lands formerly of Irvine and lands formerly of Yager north two hundred one (201) perches to the place of beginning, containing sixty (60) acres of land, be the same more or less, being part of Warrant Number Three hundred sixty-three (363).    BOOK 361 PAGE 15

SUBJECT to the right of way for an electric line granted unto Pennsylvania Electric Company by Instrument dated October 15, 1957 and entered in the Recorder's Office of Warren County in Deed Book 291, page 460, on January 11, 1958.

313

Plaintiff's Appendix
000532

SUBJECT to the right of way for an electric line granted unto Pennsylvania Electric Company by instrument dated November 29, 1957 and entered in said Recorder's Office in Deed Book 292, page 140 on January 31, 1958.

BOOK 361 PAGE 16

EXCEPTING and RESERVING that portion of the above described premises which was conveyed by Robert M. Kinkead and Marion C. Kinkead, his wife, to Charles A. Williams and Mary Helen Williams, husband and wife, by deed dated June 6, 1958 and entered in said Recorder's Office in Deed Book 294, page 475.

BEING the same parcels of land which Marion C. Kinkead, widow, by deed dated March 27, 1969, recorded in the Recorder's Office of Warren County in Deed Book 357, Page 349, conveyed to Fisher & Young, Inc., Grantor herein.

EXCEPTING and RESERVING from and out of this conveyance, all of the timber and trees, standing and fallen, situate on the premises above described, with full right of ingress, egress and regress for purposes of cutting, skidding, piling and removing the same, constructing roadways and skidways, and piling yards for such purposes, being subject to other terms relative thereto herein set forth below, SUBJECT, however, to right of Buyer to use for its own purposes all trees fallen for more than one year and all tree tops remaining after logging operations.

TOGETHER with such rights and subject to such conditions and terms as contained in agreement between the parties hereto dated May 28, 1969, incorporated herewith by reference and made a part hereof.

This deed of conveyance was executed, acknowledged and delivered pursuant to the authority of the Grantor by Resolution of its Board of Directors duly adopted at a special meeting held on November 3, 1969, after due and proper notice thereof in accordance with the By-laws of said corporation.

---

State of _____ ) SS:
County of _____ )

On this, the _____ day of _____ 19___, before me the undersigned officer, personally appeared

known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that he executed the same for the purpose therein contained.
IN WITNESS WHEREOF, I have hereunto set my hand and _____ seal.

_____
My Commission Expires

State of PENNSYLVANIA ) SS:
County of CRAWFORD    )

On this, the 9th day of January, 1970, before me, a notary Public, the undersigned officer, personally appeared Philip H. Cochran, who acknowledged himself to be the President of Fisher & Young, Inc., a corporation, and that he as such President, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as President.

IN WITNESS WHEREOF, I have hereunto set my hand and notarial seal.

_____
My Commission Expires
DOROTHY S. COLE, Notary Public
Titusville, Crawford Co. Penna.
My Comm. Expires April 14, 1973

And the said grantor will     General     Warrant and Forever Defend the property hereby conveyed.

In Witness whereof,     said grantor     caused this instrument to be executed by its duly authorized officers and its corporate seal affixed hereto, the     day and year first above written.     has ~~hereunto set his hand and seal~~

FISHER & YOUNG, INC.

By: _____ [SEAL]
          President

_____ [SEAL]

_____ [SEAL]

_____ [SEAL]

_____ [SEAL]

_____ [SEAL]

### Certificate of Residence

We X hereby certify, that the precise residence of the grantee herein is as follows: c/o Warren Young, Atty., Sapln S&A 3d. — Ashtabula, Ohio. 44004

JACK, KOOKOGEY & FORSSELL

By: _____
          Assistant ... Cashier

County     }
County
On thi
the unde

known to me (or satisfactorily proven) to be the person     whose name     subscribed to the within instrument, and acknowledged that     executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and     seal.

_____
My Commission Expires

Commonwealth of Pennsylvania     }
County
On thi
the unde

known to me (or satisfactorily proven) to be the person     whose name     subscribed to the within instrument, and acknowledged that     executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and     seal.

BOOK 361 PAGE 17     My Commission Expires

JACK, KOOKOGEY & FORSSELL
Attorneys at Law
Titusville, Pa.

BOOK 391 PAGE 32

FILED AND ENTERED at
9:19 o'clock A. M.

JAN 2 0 1970

### AGREEMENT OF SALE

FISHER & YOUNG, INC., a Pennsylvania corporation with principal place of business, R. D. 2, Titusville, Oil Creek Township, Crawford County, Pennsylvania, hereinafter called the Seller,    a n d    ALBERT T. CARLISLE, of 6229 Hiram Avenue, Ashtabula, Ohio, hereinafter called the Buyer.

