Case # 459-0,985    appealed? yes

Watson Lumber
Hardwoods

Fisher + Young

against

William McChesney

March 21, 89
Settle

approx.
1986

Jenny

814-733-7550
X 233

Remembers Watson map

Laurie Sekerak
814-726-9750
311 Market St.
PO Box 1391
Warren PA 16365

Saw it
thinks it was once
in files of
Denny Whipple, who
died

DEPOSITION
EXHIBIT
Hans 10
9/11/05
PENGAD 800-631-6989



3/31/97

pc w/ Laurie Sekerak — does Title Searches
{REM Abstract}

remembers map
    was rolled up
    remembers Clough designation

Denny Whipple was map room technician
day after DW's funeral, all maps disappeared

remembers maps of fishing club from deeds from
way back

early
c. 1990s
~~late 80s~~    corrected taxes to reflect that F&Y pays $\frac{7}{8}$ of
{when    taxes, NOT that it has a $\frac{7}{8}$ interest in the property
wells
new
~~drilled~~}



DEPOSITION
EXHIBIT

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ALBERT T. CARLISLE,    )
    )
    Plaintiff,    )
    )        **95 0376**
    v.    )
    )    No. _____
MATSON LUMBER CO. and    )
MATSON HARDWOODS, INC.,    )
    )
    Defendants.    )

## COMPLAINT AND JURY DEMAND

NOW COMES Albert T. Carlisle, Plaintiff in this action, by his undersigned counsel, and submits the following Complaint and Jury Demand against the Defendants herein and states as follows:

### *Parties*

1. Plaintiff Albert T. Carlisle is an adult citizen and domiciliary of the State of Ohio residing at 1210 Oak Drive, Ashtabula, Ohio 44004. Carlisle's residence, driver's license, automobile registration, voter registration and church membership are all situated in Ohio.

2.   Defendant Matson Lumber Company ("Matson Lumber") is, upon information and belief, a corporation organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a business address of 132 Main Street, Brookville, Pennsylvania 15825. Defendant Matson Hardwoods, Inc. ("Matson Hardwoods") is, upon information and belief, a corporation organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a business address of 132 Main Street, Brookville, Pennsylvania 15825. (Hereinafter, Defendants may be referred to collectively as "Matson"). As set forth below, Matson is the successor-in-interest to Fisher & Young, Inc. with respect to certain timber rights that are the subject of this action.

### *Jurisdiction and Venue*

3.   Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(1) because the parties reside in and are citizens of different states and the amount in controversy exceeds $50,000, exclusive of costs and interest. Jurisdiction is further proper pursuant to 28 U.S.C. § 2201 with respect to Plaintiff's requests for declaratory relief contained herein.

4.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) and (c) because the causes of action set forth herein arose in the Western District of Pennsylvania, the property that is the subject of this lawsuit is located in the Western District of Pennsylvania, and the Defendants maintain a place of business in and may be found in the Western District of Pennsylvania.

### General Allegations
### A.   Ownership History

5.   Carlisle owns a parcel of land, measuring approximately 1239.6 acres, situated in Spring Creek Township, Warren County, Pennsylvania, known as the "Clough Farm." Carlisle owns this property in fee simple, subject only to certain limited timber rights that are the subject of this action.

6.   The Clough Farm is conveniently and centrally located between Pittsburgh, Cleveland and Buffalo, and is within a few miles of 8200 acres of state game land. The landscape and natural resources of the Clough Farm are enhanced by the presence of two blue-ribbon trout streams, Spring Creek, home to wild trout, and Broken Straw River, which is stocked annually.

7.  Carlisle purchased the Clough Farm from Fisher & Young, Inc., a Pennsylvania corporation that has since dissolved, by a written Agreement of Sale signed under seal and dated May 28, 1969.  A copy of the Agreement of Sale is attached hereto as Exhibit A.  The sale was recorded by a General Warranty Deed dated January 9, 1970.  A copy of the Deed is attached hereto as Exhibit B.  The Deed and Agreement of Sale were filed on January 19, 1970 at Warren County Deed Book 361 Page 13, and January 20, 1970 at Warren County Deed Book 361 Page 32, respectively.

8.  The Agreement of Sale conveys to Carlisle all of the land and premises set forth therein, except that it reserves in Fisher & Young, Inc. "all of the timber and trees, standing and fallen, situate on the premises above described," subject to certain additional limiting provisions.  Exhibit A p.5.

9.  Upon information and belief, on or about May 4, 1973 American Hardwood Industries, Inc. purchased the assets of Fisher & Young, Inc., including its timber rights at the Clough Farm.  This transaction created an entity known as Fisher & Young Hardwoods, Inc., which thereafter owned the timber rights.

-4-

10.   Upon   information   and   belief,   on   or   about
December 18, 1986 Matson Hardwoods acquired Fisher & Young
Hardwoods,   Inc.,   and   the   timber   rights,   by   merger.
Thereafter   Matson   Hardwoods   undertook   timber   harvesting
operations on the Clough Farm pursuant to the Agreement of
Sale.

11.   On December 30, 1994, effective January 1,
1995, Matson Hardwoods merged into Matson Lumber.   Exhibit A
attached to the Articles of Merger provides, in part, "all
the assets of Matson Hardwoods, Inc. will become the assets
of Matson Lumber Company."

12.   By virtue of the transactions set forth in
paragraphs 9, 10 and 11 above, Matson is the successor-in-
interest to Fisher & Young, Inc. with respect to the May 28,
1969 Agreement of Sale and January 9, 1970 Deed, and is
bound thereby in the same manner as was Fisher & Young, Inc.

### B.   Provisions of the Agreement of Sale

13.   As   set   forth   in   paragraph   8   above,   the
Agreement of Sale reserves in Matson certain timber rights
that are limited by additional provisions in the agreement.
For example, the agreement requires Matson to "confine the
cutting   of   saw   timber   to   those   trees   which   measure   16

[inches] or more in diameter at 1 [foot] above the ground and [to] confine its logging operations to the season from November 1 to March 31 each year." Exhibit A ¶ 6.

14. Further, although Matson has certain rights to construct access roads on the Clough Farm, the Agreement of Sale requires Matson first to provide "120 days notice in writing to" Carlisle. Exhibit A ¶ 7.

15. Further still, Matson's timber rights are limited by "a map designating the forestry areas which shall be subject to cutting by [Matson] and also designating those areas belonging solely to [Carlisle], wherein [Matson] agrees that there will be no cutting." Exhibit A ¶ 16.

