

pc w/ Adam Fried

①     q. re SOL & tolling statute

42 PaCSA§5535   —   1 year tolling
    "discontinuance" does not apply

does Fed dismissal by stipulation come
within that ?

R. 41(a)(1)(2) does not itself provide a
tolling of SOL

<u>Maxwell Downs v. Philadelpia</u>   162 Pa Comm 300

Plaintiff's Appendix
000700

## 42 Pa.C.S.A. § 5534    ACTIONS, PROCEEDINGS, ETC.

### Historical and Statutory Notes

**Act 1976–142 legislation**

Section 25(a) and (b) of 1976, July 9, P.L. 586, No. 142, provides:

"(a) Any civil action or proceeding:

"(1) the time heretofore limited by statute for the commencement of which is reduced by any provision of this act; and

"(2) which is not fully barred by statute on the day prior to the effective date of this act;

may be commenced within one year after the effective date of this act, or within the period heretofore limited by statute, whichever is less, notwithstanding any provisions of Subchapter B of Chapter 55 of Title 42 (relating to civil actions and

proceedings) or any other provision of this act providing a shorter limitation.

"(b) No cause of action fully barred prior to the effective date of this act shall be revived by reason of the enactment of this act."

**Official Source Note:**

New. Patterned after New York Civil Practice Law and Rules § 209. Compare act of March 11, 1815 (P.L. 125), § 1 (12 P.S. § 74), act of April 168 1849 (P.L. 663), § 6 (12 P.S. § 38).

**Prior Laws:**

1849, April 16. P.L. 663, § 6 (12 P.S. § 38).

1815, March 11, P.L. 125, 6 Sm.L. 277, § 1 (12 P.S. § 74).

### Library References

Limitation of Actions ⟐113.
Westlaw Topic No. 241.
C.J.S. Limitations of Actions § 127.

### Research References

**Treatises and Practice Aids**

Standard Pennsylvania Practice 2d 2d
§ 13:90, War.

## § 5535. Effect of other actions and proceedings

**(a) Termination of prior matter.—**

(1) If a civil action or proceeding is timely commenced and is terminated, a party, or his successor in interest, may, notwithstanding any other provision of this subchapter, commence a new action or proceeding upon the same cause of action within one year after the termination and any other party may interpose any defense or claim which might have been interposed in the original action or proceeding.

(2) Paragraph (1) does not apply to:

(i) An action to recover damages for injury to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

(ii) An action or proceeding terminated by a voluntary nonsuit, a discontinuance, a dismissal for neglect to prosecute the action or proceeding, or a final judgment upon the merits.

**(b) Stay of matter.—**Where the commencement of a civil action or proceeding has been stayed by a court or by statutory prohibition, the

---

## LIMITATION OF TIME    42 Pa.C.S.A. § 5535

duration of the stay is not a part of the time within which the action or proceeding must be commenced.

**(c) Arbitration.—**Where it shall have been finally determined by a court that a party is not obligated to submit a claim to arbitration, the time which elapsed between the demand for arbitration and the final determination by a court that there is no obligation to arbitrate is not a part of the time within which a civil action or proceeding upon such claim must be commenced. The time within which the action or proceeding must be commenced shall not be extended by this subsection beyond one year after such final determination by a court.

1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978. Amended 1978, April 28, P.L. 202, No. 53, § 10(63), effective June 27, 1978; 1980, Oct. 5, P.L.693, No. 142, § 501(a), effective in 60 days.

### Historical and Statutory Notes

**Act 1976–142 legislation**

Section 25(a) and (b) of 1976, July 9, P.L. 586, No. 142, provides:

"(a) Any civil action or proceeding:

"(1) the time heretofore limited by statute for the commencement of which is reduced by any provision of this act; and

"(2) which is not fully barred by statute on the day prior to the effective date of this act;

may be commenced within one year after the effective date of this act, or within the period heretofore limited by statute, whichever is less, notwithstanding any provision of Subchapter B of Chapter 55 of Title 42 (relating to civil actions and proceedings) or any other provision of this act providing a shorter limitation.

"(b) No cause of action fully barred prior to the effective date of this act shall be revived by reason of the enactment of this act."

**Act 1980–142 legislation**

The 1980 amendment, in subsec. (c), inserted "finally" following "Where it

shall have been" and inserted "by a court" following "finally determined" or "final determination" throughout the subsection (3 occasions).

**Official Source Note:**

Subsection (a) substantially a reenactment of act of March 27, 1713 (1 Sm.L. 76), § 1 (12 P.S. § 33), act of June 24, 1895 (P.L. 236), § 2 (12 P.S. § 34) and patterned after New York Civil Practice Law and Rules § 205. Subsection (b) is new and patterned after New York Civil Practice Law and Rules § 204. Compare act of May 21, 1881 (P.L. 26), § 1 (12 P.S. § 42).

1978 Amendment: To conform to 42 Pa.C.S. § 5524(2).

**Prior Laws:**

1895, June 24, P.L. 236, § 2 (12 P.S. § 34).

1881, May 21, P.L. 26, § 1 (12 P.S. § 42).

1713, March 27, 1 Sm.L. 76, § 2.

### Cross References

Transfer, erroneously filed matters, federal cases, inapplicability of subsec. (a)(2)(i) of this section, see 42 Pa.C.S.A. § 5103.

### Library References

Limitation of Actions ⟐130.
Westlaw Topic No. 241.
C.J.S. Limitations of Actions § 240.

697

DEPOSITION EXHIBIT
PENGAD 800-631-6989

# Bartony Hare & Edson

*Attorneys at Law*

Law & Finance Building
Suite 1801
429 Fourth Avenue
Pittsburgh, Pa. 15219

Telephone  412/338-8632
Facsimile   412/338-6611

DEPOSITION
EXHIBIT
Hare 31
9/1/0054

June 15, 1998

**VIA OVERNIGHT EXPRESS**

Mr. Albert T. Carlisle
1210 Oak Drive
Ashtabula, OH  44004

> Re:  <u>Carlisle v. Matson Lumber</u>

Dear Bert:

We spoke by telephone on Friday, June 12, 1998 regarding your unpaid and overdue balance of $15,768.45 for legal fees and expenses in the above-captioned matter.  You indicated that you do not plan to make any payments on this account until mid-August, at the soonest, and that even then you plan to pay only a portion of the amount you already owe, let alone any additional fees that would have accrued by then.

We are unable to continue representing you without being paid in a timely and complete fashion.  Accordingly, we are forced to withdraw our appearance in this matter and to terminate our representation.

I strongly urge and advise you to seek new counsel immediately.  You have alluded recently to various conversations, conferences and meetings with several other lawyers.  I presume, therefore, that you have in mind several attorneys who may be able to assist you.  It would be advisable to retain replacement counsel immediately, so that your new counsel can file its entry of appearance simultaneously with our withdrawal of appearance.

Further, if you have any interest in filing an additional lawsuit against Matson Lumber under any breach of

*Bartony Hare & Edson*

Mr. Albert T. Carlisle                                    June 15, 1998
                                Page 2


contract theories, I recommend you do so no later than Friday, June 26, 1998, to take advantage of the twenty-year statute of limitations upon which we have successfully relied in these proceedings heretofore.    The twenty-year statute will be repealed as of June 27, 1998, and any new claims for breach of contract filed thereafter will be limited by the ordinary four-year statute of limitations.

        Finally, I am turning this matter over to my partner, John Edson, who will handle our collections efforts from now on.

                                Very truly yours,

                                Scott Michael Hare

SMH:jc



DEPOSITION EXHIBIT
Hare  82
9/1/05 Try
PENGAD 800-631-6989

SUMMARY OF BARTONY & HARE
BILLINGS TO ALBERT CARLISLE
REGARDING PENNSYLVANIA FARM TIMBER RIGHTS
(DECEMBER 7, 1994 THROUGH March 17, 1999)

| | | | |
|---|---|---|---|
| 1. | 12/7/94 | $ 2,830.11 * | |
| 2. | 1/13/95 | 1,419.80 * | |
| 3. | 4/4/95 | 2,851.98 * | |
| 4. | 5/17/95 | 31.48 * | |
| 5. | 6/12/95 | 102.06 * | |
| 6. | 7/3/95 | 330.00 * | |
| 7. | 8/3/95 | 6.93 * | |
| 8. | 9/7/95 | 360.00 * | |
| 9. | 10/10/95 | 1,794.60 * | |
| 10. | 12/8/95 | 697.28 * | |
| 11. | 1/8/96 | 2,418.72 * | |
| 12. | 2/4/96 | 617.80 * | |
| 13. | 3/4/96 | 390.00 * | |
| 14. | 5/7/96 | 5,261.30 * | |
| 15. | 10/7/96 | 1,759.72 * | |
| 16. | _____ | 2,289.80 | |
| 17. | 5/8/97 | 1,531.31 * | |
| 18. | _____ | 1,317.80 | |
| 19. | 7/1/97 | 864.00 * | |
| 20. | 8/14/97 | 54.00 * | |
| 21. | 10/7/97 | 60.00 * | |
| 22. | 11/7/97 | 1,056.00 * | |
| 23. | 12/2/97 | 1,140.00 * | |
| 24. | 1/23/98 | 12,373.99 * | |
| 25. | 2/9/98 | 323.50 * | |
| 26. | 3/5/98 | 357.50 * | |
| 27. | 4/2/98 | 477.72 * | |
| 28. | 5/11/98 | 1,531.43 * | |
| 29. | 6/3/98 | 203.62 * | |
| 30. | 2/7/99 | 1,575.43 * | |
| 31. | 3/9/99 | 171.06 * (Int.) | |
| 32. | 3/17/99 | 45.62 * (Int.) | $ 46,244.56 |

PAYMENTS ON BEHALF OF CARLISLE:

| | | | |
|---|---|---|---|
| 1. | 2/27/95 | $ 5,684.00 * | |
| 2. | 7/8/96 | 10,000.00 * | |
| 3. | 8/19/96 | 5,000.00 * | |
| 4. | 8/25/97 | 3,000.00 * | |
| 5. | 4/20/98 | 5,000.00 * | |
| 6. | 5/4/99 (KREMBS) | 16,635.19 * | -45,319.19 |

BALANCE  $     925.37

Plaintiff's Appendix
000704

DEPOSITION
EXHIBIT
Hare 37
9/1/05
PENGAD 800-631-6989

has no money

propose to
pay us
$10K then

August 15 can do a timber
Sale   $30 - $50 K
→ blow down

Sold Mercedes to pay us
our   $5000

5% of all revenue
above $110,000

doesn't want to hear from
John Edson — he is
offensive



DEPOSITION
EXHIBIT
Hare 41
9/1/05 JG

31187—Agreement for Sale of Land, Judg. & Kint. Clause,
Henry Hall, Inc. Indiana, Pa.

# Article of Agreement

MADE THE  1 st  day of  April,  in the year
of our Lord one thousand nine hundred and sixty-eight (1968),

BETWEEN   MARION C. KINKEAD, widow, of the Borough of Warren, County
of Warren and State of Pennsylvania, party of the first part,

AND

FISHER & YOUNG, INC., a Pennsylvania Corporation with
principal office in Oil Creek Township, Crawford County, Pennsylvania,
party

FILED AND ENTERED at
1010 o'clock A. M. on

MAY 22 1968

WITNESSETH, that the said part y  of the first part, in consideration of the  of the second part,
agreements hereinafter contained, on the part of the said party  of the second part to be kept
and performed,  has  agreed and does  hereby agree to sell and convey unto the said
party  of the second part, its  heirs or  successors, all the land and premises herein-
after mentioned and fully described, for the sum of  Twenty-five thousand ($25,000.00)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Dollars, to be paid as follows:

Five thousand ($5,000.00) Dollars upon the execution and delivery hereof,
the receipt of which is hereby acknowledged, and the balance of Twenty thousand
($20,000.00) Dollars in annual payments of Two thousand ($2,000.00) Dollars each,
commencing April 1, 1969, until the whole of said principal sum is fully paid; with
the privilege on the part of the Second Party of making additional payments on
principal at any time,

and the said part y  of the second part also agrees  to pay all taxes that may be levied upon
said land from and after the date of these presents, and to keep the buildings thereon insured in
the sum of  Twenty-five thousand ($25,000.00) - - - - - - - - - - - - - - - - - - - - - - -
- - - - - Dollars, payable to the said party  of the first part, as interest may appear.
And upon the payment of the said sum, the said party  of the first part, will, at  her
own proper cost, subject to split Pennsylvania realty transfer tax,
make, execute and deliver to the said party  of the second part, a good and sufficient Deed for
the proper conveying and assuring of the said premises in fee simple, free from all incumbrances
and dower, or right of dower, such conveyance to contain the usual covenants of Special
- - - - - - - - - - - - - - - - - - - - - - Warranty.
And the said party  of the second part, agrees  with the said party  of the first part, to
purchase the said premises and pay therefore the sum of  Twenty-five thousand ($25,000.00)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Dollars,
in the manner and at the times hereinbefore provided.

