IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT T. CARLISLE, | ) CIVIL DIVISION |
| | ) |
| Plaintiff | ) C.A. No. 04-25 Erie |
| | ) |
| v. | ) |
| | ) Judge Gary Lancaster |
| BARTONY, HARE & EDSON; SCOTT M. HARE, ESQUIRE; HENRY E. BARTONY, JR., ESQUIRE; and JOHN JOY EDSON, V., ESQUIRE, | ) ) ) ) ) |
| Defendants. | ) |

## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, by and through their attorneys, Weinheimer, Schadel & Haber, P.C., file the following Reply Brief in Support of Their Motion for Summary Judgment:

### This claim is barred by the statute of limitations

Plaintiff makes much of alleged representations of Mr. Hare regarding filing the second action, and argues that those representations should toll the statute of limitations as Mr. Hare represented to him that he could collect damages in the second action. In fact, plaintiff has not been precluded from collecting damages in the Warren County action. And in order to recover in a legal malpractice action, plaintiff must **prove** (and not simply allege) that he **would have** recovered those damages in the Warren County action **but for** the conduct of Mr. Hare. Plaintiff has not shown that he cannot recover damages in the Warren County action but for some action of Mr. Hare. The only ruling of the judge in Warren County is that plaintiff is precluded from recovering damages for which he has already been reimbursed in the federal

{00064032.DOC:1}

court action. This illustrates with clarity that this case is simply about the plaintiff's complaint that he did not receive a sufficient verdict in the federal court action, and that claim is long barred by the statute of limitations.

With respect to the statute of limitations argument, Plaintiff analogizes this case to dental malpractice cases such as Fine v. Checcio, 870 A.2d 850 (Pa. 2005). In fact, Fine simply stands for the proposition that when the discovery rule applies, it is not relevant whether the original statute of limitations period has expired. Fine, 870 A2d. at 859. This issue had previously caused a split of authority and in Fine, the Pennsylvania Supreme Court resolved that split. Further, this issue is not relevant to the instant matter in any fashion.

The Court in Fine then analyzes the discovery rule argument in that matter based on the same long standing principles cited in Defendants' brief. The Court finds in that matter there is a question of fact as to whether the plaintiff in that case could have understood her numbness to be caused by the conduct of the defendant doctor or whether it was simply a normal symptom of the surgery itself.

Plaintiff argues a doctrine called "equitable tolling" which has never been applied to representations made by lawyers and appears to be the exact arguments made in support of the continuous representation rule which has been specifically rejected by Pennsylvania Courts. Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, 441(Pa. Super. Ct. 2003) *aff'd* 881 A.2d 1266 (Pa. 2005). Instead, the courts apply the discovery rule to determine when the plaintiff could reasonably be expected to know of his injury. The court's decision in Fine did not suspend long standing case law that there is nothing per se inherent in the attorney–client or doctor-patient relationship that relieves the client or patient from **his duty to exercise reasonable diligence** in discovering facts giving rise to a potential malpractice claim. Pennsylvania has long

rejected the continuing treatment rule and the continuous representation rule. See Haggart v. Cho, 703 A.2d 522 (Pa.Super. 1997) and Glenbrook Leasing v. Beausang, and Colonna v. Rice, 664 A.2d 979 (Pa.Super. 1995)(Merely because the plaintiff put her trust in her doctor, she was not relieved of her responsibility to be diligent concerning her own medical treatment) and Kaskie v. Wright, 589 A.2d 213 (Pa.Super. 1991)(Plaintiff's confidence in the doctor did not absolve him of the responsibility to be diligent concerning the treatment provided).

This analysis regarding whether a plaintiff should recognize a symptom as harm is simply inapposite to a legal representation. It is frequently a question of fact as to whether the plaintiff in a medical malpractice action should have sought an opinion as to symptoms that develop post-treatment and if those symptoms are related to the conduct of the doctor (or dentist). The court there does not hold that the representations of the dentist tolled the statute of limitations, but rather holds that it is a question of fact whether the symptoms themselves, combined with the representations, could be the basis for the discovery rule. Here, however, it is clear that the plaintiff reasonably could have known of his harm at the date of the jury verdict, particularly since he has testified that he knew he didn't recover what he wanted from the federal court action. (Deposition of plaintiff, p. 71) Further he testified that he held a concern, that he did not express to Mr. Hare at any time during the federal court action, that Matson did not own the timber. (Deposition of plaintiff, p. 97) He testified that knew he had not recovered those damages because of the alleged conduct of Mr. Hare in dismissing the trespass claim. (Deposition of plaintiff, p. 108). He knew he was dissatisfied with the verdict and he sought legal counsel apart from Mr. Hare's representations in the new action and that counsel expressed concern that Mr. Hare's recommendation regarding the statute of limitations was incorrect. (Deposition of plaintiff, p. 55, 57-58, Deposition of Krembs, p. 12)

Unlike the patient in Fine, it is clear here that the plaintiff could have known, with the exercise of reasonable diligence, that he had a claim.