WITNESSETH; that the said Seller, in consideration of the covenants and agreements hereinafter contained, on the part of the said Buyer to be kept and performed, has agreed and does hereby agree to sell and convey unto the said Buyer, his heirs or assigns, all the land and premises hereinafter mentioned and fully described, for the sum of ONE HUNDRED THOUSAND ($100,000.00) Dollars, to be paid as follows:    the sum of $1,000.00 paid herewith to the Seller, receipt of which is hereby acknowledged, the balance of $99,000.00 to be paid upon execution of this agreement, and delivery to Buyer of a general warranty deed conveying a marketable title in and to the premises herein described, subject to the exceptions set forth and provided for in this agreement.

The said premises are described as follows:

1.    All that certain tract of land situate in Spring Creek Township, Warren County and State of Pennsylvania, bounded and described as follows: BEGINNING at the northeast corner, a hemlock tree;  thence south one hundred thirty-six (136) rods to a post;  thence by land formerly owned by W. A. Irvine west to the corner of land formerly owned by Francis Bates;  thence by land of said Bates one hundred thirty-six (136) rods to a post;  thence by land of said W. A. Irvine east to the place of beginning, containing sixty-four (64) acres one hundred fifty-five (155) rods of land, more or less.

2.    ALSO, ALL that certain other piece or parcel of land situate in the Township, County and State aforesaid, bounded and described as follows: ...





Plaintiff's Appendix
000535

301

BEGINNING at a post and stones in the northwest corner of the lot hereby conveyed; thence east one hundred sixty-nine (169) rods to a post; thence south one hundred one (101) rods to a post; thence east forty-nine and one-tenth (49.1) rods to a post; thence south one hundred ten and seven tenths (110.7) rods to a post; thence west one hundred sixty-six (166) rods to a post; thence north sixty-two and seven-tenths (62.7) rods to a post; thence west fifty-three and seven-tenths (53.7) rods to a post; thence north one hundred forty-nine (149) rods to a post and stones, the place of beginning, containing two hundred thirty-seven (237) acres of land, more or less, and being part of Tract Number Three hundred sixty-three (363) as designated on the general map of Warren County.

3.     ALSO, ALL that certain other piece or parcel of land situate in the Township, County and State aforesaid, bounded and described as follows: BEGINNING at the northwest corner of said piece of land at a post, thence in a southerly direction along the Morton Hill Road to the southwest corner of said piece of land; thence north eighty-eight and three-fourths (88 3/4) degrees east one hundred thirty-four and six-tenths (134.6) rods to a hemlock; thence north one and one-fourth (1 1/4) degrees east one hundred thirty one and four tenths (131.4) rods to a post; thence south eighty-nine and three-fourths (89-3/4) degrees west one hundred and thirty-four and six-tenths (134.6) rods to a post, the place of beginning; containing about one hundred and five (105) acres, be the same more or less.

4.     ALSO, ALL that certain piece or parcel of land situate in the Township, County and State aforesaid, being the homestead farm formerly of C. W. Nichols, and described in the three following several deeds, to-wit:  from Frank E. Bates and wife to C. W. Nichols, bearing date the twenty-first day of March, A.D. 1890, and recorded in said Recorder's Office in Deed Book 68, page 81, as commencing at a post in the south line of said property;  thence by lands of Smith south eighty-eight and three-fourths (88-3/4) degrees west fifty-five and five-tenths (55.5) perches to a post;  thence by the same north one and one-fourth (1-1/4) degrees west to the state road, supposed to be about one hundred and forty-five (145) rods, more or less;  thence eastwardly along the center of said road to the northwest corner of land deeded by Francis Bates to L. L. Bates; and thence south one and one-fourth (1-1/4) degrees east along said L. L. Bates' land to a post, the place of beginning, be the same more or less, supposed to contain about fifty-four or fifty-five acres of land out of Tract Number Three hundred and three (303).

5.     ALSO, One other piece or parcel of land described as being the east half of sixty-three (61) acres of land deeded from George Yeager to Francis Bates on the Fifth day of July, 1850, and recorded in said Recorder's Office on the Third day of July, 1851, off of Tracts Numbers Three hundred and four (304) and Three hundred sixty-three (363).

6.     ALSO, as described in the deed from L. L. Bates and wife to said C. W. Nichols, bearing date the Twenty-first day of February, 1886, as commencing in the center of the State Road and the center of the Morton Hill Road at the junction of those two roads;  thence by land of Cordelia Leonard and W. A. Irvine south one and one-fourth (1-1/4) degrees east one hundred eighty-five and one-half (185-1/2) rods to a beech, the southeast corner of the Francis Bates home farm;  thence south eighty-eight and three-fourths (88-3/4) degrees west along the south line of said home farm fifty-one (51) rods to a post;  thence

BOOK 361 PAGE 33

-2-

Plaintiff's Appendix
000536

302

north one and one-fourth (1-1/4) degrees west to the State Road;  and thence eastwardly along the center of said road to the center of said Morton Hill Road, the place of beginning, supposed to contain about fifty-three (53) acres of land, be the same more or less.