16. In addition to the foregoing limitations, the timber rights under the Agreement of Sale are subject to various options and rights of first refusal granted to Carlisle. In particular, Carlisle retained an option to purchase the timber rights "in the event [Matson] shall desire to sell, transfer or assign the timber." See Exhibit A ¶ 15.A. Similarly, Carlisle retained an option to purchase the timber "[s]hould the present management and/or ownership of [Matson] change." See Exhibit A ¶ 15.B.

Paragraph 15 requires that notice be given to Carlisle of the pendency of any transaction identified therein.

### C.  *Course of Performance and Matson's Breaches*

17.  After acquiring the timber rights from Fisher & Young Hardwoods, Inc. on or about December 18, 1986, Matson Hardwoods began logging operations on the Clough Farm.  None of Matson Hardwoods' predecessors had conducted any logging operations on the farm.

18.  Since December 18, 1986, Carlisle's options and rights of first refusal set forth in paragraph 15 of the Agreement of Sale have been implicated many times, but neither Matson Hardwoods nor Matson Lumber have complied with the notice requirements and option rights contained in the agreement.  For example, Carlisle was advised of the December 18, 1986 acquisition of the timber rights by Matson Hardwoods only sometime in the Spring of 1987, *after* the transaction had been completed.  Since then, Matson has undergone several changes in management by repeatedly changing its on-site harvest manager, who oversees timber operations on the Clough Farm.  Most recently, ownership of Matson Hardwoods and/or the timber rights changed hands altogether when Matson Hardwoods merged into Matson Lumber.  On each of these occasions, Matson failed to provide the

required notice, or any notice, to Carlisle and additionally failed to honor Carlisle's purchase options, as required by paragraph 15 of the Agreement of Sale. Each such failure constitutes a breach of the agreement. There may be other such breaches of which Carlisle is presently unaware.

19. In addition to the contractual breaches set forth in the preceding paragraph, Matson has additionally breached the Agreement of Sale and committed other unlawful acts on numerous occasions. By way of illustration and not limitation, Matson has committed the following breaches:

a.  Matson has repeatedly harvested timber within the "no-cut" reserve in violation of paragraphs 10 and 16 of the agreement. To give one recent example, during the 1992-1993 harvest season, Matson specifically acknowledged a "no-cut" zone adjacent to the stream banks, and posted flags to mark the area as off-limits, only to cut and remove timber in precisely the same area during the subsequent harvest season;

b.  Matson commenced its 1992-1993 harvesting operations during October 1992, prior to the November 1 limitation contained in paragraph 6 of the agreement; and

c.  Matson has repeatedly constructed access roads without providing 120 days advance written notice as required by paragraph 7 of the agreement. Most recently, Matson has constructed at least two access roads during the current harvest season, one connecting to Patchen Road and another dissecting Carlisle's hay fields, without providing sufficient notice or any notice at all. With respect to the new access road connecting to Patchen Road, Carlisle's attorneys notified Matson by letter dated December 5, 1994, a

copy of which is attached hereto as Exhibit C, that any activity related to road construction prior to the completion of the notice period would constitute a breach. Matson ignored the letter and continued willfully to construct the access road thereafter. Furthermore, Matson began constructing access roads across the hay fields thereafter without giving any notice whatsoever.

20. Further, Matson has committed several trespasses to the Clough Farm by conducting its timber operations in a careless and reckless fashion, thereby causing extensive and unnecessary damage to Carlisle's property, and further by harvesting trees outside the scope of its rights under the Agreement of Sale.

21. By way of illustration, and not limitation, of its careless, reckless and unnecessary timber practices in violation of Carlisle's property rights, Matson has caused extensive topsoil to wash into Spring Creek, has placed skid trails in and through the Clough Farm streams, and has removed critical shade trees from stream banks (which are within a "no-cut" zone). These practices impair the recreational value of the Clough Farm, and consequently its potential for economic development, because they threaten to extinguish the fragile trout population residing in the streams and otherwise diminish the aesthetic value of the property. As a result of its careless and reckless

forestry practices, including those identified herein, Matson has received citations and fines from the Pennsylvania Fish and Boat Commission.

## COUNT I - BREACH OF CONTRACT
## Purchase Option - Action For Specific Enforcement

22. Plaintiff incorporates paragraphs 1 through 21 above as if fully set forth herein.

23. Paragraph 15 of the Agreement of Sale requires Matson to provide notice to Carlisle upon a sale, transfer or assignment of the timber, or upon a change in management or ownership of the company, and to grant Carlisle an option to purchase the timber rights in such event.

24. On or about December 30, 1994, effective January 1, 1995, the Clough Farm timber rights were sold, transferred or assigned, and Matson Hardwoods underwent a change in management or ownership, when Matson Hardwoods merged into Matson Lumber.

25. Additionally, on several occasions since December 18, 1986, Matson underwent changes in management by changing its on-site harvest manager at the Clough Farm.

Plaintiff's Appendix
000611

Further, there may have been other episodes implicating paragraph 15 of the Agreement of Sale of which Carlisle is presently unaware.

26. With respect to each of the foregoing events, Matson failed to provide the required notice to Carlisle and failed to grant Carlisle an option to purchase the timber, in breach of the Agreement of Sale.

27. By reason of Matson's several breaches set forth herein, Carlisle is entitled to specific enforcement of the purchase options contained in paragraph 15 of the Agreement of Sale, pursuant to which Matson must offer to sell the timber reserves to Carlisle according to the price terms set forth therein. Specific performance will provide the only adequate remedy for Matson's breaches, and there is no adequate remedy at law for such breaches.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to order specific performance of paragraph 15 of the Agreement of Sale by directing Matson to sell the Clough Farm timber rights to Carlisle according to the price terms specified in the agreement, discounted by all money damages to which Carlisle is entitled as set forth in the remaining

Plaintiff's Appendix
000612

counts of this Complaint, and further to award costs and attorneys' fees.

## COUNT II - BREACH OF CONTRACT
## Purchase Option - Action for Damages

28. Plaintiff incorporates paragraphs 1 through 27 above as if fully set forth herein.

29. Matson repeatedly failed to honor Carlisle's purchase options, and each such failure constitutes a breach of the Agreement of Sale, as set forth in Count I above.

30. In addition to the foregoing breaches, Matson continued to cut and remove trees from the Clough Farm, without any right to do so, and continued to cause damage and destruction to the farm, after each transaction or event that implicated Carlisle's rights under paragraph 15 of the Agreement of Sale. Matson's continued harvesting after each such transaction or event constitutes an additional breach of the agreement.