AND IT IS FURTHER AGREED, by and between the said parties, that possession of said
premises shall be delivered to the party  of the second part, its successor herein, on the
First  day of  April  A. D. 1968  until which time the
party  of the first part shall be entitled to have and receive the rents, issues and profits thereof.

The said premises are described as follows:
All of the real estate of the First Party in the Spring Creek Township,
Warren County, Pennsylvania, whether herein specifically described or not,
description being attached hereto.  The Second Party shall keep the buildings
on said premises insured in a good and reliable insurance company in an amount
not less than full insurable value, and take out no insurance not negotiated for the
benefit of the Parties.

The Second Party shall pay all taxes assessed and levied against said
premises for the year 1968 and hereafter.

BOOK 352 PAGE 1135

BOOK 352 PAGE 1136

The second party shall forthwith comply with the requirements of the Soil Bank Conservation Reserve Contract of the First Party which is in force for the year 1968, and according to the terms thereof becomes a party to said Contract and assumes all obligations thereunder; and first party hereby agrees to assign all the proceeds payable under said contract in 1968 to second party.

Plaintiff's Appendix
000707

1. ALL THAT CERTAIN tract of land situate in Spring Creek Township, Warren County and State of Pennsylvania, bounded and described as follows, to-wit: BEGINNING at the northeast corner, a hemlock tree; thence south one hundred thirty six (136) rods to a post;thence by land formerly owned by W. A. Irvine west to the corner of land formerly owned by Francis Bates; thence by land of said Bates one hundred thirty six (136) rods to a post; thence by land of said W. A. Irvine east to the place of beginning, containing sixty four (64) acres one hundred fifty five (155) rods of land, more or less.

2. ALSO, ALL THAT CERTAIN other piece or parcel of land situate in the Township, County and State aforesaid, bounded and described as follows, to-wit: BEGINNING at a post and stones in the northwest corner of the lot hereby conveyed; thence east one hundred sixty nine (169) rods to a post; thence south one hundred one (101) rods to a post; thence east forty nine and one-tenth (49.1) rods to a post; thence south one hundred ten and seven tenths (110.7) rods to a post; thence west one hundred sixty six (166) rods to a post; thence north sixty two and seven tenths (62.7) rods to a post; thence west fifty three and seven tenths (53.7) rods to a post; thence north one hundred forty nine (149) rods to a post and stones, the place of beginning, containing two hundred thirty seven (237) acres of land, more or less, and being part of Tract Number Three hundred sixty three (363) as designated on the general map of Warren County.

3. ALSO, ALL THAT CERTAIN other piece or parcel of land situate in the Township, County and State aforesaid, bounded and described as follows, to-wit: BEGINNING at the northwest corner of said piece of land at a post, thence in a southerly direction along the Morton Hill Road to the southwest corner of said piece of land; thence north eighty eight and three fourths (88 3/4) degrees east one hundred thirty four and six tenths (134.6) rods to a hemlock; thence north one and one fourth (1 1/4) degrees west one hundred thirty one and four tenths (131.4) rods to a post; thence south eighty nine and

Plaintiff's Appendix
000708

three-fourths (89-3/4) degrees west one hundred and thirty-four and six-tenths (134.6) rods to a post, the place of beginning; containing about one hundred and five (105) acres, be the same more or less.

4. ALSO, ALL THAT CERTAIN piece BOOK 352 PAGE 1138 of land situate in the Township, County and State aforesaid, being the homestead farm formerly of G. W. Nichols, and described in the three following several deeds, to-wit: From Frank E. Bates and wife to C. W. Nichols, bearing date the twenty-first day of March, A.D. 1890, and recorded in said Recorder's Office in Deed Book 68, page 81, as commencing at a post in the south line of said property; thence by lands of Smith south eighty-eight and three-fourths (88-3/4) degrees west fifty-five and five-tenths (55.5) perches to a post; thence by the same north one and one-fourth (1-1/4) degrees west to the state road, supposed to be about one hundred and forty-five (145) rods, more or less; thence eastwardly along the center of said road to the northwest corner of land deeded by Francis Bates to L. L. Bates; and thence south one and one-fourth (1-1/4) degrees east along said L. L. Bates' land to a post; the place, of beginning, be the same more or less, supposed to contain about fifty-four or fifty-five acres of land out of Tract Number Three hundred and three (303).

5. ALSO, One other piece or parcel of land described as being the east half of sixty-three (63) acres of land deeded from George Yeager to Francis Bates on the Fifth day of July , 1850, and recorded in said Recorder's Office on the Third day of July, 1851, off of Tracts Numbers Three hundred and four (304) and Three hundred sixty-three (363).

6. ALSO, as described in the deed from L. L. Bates and wife to said C. W. Nichols, bearing date the Twenty-first day of February, 1886, as commencing in the center of the State Road and the center of the Morton Hill Road at the junction of those two roads; thence by land of Cordelia Leonard and W. A. Irvine south one and one-fourth (1-1/4) degrees east one hundred eighty-five and one-half (185-1/2) rods to a beech, the southeast corner of the Francis Bates home farm; thence south eighty-eight and three-fourths (88-3/4) degrees west along the south line of said home farm fifty-one (51) rods to a post; thence north one and one-fourth (1-1/4) degrees west to the State Road; and thence eastwardly along the center of said road to the center of said Morton Hill Road, the place of beginning, supposed to contain about fifty-three (53) acres of land, be the same more or less.

7. AND ALSO, ALL THAT CERTAIN piece or parcel of land situate in the Township, County and State aforesaid, bounded and described as follows, to-wit: On the north by land above described, on the east by land of F. E. Bates, on the south by land formerly of C. W. Nichols, and on the west by land of M. Smith, containing about thirty-one and one-half (31.1/2) acres of land, more or less; and also so much of the land described in the deed from S. D. I. Newbold to the said C. W. Nichols, bearing date the Twenty-second day of March, 1888, and recorded in said Recorder's Office in Deed Book 64, page 136, as lies west of the Morton Hill Road, and adjoining the lands herein above described.

8. ALSO, ALL THAT CERTAIN piece or parcel of land situate in the Township of Spring Creek, County of Warren and State of Pennsylvania, bounded and described as follows, to-wit: On the north by lands owned by W. A. Irvine's heirs; on the west by the Morton Hill Road and land formerly owned by George Bates; on the north by land formerly owned by Mrs. Elias Wood; and on the east by the station road and land formerly owned by Lewis Stoddard, containing sixty-eight (68) acres and fifty-nine (59) rods of land, be the same more or less, out of Tract Number Three hundred four (304).

9. ALSO, ALL THAT CERTAIN piece or parcel of land situate in the Township of Spring Creek, County of Warren and State of Pennsylvania, bounded and described as follows, to-wit: On the north by land of Whiteley; on the east by land formerly of Greeley; on the south by lands formerly owned by W. A. Irvine; and on the west by lands conveyed to C. W. Nichols by F. J. Jones and wife, and a public road leading to Spring Creek R. R. Station and lands of Stoddard, containing forty-four (44) acres of land, more or less.

10. ALSO, ALL THAT CERTAIN piece of land situate in the Township, County and State aforesaid, bounded and described as follows, to-wit: On the north by land of Tom Forbes; on the east by land formerly of W. A. Irvine and L. S. Clough; on the south by land formerly of William

Morton, now L. S. Clough, containing forty-five (45) acres, more or less.

11.  ALSO, ALL THAT CERTAIN piece or parcel of land situate in the Township, County and State aforesaid, being part of Tract Three hundred ten (310) as described on the map of Warren County, Pennsylvania, as follows:  BEGINNING in the center of the State Road at a point where the same crosses the Tract line between the land formerly of Sarah D. L. Newbold and that of L. Greeley; thence south one (1) degree forty-five (45) minutes east eighty-eight (88) rods to a post at the southwest corner of Tract Number Three hundred ten (310); thence north eighty-eight (88) degrees forty-five (45) minutes east along the southerly line of Tract Number Three hundred ten (310) eighty-one (81) rods to a post in said Tract line; thence north two (2) degrees west one hundred nine and one-half (109-1/2) rods to a post in the center of the State Road; thence along the center of said road westerly eighty-four and three-tenths (84.3) rods to the place of beginning, containing fifty (50) acres of land, more or less.

12.  ALSO, ALL THAT CERTAIN piece or parcel of land situate in said Township, County and State, bounded and described as follows:  BEGINNING at a point in the center of the State Road, at the northeast corner of land heretofore conveyed by S. S. Mead, and running thence south two (2) degrees east one hundred twelve and six-tenths (112.6) rods to a post at the southeast corner of the said Mead's land, and in the south line of Tract Number Three hundred ten (310); thence north eighty-eight and three-fourths (88-3/4) degrees east three hundred fifty (350) rods to the western bank of the Big Brokenstraw Creek at low water mark; thence northwesterly along the western bank of the Big Brokenstraw Creek at low water mark to the center of the State Road; thence southwesterly along the center of the said State Road to the place of beginning.  The same containing two hundred fourteen (214) acres and one hundred four (104) perches of land, be the same more or less, and being a part of Tract Number Three hundred ten (310), the land herein conveyed to include all the land lying west of the Big Brokenstraw Creek belonging to Mrs. S. D. L. Newbold in Tract Number Three hundred ten (310).  Also, all islands in that part of Brokenstraw Creek which lie east of the foregoing described land.

13.  ALSO, ALL THAT CERTAIN land situate in the aforesaid Township, County and State, conveyed to L. S. Clough by Dan A. Geiger and Jessie L. Geiger, his wife, by deed bearing date the First day of October, 1906, and recorded in the Recorder's Office of Warren County in Deed Book 105, page 260, said land being bounded and described as follows, to-wit:  BEGINNING at the northwest corner of Tract Number Three hundred thirteen (313); thence extending along the north line of said tract due east ninety-one and nine-tenths (91.9) perches to the corner of land formerly of E. Jackson; thence along the same due south one hundred thirty-five (135) perches to the southwest corner of said Jackson's land; thence due west ninety-four (94) perches to the west line of said tract; thence along said line due north one hundred thirty-five (135) perches to the place of beginning, containing seventy-eight (78) acres and forty-one (41) perches, more or less, being the northwest corner of Tract Number Three hundred thirteen (313).

14.  ALSO, ALL THAT OTHER CERTAIN piece or parcel of land, bounded and described as follows, to-wit:  BEGINNING at a corner in the south line of land formerly of Elijah Jackson; thence along same due east (one) hundred ninety-seven (197) perches to land now or formerly of A. Watts; thence along said Watt's land due south seventy-one (71) perches to a corner; thence along the south line of Tract Number Three hundred thirteen (313) north about eighty-eight and one-half (88-1/2) degrees west One hundred ninety-seven (197) perches to a corner; thence due north sixty-four (64) perches to the place of beginning, containing eighty (80) acres and twenty-five (25) perches, more or less, being the southeast corner of Tract Number Three hundred thirteen (313).