Likewise, Plaintiff analogizes this case to that of Fine and other medical malpractice cases with respect to representations, but does not address the cases where this exact argument was made. The court in Harsco Corporation v. Kerkam, Stowell, Kondracki and Clarke, P.C., 961 F.Supp. 104 (M.D. Pa. 1997) addressed the exact arguments being made by plaintiff in this case. First, plaintiff argues that his claim isn't barred until the judge rules. Second, plaintiff argues that it was reasonable to rely on the lawyer's reassurances that there was a remaining claim.

However, the court in Harsco rejects both of those arguments. The court states:

> the plaintiff maintains that under Bailey, supra, and Garcia v. Community Legal Services Corp., 362 Pa.Super. 484, 524 A.2d 980 (1987), "a claim for legal malpractice ⋯ does not begin to run ⋯ until an initial adverse judgment in the underlying action" that is "appealable." (Opposition brief at pps. 3 and 5). As an alternative rationale for this date, the plaintiff argues that there was no injury until the denial of the post-trial motions because Molnar had not claimed waiver until proceedings on the post-trial motions, and there could not have been an injury until the court accepted the waiver argument.
>     We reject the plaintiff's contentions. First, Bailey certainly supports an accrual date of the "initial adverse judgment in the underlying action" since the date of a criminal sentencing would correspond to the date of the entry of a civil judgment. However, in this case the date would not have been March 31, 1995, but May 20, 1994, the date the court entered judgment on the jury's verdict. The May 1994 judgment was enforceable unless IKG obtained a stay, see Fed.R.Civ.P. 62(b), or Molnar abstained from executing on it. (We therefore reject the defendants' contention that the harm occurred upon entry of the jury's verdict.) Enforceability of the judgment is the important factor, not appealability. Second, the injury did not happen until the trial court ruled on Molnar's post-trial argument. Rather, the harm would have occurred at trial when the moving defendants failed to comply with Rule 50(a)(2), leading to the entry of the May 20, 1994 judgment.
>     Harsco also relies on the discovery rule in attempting to defeat the motion. Citing Garcia, it argues that it could not have known about its lawyers' negligence, or the fact or cause of injury, until the date the district court denied its post-trial motions. It bases this argument on Swanger's penalty-of-perjury declaration in which he avers that Harsco "looked to" the moving defendants and

>their law firm "for professional services in the Molnar Litigation" and that the defendants filed a brief in which they asserted that they had not violated Rule 50(a)(2), thereby creating **reasonable reliance on the assertion of Harsco's lawyers that they had done nothing improper.**
>
>Initially, as the moving defendants point out, this argument is flawed because **the discovery rule does not require that the injured party know about the defendant's negligence before the limitations period begins to run**. All that is necessary is that the injured party knew, or should have known, about its injury and that it was caused by the defendant's conduct. See Navin v. Byrne, 638 F.Supp. 263, 264-65 (M.D.Pa.1986) (Caldwell, J.).

Harsco, at 108.

Similarly, other cases hold that the plaintiff may not wait until some later court rules that he does not have a claim, regardless of what his lawyer may represent to him. In Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., No. 96-4488, 1997 WL 102521 (E.D. Pa. Feb. 28, 1997), aff'd. 127 F.3d 1096 (3d Cir. 1997), the alleged malpractice in the underlying case was the failure to produce an expert witness report timely in accordance with a pretrial order. On June 23, 1993, the attorneys informed their clients that the trial court had refused to enlarge the time for filing the report, and that the expert would not be permitted to testify. That date, rather than the later date of the adverse verdict or judgment in the underlying case, was held to be the discovery date that commenced the running of the statute of limitations, and the malpractice action was dismissed accordingly.

Finally, plaintiff argues that his case does not accrue until the later court ruled. However, it is clear from plaintiff's own testimony that all the elements necessary to bring a legal malpractice suit were present at the time of the jury verdict. Plaintiff has testified that at the time of the verdict, he was dissatisfied with the amount of damages he received and with the verdict, so he was clearly aware of harm and accordingly, on notice to investigate the cause of his harm. He stated "[t]he jury verdict said that Matson had the right to cut trees that were existing in 1969. Those trees can grow a long time, so that was a disappointment, that they could come back and

cut trees. The second thing is, the – I was led to believe that there was going to be much more in damages for the trees that Matson did cut. So that was disappointment number two. And it created a cloud on my title, that's still there. Aggravation and the cloud on the title." (Deposition of plaintiff, p. 48). He knew prior to the termination of Mr. Hare's representation [in 1998] that he did not recover damages for the trespass claim or the conversion claim and those claims did not go to the jury. (Deposition of plaintiff, p. 43-44). He knew prior to the verdict that there were damages he believed had occurred that were not presented to the jury. (Deposition of plaintiff, p. 107-108). And he knew at that time Mr. Hare had not presented damages relative to those items. (Deposition of plaintiff, p. 108).