**BOOK 361 PAGE 34**

7.    ALSO, ALL that certain piece or parcel of land situate in the Township, County and State aforesaid, bounded and described as follows:   On the north by land above described, on the east by land formerly of C. W. Nichols, and on the south by land formerly of C. W. Nichols, and on the west by land of M. Smith, containing about thirty-one and one-half (31-1/2) acres of land, more or less;  and also so much of the land described in the deed from S. D. I. Newbold to the said C. W. Nichols, bearing date the Twenty-second day of March, 1888, and recorded in said Recorder's Office in Deed Book 64, page 136, as lies west of the Morton Hill Road, and adjoining the lands herein above described.

8.    ALSO, ALL that certain piece or parcel of land situate in the Township of Spring Creek, County of Warren and State of Pennsylvania, bounded and described as follows: On the south by lands owned by W. A. Irvine; on the west by the Morton Hill Road and land formerly owned by George Bates; on the north by land formerly owned by Mrs. Elias Wood;  and on the east by the station road and land formerly owned by Lewis Stoddard, containing sixty-eight (68) acres and fifty-nine (59) rods of land, be the same more or less, out of Tract Number Three hundred four (304).

9.    ALSO, ALL that certain piece or parcel of land situate in the Township of Spring Creek, County of Warren and State of Pennsylvania, bounded and described as follows:  On the north by land of Whiteley;  on the east by land formerly of Greeley;  on the south by lands formerly owned by W. A. Irvine; and on the west by lands conveyed to C. W. Nichols by F. J. Jones and wife, and a public road leading to Spring Creek R. R. Station and lands of Stoddard, containing forty-four (44) acres of land, more or less.

10.    ALSO, ALL that certain piece of land situate in the Township, County and State aforesaid, bounded and described as follows:  On the north by land of Tom Forbes;  on the east by land formerly of W. A. Irvine and L. S. Clough; on the south by land formerly of William Morton, now L. S. Clough, containing forty-five (45) acres, more or less.

11.    ALSO, ALL that certain piece or parcel of land situate in the Township, County and State aforesaid, being part of Tract Three hundred ten (310) as described on the map of Warren County, Pennsylvania, as follows:  BEGINNING in the center of the State Road at a point where the same crosses the Tract line between the land formerly of Sarah D. I. Newbold and that of L. Greeley;  thence south one (1) degree forty-five (45) minutes east eighty-eight (88) rods to a post, the southwest corner of Tract Number Three hundred ten (310);  thence north eighty-eight (88) degrees forty-five (45) minutes east along the southerly line of Tract Number Three hundred ten (310) to a post in said Tract line;  thence north two (2) degrees west one hundred nine and one-half (109-1/2) rods to a post in the center of the State Road;  thence along the center of said road westerly eighty-four and three-tenths (84.3) rods to the place of beginning, containing fifty (50) acres of land, more or less.

12.    ALSO, ALL that certain piece or parcel of land situate in said Township,

-3-

303

County and State, bounded and described as follows:  BEGINNING at a point in the center of the State Road, at the northeast corner of land heretofore conveyed by S. S. Wood, and running thence south two (2) degrees east one hundred twelve and six-tenths (112. 6) rods to a post at the southeast corner of the said Wood's land, and in the south line of Tract Number Three hundred ten (310);  thence north eighty-eight and three-fourths (88-3/4) degrees east three hundred fifty (350) rods to the western bank of the Big Brokenstraw Creek at low water mark;  thence northwesterly along the western bank of the Big Brokenstraw Creek at low water mark to the center of the State Road;  thence southwesterly along the center of the said State Road to the place of beginning. The same containing two hundred fourteen (214) acres and one hundred four (104) perches of land, be the same more or less, and being a part of Tract Number Three hundred ten (310).  The land herein conveyed to include all the land lying west of the Big Brokenstraw Creek belonging to Mrs. S. D. I. Newbold in Tract Number Three hundred ten (310).  Also, all islands in that part of Brokenstraw Creek which lie east of the foregoing described land.