31. Carlisle has suffered and continues to suffer monetary damages and other damages as a result of the breaches set forth herein, including but not limited to the

value of all timber cut and removed after each breach, and all corresponding damage done to the Clough Farm.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, together with costs and attorneys' fees.

### COUNT III - BREACH OF CONTRACT
### Harvesting Timber Outside Scope of Rights

32. Plaintiff incorporates paragraphs 1 though 31 above as if fully set forth herein.

33. Matson has harvested and continues to harvest timber located within the "no-cut" zones set aside by the Agreement of Sale, in breach of that agreement.

34. Carlisle has suffered and continues to suffer monetary damages and other damages as a result of the breaches complained of herein, including but not limited to the value of all timber cut and removed in violation of the Agreement of Sale and all damage done to property in the "no-cut" zones.

Plaintiff's Appendix
000614

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, together with costs and attorneys' fees.

## COUNT IV - BREACH OF CONTRACT
## Violations of Restrictions in Agreement of Sale

35. Plaintiff incorporates paragraphs 1 though 34 above as if fully set forth herein.

36. The Agreement of Sale limits harvesting to the period from November 1 to March 31 of each year, and additionally requires Matson to provide 120 days written notice to Carlisle before beginning construction of any access roads on Carlisle's property. Exhibit A ¶¶ 6, 7.

37. Matson began its 1992-1993 harvesting operations during October 1992, prior to the November 1 limitation contained in the Agreement of Sale, and thereby breached that agreement.

38. Further, during November 1994, and again during January/February 1995, and perhaps on other occasions

as well, Matson began construction of access roads on Carlisle's property without giving Carlisle 120 days notice as required by the Agreement of Sale, and thereby breached that agreement.

39. As a direct and proximate result of Matson's breach of contract set forth herein, Carlisle has suffered and continues to suffer monetary damages and other damages for which he is entitled to compensation herein.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, together with costs and attorneys' fees.

*Voluntarily dismissed prior to trial*

## COUNT V - TRESPASS

40. Plaintiff incorporates paragraphs 1 through 39 above as if fully set forth herein.

41. Matson has conducted its timber harvesting operations on the Clough Farm in a negligent, careless and reckless fashion that is inconsistent with prudent industry practice. As a result, it has caused extensive and unnecessary damage to Carlisle's property, including but not

limited to damage to the Clough Farm streams and adjoining land, for which Matson received citations and fines from the Pennsylvania Fish and Boat Commission. Such unnecessary damage constitutes a trespass to Carlisle's property.

42. As set forth above, Matson has removed trees outside the scope of the Agreement of Sale, including but not limited to all trees removed since each successive implication of Carlisle's purchase options and all trees located within the "no-cut" zones. Such conduct constitutes additional trespasses to Carlisle's property.

43. As set forth in Count IV above, Matson has begun harvesting operations prior to November 1 and has constructed access roads on the Clough Farm without giving required notice, all in breach of the Agreement of Sale. Such conduct constitutes still additional trespasses to Carlisle's property.

44. As a direct and proximate result of Matson's trespasses set forth herein, Carlisle has suffered and continues to suffer monetary damages and other damages for which he is entitled to compensation herein.

Plaintiff's Appendix
000617

45. Matson's conduct complained of herein was intentional, willful, reckless, careless, grossly negligent and beyond the bounds of reasonable and acceptable conduct, and therefore entitles Carlisle to receive an award of punitive damages herein.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, and to award punitive damages in an amount to be determined at trial, together with costs and attorneys' fees.

### COUNT VI - ACCOUNTING/CONSTRUCTIVE TRUST
### Harvesting Timber Outside Scope of Rights

46. Plaintiff incorporates paragraphs 1 through 45 above as if fully set forth herein.

47. Matson has received substantial income and other revenue derived from the timber it has harvested and removed from the Clough Farm.

48. All income and other revenue relating to timber that Matson harvested and removed from the Clough

Plaintiff's Appendix
000618

Farm in breach of the parties' Agreement of Sale or otherwise outside the scope of its rights under that agreement is the property of Carlisle.

49. Such income and other revenue has been wrongfully collected and withheld by Matson. Accordingly, Matson is a constructive trustee on Carlisle's behalf with respect to such income, and Carlisle is entitled to an accounting and tender of such income and other revenue from Matson.

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to order an accounting of income and other revenue received by Matson relating to timber on Carlisle's property and to order that Matson, as constructive trustee on Carlisle's behalf, deliver to Carlisle all income and other revenue derived from timber harvested outside the scope of the Agreement of Sale or in breach thereof, together with interest thereon, and further to award costs and attorneys' fees.

## COUNT VII - CONVERSION
### Harvesting Timber Outside Scope of Rights

50.  Plaintiff incorporates paragraphs 1 through 49 above as if fully set forth herein.

51.  By harvesting and removing timber in breach of the parties' Agreement of Sale or otherwise outside the scope of its rights under that agreement, as set forth above, Matson wrongfully converted such timber to its own use and benefit in violation of Carlisle's ownership and property rights therein.

52.  As a direct and proximate result of Matson's wrongful conversion, Carlisle has suffered monetary damages in an amount equal to the value of the timber wrongfully converted, for which he is entitled to receive compensation herein.

53.  Matson's conduct complained of herein was intentional, willful, reckless, careless, grossly negligent and beyond the bounds of reasonable and acceptable conduct, and therefore entitles Carlisle to receive an award of punitive damages herein.

Plaintiff's Appendix
000620

WHEREFORE, Carlisle respectfully requests this Honorable Court to enter judgment in his favor and against Matson and to award damages in an amount to be determined at trial and in excess of $50,000, plus interest, and to award punitive damages in an amount to be determined at trial, together with costs and attorneys' fees.

## COUNT VIII - DECLARATORY JUDGMENT
### Regarding The Scope of Matson's Timber Rights

54. Plaintiff incorporates paragraphs 1 through 53 above as if fully set forth herein.

55. By its actions complained of herein, Matson has demonstrated a disregard for or misunderstanding of the limited scope of the timber rights granted to it in the parties' Agreement of Sale. Accordingly, there exists an actual and ongoing controversy between the parties as to the existence, nature and scope of such rights, and Carlisle's rights are at immediate risk of continuing violation by Matson.