15.  ALSO, ALL THAT CERTAIN piece or parcel of land situate in

352 PAGE 1139

Spring Creek Township, Warren County, State of Pennsylvania, as convey-
ed to L. S. Clough by J. V. Kinyon by deed bearing date the Thirtieth
day of March, 1911, and recorded in the Recorder's Office of Warren
County in Deed Book 114, page 397, said land being bounded and de-
scribed as follows:   It being fifty-one (51) acres and eighteen (18)
perches from the southeast side of Tract Number Three hundred four
(304) bounded as follows, to-wit:  On the north by lands formerly of
Miles and Watts; on the east by the eastern line of said tract; on
the south by the southern line of said tract; on the west by lands
formerly of Yager and Miles and Watts.

**BOOK 352 PAGE 1140**   **BOOK 323 PAGE 88**

16.   ALSO, ALL THAT CERTAIN piece or parcel of land situate in
Spring Creek Township, Warren County, State of Pennsylvania, bounded
and described as follows:  BEGINNING at the northwest corner of the
whole tract Number Three hundred fourteen (314); thence south by the
west line of the tract one hundred fifty-nine (159) rods to a post;
thence east fifty-three (53) rods and eight (8) links to a post;
north by the residue of the tract one hundred fifty-nine (159) rods to
a post in the north line of the tract; thence west along the north
line of the tract fifty-three (53) rods and eight (8) links to the place
of beginning.  Containing fifty (50) acres of land and allowance.

17.   ALSO, ALL THAT CERTAIN piece or parcel of land situate in
Spring Creek Township, Warren County, State of Pennsylvania, bounded
and described as follows:  BEGINNING at the northwest corner of the
tract conveyed at a post; thence by land formerly of Sager east fifty
and seven-tenths (50.7) perches to lands formerly of Jackson; thence
by land formerly of Jackson south two hundred one (201) perches to
land formerly of Irvine; thence by land formerly of Irvine west fifty
and seven-tenths (50.7) perches to a post; thence by lands formerly
of Irvine and lands formerly of Yager north two hundred one (201) per-
ches to the place of beginning, containing sixty (60) acres of land,
be the same more or less, being part of Warrant Number Three hundred
sixty-three (363).

18.   ALSO, ALL THAT CERTAIN other piece or parcel of land situate
in the Township of Spring Creek, County of Warren and State of Penn-
sylvania, in Tract Number Three hundred seventeen (317); bounded and
described as follows:  BEGINNING at the northeast corner of Jacob
Wright's land at a post; thence by the same south One hundred forty-
two and five-tenths (142.5) perches to an ash, the southwest corner of
Wright's land; thence by land of H. R. Dexter east fifty-three (53)
perches to a post; thence by same south eighty-one (81) perches to a
post in the south line of the tract; thence east seventy-six (76)
perches to a hemlock, the southeast corner of the tract; thence north
two hundred twenty-three and five-tenths (223.5) perches to a maple,
the northeast corner of the tract; thence by Tract Number Three hun-
dred eighteen (318) west One hundred twenty-nine (129) perches to a
post, the place of beginning, containing one hundred fifty-three (153)
acres, be the same more or less.

There being erected upon said premises a large two-story frame
dwelling house, two large barns and other buildings.

SUBJECT to the right of way for an electric line granted unto
Pennsylvania Electric Company by Instrument dated October 15, 1957
and entered in the Recorder's Office of Warren County in Deed Book
291, page 460, on January 11, 1958.

SUBJECT to the right of way for an electric line granted unto
Pennsylvania Electric Company by instrument dated November 29, 1957
and entered in said Recorder's Office in Deed Book 292, page 140 on
January 31, 1958.

EXCEPTING AND RESERVING that portion of the above described
premises which was conveyed by Robert M. Kinkead and Marion G. Kin-

Plaintiff's Appendix
000711

kead, his wife, to Charles A. Williams and Mary Helen Williams, husband and wife, by deed dated June 6, 1958 and entered in said Recorder's Office in Deed Book 294, page 475.

Being premises which were conveyed to Robert M. Kinkead and Marion C. Kinkead, his wife, by deed of Robert M. Kinkead and wife dated November 30, 1962 and recorded in Deed Book 325, page 85, including premises noted in said deed as being excepted to Kenneth E. Pitt and wife, the same thereafter having been reacquired by Robert M. Kinkead and wife. The said Robert M. Kinkead thereafter died on June 26, 1967, whereby title to said premises vested in the Grantor as surviving tenant by the entirety.

This conveyance is made subject to a certain agreement of lease dated February 1, 1962 with the individual members of the Clough Farm Club as joint tenants, as amended, with reference to the stream bed of Spring Creek, and 25 feet inland from the normal banks of said creek on each side thereof, with right of entry to and from the same, but all rights of the Lessor in and to said agreement are hereby assigned and conveyed to the within Grantee.

EXCEPTING AND RESERVING from and out of this conveyance all of the timber and trees, standing and down, situate on the premises above described, with full right of entry for the purpose of cutting, skidding, piling; and removing the same, and of constructing roadways and skidways, sawmills and piling yards, for such purposes;

Plaintiff's Appendix
000712

BOOK 352 PAGE 1141

BOOK 352 PAGE 1142

AND IT IS FURTHER UNDERSTOOD AND AGREED, that in case of default of payment of any sum of principal or interest, taxes herein agreed to be paid or premiums on insurance herein agreed to be carried, for the space of   thirty (30) - - - - - - - - - days after the same shall become due and payable by the terms hereof, that then and in such case, the whole of the said principal sum shall, at the option of the said party   of the first part, forthwith become due and payable, anything hereinbefore contained to the contrary thereof notwithstanding. And in such case of default, the said party y   of the second part hereby authorize and empower any attorney of any Court of Record in the State of Pennsylvania, or elsewhere, to appear for it   and confess a judgment for the whole principal sum and interest remaining unpaid hereon, with   five   per cent. attorney's commission for fees; and the said party y   of the second part, in case of default as aforesaid, further authorize s and empowers  any attorney of any Court of Record, either in addition to or without such judgment for the amount according to the terms of this agreement, to appear and confess judgment against her  in an amicable action of ejectment for said premises, and authorize s  the immediate issuing, (without asking leave of court), of a writ of Habere Facias Possessionem, with writ of execution for the amount of said judgment and costs, with a minimum attorney's commission of $   or   five  per cent. of the balance due under this agreement; in each case waiving the benefit of any law exempting property from levy and sale, waiving the right of inquisition if levy is made on land and consenting to condemnation thereof with liberty to sell same on Fiere Facias, without stay of execution, and with release of all errors.

IN WITNESS WHEREOF, the said parties to this agreement have hereunto set their hands and seals the day and year first above written.

Signed, Sealed and Delivered
in the Presence of

ATTEST:

_____ (SEAL)
_____ (SEAL)

_Marion C. Kinkead_ (SEAL)

FISHER AND YOUNG, INC.

BY _Philip H. Cochran_ (SEAL)
                President

Secretary

COMMONWEALTH OF PENNSYLVANIA          :
                                      : ss.
COUNTY OF CRAWFORD                    :

On the 8th day of May, 1968, before me the undersigned officer, personally appeared Philip H. Cochran, who acknowledged himself to be the President of Fisher & Young, Inc., a corporation, and that he as such President, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as President.

In witness whereof, I hereunto set my hand and notarial seal.

_Dorothy S. Cole_

DOROTHY S. COLE, Notary Public
Titusville, Crawford Co., Penna.
My Comm. Expires April 14, 1969

State of   PENNSYLVANIA        }
County of   WARREN             } ss.

On this, the - - - 30th - - day of - - - - April - - , 19 68, before me, the undersigned officer, personally appeared   MARION C. KINKEAD,

known to me (or satisfactorily proven) to be the person  whose name   is   subscribed to the within instrument, and acknowledged that she has  executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Sandra L. Eberhardt_ (SEAL)
Notary Public

Title of Officer.
Sandra L. Eberhardt, Notary Public
Warren Borough, Warren County, Pennsylvania.
My Commission Expires: January 8, 1972

Plaintiff's Appendix
000713



DEPOSITION
EXHIBIT
Hare 42
9/11/05JJ

FILED AND ENTERED at
_11:21_ o'clock _A_ M. on
APR 22 1969

# This Deed,

Made the  twenty seventh  day of  March  in the year

Nineteen hundred and  sixty nine.

Between  MARION C. KINKEAD, Widow, of the Boro of Warren, County of

Warren, and State of Pennsylvania,

grantor,

and  FISHER & YOUNG, INC., a Pennsylvania Corporation with principal

office in Oil Creek Township, Crawford County, Pennsylvania,

grantee.

Witnesseth, That in consideration of

Twenty five thousand  ($25 000.00)  Dollars

in hand paid, the receipt whereof is hereby acknowledged, the said grantor  do as hereby grant and

convey to the said grantee ,

ALL THAT CERTAIN parcel of land situate in Spring Creek Township,
Warren County, Pennsylvania, now or lately known as the Clough Farm, and being
all of the premises of the Grantor situate in said Township, whether herein
specifically described or not; subject, however to the reservation of the timber
and tree reservation as set forth in the Agreement of Sale hereinafter recited.

Said premises may further be described as follows:

1.  BEGINNING at the northeast corner, a hemlock tree; thence south
136 rods to a post; thence by land formerly owned by W. A. Irvine west to the
corner of land formerly owned by Francis Bates; thence by land of said Bates 136
rods to a post; thence by land of said W. A. Irvine east to the place of beginning,
containing 64 acres 155 rods, more or less.

2.  BEGINNING at a post and stones in the northwest corner of the lot
hereby conveyed; thence east 169 rods to a post; thence south 101 rods to a post;
thence east 49.1 rods to a post; thence south 110.7 rods to a post; thence west
166 rods to a post; thence north 62.7 rods to a post; thence west 53.7 rods to a
post; thence north 149 rods to a post and stones, the place of beginning, con-
taining 237 acres of land, more or less, and being part of Tract No. 363.

3.  BEGINNING at the northwest corner of said piece of land at a
post; thence in a southerly direction along the Morton Hill Road to the southwest
corner of said piece of land; thence N 88 3/4° E 134.6 rods to a hemlock; thence
N 1 1/4° E 131.4 rods to a post; thence S 89 3/4° W 134.6 rods to a post, the
place of beginning, containing about 105 acres, more or less.

4.  Being the homestead farm formerly of G. W. Nichols, and described
in the three following several deeds: from Frank E. Bates and wife to C. W. Nichols
dated March 21, 1890 and recorded in Deed Book 68, page 81, as commencing at a
post in the south line of said property; thence by lands of Smith S 88 3/4° W 55.5
porches to a post; thence by the same  N 1 1/4° W to the state road, supposed to
be about 145 rods; thence eastwardly along the center of said road to the north-
west corner of land deeded by Francis Bates to L. L. Bates; thence S 1 1/4° E
along said L. L. Bates' land to a post, the place of beginning, supposed to con-
tain about 55 or 54 acres of land out of Tract No. 303.

Plaintiff's Appendix
000714

262

Francis Bates on July 4, 1850 and recorded on July 3, 1850, off of Tracts Nos. 304 and 363.

BOOK 357 PAGE 350

**6.** As described in deed from L. L. Bates and wife to C. W. Nichols dated February 21, 1886, commencing in the center of the State Road and the center of the Morton Hill Road at the junction of those two roads; thence by land of Cordelia Leonard and W. A. Irvine S 1 1/4° E 185.5 rods to a beech, the southeast corner of the Francis Bates home farm; thence S 88 3/4° W along the south line of said farm 51 rods to a post; thence N 1 1/4° W to the State Road; and thence eastwardly along the center of said road to the center of said Morton Hill Road, the place of beginning, supposed to contain about 53 acres of land.

**7.** On the north by land above described; on the east by land of F. E. Bates; on the south by land formerly of C. W. Nichols; and on the west by land of M. Smith, containing about 31 1/2 acres of land; and also so much of the land described in deed from S. D. I. Newbold to the said C. W. Nichols dated March 22, 1888 and recorded in Deed Book 64, page 136, as lies west of the Morton Hill Road, and adjoining the lands hereinabove described.