Even assuming plaintiff did not realize until after the trial that he believed he had a potential claim, his issue with the verdict was that "nothing that I thought good had happened from that 1997 trial. Nothing." (Deposition of plaintiff, p. 71). He testified that after the verdict, Matson was still cutting and making claims to trees he believed they didn't have rights to. He testified that Matson had started cutting in 1998. (Deposition, p. 71). Therefore, he knew of the problem with the ongoing dispute when Matson began cutting in 1998, and at the latest suffered harm that he was aware of when Matson started cutting in 1998.

Finally, plaintiff argues that the constructive notice of the deed under the recording statute should not apply to him. However, this Court has already ruled that plaintiff had actual notice of a deed in his chain of title and that decision has been affirmed by the Third Circuit. See Opinion, May 9, 2005, <u>Carlisle v. Matson,</u> No.04-284, p. 13. Accordingly, plaintiff is estopped from arguing that he was not on constructive notice of the deed. However, regardless of whether the case law applies to plaintiff, the standard for the discovery rule is not whether plaintiff did actually know (and was on notice of the deed), but whether plaintiff <u>could have</u> known using

reasonable diligence. Clearly, plaintiff has testified that he had concerns about the ownership of the timber rights long before he came to Mr. Hare, and he made no effort to investigate those rights and admits that he did not discuss his concerns with Mr. Hare. Accordingly, plaintiff could have known of the deed in 1974, when he was originally involved in litigation over the rights, within days after the federal court verdict, or at any time thereafter. Further, the burden is not on Hare to prove actual or constructive notice of the deed. Plaintiff is asserting the discovery rule, and the burden of establishing the discovery rule is on the party asserting it. Plaintiff, in order to prevail on a discovery rule argument, must show that he **could not have known** of the timber deed earlier. See Baselice v. Franciscan Friars Assumption BVM Province, Inc., 879 A.2d 270 (Pa. Super. Ct. 2005). The statute of limitations begins to run when the injured party "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." Id. The burden of invoking the discovery rule is on the plaintiff, and he must establish the inability to know of the injury by the act of another despite the exercise of reasonable diligence. Id. If "a party has the means of discovery within [his] power but neglects to use them, [his] claim will still be barred." Id. at 277. Since plaintiff clearly could have known of the timber deed earlier, was aware that he was unhappy with the verdict, suffered harm when Matson begin cutting again under the ruling (or earlier at the time the jury failed to award him damages he believed he was entitled to), and was aware that he had not been awarded damages because of alleged conduct of Mr. Hare, plaintiff's claims are clearly barred by the statute of limitations.

### Plaintiff has not proven causation in this matter

Plaintiff argues that he has proven factual causation. However, the standard for causation, whether legal or factual, in a legal malpractice action is **never** substantial contributing

factor (increased risk of harm ) and is only but for causation. Myers v. Robert Lewis Seigle, P.C., 751 A.2d 1182 (Pa.Super. 2000). See also Duke & Co. v. Anderson, 418 A.2d 613 (Pa.Super.1980); Schenkel v. Monheit, 405 A.2d 493 (Pa.Super.Ct.1979) and Trice v. Mozenter, 515 A.2d 10 (Pa.Super.1986) *aff'd* 621 A.2d 108 (Pa. 1993). In order to prove that the negligence was the proximate cause of the damage to the plaintiff, the plaintiff must be able to establish by a preponderance of the evidence that "but for" the attorneys' actions the outcome would have been in his favor. Plaintiff must prove, in order to prevail, not that he could have recovered damages, but that he would have recovered damages. He has not done so in this case. The reasons for this causation standard are clear and are succinctly explained by Judge Folino Wilken v. Entenmann & Sansone, et.al, 152 PITT.L.J. 155, 160 (Alleg.Cty. 2004):