13.  ALSO, ALL that certain land situate in the aforesaid Township, County and State, conveyed to L. S. Clough by Dan A. Geiger and Jessie L. Geiger, his wife, by deed bearing date the First day of October, 1906, and recorded in the Recorder's Office of Warren County in Deed Book 105, page 260, said land being bounded and described as follows:  BEGINNING at the northwest corner of Tract Number Three hundred thirteen (313);  thence extending along the north line of said tract due east ninety-one and nine-tenths (91. 9) perches to the corner of land formerly of E. Jackson;  thence along the same due south one hundred thirty-five (135) perches to the southwest corner of said Jackson's land;  thence due west ninety-four (94) perches to the west line of said tract;  thence along said line due north one hundred thirty-five (135) perches to the place of beginning,  containing seventy-eight (78) acres and forty-one (41) perches, more or less, being the northwest corner of Tract Number Three hundred thirteen (313).

14.  ALSO, ALL that certain piece or parcel of land situate in Spring Creek Township, Warren County, State of Pennsylvania, as conveyed to L. S. Clough by J. V. Kinyon by deed bearing date the Thirteth day of March, 1911, and recorded in the Recorder's Office of Warren County in Deed Book 114, page 397, said land being bounded and described as follows:  It being fifty-one (51) acres and eighteen (18) perches from the southeast side of Tract Number Three hundred four (304) bounded as follows:  On the north by lands formerly of Miles and Watts;  on the east by the eastern line of said tract;  on the south by the southern line of said tract;  on the west by lands formerly of Yager and Miles and Watts.

15.  ALSO, ALL that certain piece or parcel of land situate in Spring Creek Township, Warren County, State of Pennsylvania, bounded and described as follows:  BEGINNING at the northwest corner of the whole tract Number Three hundred fourteen (314);  thence south by the west line of the tract one hundred fifty-nine (159) rods to a post;  thence east fifty-three (53) rods and eight (8) links to a post;  thence north by the residue of the tract one hundred fifty-nine (159) rods to a post in the north line of the tract;  thence west along the north line of the tract fifty-three (53) rods and eight (8) links to the place of beginning. Containing fifty (50) acres of land and allowance.

16.  ALSO, ALL that certain piece or parcel of land situate in Spring Creek

BOOK 361 PAGE 35

-4-

Plaintiff's Appendix
000538

304

Township, Warren County, State of Pennsylvania, bounded and described as follows: BEGINNING at the northwest corner of the tract conveyed to Sager east fifty and seven-tenths (50.7) perches to lands formerly of Jackson; thence by land formerly of Jackson south two hundred one (201) perches to land formerly of Irvine; thence by land formerly of Irvine west fifty and seven-tenths (50.7) perches to a post; thence by lands formerly of Irvine and lands formerly of Yager north two hundred one (201) perches to the place of beginning, containing sixty (60) acres of land, be the same more or less, being part of Warrant Number Three hundred sixty-three (363).

BOOK 361 PAGE 36

There being erected upon said premises a large two-story frame dwelling house, two large barns and other buildings.

SUBJECT to the right of way for an electric line granted unto Pennsylvania Electric Company by instrument dated October 14, 1957 and entered in the Recorder's Office of Warren County in Deed Book 291, page 460, on January 11, 1958.

SUBJECT to the right of way for an electric line granted unto Pennsylvania Electric Company by instrument dated November 29, 1957 and entered in said Recorder's Office in Deed Book 292, page 140 on January 31, 1958.

EXCEPTING AND RESERVING that portion of the above described premises which was conveyed by Robert M. Kinkead and Marion C. Kinkead, his wife, to Charles A. Williams and Mary Helen Williams, husband and wife, by deed dated June 6, 1958 and entered in said Recorder's Office in Deed Book 294, page 475.

BEING the same parcels of land which Marion C. Kinkead, widow, by deed dated March 27, 1969, recorded in the Recorder's Office of Warren County in Deed Book 357, Page 349, conveyed to Fisher & Young, Inc., Seller herein.

This conveyance is made subject to a certain agreement of lease dated February 1, 1962 with the individual members of the Clough Farm Club as joint tenants, as amended, with reference to the stream bed of Spring Creek and 25feet inland from the normal banks of said creek on each side thereof, with right of entry to and from the same, but all rights of the lessor in and to said agreement are hereby assigned and conveyed to the Buyer.

EXCEPTING and RESERVING from and out of this conveyance, all of the timber and trees, standing and fallen, situate on the premises above described, with full right of ingress, egress and regress for purposes of cutting, skidding, piling and removing the same, constructing roadways and skidways, and piling yards for such purposes, being subject to other terms relative thereto herein set forth below, SUBJECT, however, to right of Buyer to use for its own purposes all trees fallen for more than one year and all tree-tops remaining after logging operations.

-5-

Plaintiff's Appendix
000539

305

The parties, in consideration of the mutual covenants herein contained, agree further as follows:

1.    That the cost of Pennsylvania transfer stamps on the deed shall be allocated equally between the Buyer and Seller.

2.    That the real estate taxes for 1969 and fire insurance premiums on the buildings for 1969, shall be paid by the Seller.