56. To the extent Matson retains any timber rights after the conclusion of this lawsuit (that is, unless this issue is rendered moot), Carlisle is entitled to a

Plaintiff's Appendix
000621

declaration setting forth the scope of Matson's timber rights under the Agreement of Sale, thus clarifying the parties' legal relations and respective rights. Unless such declaratory relief is granted, Carlisle will be subjected to Matson's continuing violations of the Agreement of Sale and trespasses.

WHEREFORE, Carlisle respectfully requests this Honorable Court to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 setting forth the scope of Matson's timber rights, if any, under the parties' Agreement of Sale, attached hereto as Exhibit A, and further to award Carlisle costs and attorneys' fees.

### COUNT IX - DECLARATORY JUDGMENT
### Regarding The Contents of the Exclusionary Map

57. Plaintiff incorporates paragraphs 1 through 56 above as if fully set forth herein.

58. The parties' Agreement of Sale incorporates an "exclusionary map" representing areas on the Clough Farm wherein Matson is not entitled to harvest timber.

59. Although copies of the map actually existed at one time, upon information and belief neither of the parties presently possess a copy of the original exclusionary map nor are there any copies known to be in existence.

60. As set forth above, Matson has conducted timber harvesting within the "no-cut" zones in violation of the Agreement of Sale. Accordingly, there exists an actual and ongoing controversy between the parties as to the contents of the exclusionary map, and Carlisle's rights are at immediate risk of continuing violation by Matson.

61. To the extent Matson retains any timber rights after the conclusion of this lawsuit (that is, unless this issue is rendered moot), Carlisle is entitled to a declaration setting forth the contents of the exclusionary map, thus clarifying the parties' legal relations and respective rights. Unless such declaratory relief is granted, Carlisle will be subjected to Matson's ongoing harvesting and removal of trees located within the "no-cut" zones.

WHEREFORE, Carlisle respectfully requests this Honorable Court to issue a declaratory judgment pursuant to

Plaintiff's Appendix
000623

28 U.S.C. § 2201 setting forth the contents of the exclusionary map, which comprises a part of the Agreement of Sale and limits the timber rights granted therein, and further to award Carlisle costs and attorneys' fees.

## COUNT X – PRELIMINARY AND PERMANENT INJUNCTIONS

62. Plaintiff incorporates paragraphs 1 through 61 above as if fully set forth herein.

63. In addition to the foregoing causes of action and the relief requested therein, Carlisle is entitled to preliminary and permanent injunctive relief with respect to the following issues:

    a.    Preliminary injunction to restrain Matson from harvesting any timber while the applicability of Carlisle's purchase options and the scope of the timber rights are being resolved;

    b.    Preliminary and permanent injunctions to restrain Matson from harvesting any timber outside the scope of its rights, if any, under the Agreement of Sale; and

    c.    Preliminary and permanent injunctions to restrain Matson from constructing and using any access roads prior to the completion of the required 120-day notice period.

64. With respect to those matters as to which Carlisle requests injunctive relief, Carlisle has suffered and continues to suffer irreparable injury for which he

lacks an adequate remedy at law, and the public interest is served by the issuance of the requested injunctive relief.

65. With respect to those matters as to which Carlisle requests preliminary injunctive relief, there is a substantial likelihood that Carlisle will prevail on the merits in this action, and the harm to Carlisle if this Court denies injunctive relief will substantially outweigh the harm to Matson – if any - if this Court grants the requested injunctive relief.

WHEREFORE, Carlisle respectfully requests this Honorable Court to issue preliminary injunctions, upon Plaintiff's subsequent motion, and permanent injunctions, after a trial on the merits, as set forth herein.

Respectfully submitted,

Scott Michael Hare

Scott M. Hare, Esquire
Pa. I.D. No. 63818

John J. Edson, Esquire
Pa. I.D. No. 56696

Bartony Hare & Edson
The Bank Tower Suite 801
307 Fourth Avenue
Pittsburgh, PA  15222

Tel: 412-338-8632
Fax: 412-338-6611

Date:  March 13, 1995          Counsel for Plaintiff

TOTAL P.26

## JURY DEMAND

Plaintiff Albert T. Carlisle requests trial by jury in this matter with respect to all issues so triable.

Counsel for Plaintiff

Plaintiff's Appendix
000626

# United States District Court

_____WESTERN_____ DISTRICT OF _____PENNSYLVANIA_____

Albert T. Carlisle

## SUMMONS IN A CIVIL ACTION

                    v.

CASE NUMBER:    **95 0376**

Matson Lumber Company and
Matson Hardwoods Inc.


TO: (Name and Address of Defendant)

Matson Lumber Co. and Matson Hardwoods, Inc., Defendants

132 Main Street
Brookville, PA  15825


**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Scott M. Hare, Esquire
Bartony Hare & Edson
The Bank Tower
Suite 801
307 Fourth Avenue
Pittsburgh, PA  15222

an answer to the complaint which is herewith served upon you, within __twenty (20)____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.


CLERK

DATE    MAR 1 3 1995

BY DEPUTY CLERK

Plaintiff's Appendix
000627



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT T. CARLISLE,          )
                             )
          Plaintiff,         )
                             )
     v.                      )          No. 95-0376
                             )
MATSON LUMBER CO. and        )
MATSON HARDWOODS, INC.,      )
                             )
          Defendants.        )

PRETRIAL NARRATIVE STATEMENT OF
PLAINTIFF/COUNTERCLAIM DEFENDANT ALBERT T. CARLISLE

          NOW COMES Plaintiff/Counterclaim Defendant Albert
T. Carlisle, by his undersigned counsel, and hereby
respectfully submits the following Pretrial Narrative
Statement:


     I.    *Factual and Legal Contentions*

          Carlisle owns a parcel of land, measuring
approximately 1239.6 acres, situated in Spring Creek
Township, Warren County, Pennsylvania, known as the "Clough
Farm." Carlisle purchased the Clough Farm from Fisher &
Young, Inc., a Pennsylvania corporation that has since
dissolved, by a written Agreement of Sale signed under seal
and dated May 28, 1969. Carlisle owns this property in fee
simple, subject only to certain limited timber rights.

The Clough Farm is conveniently and centrally located between Pittsburgh, Cleveland and Buffalo, and is within a few miles of 8200 acres of state game land. The landscape and natural resources of the Clough Farm are enhanced by the presence of two blue-ribbon trout streams, Spring Creek, home to wild trout, and Broken Straw River, which is stocked annually. Carlisle bought the Clough Farm, in part, to provide a camping facility for use by members of the Boy Scouts of America.