**8.** On the south by lands owned by W. A. Irvine's heirs; on the west by the Morton Hill Road and land formerly owned by George Bates; on the north by land formerly owned by Mrs. Elias Wood; and on the east by the station road and lands formerly owned by Lewis Stoddard, containing 68 acres 59 rods of land, more or less, out of Tract No. 304.

**9.** On the north by land of Whiteley; on the east by land formerly of Greeley; on the south by lands formerly owned by W. A. Irvine; and on the west by lands conveyed to C. W. Nichols by F. J. Jones and wife, and a public road leading to Spring Creek R.R. Station and lands of Stoddard, containing 44 acres, more or less.

**10.** On the north by land of Tom Forbes; on the east by land formerly of W. A. Irvine and L. S. Clough; on the south by land formerly of William Morton now L. S. Clough, containing 45 acres, more or less.

**11.** Part of Tract No. 310, described as follows: BEGINNING in the center of the State Road at a point where the same crosses the Tract line between land formerly of Sarah D. I. Newbold and that of L. Greeley; thence S 1° 45' E 88 rods to a post, the southwest corner of Tract No. 310; thence N 88° 45' E along the southerly line of Tract No. 310, 81 rods to a post in said Tract line; thence N 2° W 109 1/2 rods to a post in the center of the State Road; thence along the center of said road westerly 84.3 rods to the place of beginning, containing 50 acres of land, more or less.

**12.** BEGINNING at a point in the center of the State Road, at the northeast corner of land heretofore conveyed by S. S. Wead, and running thence S 2° E 112.6 rods to a post at the southeast corner of said Wead's land, and in the south line of Tract No. 310; thence N 88-3/4° E 350 rods to the western bank of the Big Brokenstraw Creek at low water mark; thence northwesterly along the western bank of the Big Brokenstraw Creek at low water mark to the center of the State Road; thence southwesterly along the center of the State Road to the place of beginning, containing 214 acres 104 perches of land, more or less, and being a part of Tract No. 310. The land herein conveyed to include all the land lying west of the Big Brokenstraw Creek belonging to Mrs. S. D. I. Newbold in said Tract. Also, all the islands in that part of Brokenstraw Creek which lie east of the foregoing described land.

**13.** BEGINNING at the northwest corner of Tract No. 313; thence extending along the north line of said Tract due east 91.9 perches to the corner of land formerly of E. Jackson; thence along the same due south 135 perches to the southwest corner of said Jackson's land; thence due west 94 perches to the west line of said tract; thence along said line due north 135 perches to the place of beginning, containing 78 acres 41 perches, more or less, being the northwest corner of Tract No. 313. Being land conveyed to L. S. Clough by Dan A. Geiger and wife by deed dated October 1, 1906 and recorded in Deed Book 105, page 260.

**14.** On the north by lands formerly of Miles and Watts; on the east by the eastern line of the tract; on the south by the southern line of the tract; on the west by lands formerly of Yeager and Miles and Watts. Being 51 acres 18 perches from the southeast side of Tract No. 304, as conveyed to L. S. Clough by deed of J. V. Kinyon dated March 30, 1911 and recorded in Deed Book 114, page 397.

**15.** BEGINNING at the northwest corner of the whole Tract No. 314; thence south by the west line of the tract 159 rods to a post; thence east 53 rods 8 links to a post; thence north by the residue of the tract 159 rods to a post in the north line of the tract; thence west along the north line of the tract 53 rods 8 links to the place of beginning, containing 50 acres and allowance.

Plaintiff's Appendix
000715

16.          BEGINNING at the northeast corner of Jacob Wright's land at a post; thence by the same south 142.5 perches to an ash, the southwest corner of Wright's land; thence by land of H. B. Dexter east 53 perches to a post; thence by the same south 81 perches to a post in the south line of the tract; thence east 76 perches to a hemlock, the southeast corner of the tract; thence north 223.5 perches to a maple, the northeast corner of the tract; thence by Tract No. 318 west 129 perches to the place of beginning, containing 153 acres, more or less, in Tract No. 317.

17.          BEGINNING at the northwest corner of the tract conveyed at a post; thence by land formerly of Sager east 50.7 perches to lands formerly of Jackson; thence by land formerly of Jackson south 201 perches to land formerly of Irvine; thence by land formerly of Irvine west 50.7 perches to a post; thence by lands formerly of Irvine and lands formerly of Yager north 201 perches to the place of beginning, containing 60 acres, more or less, being part of Tract No. 363.

          Subject to rights of way for electric lines granted to Pennsylvania Electric Company by instruments dated October 15, 1957 and November 29, 1957, and recorded respectively in Deed Book 291, page 460 and Deed Book 292, page 140.

          EXCEPTING AND RESERVING that portion of said premises which was conveyed by Robert M. Kinkead and wife to Charles A. Williams and wife by deed dated June 6, 1956 and recorded in Deed Book 294, page 475.

          Being premises which were conveyed to Robert M. Kinkead and Marion C. Kinkead, his wife, by deed of Robert M. Kinkead and wife dated November 30, 1962 and recorded in Deed Book 325, page 85, including premises noted in said deed as being excepted to Kenneth E. Pitt and wife, the same thereafter having been reacquired by Robert M. Kinkead and wife. The said Robert M. Kinkead thereafter died on June 26, 1967, whereby title to said premises vested in the Grantor as surviving tenant by the entirety.

          This conveyance is made subject to a certain agreement of lease dated February 1, 1962 with the individual members of the Clough Farm Club as joint tenants, as amended, with reference to the stream bed of Spring Creek, and 25 feet inland from the normal banks of said Creek on each side thereof, with right of entry to and from the same, but all rights of the Lessor in and to said agreement are hereby assigned and conveyed to the within Grantee.

          EXCEPTING AND RESERVING from and out of this conveyance all of the timber and trees, standing and down, situate on the premises above described, with appurtenant rights, as set forth in agreement for the sale of said premises made between the parties hereto on April 1, 1968 and recorded in Deed Book 352, page 1135, in fulfillment of which agreement this conveyance is made.

BOOK 357 PAGE 951

Plaintiff's Appendix
000716

264

This conveyance is made subject to the payment by the Grantee of taxes assessed and levied for the year 1968 and thereafter.

And the said grantor    does hereby warrant    Specially    the property hereby conveyed.

BOOK 357 PAGE 352

In Witness Whereof, the said grantor    has    hereunto set    her    hand and seal    the day and year first above written.

Marion C. Kinkead    Seal.

Signed, Sealed and Delivered
in Presence of

Commonwealth of Pennsylvania }
County of WARREN    } ss:

On this, the    27th    day of    March    , 1969 , before me,

a Notary Public    , the undersigned officer, personally appeared

MARION C. KINKEAD, Widow,

known to me (or satisfactorily proven) to be the person    whose name    is    subscribed to the within Instrument, and acknowledged that    she    executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

Sandra S. Eberhardt
Notary Public

My Commission expires January 8, 1972

I hereby certify that the precise residence of the within named Grantee is    R # 2
Titusville, Pennsylvania

John S. ___
Atty for Grantee

EXHIBIT
9/1/05 JY

149BT—Agreement for Sale of Land, Judg . Eject. Clause.
Henry Hall, Inc., Indiana, Pa.

# Article of Agreement

**MADE THE** _1 st_ day of April, _in the year
of our Lord one thousand nine hundred_ sixty-eight (1968),

**BETWEEN**      MARION C. KINKEAD, widow, of the Borough of Warren,
County of Warren and State of Pennsylvania, party of the first part,

and

FISHER & YOUNG, INC. a Pennsylvania Corporation,
with principal office in the City of Titusville, County and State aforesaid, party

of the second part,

_WITNESSETH, that the said party      of the first part, in consideration of the covenants and
agreements hereinafter contained, on the part of the said party      of the second part to be kept
and performed,      has      agreed and does      hereby agree to sell and convey unto the said
part y      of the second part,      its      successors and assigns, all the land and premises herein-
after mentioned and fully described, for the sum of_ One hundred thousand ($100,000.00)
_- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Dollars, to be paid as follows:_

T w e n t y  thousand ($20,000.00) Dollars upon the execution and delivery hereof,
the receipt of which is hereby acknowledged, and the balance of Eighty thousand
($80,000.00) Dollars in annual payments of Eight thousand ($8,000.00) Dollars
each, commencing April 1, 1969, until the whole of said principal sum is fully paid;
with the privilege on the part of the second party of making additional payments
on principal at any time.

The Second Party shall upon any cutting of timber make payment upon this
contract of the gross value of all timber and trees removed from the premises.

_and the said part_ y _      of the second part also agrees   to pay all taxes that may be levied upon
said land_ from and after the above assessments, _and to keep the buildings thereon insured in
the sum of_
_Dollars, payable to the said party   of the first part, as interest may appear.
And upon the payment of the said sum, the said party      of the first part, will, at_ her _own proper
cost,
make, execute and deliver to the said part_ y _   of the second part, a good and sufficient Deed for
the proper conveying and assuring of the said premises in fee simple, free from all incumbrance
and dower, or right of dower, such conveyance to contain the usual covenants of_
Special      _Warranty.
And the said party   of the second part, agrees   with the said part_ y _  of the first part, to
purchase the said premises and pay therefore the sum of_ One hundred thousand ($100,000.00)
_- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Dollars,
in the manner and at the times hereinbefore provided._

_AND IT IS FURTHER AGREED, by and between the said parties, that possession of said
premises shall be delivered to the party      of the second part, its_ heirs and assigns, _on the
first      day of_ April, _A. D._ 1968, _until which time the
party   of the first part shall be entitled to have and receive the rents, issues and profits thereof._

_The said premises are described as follows:_

All of the timber and trees standing and down measuring twelve (12) inches
or more in diameter, one (1) foot from the ground, on the premises here and after
described; with the right to enter on said premises and to cut, skid, pile and remove
the same, subject to the terms of this agreement, until April 1, 1978, on and after
which date all the rights hereunder shall revert to the owner of the land.

Plaintiff's Appendix
000718

269

**And it is Further Understood and Agreed,** that in case of default of payment of any sum of principal or interest herein agreed to be paid, for the space of thirty (30) days after the same shall become due and payable by the terms hereof, that then and in such case the whole of the said principal sum shall, at the option of the said party of the first part, forthwith become due and payable, anything hereinbefore contained to the contrary notwithstanding. And in such case of default, the said party of the second part hereby authorize s and empowers any attorney of any Court of Record in the State of Pennsylvania, or elsewhere, to appear for it and confess a judgment for the whole principal sum and interest remaining unpaid herein, with five per cent. attorney's commissions or fees; hereby waiving the right of exemption and inquisition so far as the land herein described, and any property or building thereon may be concerned. Or the said party of the first part may, at her option, proceed by action of ejectment on this agreement, for the balance of such purchase money, after default made as aforesaid; and in such case, the said party of the second part hereby authorize s and empower s any attorney of any Court of Record to appear for it in an amicable action of ejectment for the premises above described, to be entered by the Prothonotary, in which said party of the first part shall be plaintiff and said party of the second part defendant, and confess judgment therein in favor of the plaintiff and against the defendant, for said premises, and authorize s the immediate issuing of a writ of Habere Facias Possessionem, with clause of Fi. Fa. for the cost, (without asking leave of Court); with costs of suit and per cent. attorney's commission or fees.

**In Witness Whereof,** the said parties to this agreement have hereunto set their hands and seals the day and year first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF

*Marion C. Kinkead* (Seal)
(Seal)

ATTEST:

FISHER AND YOUNG, INC.

_____
Secretary

By *Philip H. Cochran* (Seal)
President (Seal)

COMMONWEALTH OF PENNSYLVANIA      :
                                  : ss.
COUNTY OF CRAWFORD                :

On this, the 8th day of May, 1965, before me the undersigned officer, personally appeared Philip H. Cochran, who acknowledged himself to be the President of Fisher and Young, Inc., a corporation, and that he as such President, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as President.

Witness whereof, I hereunto set my hand and notarial seal.