> The issue is not "could" the additional evidence have made a difference, or "might" it have, or did its absence increase the risk that Plaintiff would suffer summary judgment. We do not have an "increased risk of harm" standard of causation in legal malpractice claims. There are sound policy reasons for this. Assume, for example that a plaintiff's counsel agreed to represent a client in a difficult case (perhaps a case where plaintiff's counsel was sure to have a difficult time proving that the accident in question caused harm to the plaintiff). Nevertheless, plaintiff's counsel believed in his client, accepted the difficult case, tried it, and lost it--the jury returned a verdict for defendant. If we had an increased risk of harm standard for legal malpractice, the client could then hire an expert to opine that the lawyer should have called a different witness, or made a different point in his closing, and that he could have won if this had been done, and that by failing to do so the lawyer increased the risk that the plaintiff would lose the case. **If that is all that a plaintiff was required to prove in order to establish causation in a legal malpractice case, then it would be an easier standard of causation for the plaintiff to win the malpractice action than the underlying case.** Under such a standard, it would not be long before many worthy clients would find no lawyers to represent them. Of course, this principle applies similarly to defense counsel who agree to defend difficult cases. Perhaps this is one reason why our appellate courts have developed the standard that the malpractice plaintiff must prove he would have won but for his lawyer's conduct.

There are simply not two underlying actions in this matter. Mr. Hare does not represent plaintiff in the Warren County action, plaintiff obtained new counsel for that lawsuit. There are no allegations that Mr. Hare committed any negligence in the Warren County action. Mr. Hare's representations regarding the Warren County action do not provide a discovery rule analysis because plaintiff has a viable Warren County action for damages against Matson. However, even assuming that the Warren County action is a second action, plaintiff has not presented any theory that proves that but for the conduct of Mr. Hare, he would recover something different in that action than what he will potentially recover. That a lawyer tells him he has a good case, or a home run case, does not relieve the plaintiff of **proving** that home run case in order to proceed in a legal malpractice action. It is insufficient to plead and prove malpractice by asserting that the advice or a decision to enter or withhold evidence was incorrect. See Composition Roofers Local 30/30B v. Katz, 581 A.2d 607, 610, (Pa.Super. 1990); Gans v. Mundy, 762 F.2d 338 (3d. Cir. (Pa.)). Simply "proving" that Mr. Hare's advice was wrong is not sufficient to make a legal malpractice claim.

Plaintiff cannot prove causation in this matter because his only theory in proving the alleged lost damages deals with the finding of the deed. And that theory of liability is based on pure speculation as to what would have happened had the deed been located earlier. Courts have specifically held that the "mere breach of a professional duty [by an attorney], causing only ... speculative harm ... does not suffice to create a cause of action for negligence." Rizzo v. Haines, 555 A.2d 58, 68 (Pa.1989); Mariscotti v. Tinari, 485 A.2d 56 (Pa.Super. 1984) and Myers v. Robert Lewis Seigle, P.C., 751 A.2d 1182, 1184 (Pa.Super.2000). The Plaintiffs cannot simply allege that something else might have happened that would have been more beneficial.

Had the deed been located earlier, this would not have necessarily vested any rights in the plaintiff. The deed did not revert rights to the plaintiff. Rather, Matson may have obtained the quitclaim deed earlier. Someone else may have owned those rights and made a claim against plaintiff. The parties may have filed a quiet title action and one can only speculate how that would have resolved. Plaintiff may have become embroiled in more litigation during the course of the federal court action. Simply finding a deed, which all parties involved claim had a mutual mistake[1], does not prove that plaintiff would have recovered trespass damages. And plaintiff can do nothing but speculate that a jury would have awarded him more based on deed. Plaintiff cannot rely on speculation to prove causation in a legal malpractice claim.

Plaintiff suggests that finding the deed would have enhanced plaintiff's chances of obtaining injunctive relief or would "likely" enlarge his claim for damages. (Brief, page 35). This is insufficient to show he would have recovered the damages and insufficient to show causation. Plaintiff, in order to prevail, must prove that finding the deed **would** have required the court or the jury to rule in his favor. He has not done so and cannot do so and accordingly, he cannot prevail.

## CONCLUSION

Plaintiff's claims make abundantly clear that he was dissatisfied with the amount he received from the jury in 1997 and he wishes to relitigate those issues. As such, it is evident that those claims should have been brought within two years from the date of the verdict and as they were not made until more than six years later, his claims are barred by the statute of limitations. Even if they were not, plaintiff has failed to prove causation for the claims and failed to prove an

---

[1] Plaintiff asserts that defendant cannot assert this testimony due to the Nanty Glo Rule. Nanty Glo is a state court procedural case which does not apply in federal court. Even assuming it did, however, Matson is not a party to this matter, and Nanty Glo would not apply to the testimony of a third party, but rather applies to the situation where the moving party relies solely on oral testimony of it's own witnesses.

undertaking to perform a title search. Therefore, plaintiff's claims are properly dismissed and summary judgment is appropriately granted to the defendants.

                              Respectfully submitted,

                              Weinheimer, Schadel & Haber, P.C.

BY_____
    David L. Haber, Esquire
    Pa. I.D. No. 39574

    602 Law & Finance Building
    429 Fourth Avenue
    Pittsburgh, PA  15219
    (412) 765-3399