3.    That possession shall be given to Buyer upon the date of closing.

4.    That Seller shall reimburse to Buyer each year a prorata share of real estate taxes based on the value of the timber situated thereon and reserved by Seller; or in the alternative, the Buyer shall apply to the County Assessor for a separate assessment of timber and other real property.

5.    That Seller shall assign to Buyer all of its right, title and interest in and to the Cough Farm Club fishing agreement and the existing Soil Bank Agreement with the United States Department of Agriculture.

6.    That Seller shall confine the cutting of saw timber to those trees which measure 16" or more in diameter at 1 ft. above the ground and shall confine its logging operations to the season from November 1 to March 31 each year.  However, smaller trees may be removed, as in thinning, or in pest or fire control, whenever or wherever good forestry practice so dictates.

7.    That the Seller is hereby granted unobstructed access over all of the lands hereby conveyed for purposes of its operations, including but not limited to thinning, timber cruising, planting, growth studies, pest and fire control, cutting, skidding, piling and removing timber; and is further granted, upon 120 days notice in writing to Buyer, the right to construct such roads as it deems reasonably necessary for its operations, without compensation, or discount, or allowance to Buyer for any portion of said premises so taken or

BOOK 361 PAGE 37

-6-

withheld. However, the Seller, its successors or assigns, shall not construct a portable saw mill on premises during term of this agreement.

8.    That the Buyer is hereby granted the right to select and use dam sites and to flood areas of the premises not to exceed the maximum of two

BOOK 361 PAGE 38

10-acre lakes in the forestry area and/or one 20-acre lake to service camp sites 1 and 2 as designated on the map attached hereto and marked Exhibit A and made a part hereof with normal program areas adjacent thereto. Provided, however, that Buyer shall, 120 days prior to the flooding of any such area, give written notice thereof to the Seller; and the Seller shall thereupon and within 120 days of receipt of such notice cut and remove from the site for said area to be flooded all timber (except tops and limbs) at no expense to Buyer. The Buyer is further granted the right to select and use a winter sports area consisting of approximately 200 feet in width and 1000 feet in length, to be located on the East side of Jackson Hill Road and more particularly on the West slope of Jackson Hill, subject to the same terms and conditions as set forth above.

9.    That the Buyer is hereby granted the right to construct such buildings and roads as it shall deem reasonably desirable and necessary for its use and development of said premises; provided, however, that it shall give 120 days written notice thereof to Seller and Seller shall within 120 days of receipt of said notice cut and remove from said area all timber (except tops and limbs) at no expense to Buyer.

10.    That the Seller shall within one year after closing of this transaction conspicuously mark the outside boundary lines in the forested area.

11.    That the Seller shall indemnify the Buyer and hold it harmless from any loss, claim or cause of action arising out of the Seller's logging operations and timber management, and/or from the acts of its agents, employees or contractors; and the Seller shall maintain $100,000-$300,000 liability insurance against personal injury and $50,000 property damage as

-7-

Plaintiff's Appendix
000541

307

security for protection against claims of Buyer or third parties arising out of the said operations and management.

12.    That, all reservations and exceptions above set forth, to the contrary notwithstanding, any and all trees planted by Buyer shall always remain the property of Buyer.

13.    That, in the event of a taking of the premises or any portion thereof by governmental agency through its powers of condemnation, it is mutually agreed by the parties hereto that an equitable prorata division of the proceeds shall be made between them on the basis of the value of the timber and the value of other real estate so condemned.

14.    That the cost of obtaining the title insurance above set forth shall be borne by the Buyer.

15.    A.    That in the event the Seller shall desire to sell, transfer or assign the timber reserved on the premises above described, Seller shall give Buyer written notice thereof and hereby grants to Buyer the option for thirty days following the posting of said notice by Seller to Buyer of purchasing said timber at the price offered therefor by a bona fide prospective third party purchaser, transferor or assignor.

B.    Should the present management and/or ownership of Seller change, Buyer shall be so advised by Seller in writing and shall have an thirty day option to purchase the timber rights at a price to be mutually agreed upon, or in failure thereof, by arbitration (each side to choose one of the arbitrators and the two arbitrators to select a third).    The arbitrators shall establish the price which shall be binding without appeal of the parties.

16.    It is further agreed and stipulated by and between the parties

BOOK 361 PAGE 39

-8-

hereto that a map designating the forestry areas which shall be subject to cutting by the Seller and also designating those areas belonging solely to the Buyer, wherein the Seller agrees that there will be no cutting, shall be attached hereto and made a part hereof as though fully set forth herein and marked Exhibit A as previously mentioned.     BOOK 361 PAGE 40

17.    All covenants and agreements herein contained shall extend to and be obligatory upon the heirs, personal representative, successors and assigns of the respective parties.