On or about May 4, 1973 American Hardwood Industries, Inc. purchased the assets of Fisher & Young, Inc., including its timber rights at the Clough Farm. This transaction created an entity known as Fisher & Young Hardwoods, Inc., which thereafter owned the timber rights.

After American Hardwood acquired the timber rights, Carlisle undertook negotiations with American Hardwood and its principal, Herbert Ascherman, to acquire the timber rights on the farm. Carlisle also negotiated with these parties regarding scheduling a harvest so that American Hardwood would exhaust its rights and Carlisle could thereafter enjoy the farm without interference from the timber industry. Such negotiations never resulted in any agreement, however, and American Hardwood never conducted any timber harvesting on the farm.

-2-

On or about December 18, 1986 Matson Hardwoods acquired Fisher & Young Hardwoods, Inc., and the timber rights, by merger. Carlisle was not informed of this acquisition until after the fact. Thereafter Matson Hardwoods undertook timber harvesting operations on the Clough Farm pursuant to the Agreement of Sale.

On December 30, 1994, effective January 1, 1995, Matson Hardwoods merged into Matson Lumber. The Articles of Merger provide, in part, that "all the assets of Matson Hardwoods, Inc. will become the assets of Matson Lumber Company." By virtue of the foregoing transactions, Matson is the successor-in-interest to Fisher & Young, Inc. with respect to the May 28, 1969 Agreement of Sale and January 9, 1970 Deed, and is bound thereby in the same manner as was Fisher & Young, Inc.

The 1969 Agreement of Sale conveys to Carlisle all of the land and premises set forth therein, except that it reserves in Matson "all of the timber and trees, standing and fallen, situate on the premises above described," subject to certain additional limiting provisions. This reservation of rights extends only to trees in existence on the date of the conveyance, and does not extend to trees that come into existence (sprout) thereafter, which future

-3-

Plaintiff's Appendix
000630

trees are neither standing nor fallen nor situate on the premises. Carlisle's intention in the Agreement of Sale was to agree to a "one-time" harvest right governing trees then existing, and specifically not to agree to any rights in perpetuity.

Matson's timber rights are further limited by additional provisions in the agreement. For example, the agreement requires Matson to "confine the cutting of saw timber to those trees which measure 16 [inches] or more in diameter at 1 [foot] above the ground and [to] confine its logging operations to the season from November 1 to March 31 each year."

Further, although Matson has certain rights to construct access roads on the Clough Farm, the Agreement of Sale requires Matson first to provide "120 days notice in writing to" Carlisle. Further still, Matson's timber rights are limited by "a map designating the forestry areas which shall be subject to cutting by [Matson] and also designating those areas belonging solely to [Carlisle], wherein [Matson] agrees that there will be no cutting." Apparently no copy of the exclusionary map can be located, although Carlisle is still searching. Nevertheless, Carlisle recalls the contents of the map, and in particular vividly recalls that the map prohibited any timber harvesting along the stream

-4-

banks and near the farmhouse and barns and grazing fields. It is customary in the timber, forestry and land-management industries to preserve timber along stream banks through such no-cut zones.

In addition to the foregoing limitations, the timber rights under the Agreement of Sale are subject to various options and rights of first refusal granted to Carlisle. In particular, Carlisle retained an option to purchase the timber rights "in the event [Matson] shall desire to sell, transfer or assign the timber." Similarly, Carlisle retained an option to purchase the timber "[s]hould the present management and/or ownership of [Matson] change." The Agreement of Sale requires that notice be given to Carlisle of the pendency of any transaction identified therein, thereby enabling Carlisle to exercise his options and rights of first refusal.

After acquiring the timber rights from Fisher & Young Hardwoods, Inc. on or about December 18, 1986, Matson Hardwoods began logging operations on the Clough Farm. None of Matson Hardwoods' predecessors had conducted any logging operations on the farm.

Since December 18, 1986, Carlisle's options and rights of first refusal set forth in the Agreement of Sale

-5-

have been implicated many times, but neither Matson Hardwoods nor Matson Lumber have complied with the notice requirements and option rights contained in the agreement. For example, Carlisle was advised of the December 18, 1986 acquisition of the timber rights by Matson Hardwoods only sometime in the Spring of 1987, <u>after</u> the transaction had been completed. Since then, Matson has undergone several changes in management by repeatedly changing its on-site harvest manager, who oversees timber operations on the Clough Farm. Most recently, ownership of Matson Hardwoods and/or the timber rights changed hands altogether when Matson Hardwoods merged into Matson Lumber, and Matson Hardwood's assets, including the timber rights, were assigned to Matson Lumber Company. On each of these occasions, Matson failed to provide the required notice, or any notice, to Carlisle and additionally failed to honor Carlisle's purchase options, as required by the Agreement of Sale. Each such failure constitutes a breach of the agreement.

In addition to the contractual breaches set forth above, Matson has additionally breached the Agreement of Sale and committed other unlawful acts on numerous occasions. In particular, Matson has committed the following breaches:

    a.   Matson has repeatedly harvested timber within the "no-cut" reserve in violation of paragraphs 10 and 16 of the agreement. To

-6-

give one recent example, during the 1992-1993 harvest season, Matson specifically acknowledged a "no-cut" zone adjacent to the stream banks, and posted flags to mark the area as off-limits, only to cut and remove timber in precisely the same area during the subsequent harvest season;

b.    Matson commenced its 1992-1993 harvesting operations during October 1992, prior to the November 1 limitation contained in paragraph 6 of the agreement; and

c.    Matson has repeatedly constructed access roads without providing 120 days advance written notice as required by paragraph 7 of the agreement.    Most recently, Matson has constructed at least two access roads during the 1994-1995 harvest season, one connecting to Patchen Road and another dissecting Carlisle's hay fields, without providing sufficient notice or any notice at all.  With respect to the new access road connecting to Patchen Road, Carlisle's attorneys notified Matson by letter dated December 5, 1994 that any activity related to road construction prior to the completion of the notice period would constitute a breach.  Matson ignored the letter and continued willfully to construct the access road thereafter. Furthermore, Matson began constructing access roads across the hay fields thereafter without giving any notice whatsoever. Similarly, Matson has cut unnecessary numbers of roads, and has cut them in environmentally-sensitive areas, causing needless damage, such as silt run-off into the streams.