_____
Notary Public

PENNSYLVANIA      }
                  } ss.
WARREN            }

On this the ___ day of ____ April ___ 19 68 , before me the undersigned officer, personally appeared   MARION C. KINKEAD,

known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____ (Seal)
Notary Public

Plaintiff's Appendix
000719



DEPOSITION
EXHIBIT
Hare 44
9/10 GJU
FRNGAD 800-631-6989

WARRANTY DEED—INDIVIDUAL
For Sale by Redding's, Warren, Pennsylvania.

FILED AND ENTERED at
11:47 o'clock A. M. on

# This Deed,

APR 23 1973

BOOK 376 PAGE 939

Made the _20th_ day of    April    in the year

Nineteen hundred and seventy-three (1973),

Between MARION C. KINKEAD, widow, of the Borough of Warren,

County of Warren and State of Pennsylvania,

grantor

and    FISHER & YOUNG, INC., a Pennsylvania Corporation, with

principal office in Oil Creek Township, Crawford County,

Pennsylvania,

grantee

Witnesseth. That in consideration of  One and 00/100

($1.00)    Dollar

in hand paid, the receipt whereof is hereby acknowledged, the said grantor  do es hereby grant and

convey to the said grantee , All of the timber and trees standing and down
measuring 12 inches and more in diameter one foot from the ground,
on ALL THOSE CERTAIN pieces or parcels of land situate in the Town-
ship of Spring Creek, County of Warren and State of Pennsylvania,
described as follows:

1. BEGINNING at the northeast corner, a hemlock
tree; thence south 136 rods to a post; thence by land formerly owned
by W. A. Irvine west to the corner of land formerly owned by Francis
Bates; thence by land of said Bates 136 rods to a post; thence by
land of said W. A. Irvine east to the place of beginning, containing
64 acres 155 rods, more or less.

2. BEGINNING at a post and stones in the north-
west corner of the lot hereby conveyed; thence east 169 rods to a
post; thence south 101 rods to a post; thence east 49.1 rods to a
post; thence south 110.7 rods to a post; thence west 166 rods to a
post; thence north 62.7 rods to a post; thence west 53.7 rods to a
post; thence north 149 rods to a post and stones, the place of
beginning, containing 237 acres of land, more or less, and being part
of Tract No. 363.

3. BEGINNING at the northwest corner of said
piece of land at a post; thence in a southerly direction along the
Morton Hill Road to the southwest corner of said piece of land;
thence N 88 3/4° E 134.6 rods to a hemlock; thence N 1 1/4° E 131.4
rods to a post; thence S 89 3/4° W 134.6 rods to a post, the place
of beginning, containing about 105 acres, more or less.

4. Being the homestead farm formerly of G. W.
Nichols, and described in the three following several deeds: from
Frank E. Bates and wife to C. W. Nichols dated March 21, 1890 and
recorded in Deed Book 68, page 81, as commencing at a post in the
south line of said property; thence by lands of Smith S 88 3/4° W
55.5 perches to a post; thence by the same N 1 1/4° W to the state
road, supposed to be about 145 rods; thence eastwardly along the
center of said road to the northwest corner of land deeded by
Francis Bates to L. L. Bates; thence S 1 1/4° E along said L. L.
Bates' land to a post, the place of beginning, supposed to contain

about 55 or 54 acres of land out of Tract No. 303.

5. The east half of 63 acres of land deeded from George Yeager to Francis Bates on July 5, 1850 and recorded on July 3, 1851, off of Tracts No. 304 and 363.

BOOK 376 PAGE 940    6. As described in deed from L. L. Bates and wife to C. W. Nichols dated February 21, 1886, commencing in the center of the State Road and the center of the Morton Hill Road at the junction of those two roads; thence by land of Cordelia Leonard and W. A. Irvine S 1 1/4° E 185.5 rods to a beach, the southeast corner of the Francis Bates home farm; thence S 88 3/4° W along the south line of said farm 51 rods to a post; thence N 1 1/4° W to the State Road; and thence eastwardly along the center of said road to the center of said Morton Hill Road, the place of beginning, supposed to contain about 53 acres of land.

7. On the north by land above described; on the east by land of F. E. Bates; on the south by land formerly of C. W. Nichols; and on the west by land of M. Smith, containing about 31 1/2 acres of land; and also so much of the land described in deed from S.D.I. Newbold to the said C.W. Nichols dated March 22, 1888 and recorded in Deed Book 64, page 136, as lies west of the Morton Hill Road, and adjoining the lands hereinabove described.

8. On the south by lands owned by W. A. Irvine's heirs; on the west by the Morton Hill Road and land formerly owned by George Bates; on the north by land formerly owned by Mrs. Elias Wood; and on the east by the station road and lands formerly owned by Lewis Stoddard, containing 68 acres 59 rods of land, more or less, out of Tract No. 304.

9. On the north by land of Whiteley; on the east by land formerly of Greeley; on the south by lands formerly owned by W. A. Irvine; and on the west by lands conveyed to C. W. Nichols by F. J. Jones and wife, and a public road leading to Spring Creek R. R. Station and lands of Stoddard, containing 44 acres, more or less.

10. On the north by land of Tom Forbes; on the east by land formerly of W. A. Irvine and L. S. Clough; on the south by land formerly of William Morton now L. S. Clough, containing 45 acres, more or less.

11. Part of Tract No. 310, described as follows: BEGINNING in the center of the State Road at a point where the same crosses the Tract line between land formerly of Sarah D. I. Newbold and that of L. Greeley; thence S 1° 45' E 88 rods to a post, the southwest corner of Tract No. 310; thence N 88° 45' E along the southerly line of Tract No. 310, 81 rods to a post in said Tract line; thence N 2° W 109 1/2 rods to a post in the center of the State Road; thence along the center of said road westerly 84.3 rods to the place of beginning, containing 50 acres of land, more or less.

12. BEGINNING at a point in the center of the State Road, at the northeast corner of land heretofore conveyed by S. S. Wead, and running thence S 2° E 112.6 rods to a post at the southeast corner of said Wead's land, and in the south line of Tract No. 310; thence N 88 3/4° E 350 rods to the western bank of the Big Brokenstraw Creek at low water mark; thence northwesterly along the western bank of the Big Brokenstraw Creek at low water mark to the center of the State Road; thence southwesterly along the center of the State Road to the place of beginning, containing 214 acres 104 perches of land, more or less, and being a part of Tract No. 310. The land herein conveyed to include all the land lying west of the Big Brokenstraw Creek belonging to Mrs. S. D. I. Newbold in said Tract. Also, all the islands in that part of Brokenstraw Creek which lie east of the foregoing described land.

13. BEGINNING at the northwest corner of Tract No. 313; thence extending along the north line of said Tract due east 91.9 perches to the corner of land formerly of E. Jackson; thence along the same due south 135 perches to the southwest corner of said Jackson's land; thence due west 94 perches to the west line of said tract; thence along said line due north 135 perches to the place of beginning, containing 78 acres 41 perches, more or less, being the northwest corner of Tract No. 313. Being land conveyed to L. S. Clough by Dan A. Geiger and wife by deed dated October 1, 1906 and recorded in Deed Book 105, page 260.

BOOK 376 PAGE 941

14. On the north by lands formerly of Miles and Watts; on the east by the eastern line of the tract; on the south by the southern line of the tract; on the west by lands formerly of Yeager and Miles and Watts.  Being 51 acres 18 perches from the southeast side of Tract No. 304, as conveyed to L. S. Clough by deed of J. V. Kinyon dated March 30, 1911 and recorded in Deed Book 114, page 397.

15. BEGINNING at the northwest corner of the whole Tract No. 314; thence south by the west line of the tract 159 rods to a post; thence east 53 rods 8 links to a post; thence north by the residue of the tract 159 rods to a post in the north line of the tract; thence west along the north line of the tract 53 rods 8 links to the place of beginning, containing 50 acres and allowance.

16. BEGINNING at the northeast corner of Jacob Wright's land at a post; thence by the same south 143.5 perches to an ash, the southwest corner of Wright's land; thence by land of H. B. Dexter east 53 perches to a post; thence by the same south 81 perches to a post in the south line of the tract; thence east 76 perches to a hemlock, the southeast corner of the tract; thence north 223.5 perches to a maple, the northeast corner of the tract; thence by Tract No. 318 west 129 perches to the place of beginning, containing 153 acres, more or less, in Tract No. 317.

17. BEGINNING at the northwest corner of the tract conveyed at a post; thence by land formerly of Sager east 50.7 perches to lands formerly of Jackson; thence by land formerly of Jackson south 201 perches to land formerly of Irvine; thence by land formerly of Irvine west 50.7 perches to a post; thence by lands formerly of Irvine and lands formerly of Yager north 201 perches to the place of beginning, containing 60 acres, more or less, being part of Tract No. 363.

Together with right of entry on and over said premises for the purpose of cutting, skidding, piling and removing said timber until April 1, 1978, on and after which date all rights hereunder shall cease and determine, and all remaining timber and trees vest without notice in the Grantor, her heirs and assigns.

This timber deed is given in fulfillment of an agreement for the sale of said timber, with appurtenant rights as herein set forth, which was dated April 1, 1968 between the parties hereto.

BOOK 376 PAGE 942

And the said grantor    does hereby warrant    generally    the property hereby conveyed.

In Witness Whereof, the said grantor    ha s hereunto set    her    hand and seal    the day and year first above written.

*Marion C. Kinkead* _____ Seal.

_____ Seal.

Signed, Sealed and Delivered    _____ Seal.
in Presence of    _____ Seal.

_____ Seal.

_____    _____ Seal.

_____    _____ Seal.

_____ Seal.

Commonwealth of Pennsylvania }
County of    WARREN    } ss:

On this, the    20 th    day of    April    , 19 73 , before me, a Notary Public    , the undersigned officer, personally appeared MARION C. KINKEAD, widow,

known to me (or satisfactorily proven) to be the person    whose name    is    subscribed to the within instrument, and acknowledged that    she    executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

*Sandra L. Eberhardt*
*Notary Public*

My Commission expires *Nov. 8, 1976*

I hereby certify that the precise residence of the within named Grantee is
*Titusville, Pa.*

*N. Ross Saha*

_____

DEPOSITION
EXHIBIT
Hare 45
9/10 5 JZ



# This Deed,

FILED AND ENTERED
9/33 .... A.M.

**Made the** Ninth **day of** January, **JAN 19 1970**
in the year nineteen hundred and seventy (1970),

**Between** FISHER & YOUNG, INC., a Pennsylvania Corporation with principal place of business R. D. 2, Titusville, Oil Creek Township, Crawford County, Pennsylvania, Grantor,

A N D

ALBERT T. CARLISLE, of Ashtabula, Ohio, Grantee,

**Witnesseth,** That in consideration of ONE HUNDRED THOUSAND ($100,000.00) - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Dollars,
in hand paid, the receipt whereof is hereby acknowledged, the said grantor does hereby grant and convey, sell and confirm unto the said grantee, its successors and assigns,

All those certain pieces or parcels of land situate in Spring Creek Township, Warren County and State of Pennsylvania, bounded and described as follows:

1. BEGINNING at the northeast corner, a hemlock tree; thence south one hundred thirty-six (136) rods to a post; thence by land formerly owned by W. A. Irvine west to the corner of land formerly owned by Francis Bates; thence by land of said Bates one hundred thirty-six (136) rods to a post; thence by land of said W. A. Irvine east to the place of beginning, containing sixty-four (64) Acres one hundred fifty-five (155) rods of land, more or less.

2. BEGINNING at a post and stones in the northwest corner of the lot hereby conveyed; thence east one hundred sixty-nine (169) rods to a post; thence south one hundred one (101) rods to a post; thence east forty-nine and one-tenth (49.1) rods to a post; thence south one hundred ten and seven-tenths (110.7) rods to a post; thence west one hundred sixty-six (166) rods to a post; thence north sixty-two and seven-tenths (62.7) rods to a post; thence west fifty-three and seven-tenths (53.7) rods to a post; thence north one hundred forty-nine (149) rods to a post and stones, the place of beginning, containing two hundred thirty-seven (237) acres of land, more or less, and being part of Tract Number Three hundred sixty-three (363) as designated on the general map of Warren County.