IN WITNESS WHEREOF, the said parties to this agreement have hereunto set their hands and seals the 28th day of May, 1969.

FISHER & YOUNG, INC.

*Philip H. Cochran*
President

ATTEST:
*Chas W. Rodgers*
Act. Secretary

*Albert T. Carlisle*    (SEAL)
Albert T. Carlisle

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF CRAWFORD

On this, the 30th day of September, 1969, before me, the undersigned officer, personally appeared Philip H. Cochran, who acknowledged himself to be the President of FISHER & YOUNG, INC., a corporation, and that he as such President, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as President.

In Witness Whereof, I hereunto set my hand and notarial seal.

*Dorothy S. Cole*

DOROTHY S. COLE, Notary Public
Titusville, Crawford Co. Penna.
My Comm. Expires April 14, 1970

-9-

STATE OF OHIO

COUNTY OF ASHTABULA.

On this, the 21 day of October 1949, before me, the undersigned officer, personally appeared Albert T. Carlisle, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purpose therein contained.

In Witness Whereof, I have hereunto set my hand and notarial seal.

Notary Public
My Comm. expir.

BOOK 361 PAGE 41

-10-

WARRANTY DEED—INDIVIDUAL
For Sale by Redding's, Warren, Pennsylvania.

# This Deed,

FILED AND ENTERED at
11:17 o'clock A. M. on

APR 23 1973

BOOK 376 PAGE 939

**Made the**        20th        **day of**        April        **in the year**

Nineteen hundred and seventy-three (1973).

**Between**  MARION C. KINKEAD, widow, of the Borough of Warren,
County of Warren and State of Pennsylvania,

**grantor**

**and**        FISHER & YOUNG, INC., a Pennsylvania Corporation, with
principal office in Oil Creek Township, Crawford County,
Pennsylvania,

**grantee**

**Witnesseth**, That in consideration of  One and 00/100

($1.00)                                            **Dollar**

in hand paid, the receipt whereof is hereby acknowledged, the said grantor   do es hereby grant and

convey to the said grantee  . All of the timber and trees standing and down
measuring 12 inches and more in diameter one foot from the ground,
on ALL THOSE CERTAIN pieces or parcels of land situate in the Town-
ship of Spring Creek, County of Warren and State of Pennsylvania,
described as follows:

1. BEGINNING at the northeast corner, a hemlock
tree; thence south 136 rods to a post; thence by land formerly owned
by W. A. Irvine west to the corner of land formerly owned by Francis
Bates; thence by land of said Bates 136 rods to a post; thence by
land of said W. A. Irvine east to the place of beginning, containing
64 acres 155 rods, more or less.

2. BEGINNING at a post and stones in the north-
west corner of the lot hereby conveyed; thence east 169 rods to a
post; thence south 101 rods to a post; thence east 49.1 rods to a
post; thence south 110.7 rods to a post; thence west 166 rods to a
post; thence north 62.7 rods to a post; thence west 53.7 rods to a
post; thence north 149 rods to a post and stones, the place of
beginning, containing 237 acres of land, more or less, and being part
of Tract No. 363.

3. BEGINNING at the northwest corner of said
piece of land at a post; thence in a southerly direction along the
Morton Hill Road to the southwest corner of said piece of land;
thence N 88 3/4° E 134.6 rods to a hemlock; thence N 1 1/4° E 131.4
rods to a post; thence S 89 3/4° W 134.6 rods to a post, the place
of beginning, containing about 105 acres, more or less.

4. Being the homestead farm formerly of G. W.
Nichols, and described in the three following several deeds: from
Frank E. Bates and wife to C. W. Nichols dated March 21, 1890 and
recorded in Deed Book 68, page 81, as commencing at a post in the
south line of said property; thence by lands of Smith S 88 3/4° W
55.5 perches to a post; thence by the same N 1 1/4° W to the state
road, supposed to be about 145 rods; thence eastwardly along the
center of said road to the northwest corner of land deeded by
Francis Bates to L. L. Bates; thence S 1 1/4° E along said L. L.
Bates' land to a post, the place of beginning, supposed to contain



DEPOSITION
EXHIBIT

EXHIBIT
62

5. The east half of 63 acres of land deeded from George Yeager to Francis Bates on July 5, 1850 and recorded on July 3, 1851, off of Tracts No. 304 and 363.

BOOK 376 PAGE 940

6. As described in deed from L. L. Bates and wife to C. W. Nichols dated February 21, 1886, commencing in the center of the State Road and the center of the Morton Hill Road at the junction of those two roads; thence by land of Cordelia Leonard and W. A. Irvine S 1 1/4° E 185.5 rods to a beach, the southeast corner of the Francis Bates home farm; thence S 88 3/4° W along the south line of said farm 51 rods to a post; thence N 1 1/4° W to the State Road; and thence eastwardly along the center of said road to the center of said Morton Hill Road, the place of beginning, supposed to contain about 53 acres of land.