Further, Matson has committed several trespasses to the Clough Farm by conducting its timber operations in a careless and reckless fashion, thereby causing extensive and unnecessary damage to Carlisle's property, and further by harvesting trees outside the scope of its rights under the Agreement of Sale.  For example, Matson has caused extensive

-7-

topsoil to wash into Spring Creek, has placed skid trails in and through the Clough Farm streams, and has removed critical shade trees from stream banks (which are within a no-cut zone). These practices impair the recreational value of the Clough Farm, and consequently its potential for economic development, because they threaten to extinguish the fragile trout population residing in the streams and otherwise diminish the aesthetic value of the property. As a result of its careless and reckless forestry practices, Matson has received citations from state agencies.

Further, Matson has removed trees outside the scope of the Agreement of Sale. In particular, Matson did not have title to, and had no right to remove, any trees that sprouted after May 28, 1969, the date of the original Agreement of Sale. Further, Matson was without right to remove _any_ trees following each successive implication of Carlisle's purchase options and rights of first refusal. Finally, Matson was without right to remove any trees located within the no-cut zones.

To the extent any of Matson's counterclaims survive summary judgment, Carlisle will offer evidence to defeat such remaining counterclaims. Because Carlisle does not yet know what evidence Matson will offer in purported support of such counterclaims, Carlisle is currently unable

-8-

to set forth the identity of his rebuttal evidence. In general, however, Carlisle will offer evidence that demonstrates that no damage was caused to any property or interests of Matson by Carlisle or anyone acting on Carlisle's behalf or with his authority.

## II.  *Damages*

Carlisle has suffered the following damages: loss of the value of all trees wrongfully harvested and removed by Matson (whether in no-cut zones, sprouted after May 28, 1969, or in any other way outside Matson's harvest rights) and the value of all property damage caused by Matson as a result of careless harvesting practices, damage to streams, and other trespass to the land. Carlisle and other witnesses identified herein will offer testimonial proof to demonstrate the existence and scope of such damages.

A precise computation of Carlisle's damages will be the subject of the expert report and expert testimony of James Hall. Mr. Hall's expert report will be provided to Matson upon completion.

With respect to Count VI of Carlisle's Complaint, which pleads a Constructive Trust and demands an accounting with respect to all revenues received by Matson in connection with timber removed in violation of or outside

-9-

the scope of the Agreement of Sale, it will be the obligation of Matson to provide such accounting and statement of damages. Carlisle expects that such accounting will mirror the measure of damages identified by Carlisle pursuant to his other causes of action in connection with all timber wrongfully removed by Matson.

Finally, Carlisle will prove that Matson's conduct was intentional, willful, reckless, careless, grossly negligent and outrageous, thus entitling Carlisle to an award of punitive damages.

### III.  *Witnesses*

A.    Liability Witnesses

    1.    Mr. Albert T. Carlisle
        1210 Oak Drive
        Ashtabula, Ohio 44004

    2.    Mr. John Wood
        R.D. #3 - Box 83
        Spartansburg, PA  16434

    3.    Mr. Lainard Bush
        Cemetery Road
        Spring Creek, PA  16436

    4.    Mr. Stephen W. Madewell
        Environmental Enhancement
        303 East King Street
        Chardon, Ohio 44024

    5.    Mr. James Hall
        RD #1 - Box 1102
        Russell, PA  16345

Plaintiff's Appendix
000637

6.  Mr. Norman Sunderland
    RD # 1
    Sigel, PA  15860

7.  Mr. Todd S. Fantaskey
    Warren County Conservation District
    609 Rouse Home Avenue
    Suite 203
    Youngsville, PA  16371

8.  Mr. Joe Kelly
    Warren County Conservation District
    609 Rouse Home Avenue
    Suite 203
    Youngsville, PA  16371

9.  Mr. James Carter
    PA Fish & Boat Commission

10. Mr. Ronald Lee
    PA Fish & Boat Commission

11. Mr. John Arway
    PA Department of Environmental Resources

12. Mr. Robert Matson, as if on cross-examination
    Matson Lumber Company

13. Mr. Richard Conti, as if on cross-examination
    Matson Lumber Company

14. Mr. Len Dominick, as if on cross-examination
    Matson Lumber Company

15. Mr. Richard Conrad, as if on cross-
    examination
    Matson Lumber Company

16. All witnesses identified in Defendants'
    Pretrial Statement

17. Additional witnesses that become evident in
    the course of any additional discovery
    responses

B.  Damages Witnesses

1.  Mr. Albert T. Carlisle
    1210 Oak Drive
    Ashtabula, Ohio 44004

Plaintiff's Appendix
000638

2.  Mr. John Wood
    R.D. #3 - Box 83
    Spartansburg, PA  16434

3.  Mr. Lainard Bush
    Cemetery Road
    Spring Creek, PA  16436

4.  Mr. Stephen W. Madewell
    Environmental Enhancement
    303 East King Street
    Chardon, Ohio 44024

5.  Mr. James Hall
    RD #1 - Box 1102
    Russell, PA  16345

6.  Mr. Norman Sunderland
    RD # 1
    Sigel, PA  15860

7.  Mr. Todd S. Fantaskey
    Warren County Conservation District
    609 Rouse Home Avenue
    Suite 203
    Youngsville, PA  16371

8.  Mr. Joe Kelly
    Warren County Conservation District
    609 Rouse Home Avenue
    Suite 203
    Youngsville, PA  16371

9.  Mr. James Carter
    PA Fish & Boat Commission

10. Mr. Ronald Lee
    PA Fish & Boat Commission

11. Mr. John Arway
    PA Department of Environmental Resources

12. Mr. Robert Matson, as if on cross-examination
    Matson Lumber Company

13. Mr. Richard Conti, as if on cross-examination
    Matson Lumber Company

14. Mr. Len Dominick, as if on cross-examination
    Matson Lumber Company

-12-

15. Mr. Richard Conrad, as if on cross-examination
Matson Lumber Company

16. All witnesses identified in Defendants'
Pretrial Statement

17. Additional witnesses that become evident in
the course of any additional discovery
responses

## IV.  _Exhibits_

Carlisle may offer any of the following exhibits:

1. Agreement of Sale dated May 28, 1969

2. Deed dated January 9, 1970

3. Unexecuted First Amendment and Supplement to
Agreement of Sale (undated)

4. MLC Industries, Inc. Articles of Incorporation

5. MLC Industries, Inc. Certificate of Incorporation

6. Matson Lumber Company/Matson Hardwoods, Inc.
Articles of Merger and Exhibit A thereto

7. Matson Lumber Company Spreadsheet:  Log Receipts
from Clough Farm for period November 1988 through
April 1995

8. Correspondence from Philip Cochran to Albert
Carlisle dated March 15, 1973

9. Correspondence from Harry Martin to Terry Warren
dated March 27, 1973

10. Correspondence from Harry Martin to Terry Warren
dated April 5, 1973

11. Correspondence from Harry Martin to Terry Warren
dated September 4, 1973

12. Correspondence from Terry Warren to Harry Martin
dated July 26, 1976

13. Correspondence from Terry Warren to James Stolley
dated July 26, 1976

-13-

Plaintiff's Appendix
000640

14. Correspondence from Harry Martin to Terry Warren dated August 5, 1976

15. Correspondence from John Kookogey to Albert Carlisle dated December 9, 1987

16. Correspondence from Matson Hardwoods to Albert Carlisle dated June 30, 1988

17. Correspondence from Norman Sunderland to Albert Carlisle dated January 18, 1989

18. Correspondence from John Enders to Robert Matson dated October 21, 1992

19. Correspondence from John Enders to John Kookogey dated November 2, 1992

20. Correspondence from John Kookogey to John Enders dated November 24, 1992

21. Correspondence from Richard Conti to Albert Carlisle dated July 12, 1993

22. Correspondence from Richard Conrad to John Wood dated May 4, 1994

23. Correspondence from Stephen Madewell to Richard Conrad dated May 13, 1994

24. Correspondence from Richard Conrad to Len [Dominick] dated June 4, 1994

25. Correspondence from Richard Conrad to Stephen Madewell dated November 2, 1994, with attachments

26. Correspondence from Richard Conrad to PA Fish and Boat Commission dated November 2, 1994

27. Correspondence from Warren County Commissioners to Richard Conrad dated November 14, 1994

28. Correspondence from DER dated November 29, 1994, with attachments

29. Correspondence from Scott Hare to Richard Conrad dated December 5, 1994

30. Inspection notes dated November 8, 1989 with attachment

31. Handwritten notes of Rob Nelson dated October 30, 1992

-14-

32.  Earth Disturbance Inspection dated May 26, 1994

33.  Notes of Stephen Madewell regarding Site Inspection of Clough Farm on May 12, 1994, attended by Madewell, Carlisle, Richard Conrad, Joe Kelly, Todd Fantaskey, Jim Carter

34.  Preliminary Schematic Layout of Clough Farm - Drawing Number 3940 (Boy Scout map)

35.  Aerial and ground photographs of Clough Farm and trees and streams thereon

36.  Curriculum vitae of James Hall

37.  Expert report and exhibits of James Hall

38.  The exclusionary map, if it is located

39.  All exhibits identified in Defendants' Pretrial Statement

40.  Additional documents that become evident during the course of Defendants' continuing discovery responses

## V.  *Unusual Legal Issues*

Carlisle does not believe that this case presents any unusual or novel legal issues for consideration.

## VI.  *Authorization*

Pursuant to Local Rule 16.1.4(A)(6), Carlisle hereby authorizes Matson to examine any pertinent records not already provided in discovery.

Plaintiff's Appendix
000642

## VII.  *Use of Discovery Depositions*

No use anticipated other than for purposes of cross-examination.

## VIII.  *Settlement Negotiations*

The parties have not yet entertained settlement negotiations.  Carlisle is prepared to discuss settlement.

## IX.  *Trial Time*

Carlisle anticipates that the trial of this action will take four to five days.

Respectfully submitted,

Scott M. Hare
Pa. I.D. No. 63818

John J. Edson
Pa. I.D. No. 56696

Bartony Hare & Edson
The Bank Tower
Suite 801
307 Fourth Avenue
Pittsburgh, PA  15222

Tel:  (412) 338-8632
Fax:  (412) 338-6611

Attorneys for Plaintiff
Albert T. Carlisle

Date:  March 22, 1996

-16-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Pretrial Narrative Statement of Plaintiff/Counterclaim Defendant Albert T. Carlisle** was served upon all counsel of record in this matter on this 22nd day of March, 1996 by hand delivery to the following:

Chester S. Fossee, Esquire
Reale, Fossee, P.C.
22nd Floor, Lawyers Building
428 Forbes Avenue
Pittsburgh, PA  15219

Counsel for Defendants
Matson Lumber Company
and Matson Hardwoods, Inc.

_____

Counsel for Plaintiff



**James Hall**
CONSULTING FORESTER

R.D. #1 Box 1102 · Russell, Pennsylvania 16345 · (814) 757-4488


DEPOSITION EXHIBIT
Hare 15

May 2, 1997

Scott Michael Hare, Esquire
Bartony Hare & Edson
Law & Finance Building Suite 1801
429 Fourth Avenue
Pittsburgh, PA  15219

       Re:  <u>Clough Farm/Matson Lumber Co.</u>

Dear Mr. Hare:

    I have been engaged by Albert T. Carlisle to assess the condition and history of the timber stands and associated land on the Clough Farm, determine the value of the standing timber at various times in its history, assess the forestry practices employed by Matson Lumber Company and Matson Hardwoods (collectively "Matson") on the farm, and determine and define the damages to Mr. Carlisle caused by Matson. Further, I have been requested to assess the meaning of certain provisions contained in the Agreement of Sale between Mr. Carlisle and the original seller. Finally, I have been requested to evaluate the damage claims asserted by Matson in its counterclaims against Mr. Carlisle.

    This letter describes my methodology, and reports my findings and conclusions as of this date. I offer all of the opinions expressed herein within a reasonable degree of scientific certainty.

## Description of the Property

    The property in question, known as Clough Farm, is located in Spring Creek Township, Warren County, Pennsylvania. The property encompasses about 1239.6 acres. Of the total acreage, approximately 779 acres are commercial forest land.

    This property once had very high quality stands of red oak, black cherry, white ash, sugar maple, red maple, eastern hemlock, basswood, white pine, and various other species. Based on the evidence of residual stumps and some uncut areas, I have concluded that this property was once a

Management Plans · Appraisals · Timber Sales · Wetland Delineation · Wildlife Management

*Specializing In Getting the Most for the Forest Landowner*

Plaintiff's Appendix
000645

majestic example of the excellent timber that this area of
Pennsylvania can produce.  Through good forest management,
under the guidance of a professional forester, this area
could have been and should still be a highly productive,
healthy and profitable forest.  As I will detail below,
because of Matson's forestry practices, it is not.

## Methodology

     In order to provide a complete and accurate
assessment of the 779 acres of commercial forest land on the
farm, I used the following techniques.