3. BEGINNING at the northwest corner of said piece of land at a post, thence in a southerly direction along the Morton Hill Road to the southwest corner of said piece of land; thence north eighty-eight and three-fourths (88-3/4) degrees east one hundred thirty-four and six-tenths (134.6) rods to a hemlock; thence north one and one-fourth (1-1/4) degrees east one hundred thirty-one and four-tenths (131.4) rods to a post; thence south eighty-nine and three-fourths (89-3/4) degrees west one hundred and thirty-four and six-tenths (134.6) rods to a post, the place of beginning; containing about one hundred and five (105) acres, be the same more or less.

4. ALSO, ALL that certain piece or parcel of land situate in the Township, County and State aforesaid, being the homestead farm formerly of G. W. Nichols, and described in the three following several deeds, to-wit: from Frank E. Bates

BOOK 361 PAGE 13

BOOK 361 PAGE 14

and wife to C. W. Nichols, bearing date the twenty-first day of March, A.D. 1890, and recorded in said Recorder's Office in Deed Book 68, page 81, as commencing at a post in the south line of said property; thence by lands of Smith south eighty-eight and three-fourths (88-3/4) degrees west fifty-five and five-tenths (55.5) perches to a post; thence by the same north one and one-fourth (1-1/4) degrees west to the state road, supposed to be about one hundred and forty-five (145) rods, more or less; thence eastwardly along the center of said road to the northwest corner of land deeded by Francis Bates to L. L. Bates; and thence south one and one-fourth (1-1/4) degrees east along said L. L. Bates' land to a post, the place of beginning, be the same more or less, supposed to contain about fifty-four or fifty-five acres of land out of Tract Number Three hundred and three (303).

5.    ALSO, One other piece or parcel of land described as being the east half of sixty-three (63) acres of land deeded from George Yeager to Francis Bates on the Fifth day of July, 1850, and recorded in said Recorder's Office on the Third day of July, 1851, off of Tracts Numbers Three hundred and four (304) and Three hundred sixty-three (363).

6.    ALSO, as described in the deed from L. L. Bates and wife to said C. W. Nichols, bearing date the Twenty-first day of February, 1886, as commencing in the center of the State Road and the center of the Morton Hill Road at the junction of those two roads; thence by land of Cordelia Leonard and W. A. Irvine south one and one-fourth (1-1/4) degrees east one hundred eighty-five and one-half (185-1/2) rods to a beech, the southeast corner of the Francis Bates home farm; thence south eighty-eight and three-fourths (88-3/4) degrees west along the south line of said home farm fifty-one (51) rods to a post; thence north one and one-fourth (1-1/4) degrees west to the State Road; and thence eastwardly along the center of said road to the center of said Morton Hill Road, the place of beginning, supposed to contain about fifty-three (53) acres of land, be the same more or less.

7.    On the north by land above described, on the east by land of F. E. Bates, on the south by land formerly of C. W. Nichols, and on the west by land of M. Smith, containing about thirty-one and one-half (31-1/2) acres of land, more or less; and also so much of the land described in the deed from S. D. I. Newbold to the said C. W. Nichols, bearing date the Twenty-second day of March, 1888, and recorded in said Recorder's Office in Deed Book 64, page 136, as lies west of the Morton Hill Road, and adjoining the lands herein above described.

8.    On the south by lands owned by W. A. Irvine's heirs; on the west by the Morton Hill Road and land formerly owned by George Bates; on the north by land formerly owned by Mrs. Elias Wood; and on the east by the station road and land formerly owned by Lewis Stoddard, containing sixty-eight (68) acres and fifty-nine (59) rods of land, be the same more or less, out of Tract Number Three hundred four (304).

9.    On the north by land of Whiteley; on the east by land formerly of Greeley on the south by lands formerly owned by W. A. Irvine; and on the west by lands conveyed to C. W. Nichols by F. J. Jones and wife, and a public road leading to Spring Creek R. R. Station and lands of Stoddard, containing forty-four (44) acres of land, more or less.

10.    On the north by land of Tom Forbes; on the east by land formerly of W. A. Irvine and L. S. Clough; on the south by land formerly of William Morton, now L. S. Clough, containing forty-five (45) acres, more or less.

11.    Part of Tract Three hundred ten (310) as described on the map of Warren County, Pennsylvania, as follows: BEGINNING in the center of the State Road at a point where the same crosses the Tract line between the land formerly of Sarah D. I. Newbold and that of L. Greeley; thence south one (1p

degree forty-five (45) minutes east eighty-eight (88) rods to a post, the southwest corner of Tract Number Three hundred ten (310); thence north eighty-eight (88) degrees forty-five (45) minutes east along the southerly line of Tract Number Three hundred ten (310), eighty-one (81) rods to a post in said Tract line; thence north two (2) degrees west one hundred nine and one-half (109-1/2) rods to a post in the center of the State Road; thence along the center of said road westerly eighty-four and three-tenths (84.3) rods to the place of beginning, containing fifty (50) acres of land, more or less.

12.     BEGINNING at a point in the center of the State Road, at the northeast corner of land heretofore conveyed by S. S. Wead, and running thence south two (2) degrees east one hundred twelve and six-tenths (112.6) rods to a post at the southeast corner of the said Wead's land, and in the south line of Tract Number Three hundred ten (310); thence north eighty-eight and three-fourths (88-3/4) degrees east three hundred fifty (350) rods to the western bank of the Big Brokenstraw Creek at low water mark; thence northwesterly along the western bank of the Big Brokenstraw Creek at low water mark to the center of the State Road; thence southwesterly along the center of the said State Road to the place of beginning. The same containing two hundred fourteen (214) acres and one hundred four (104) perches of land, be the same more or less, and being a part of Tract Number Three hundred ten (310). The land herein conveyed to include all the land lying west of the Big Brokenstraw Creek belonging to Mrs. S. D. L. Newbold in Tract Number Three hundred ten (310). Also, all islands in that part of Brokenstraw Creek which lie east of the foregoing described land.

13.     BEGINNING at the northwest corner of Tract Number Three hundred thirteen (313); thence extending along the north line of said tract due east ninety-one and nine-tenths (91.9) perches to the corner of land formerly of E. Jackson; thence along the same due south one hundred thirty-five (135) perches to the southwest corner of said Jackson's land; thence due west ninety-four (94) perches to the west line of said tract; thence along said line due north one hundred thirty-five (135) perches to the place of beginning, containing seventy-eight (78) acres and forty-one (41) perches, more or less, being the northwest corner of Tract Number Three hundred thirteen (313). Being land conveyed to S. Clough by Dan A. Geiger and wife by deed dated October 1, 1906 and recorded in Deed Book 105, page 260.

14.     On the north by lands formerly of Miles and Watts; on the east by the eastern line of the tract; on the south by the southern line of said tract; on the west by lands formerly of Yeager and Miles and Watts. Being 51 acres 18 perches from the southeast side of Tract Number Three hundred Four (304), and conveyed to L. S. Clough by deed of J. V. Kinyon dated March 30, 1911 and recorded in Deed Book 114, page 397.

15.     BEGINNING at the northwest corner of the whole tract Number Three hundred fourteen (314); thence south by the west line of the tract one hundred fifty-nine (159) rods to a post; thence east fifty-three (53) rods and eight (8) links to a post; thence north by the residue of the tract one hundred fifty-nine (159) rods to a post in the north line of the tract; thence west along the north line of the tract fifty-three (53) rods and eight (8) links to the place of beginning. Containing fifty (50) acres of land and allowance.

16.     BEGINNING at the northwest corner of the tract conveyed at a post; thence by land formerly of Sager east fifty and seven-tenths (50.7) perches to lands formerly of Jackson; thence by land formerly of Jackson south two hundred one (201) perches to land formerly of Irvine; thence by land formerly of Irvine west fifty and seven-tenths (50.7) perches to a post; thence by lands formerly of Irvine and lands formerly of Yager north two hundred one (201) perches to the place of beginning, containing sixty (60) acres of land, be the same more or less, being part of Warrant Number Three hundred sixty-three (363).             BOOK 361 PAGE 15

SUBJECT to the right of way for an electric line granted unto Pennsylvania Electric Company by Instrument dated October 15, 1957 and entered in the Recorder's Office of Warren County in Deed Book 291, page 460, on January 11, 1958.

Plaintiff's Appendix
000726

313

SUBJECT to the right of way for an electric line granted unto Pennsylvania Electric Company by instrument dated November 29, 1957 and entered in said Recorder's Office in Deed Book 292, page 140 on January 31, 1958.

BOOK 361 PAGE 16

EXCEPTING and RESERVING that portion of the above described premises which was conveyed by Robert M. Kinkead and Marion C. Kinkead, his wife, to Charles A. Williams and Mary Helen Williams, husband and wife, by deed dated June 6, 1958 and entered in said Recorder's Office in Deed Book 294, page 475.

BEING the same parcels of land which Marion C. Kinkead, widow, by deed dated March 27, 1969, recorded in the Recorder's Office of Warren County in Deed Book 357, Page 349, conveyed to Fisher & Young, Inc., Grantor herein.

EXCEPTING and RESERVING from and out of this conveyance, all of the timber and trees, standing and fallen, situate on the premises above described, with full right of ingress, egress and regress for purposes of cutting, skidding, piling and removing the same, constructing roadways and skidways, and piling yards for such purposes, being subject to other terms relative thereto herein set forth below, SUBJECT, however, to right of Buyer to use for its own purposes all trees fallen for more than one year and all tree tops remaining after logging operations.

TOGETHER with such rights and subject to such conditions and terms as contained in agreement between the parties hereto dated May 28, 1969, incorporated herewith by reference and made a part hereof.

This deed of conveyance was executed, acknowledged and delivered pursuant to the authority of the Grantor by Resolution of its Board of Directors duly adopted at a special meeting held on November 3, 1969, after due and proper notice thereof in accordance with the By-laws of said corporation.

State of

County of                     } SS:

On this, the        day of                    19      , before me

the undersigned officer, personally appeared

known to me (or satisfactorily proven) to be the person    whose name    subscribed to the with-in instrument, and acknowledged that   he   executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and                    seal.

----------------------------------------

My Commission Expires

State of PENNSYLVANIA

County of   CRAWFORD        } SS:

On this, the 9th  day of January,     1970, before me,  a notary Public,

the undersigned officer, personally appeared Philip H. Cochran, who acknowledged himself to be the President of Fisher & Young, Inc., a corporation, and that he as such President, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as President.

IN WITNESS WHEREOF, I have hereunto set my hand and notarial          seal.

Dorothy S. Cole

My Commission Expires

DOROTHY S. COLE, Notary Public
Titusville, Crawford Co., Penna.
My Comm. Expires April 24, 1973

BOOK 361 PAGE 16

And the said grantor will    **General**    Warrant and Forever Defend the property
hereby conveyed.    caused this instrument to be executed by its
duly authorized officers and its corporate seal
In Witness whereof,    said grantor    has
affixed hereto, the
day and year first above written.

FISHER & YOUNG, INC.

By: _____ [SEAL]
                    President

_____ [SEAL]

_____ [SEAL]

_____ [SEAL]

_____ [SEAL]

_____ [SEAL]

## Certificate of Residence

We x hereby certify, that the precise residence of the grantee    herein is as follows:
c/o Warren Young, Bldg., Styx Sol. Bldg.    Ashtabula, Ohio. 44004 .

JACK, KOOKOGEY & FORSSELL

By: _____
                    Attorney

County of
County
On this
the unde

known to me (or satisfactorily proven) to be the person    whose name    subscribed to the with-
in instrument, and acknowledged that    executed the same for the purpose therein contained.
   IN WITNESS WHEREOF, I have hereunto set my hand and    seal.

_____
My Commission Expires

**Commonwealth of Pennsylvania**
County
On this
the unde

known to me (or satisfactorily proven) to be the person    whose name    subscribed to the with-
in instrument, and acknowledged that    executed the same for the purpose therein contained.
   IN WITNESS WHEREOF, I have hereunto set my hand and    seal.