7. On the north by land above described; on the east by land of F. E. Bates; on the south by land formerly of C. W. Nichols; and on the west by land of M. Smith, containing about 31 1/2 acres of land; and also so much of the land described in deed from S. D. L. Newbold to the said C.W. Nichols dated March 22, 1888 and recorded in Deed Book 64, page 136, as lies west of the Morton Hill Road, and adjoining the lands hereinabove described.

8. On the south by lands owned by W. A. Irvine's heirs; on the west by the Morton Hill Road and land formerly owned by George Bates; on the north by land formerly owned by Mrs. Elias Wood; and on the east by the station road and lands formerly owned by Lewis Stoddard, containing 68 acres 59 rods of land, more or less, out of Tract No. 304.

9. On the north by land of Whiteley; on the east by land formerly of Greeley; on the south by lands formerly owned by W. A. Irvine; and on the west by lands conveyed to C. W. Nichols by F. J. Jones and wife, and a public road leading to Spring Creek R. R. Station and lands of Stoddard, containing 44 acres, more or less.

10. On the north by land of Tom Forbes; on the east by land formerly of W. A. Irvine and L. S. Clough; on the south by land formerly of William Morton now L. S. Clough, containing 45 acres, more or less.

11. Part of Tract No. 310, described as follows: BEGINNING in the center of the State Road at a point where the same crosses the Tract line between land formerly of Sarah D. I. Newbold and that of L. Greeley; thence S 1° 45' E 88 rods to a post, the southwest corner of Tract No. 310; thence N 88° 45' E along the southerly line of Tract No. 310, 81 rods to a post in said Tract line; thence N 2° W 109 1/2 rods to a post in the center of the State Road; thence along the center of said road westerly 84.3 rods to the place of beginning, containing 50 acres of land, more or less.

12. BEGINNING at a point in the center of the State Road, at the northeast corner of land heretofore conveyed by S. S. Wead, and running thence S 2° E 112.6 rods to a post at the southeast corner of said Wead's land, and in the south line of Tract No. 310; thence N 88 3/4° E 350 rods to the western bank of the Big Brokenstraw Creek at low water mark; thence, northwesterly along the western bank of the Big Brokenstraw Creek at low water mark to the center of the State Road; thence southwesterly along the center of the State Road to the place of beginning, containing 214 acres 104 perches of land, more or less, and being a part of Tract No. 310. The land herein conveyed to include all the land lying west of the Big Brokenstraw Creek belonging to Mrs. S. D. I. Newbold in said Tract. Also, all the islands in that part of Brokenstraw Creek which lie east of the foregoing described land.

13. BEGINNING at the northwest corner of Tract No. 313; thence extending along the north line of said Tract due east 91.9 perches to the corner of land formerly of E. Jackson; thence along the same due south 135 perches to the southwest corner of said Jackson's land; thence due west 94 perches to the west line of said tract; thence along said line due north 135 perches to the place of beginning, containing 78 acres 41 perches, more or less, being the northwest corner of Tract No. 313. Being land conveyed to L. S. Clough by Dan A. Geiger and wife by deed dated October 1, 1906 and recorded in Deed Book 105, page 260.

BOOK 376 PAGE 941

14. On the north by lands formerly of Miles and Watts; on the east by the eastern line of the tract; on the south by the southern line of the tract; on the west by lands formerly of Yeager and Miles and Watts. Being 51 acres 18 perches as conveyed to L. S. Clough by deed of J. V. Kinyon dated March 30, 304, as conveyed to L. S. Clough by deed of J. V. Kinyon dated March 30, 1911 and recorded in Deed Book 114, page 397.

15. BEGINNING at the northwest corner of the whole Tract No. 314; thence south by the west line of the tract 159 rods to a post; thence east 53 rods 8 links to a post; thence north by the residue of the tract 159 rods to a post in the north line of the tract; thence west along the north line of the tract 53 rods 8 links to the place of beginning, containing 50 acres and allowance.

16. BEGINNING at the northeast corner of Jacob Wright's land at a post; thence by the same south 143.5 perches to an ash, the southwest corner of Wright's land; thence by land of H. B. Dexter east 53 perches to a post; thence by the same south 81 perches to a post in the south line of the tract; thence east 76 perches to a hemlock, the southeast corner of the tract; thence north 223.5 perches to a maple, the northeast corner of the tract; thence by Tract No. 318 west 129 perches to the place of beginning, containing 153 acres, more or less, in Tract No. 317.