    A.    General overview and boundary line check.

    B.    Typed the timber:  Divided the area into
    homogenous stands using ground surveys and aerial
    photography.

    C.    Took over 120 random plots using two techniques.

          1.    Plotless cruising with a 10 factor prism.
          2.    1/20 acre plots.

    D.    Collected data regarding:

          1.    Species
          2.    Quality
          3.    D.B.H. (Diameter Breast High)
          4.    Merchantable Height
          5.    Number of trees
          6.    Damage to residual trees
          7.    Density

    E.    Referred as needed to the following materials:

          1.    Sylvah (NSFS) Research Lab
          2.    Penn State volume tables
          3.    PA Bureau of Forestry volume factors
          4.    USDA-Forest Service research paper NE-373
          5.    USDA-FS Agricultural handbook 355
          6.    USDA-FS General technical report NE-96
          7.    USDA-FS Research paper NE-143
          8.    Timber Management Guide-Ben Roach
          9.    Forest Reference Manual-J.M. Francis
          10.   USDA-FS Agriculture Information Bulletin 419
          11.   USDA-FS Agriculture Information Bulletin 405
          12.   USDA-FS Research Paper NE-127
          13.   USDA-FS Agriculture Handbook 678

14. NY State Dept. of Environmental Conservation Stumpage Price Reports—1982 to 1997
15. Penn State University—Timber Market Reports 1984-1997
16. USDA-FS Actual Bids on Timber Sales
17. Timber Sale Data collected by James Hall
18. Data supplied by Norman Sunderland, Consultant Forester
19. 1968, 1987, 1988 and 1989 Aerial Photography
20. Harvesting data supplied by Matson Lumber Company for November 1988 through April 1995
21. Agreement of sale—Fisher & Young, Seller and Albert T. Carlisle, Buyer dated September 30, 1969
22. Plaintiff's pre-trial narrative dated March 22, 1996
23. Defendant's pre-trial narrative dated April 11, 1996
24. Meyer's *Forest Mensuration*

## Significant Provisions of Agreement of Sale

During my career in the forestry industry, I have been involved in negotiating, drafting, monitoring and enforcing countless contracts governing timber rights. As a result, I am intimately familiar with the terminology and usage of the timber industry, and I am thereby able to interpret the Agreement of Sale between Mr. Carlisle and Fisher & Young to explain the meaning it has in the timber industry.

I have been asked to interpret the following provisions of the Agreement of Sale: (i) the final paragraph on page 5; (ii) paragraph 15.A. on page 8; (iii) paragraph 15.B. on page 8; and (iv) paragraph 16 on pages 8 and 9.

(i)  Final Paragraph on page 5.

EXCEPTING and RESERVING from and out of this conveyance, all of the timber and trees, standing and fallen, situate on the premises above described, with full right of ingress, egress and regress for purposes of cutting, skidding, piling and removing the same, constructing roadways and skidways, and piling yards for such purposes, being subject to other terms relative thereto set forth below, SUBJECT, however, to the right of

Buyer to use for its own purposes all trees fallen
for more than one year and all tree-tops remaining
after logging operations.

This provision very clearly reserves <u>only</u> those
trees already actually existing on the date of the
Agreement. This provision does not reserve any rights in
any trees germinating after September 30, 1969, which are
the property of Mr. Carlisle and must be respected as such.

It is possible to reserve an ownership interest in
future trees, as well as existing trees, and parties
sometimes agree to do so. However, such an ownership
interest is always specifically identified. Furthermore, it
is easy to reserve a future interest using language like
this: "all trees now on this property, and all trees that
ever grow on this property at any time in the future, are
the property of the timber company." Such simple language
clearly and plainly reserves not only trees then in
existence, but all trees forever. The Agreement of Sale
between Mr. Carlisle and Fisher & Young does no such thing,
and anyone experienced in the forestry industry would
understand the paragraph quoted above to retain ownership
only in the trees that are actually existing on the date of
the Agreement.

(ii) Paragraph 15.A. on page 8.

15.A.    That in the event the Seller shall
desire to sell, transfer or assign the timber
reserved on the premises above described, Seller
shall give Buyer written notice thereof and hereby
grants the Buyer the option for thirty days
following the posting of said notice by Seller to
Buyer of purchasing said timber at the price
offered therefore by a bona fide prospective third
party purchaser, transferor or assignor.

This provision refers to the timber itself, as
opposed to the "timber rights" (see paragraph 15.B. below).
Each and every time the Seller plans to sell, transfer or
assign timber (in any quantity, including individual trees),
it must give Mr. Carlisle a 30-day written notice, and the
option to buy the specified trees at the price offered by
the third party.

The business of a commercial timber company like
Matson is to cut timber and sell the resulting logs to
third-party purchasers. Such a company demonstrates a

"desire to sell, transfer or assign the timber reserved on the premises" by cutting the timber. Accordingly, Matson is required to notify Mr. Carlisle in writing each time it desires to cut timber to effectuate a sale, transfer or assignment of such timber, thereby allowing Mr. Carlisle to exercise his thirty-day option to purchase the timber. Had Matson honored this obligation, Mr. Carlisle would have been able to purchase any or all such timber (that is, individual trees) prior to its being cut. (Once cut, timber becomes logs: "timber" means standing merchantable trees. Upon being cut, therefore, the timber is transferred, in violation of the Agreement.)

Paragraph 15.A. would also apply, obviously, in the event Matson desired to sell, transfer or assign *all* of the timber. Once again, it would be required to give written notice to Mr. Carlisle and allow him thirty days to exercise his option to purchase such timber.

(iii)      Paragraph 15.B. on page 8.

15.B.      Should the present management and/or ownership of Seller change, Buyer shall be so advised by Seller in writing and shall have an thirty day option to purchase the timber rights at a price to be mutually agreed upon, or in failure thereof, by arbitration (each side to choose one of the arbitrators and the two arbitrators to select a third). The arbitrators shall establish the price which shall be binding without appeal of the parties.

Unlike 15.A., which refers to "timber" (trees), 15.B. refers to "timber rights." These are two entirely different terms with different meanings, and there is a reason for these two separate sections in paragraph 15.

In particular, under paragraph 15.B. the Seller is obligated to notify Mr. Carlisle in writing of any change in management and/or ownership of the Seller, whereupon Mr. Carlisle has 30 days to purchase the timber rights. This notice and option enable Mr. Carlisle to keep unwanted timber companies, subsequent to the original seller, off the property altogether by acquiring the remaining timber rights.