BOOK 361 PAGE 17 My Commission Expires

Plaintiff's Appendix
000728

315



DEPOSITION
EXHIBIT
*Hare* 46
*91/05*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT T. CARLISLE,              )
                                 )
                Plaintiff,       )
                                 )
        v.                       )         No. _____
                                 )
MATSON LUMBER CO. and            )
MATSON HARDWOODS, INC.,          )
                                 )
                Defendants.      )

## PLAINTIFF'S FIRST REQUEST
## FOR PRODUCTION OF DOCUMENTS

NOW COMES Plaintiff Albert T. Carlisle, by his undersigned counsel, and hereby directs Defendants, pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Western Distrcit of Pennsylvania, to produce the documents described below within thirty (30) days hereof for inspection and photocopying at the offices of **Bartony Hare & Edson, The Bank Tower, Suite 801, 307 Fourth Avenue, Pittsburgh, PA 15222.** In responding to this request, you, as hereinafter defined, shall please utilize the definitions and follow the instructions hereinafter set forth, each of which shall be deemed to be a material part of each request. These requests are continuing in nature, and the responses

hereto shall be timely supplemented in accordance with the Federal Rules of Civil Procedure.

## I.  DEFINITIONS

1.  "You," "your" or "Defendants" shall mean Matson Lumber Company and Matson Hardwoods, Inc., and either or both of them, as well as their predecessors, successors, parents, subsidiaries, affiliates, assigns, joint venturers, shareholders, partners, directors, owners, officers, employees, agents, attorneys, accountants, consultants, servants, independent contractors, representatives, and any other individual or entity associated or affiliated with them or purporting to act on their behalf with respect to the matter in question.

2.  "Plaintiff" shall mean Plaintiff Albert T. Carlisle, as well as his agents, attorneys, accountants, consultants, servants, representatives, and any other individual or entity associated or affiliated with him or purporting to act on his behalf, other than the Defendants herein, with respect to the matter in question.

3.  The word "document" as used herein shall be understood to mean, without limitation, all written, graphic, or otherwise recorded matter, however produced or

-2-

reproduced, in the actual or constructive possession, custody, care or control of you, your officers, agents, employees and attorneys, or any of them, including but not limited to originals and all copies of correspondence, audio, video, or other tapes, disks, microfilms, photographs, telegrams, notes, sound recordings, minutes of director's meetings and of committee meetings, minutes of all other types of meetings, memoranda of all types, inter-office communications, reports, contracts, licenses, agreements, ledgers, books of account, spreadsheets, vouchers, bank checks, invoices, purchase orders, charge slips, hotel charges, copies of tax returns and tax reports, receipts, freight bills, working papers, computer disks, tapes, printouts, programs or backup material therefor, statistical records, delivery records, abstracts of bids, stenographer's notebooks, desk calendars, appointment books, diaries, time sheets and logs, telephone logs, job, matter and transaction files, and any papers or recordings similar thereto, whether made or received by you. Any document that contains any notation, marking, comment, addition, insertion, alteration or deletion of any kind that is not a part of other copies of the document is to be considered a separate document and must be additionally produced.

4. The singular of any word used herein shall be deemed to include the plural of such word and the plural shall include the singular. The use of a masculine,

feminine or neuter pronoun shall be understood to include all other genders.

5.    The disjunctive "<u>or</u>" shall be deemed to include the conjunctive "<u>and</u>," and likewise the conjunctive "<u>and</u>" shall be deemed to include the disjunctive "<u>or</u>."

6.    The word "<u>person</u>" shall mean any individual, fictitious person, firm, partnership, corporation, association, organization, business or governmental entity or subdivision, agency, department, and any "person" acting by or through, directly or indirectly, any other "person," as well as any "person" by whom such "person" was controlled with respect to the matter in question.

7.    The terms "<u>relate to</u>," "<u>relating to</u>" or "<u>in relation to</u>" when used in connection with a request for documents herein shall include all documents addressing, pertaining to, discussing, reflecting, concerning, describing, touching upon or referring in any way to the matter in question.

## II.  <u>INSTRUCTIONS</u>

1.    With respect to each of the following requests, please identify and produce all documents in your possession, custody and control, including but not limited to all documents that are known to you or that can be located or discovered by you through diligent effort on the

part of you, your employees, representatives, attorneys or accountants, including all documents that are in the business or personal files of your employees, in the possession of your representatives, attorneys or accountants, or accessible to you, your employees, or your representatives, attorneys or accountants. All documents that respond, in whole or in part, to any portion of the production requests set forth below shall be produced in their entirety, complete with all attachments and enclosures.

2.    Please specify by number the document request pursuant to which each document is produced.

3.    If any of the following requests involve information or documents that you contend to be confidential, secret or proprietary, you should advise Plaintiff of the claimed confidential nature of such information and request a stipulation as to the entry of an appropriate protective order preserving such confidentiality.

4.    If any documents requested herein or fairly comprised within the scope of the following requests have been lost or destroyed, please provide in lieu of a true and correct copy thereof a list of each document so lost or destroyed together with the following information:  (a) the

date of origin of the document; (b) a thorough description of the document; (c) the author of the document; (d) the identity of all recipients of the document; (e) the date upon which the document was lost or destroyed; and (f) a statement of the manner in which the document was lost or destroyed.

5.    In the event that any objection of whatever nature or any claim of privilege is made to the production of any document requested or fairly comprised within the scope of the following requests, please furnish in lieu of the production of such document a list identifying each document withheld from production together with the following information:  (a) the reason for withholding the document from production; (b) a statement of the facts constituting the basis for withholding the document from production; and (c) a thorough description of the document withheld, including (i) the date upon which the document was created, (ii) the identity of its author or preparer, (iii) the identity of all recipients of the document, (iv) the specific request that encompasses the document, (v) a description of the subject matter of the document, and (vi) the identity of all persons who have personal knowledge of that subject matter.

6.    Notwithstanding any claim that a document is privileged from disclosure, the non-privileged portion of

Plaintiff's Appendix
000734

any document so withheld must be produced with the portion claimed to be privileged having been redacted.

### III.   REQUESTS FOR PRODUCTION

1.   All documents constituting or relating in any way to the articles of incorporation, certificates of registration, articles of merger, corporate bylaws, and all other corporate documents of the Defendants, together with all other documents reflecting or relating in any way to the corporate identity and relationship of the Defendants and any change in ownership, identity or name of the Defendants or either of them.

2.   All documents reflecting or relating in any way to the ownership of the Defendants, including but not limited to all share certificate books, share transfer ledgers, and all other documents that set forth the identity of all persons owning shares of the Defendants and the percentage ownership of each such person.

3.   All documents reflecting or relating in any way to the timber harvested by you from the Clough Farm, including but not limited to all documents reflecting the dates on which you performed cutting or other timber harvesting procedures and the amounts of timber harvested on each such date or during each harvest season since you acquired your alleged harvest rights.

4.    All documents reflecting or relating in any way to any transaction whereby you purport to have acquired rights to harvest timber from the Clough Farm.

5.    All documents reflecting or relating in any way to your personnel files pertaining to all employees who have held the position of forester or timber harvest manager with respect to the Clough Farm.

6.    All documents constituting, evidencing or relating to any contract or agreement between you and Plaintiff.

7.    All documents constituting, evidencing or relating to any communication between you and Plaintiff, including but not limited to all correspondence with Plaintiff or his representatives and all correspondence or other documents referred to therein.

8.    All documents constituting, reflecting or relating in any way to any notice of whatever kind you allege to have provided Plaintiff with respect to any of the transactions identified in paragraph 15 of the parties' Agreement of Sale.

9.  All documents reflecting or relating in any way to any sale proceeds you have realized or received in connection with timber harvested from the Clough Farm.

10.  All harvest maps and other maps relating in any way to the Clough Farm, including but not limited to the exclusionary map set forth in the parties' Agreement of Sale and incorporated therein.

11.  All documents constituting or relating to your federal and state income tax returns for each year from 1986 to the present, inclusive.

12.  All documents constituting or relating to transcripts of depositions given by you in any lawsuit or other proceeding.

13.  All documents constituting, evidencing or relating to any contracts or policies of insurance, indemnity, excess insurance, reinsurance or any other agreement whereby any other person may be responsible to satisfy or reimburse any part of any liability you may incur in this action.

14.  All documents constituting or relating to any statements that you have made regarding this lawsuit or the transactions and events underlying this lawsuit.

15.   All documents that you intend to use at the trial in this lawsuit.

16.   All documents identified in your Responses to Plaintiff's Interrogatories Directed to Defendants.

17.   All documents constituting, reflecting or relating in any way to any of the information required to be disclosed by the newly-amended Rule 26(a)(1) of the Federal Rules of Civil Procedure.

Scott M. Hare
Pa. I.D. No. 63818

Bartony Hare & Edson
The Bank Tower
Suite 801
307 Fourth Avenue
Pittsburgh, PA 15222

412-338-8632

Attorneys for Plaintiff
Albert T. Carlisle

Date: March 13, 1995

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiff's First Request for Production of Documents** was served upon all parties in this matter on this 13th day of March, 1995 by first class United States mail, postage prepaid, to the following:

Matson Lumber Company
Matson Hardwoods, Inc.
132 Main Street
Brookville, PA  15825

Defendants

Scott Michael Hare
Counsel for Plaintiff



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT T. CARLISLE,                    )
                                       )
              Plaintiff,               )
                                       )
         v.                            )   No. 95-0376
                                       )
MATSON LUMBER COMPANY and              )
MATSON HARDWOODS, INC.,                )
                                       )
              Defendants.              )

RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS

    NOW COMES Defendants Matson Lumber Co. and Matson
Hardwoods, Inc., by their attorneys, Reale & Fossee,
P.C., and files this Request for Production of Documents, and
in support thereof sets forth the following:.

    1.    Objected to as overly broad.

    2.    Share Certificates are available at defendant's
offices in Brookville and may be viewed there during regular
business hours with appropriate notice.

    3.    Objected to as overly broad.  The record of tallies
is attached to answers to interrogatories.

4.    The deed and agreement are attached to the Complaint.  Merger documents are available at defendant's offices in Brookville and may be viewed there during regular business hours with appropriate notice.

5.    Defendants do not understand what is requested.

6.    See responses to Requests #4 and #7.

7.    The various requested documents are available at defendant's offices in Brookville and may viewed there during regular business hours with appropriate notice.

8.    Documents provided with answers to interrogatories or available at defendant's offices in Brookville and may be viewed there during regular business hours with appropriate notice.

9. Objected to as overly broad.

10.  Various maps are available at defendant's offices in Brookville and may be viewed there during regular business hours with appropriate notice.

11.  Objected to as overly broad and not relevant nor likely to produce relevant information.

12. Objected to as overly broad and not relevant nor likely to produce relevant information.

13. Hartford policies provided with answers to interrogatories.

14. None.

15. Unknown as this time.

16. Provided with answers to interrogatories.

17. Objected to as overly broad and not a proper request.

Date:  June 15, 1995                    Respectfully submitted,

                                        REALE, FOSSEE, P.C.

                                        By: _____
                                            Chester S. Fossee
                                            PA I.D. #11435

                                        22nd Floor, Lawyers Building
                                        428 Forbes Avenue
                                        Pittsburgh, PA  15219
                                        (412) 281-8117

                                        Counsel for Defendants
                                        MATSON LUMBER CO. and MATSON
                                        HARDWOODS, INC.