17. BEGINNING at the northwest corner of the tract conveyed at a post; thence by land formerly of Sager east 50.7 perches to lands formerly of Jackson; thence by land formerly of Jackson south 201 perches to land formerly of Irvine; thence by land formerly of Irvine west 50.7 perches to a post; thence by lands formerly of Irvine and lands formerly of Yager north 201 perches to the place of beginning, containing 60 acres, more or less, being part of Tract No. 363.

Together with right of entry on and over said premises for the purpose of cutting, skidding, piling and removing said timber until April 1, 1978, on and after which date all rights hereunder shall cease and determine, and all remaining timber and trees vest without notice in the Grantor, her heirs and assigns.

This timber deed is given in fulfillment of an agreement for the sale of said timber, with appurtenant rights as herein set forth, which was dated April 1, 1968 between the parties hereto.

BOOK 376 PAGE 942

And the said grantor    does hereby warrant        generally             the
property hereby conveyed.


In Witness Whereof, the said grantor    ha  s  hereunto set        her        hand  and
seal    the day and year first above written.

Marion C. Kinkead                Seal.
_____ Seal.
_____ Seal.
_____ Seal.
_____ Seal.
_____ Seal.
_____ Seal.
_____ Seal.

Signed, Sealed and Delivered
in Presence of

_____

_____

Commonwealth of Pennsylvania }
                              } ss:
County of    WARREN

On this, the    20 th        day of        April            , 19 73, before me,
a Notary Public                                , the undersigned officer, personally appeared
            MARION C. KINKEAD, widow,

known to me (or satisfactorily proven) to be the person    whose name . is        subscribed to the
within instrument, and acknowledged that        she        executed the same for the purposes
therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

                    Sandra L. Eberhart
                    Notary Public

My Commission expires Nov. 8, 1976

I hereby certify that the precise residence of the within named Grantee is
Titusville, Pa.

                    N Ron Saba

# Article of Agreement

*MADE THE*      *day of*    April,     *in the year*
*of our Lord one thousand nine hundred* sixty-eight (1968),

*BETWEEN*      MARION C. KINKEAD, widow, of the Borough of Warren,
County of Warren and State of Pennsylvania, party of the first part,

and

FISHER & YOUNG, INC. a Pennsylvania Corporation,
with principal office in the City of Titusville, County and State aforesaid, party

*of the second part,*

*WITNESSETH, that the said party*     *of the first part, in consideration of the covenants and
agreements hereinafter contained, on the part of the said party*    *of the second part to be kept
and performed,*    has    *agreed and does*   hereby *agree to sell and convey unto the said
part* y *of the second part,*    its   successors or assigns, *all the land and premises herein-
after mentioned and fully described, for the sum of* One hundred thousand ($100,000.00)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - *Dollars, to be paid as follows:*
Twenty thousand ($20,000.00) Dollars upon the execution and delivery hereof,
the receipt of which is hereby acknowledged, and the balance of Eighty thousand
($80,000.00) Dollars in annual payments of Eight thousand ($8,000.00) Dollars
each, commencing April 1, 1969, until the whole of said principal sum is fully paid;
with the privilege on the part of the second party of making additional payments
on principal at any time.

     The Second Party shall upon any cutting of timber make payment upon this
contract of the gross value of all timber and trees removed from the premises.

*and the said part* y 1969 *of the second part also agree* s *to pay all taxes that may be levied upon
said land from and after the date of these presents, and to keep the buildings thereon insured in
the sum of*
     *Dollars, payable to the said part* y *of the first part, as interest may appear.*
     *And upon the payment of the said sum, the said party*    *of the first part, will, at her own proper
cost,*
*make, execute and deliver to the said part* y *of the second part, a good and sufficient Deed for
the proper conveying and assuring of the said premises in fee simple, free from all incumbrance
and dower, or right of dower, such conveyance to contain the usual covenants of* Special
                   Warranty.
     *And the said part* y *of the second part, agree* s *with the said part* y *of the first part, to
purchase the said premises and pay therefore the sum of* One hundred thousand ($100,000.00)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - *Dollars,*
*in the manner and at the times hereinbefore provided.*

     *AND IT IS FURTHER AGREED, by and between the said parties, that* possession of said
*premises shall be delivered to the part* y     *of the second part,* its   heirs *and assigns, on the*
first *day of* April,      *A. D.* 168,   *until which time the*
part y *of the first part shall be entitled to have and receive the rents, issues and profits thereof.*

     *The said premises are described as follows:*

     All of the timber and trees standing and down measuring twelve (12) inches
or more in diameter, one (1) foot from the ground, on the premises here and after
described; with the right to enter on said premises and to cut, skid, pile and remove
the same, subject to the terms of this agreement until April 1, 1978, on and after
which date all the rights hereunder shall revert to the owner of the land.

DEPOSITION
EXHIBIT
# 7   pk
Fossel 1-26-05