Plaintiff's Appendix
000742

CERTIFICATE OF SERVICE

I hereby certify that on this __16__ day of June, 1995, a true and correct copy of the Response to Request for Production of Documents was served by first class mail, postage prepaid on the following counsel of record:

Scott M. Hare, Esquire
Bartony, Hare & Edson
The Bank Tower
Suite 801
307 Fourth Avenue
Pittsburgh, PA  15222

_____



DEPOSITION
EXHIBIT
PaFC49
9/1/05

21 P.S. § 521

1 of 3 DOCUMENTS

PENNSYLVANIA STATUTES, ANNOTATED BY LEXISNEXIS(R)

\* THIS DOCUMENT IS CURRENT THROUGH ACT 2 OF THE 2005 LEGISLATIVE SESSION
\*
\*\*\* AUGUST 3, 2005 ANNOTATION SERVICE \*\*\*

PENNSYLVANIA STATUTES
TITLE 21.  DEEDS AND MORTGAGES
CHAPTER 1.  DEEDS AND GENERAL PROVISIONS
TIMBER DEEDS

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

21 P.S. § 521 (2005)

§ 521.  Sale of timber or bark by deed


   It shall be lawful for the owner or owners of land, timber or bark, or for any person or persons having an interest therein, to grant, bargain and sell, or contract to sell, by deed, conveyance or contract in writing, signed by the grantor or grantors therein, and proved or acknowledged by them, as now required by law of this commonwealth for the signing and acknowledging of deeds, all or any right, title, claim or interest such grantor or grantors may have in or to any standing or growing timber, or the bark thereon, upon any lands in this commonwealth; and any such deed, conveyance or contract shall be taken and deemed as a deed, conveyance or contract conveying and vesting an interest in land.

21 P.S. § 522

2 of 3 DOCUMENTS

PENNSYLVANIA STATUTES, ANNOTATED BY LEXISNEXIS(R)

\* THIS DOCUMENT IS CURRENT THROUGH ACT 2 OF THE 2005 LEGISLATIVE SESSION
\*

\*\*\* AUGUST 3, 2005 ANNOTATION SERVICE \*\*\*

PENNSYLVANIA STATUTES
TITLE 21.  DEEDS AND MORTGAGES
CHAPTER 1.  DEEDS AND GENERAL PROVISIONS
TIMBER DEEDS

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

21 P.S. § 522 (2005)

§ 522.  Deeds to be recorded; effect; evidence


   All such deeds, conveyances or contracts, made or to be made and proved or acknowledged, as provided in the first section of this act, may be recorded in the office for recording of deeds in the county where such land is located in the same manner and subject to the same rights and restrictions as to the time and manner of recording and indexing the same as is now provided by the laws of this commonwealth for the recording of deeds, and when so recorded shall be notice to subsequent purchasers, mortgagees or other lien creditors notwithstanding the time for the cutting and removal of said timber or bark may be limited by the terms of said deeds, conveyances or contracts, and the records of such deeds, conveyances or contracts, or duly certified copies of such records, shall be evidence in all cases where the original deeds, conveyances or contracts would be evidence.

LexisNexis (R) Notes:

TREATISES AND ANALYTICAL MATERIALS

1. 12-190 Pennsylvania Transaction Guide--Legal Forms § 190.03, UNIT 4 REAL ESTATE TRANSACTIONS, Division 1 Sales and Settlement, Legal Background, Pennsylvania Transaction Guide--Legal Forms.

3 of 3 DOCUMENTS

PENNSYLVANIA STATUTES, ANNOTATED BY LEXISNEXIS(R)

\* THIS DOCUMENT IS CURRENT THROUGH ACT 2 OF THE 2005 LEGISLATIVE SESSION
\*
\*\*\* AUGUST 3, 2005 ANNOTATION SERVICE \*\*\*

PENNSYLVANIA STATUTES
TITLE 21. DEEDS AND MORTGAGES
CHAPTER 1. DEEDS AND GENERAL PROVISIONS
TIMBER DEEDS

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

21 P.S. § 523 (2005)

§ 523. Deeds recorded within six months to be valid; vested interests not affected

   All deeds, conveyances or contracts for standing or growing timber, or the bark thereon, which may have been proved or acknowledged by the grantors therein, and recorded in the office for the recording of deeds where such land is located, or which shall, within six months from and after the passage of this act, be proved or acknowledged and recorded in the manner directed by the laws of this commonwealth for the proving, acknowledging and recording of deeds, shall be as good and effectual in law, to all intents and purposes, as if the same had been proved or acknowledged and recorded within the time deeds are now required to be recorded: Provided, That nothing in this act contained, shall extend or be deemed or construed to operate against subsequent judgment, recognizance, attainder, forfeiture or lien whatsoever, or against any subsequent bona fide mortgagee or mortgagees, purchaser or purchasers, or any estates, lands, tenements or hereditaments mentioned or contained in said deed, conveyance or contract for timber or bark, before such deed, conveyance or contract was or shall be proved or acknowledged and recorded agreeably to the directions of this act.

Plaintiff's Appendix
000746

1 of 1 DOCUMENT

PENNSYLVANIA STATUTES, ANNOTATED BY LEXISNEXIS(R)

\* THIS DOCUMENT IS CURRENT THROUGH ACT 2 OF THE 2005 LEGISLATIVE SESSION
\*
\*\*\* AUGUST 3, 2005 ANNOTATION SERVICE \*\*\*

PENNSYLVANIA STATUTES
TITLE 21. DEEDS AND MORTGAGES
CHAPTER 1. DEEDS AND GENERAL PROVISIONS
REGISTRATION AND RECORDING
NECESSITY OF RECORDING AND COMPULSORY RECORDING

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

21 P.S. § 351 (2005)

§ 351. Failure to record conveyance

  All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

LexisNexis (R) Notes:

CASE NOTES

21 P.S. § 351

1. Discovery rule did not operate to toll running of the statute of limitations on a real estate option holder's cause of action for breach of contract, where the option grantor's sale to another was promptly recorded, giving the option holder constructive notice of the breach. Weik v. Estate of Brown, 2002 PA Super 63, 794 A.2d 907, 2002 Pa. Super. LEXIS 276 (Pa. Super. Ct. 2002), appeal denied by 572 Pa. 709, 813 A.2d 844, 2002 Pa. LEXIS 2351 (2002).

2. Discovery rule did not operate to toll running of the statute of limitations on a real estate option holder's cause of action for breach of contract, where the option grantor's sale to another was promptly recorded, giving the option holder constructive notice of the breach. Weik v. Estate of Brown, 2002 PA Super 63, 794 A.2d 907, 2002 Pa. Super. LEXIS 276 (Pa. Super. Ct. 2002), appeal denied by 572 Pa. 709, 813 A.2d 844, 2002 Pa. LEXIS 2351 (2002).

3. Where the right of way granted by the lessor's predecessor to the natural gas company was not recorded pursuant to Pa. Stat. Ann. tit. 21, § 351, but the lessor and lessee did not dispute the validity of the right of way, the appellate court assumed the validity of the right of way. Amerikohl Mining Co. v. Peoples Natural Gas Co., 2004 PA Super 388, 860 A.2d 547, 2004 Pa. Super. LEXIS 3391 (Pa. Super. Ct. 2004), appeal denied by 876 A.2d 392, 2005 Pa. LEXIS 1091 (Pa. 2005).

4. Applicant's sketch plan application, proposing to subdivide the property, was improperly denied based on a declaration of restrictions that prohibited the subdivision of the property; pursuant to Pa. Stat. Ann. tit. 21, § § 351, 356, and 444, the declaration could not serve as the basis for the denial of the application, because the declaration was not recorded prior to the applicant's purchase of the property. Walsh v. E. Pikeland Twp., 829 A.2d 1219, 2003 Pa. Commw. LEXIS 542 (Pa. Commw. Ct. 2003), appeal denied by 578 Pa. 703, 852 A.2d 314, 2004 Pa. LEXIS 1043 (2004).

5. Landowner's application to subdivide his property was improperly denied where the denial was based upon a deed restriction preventing further subdivision of the land, but the document containing that restriction was not filed until after the landowner had purchased the property and his subdivision application was denied; under 21 P.S. § 351 and 21 P.S. § 444, the fact that the document containing the restriction on further subdivision of the property was not recorded prior to the landowner's purchase of the property prevented the restriction from being enforced against him. Walsh v. E. Pikeland Twp., 829 A.2d 1219, 2003 Pa. Commw. LEXIS 542 (Pa. Commw. Ct. 2003), appeal denied by 578 Pa. 703, 852 A.2d 314, 2004 Pa. LEXIS 1043 (2004).

6. Discovery rule did not operate to toll running of the statute of limitations on a real estate option holder's cause of action for breach of contract, where the option grantor's sale to another was promptly recorded, giving the option holder constructive notice of the breach. Weik v. Estate of Brown, 2002 PA Super 63, 794 A.2d 907, 2002 Pa. Super. LEXIS 276 (Pa. Super. Ct. 2002), appeal denied by 572 Pa. 709, 813 A.2d 844, 2002 Pa. LEXIS 2351 (2002).

7. In parcel owners' quiet title action to confirm their title where their predecessor's title had been acquired by a "lost" unrecorded deed, the competing title holder's deed for the larger tract recorded prior to the parcel owners' deed did not entitle them to the protections of the Recording Act, 21 P.S.

21 P.S. § 351

§ 351, because their deed excepted five prior parcel transfers and only four were recorded, which corroborated other trial evidence that the fifth parcel was the subject of the parcel owners' "lost" deed. Graham v. Lyons, 377 Pa. Super. 4, 546 A.2d 1129, 1988 Pa. Super. LEXIS 2137 (1988), appeal denied by 522 Pa. 576, 559 A.2d 38 (1989).

8. Because a landowner's attempted transfer real property to his wife was void under the recording statute, 21 P.S. § 351, the property passed to him upon his wife's death and a judgment holder was entitled to execute against the property. Merrill v. Hanley, 235 Pa. Super. 22, 340 A.2d 546, 1975 Pa. Super. LEXIS 1579 (1975).

9. Township erred in denying the property owner's request for subdivision approval because the deed restriction the township sought to enforce was never recorded, and actual or constructive notice of the restriction was required. Wolter v. Bd. of Supervisors, 828 A.2d 1160, 2003 Pa. Commw. LEXIS 454 (Pa. Commw. Ct. 2003), appeal denied by 577 Pa. 683, 843 A.2d 1240, 2004 Pa. LEXIS 142 (2004).

10. In an action to quiet title brought by complainants, a judgment in favor of complainants based solely upon the provisions of the Pennsylvania Recoding Act (Act), 21 P.S. § 351, was affirmed where the court rejected the claimants' contention that the trial court erred in applying the Act on the claimants' assertion that such application was retroactive and illegal; the court found that 21 P.S. § 444 was also enacted to protect bona fide purchasers against deceptive appearance of title and because 21 P.S. § § 351 and 444 were both intended to provide the same protections to bona fide purchasers, and in light of the fact that the sections had to be read together, the court held that the trial court was correct in applying the Act according to the facts of this case. Roberts v. Estate of Pursley, 718 A.2d 837, 1998 Pa. Super. LEXIS 2869 (Pa. Super. Ct. 1998), writ of certiorari denied by 531 U.S. 1075, 148 L. Ed. 2d 668, 121 S. Ct. 769, 2001 U.S. LEXIS 190, 69 U.S.L.W. 3456 (2001).

11. Husband and wife's action against property owner and broker was properly dismissed because the couple failed to sufficiently state a cause of action for breach of contract by alleging that the owner and broker violated an agreement for sale of property to be used for residential purposes when they failed to disclose a water utility easement on the land. Sevin v. Kelshaw, 417 Pa. Super. 1, 611 A.2d 1232, 1992 Pa. Super. LEXIS 1611 (1992).

12. Purchasers of realty satisfied the requirements of the Pennsylvania Recording Statute, 21 P.S. § 351, such that they could be considered bona fide purchasers for value without notice of a prior transaction, where the purchasers conducted a title search and secured title insurance, but found no record of a prior claim in their search of the property. Muller v. McNamee, 20 Phila. 644, 1990 Phila. Cty. Rptr. LEXIS 36 (Pa. C.P. 1990).

13. Where a tax sale deed to real property was not recorded prior to delinquent taxpayer's filing for bankruptcy, tax sale purchaser had not perfected his interest under 21 P.S. § 351, and purchaser's interest was therefore not superior to delinquent taxpayer's interest. Haggerty v. Erie County Tax Claim Bureau, 107 Pa. Commw. 265, 528 A.2d 681, 1987 Pa. Commw. LEXIS 2274 (1987), appeal